IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUINSTREET, INC.,                                  :
                                                   :
          Plaintiff,                               :
                                                   :
v.                                                 : C. A. No. 1:06-cv-00495 (SLR)
                                                   :
EPICREALM LICENSING, LP,                           :
                                                   :
          Defendant.                               :

DEFENDANT EPICREALM LICENSING, LP'S
MOTION TO CONSOLIDATE AND TRANSFER

SAUL EWING, LLP
Michael F. Bonkowski (No. 2219)
Kimberly L. Gattuso, Esquire (No. 3733)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, Delaware  19801-1611
(302) 421-6800

Of Counsel:

BAKER BOTTS L.L.P.
Larry D. Carlson, Esquire
Kevin J. Meek, Esquire
Jeff Moles, Esquire
2001 Ross Avenue
Dallas, TX  75201-2980

Attorneys for epicRealm Licensing, LP

DATED:      August 28, 2006

## TABLE OF CONTENTS

I.    NATURE AND STAGE OF PROCEEDINGS..................................................................1

II.   SUMMARY OF ARGUMENT. ..........................................................................................2

III.  STATEMENT OF FACTS. ................................................................................................3

IV.   ARGUMENT AND AUTHORITIES. ...............................................................................5

      A.    THE COURT SHOULD CONSOLIDATE THE ORACLE AND
            QUINSTREET CASES. ...........................................................................................5

            1.    The Oracle and Quinstreet Cases Have Common Issues of Fact
                  and Law.......................................................................................................5

            2.    Consolidation of the Oracle and Quinstreet Cases Will Save
                  Time, Money, and Effort and Will Not Result in any Prejudice
                  to the Rights of the Parties. ......................................................................6

      B.    THE COURT SHOULD TRANSFER THE CONSOLIDATED
            ACTION TO THE EASTERN DISTRICT OF TEXAS. ....................................7

            1.    The Eastern District of Texas Is a Proper Venue. ..................................8

            2.    The Public Interest Factors Weigh in Favor of Transfer......................8

                  i.     Judicial Economy and the First-Filed Rule Dictate
                         Transfer. .........................................................................................8

                  ii.    Local Interest Bears Little Weight in the Section
                         1404(a) Analysis. ........................................................................12

                  iii.   Court Congestion Bears Little Weight in the Section
                         1404(a) Analysis. ........................................................................13

                  iv.    The Remaining Public Interest Factors Bear No Weight
                         in the Section 1404(a) Analysis. ................................................13

            3.    The Private Interest Factors Weigh in Favor of Transfer. ..................13

                  i.     The "Home Turf" Rule Dictates that the Court Give
                         Plaintiffs' Choice of Forum Little Deference.............................13

ii.     **EpicRealm's Choice of Forum and the Convenience to epicRealm of Litigating in Texas Both Weigh in Favor of Transfer.** ...............................................................14

iii.    **The Location of Witnesses Weighs in Favor of Transfer.** ................................................................17

iv.     **The Location of Documents Weighs in Favor of Transfer.** ................................................................18

v.      **Oracle's and Quinstreet's Claims are Intimately Connected to the Eastern District of Texas.** ............................19

V.  **CONCLUSION.** ................................................................................21

**TABLE OF AUTHORITIES**

**CASES**

*Air Products and Chemicals, Inc. v. MG Nitrogen Services, Inc.,*
    133 F. Supp. 2d 354 (D. Del. 2001)...............................................................8-9

*APV North America, Inc. v. Sig Simonazzi North America, Inc.,*
    295 F. Supp. 2d 393 (D. Del. 2002)........................................................12, 15, 18

*Arrow Communication Laboratories, Inc. v. John Mezzalingua Associates, Inc.,*
    No. Civ. 05-357-SLR, 2005 WL 2786691 (D. Del. Oct. 26, 2005).......................11, 13, 18

*Brunswick Corp. v. Precor Inc.,*
    No. 00-691-GMS, 2000 WL 1876477 (D. Del. Dec. 12, 2000) ............................12, 15, 18

*Citizen Electronics Co., Ltd. v. OSRAM GMBH,*
    377 F. Supp. 2d 149 (D.D.C. 2005)...............................................................20

*Clopay Corp. v. Newell Companies, Inc.,*
    527 F. Supp. 733 (D. Del. 1981)...................................................................15

*E.E.O.C. v. University of Pennsylvania,*
    850 F.2d 969 (3rd. Cir. 1988) ......................................................................8

*Ellerman Lines v. Atlantic & Gulf Stevedores, Inc.,*
    339 F.2d 673 (3rd Cir. 1964) .......................................................................5

*Filmtec Corp. v. Allied-Signal, Inc.,*
    Civ. A. No. 88-225-JRR, 1989 WL 201603 (D. Del. June 1, 1989)................................13

*General Instrument Corp. v. Mostek Corp.,*
    417 F. Supp. 821 (D. Del. 1976)....................................................................14

*Genfoot, Inc. v. Payless Shoesource, Inc.,*
    No. Civ. 03-398-SLR, 2003 WL 22953183 (D. Del. Dec. 3, 2003)..................................8

*IKOS Systems, Inc. v. Cadence Design Systems, Inc.,*
    No. Civ.A. 02-1335-GMS, 2002 WL 31414136 (D. Del. Oct. 21, 2002) .........................16

*IP Development, Inc. v. TCI Cablevision of Calif., Inc.,*
    248 F.3d 1333 (Fed. Cir. 2001)..................................................................10, 20

*Jackson Jordan, Inc. v. Plasser American Corp.,*
    Civ. A. No. 82-459, 1982 WL 1464 (D. Del. Oct. 22, 1982) ......................................14, 16

*Jumara v. State Farm Ins. Co.,*
    55 F.3d 873 (3rd Cir. 1995) ................................................................................. 7-8

*Nilssen v. Everbrite, Inc.,*
    No. Civ.A. 00-189-JJF, 2001 WL 34368396 (D. Del. Feb. 16, 2001) ....................8, 12, 17

*Rohm & Hass Co. v. Mobil Oil Corp.,*
    525 F. Supp. 1298 (D. Del. 1981).....................................................................................5

*Shatterproof Glass Corp. v. Guardian Indust. Corp.,*
    Civ. A. No. 86-607 CMW, 1987 WL 11773 (D. Del. May 4, 1987)................................15

*Sherwood Medical Co. v. IVAC Medical Systems, Inc.,*
    No. 96-305 MMS, 1996 WL 700261 (D. Del. Nov. 25, 1996)...........................................17

*Storage Tech. Corp. v. Cisco Systems, Inc.,*
    329 F.3d 823 (Fed. Cir. 2003)..........................................................................................7

*Sumito Mitsubishi Silicon Corp. v. MEMC Electronic Materials, Inc.,*
    No. Civ. 04-852-SLR, 2005 WL 735880 (D. Del. March 30, 2005) ........................ 7-8, 12

*Syngenta Seeds, Inc. v Monsanto Co.,*
    No. 04-908-SLR, 2005 WL 678855 (D. Del. March 24, 2005)..........................................5

*The BOC Group, Inc. v. CVC Products, Inc.,*
    CIV. A. No. 87-354-CMW, 1988 WL 62593 (D. Del. June 6, 1988) ..............................15

*The Original Creatine Patent Co., Ltd. v. Kaizen, Inc.,*
    No. Civ.A. 02-471-SLR, 2003 WL 179996 (D. Del. Jan. 22, 2003) ................................14

*Tracinda Corp. v. DaimlerChrysler AG,*
    Nos. 00-984-JJF, 01-004-JJF and 00-993-JJF, 2001 WL 849736 (D. Del. July 26,
    2001) ................................................................................................................................5

*Van Dusen v. Barrack,*
    376 U.S. 612 (1964).........................................................................................................7

*Virgin Wireless, Inc. v. Virgin Enterprises Ltd.,*
    201 F. Supp. 2d 294 (D. Del. 2002)....................................................................7, 13, 19

**STATUTES**

28 U.S.C. § 1404(a) ..................................................................................................... 1, 3, 7, 11-18

**RULES**

Federal Rule of Civil Procedure 42(a) ...................................................................................... 1-2, 5

Pursuant to Federal Rule of Civil Procedure 42(a) and 28 U.S.C. § 1404(a), defendant epicRealm Licensing, LP ("epicRealm") moves to consolidate the above-captioned case with *Oracle Corp. and Oracle U.S.A., Inc. v. epicRealm Licensing, LP*, C.A. No. 1:06-cv-00414-SLR, and transfer the consolidated action to the Eastern District of Texas, Marshall Division.

## I.    NATURE AND STAGE OF PROCEEDINGS.

On June 30, 2006, Oracle Corporation ("Oracle Corp.") and Oracle U.S.A. Inc. ("Oracle U.S.A.") (collectively, "Oracle") filed a complaint ("the Oracle Complaint") against epicRealm seeking a declaratory judgment that certain of Oracle's products and services do not infringe two patents owned by epicRealm – United States Patent Nos. 5,894,554 ("the '554 Patent") and 6,415,335 ("the '335 Patent") (collectively, "the epicRealm Patents"). Oracle Complaint at ¶¶ 29-32, attached to the Appendix in Support of Defendant EpicRealm Licensing, LP's Motion to Consolidate and Transfer ("App.") at A1-A8. Oracle also seeks a judgment declaring the epicRealm Patents invalid. Oracle Complaint at ¶¶ 33-36.

On August 8, 2006, Quinstreet, Inc. ("Quinstreet") filed its Complaint in this action ("the Quinstreet Complaint") seeking the same relief sought by Oracle in its complaint. Like Oracle, Quinstreet seeks a declaratory judgment that its products and services do not infringe the epicRealm Patents and that those patents are invalid. *See* Quinstreet Complaint at ¶¶ 24-31.

Both Oracle's claims and Quinstreet's claims are based on events that occurred in epicRealm's patent infringement lawsuit against Safelite Group, Inc. ("Safelite") and Herbalife International of America, Inc. ("Herbalife") in the Eastern District of Texas,

- 1 -

Marshall Division ("the Texas Action").   Oracle Complaint at ¶¶ 15-28; Quinstreet Complaint at ¶¶ 15-23.[1]

EpicRealm now files this motion to consolidate the Oracle and Quinstreet Complaints and transfer them to the Eastern District of Texas, Marshall Division.

## II.     SUMMARY OF ARGUMENT.

1.     <u>Consolidation</u>: The Oracle and Quinstreet cases have common issues of law and fact, qualifying them for consolidation under Federal Rule of Civil Procedure 42(a).   The factors that inform a court's discretionary call whether to consolidate qualifying cases or not strongly favor consolidation here.   Oracle and Quinstreet have asserted the exact same claims; the cases involve substantially the same facts; and judicial resolution of the cases will require the same legal analysis.   The patents are the same in both cases.   The invalidity issues will be the same.   The infringement issues will be similar, if not the same.   Consolidation of these two cases will save time, money, and effort and will not result in any prejudice to the parties.   There is simply no reason why the same case should have to be litigated in two courts.   Perhaps recognizing this, Quinstreet has agreed to consolidation.   Only Oracle opposes.

2.     <u>Transfer</u>:     Neither Oracle nor Quinstreet has filed suit on their "home turf."   Both are headquartered in California.   Neither has even an office in Delaware. Trial in Delaware will be no more convenient for Oracle and Quinstreet than trial in Texas.   Indeed, Texas may be more convenient for them because it is closer to California. By contrast, epicRealm is headquartered 150 miles from the Marshall Division, Eastern District of Texas courthouse.   Trial in Delaware would greatly inconvenience epicRealm

---

[1] EpicRealm does not agree that subject matter jurisdiction exists for these declaratory judgment claims, and epicRealm reserves the right to challenge subject matter jurisdiction at a later date.

as compared to trial in Texas. Trial in Texas will also be materially more convenient for the third party witnesses. EpicRealm identifies five third party witnesses below and describes their anticipated testimony. All five reside in Texas. The court in the Texas Action has already familiarized itself with the relevant technology, conducted a *Markman* claim construction hearing, and issued its claim construction report and recommendation. Efficiency considerations, therefore, argue for transfer to Texas.

Plaintiff's choice of forum is entitled to little weight because Oracle and Quinstreet chose to file suit a continent away from their headquarters or "home turf." A few factors relevant to the 28 U.S.C. § 1404(a) transfer analysis are neutral. All other factors strongly favor transfer to Texas. Everything considered, the case for transfer is overwhelming.

## III.    STATEMENT OF FACTS.

On August 5, 2005, epicRealm sued Herbalife and Safelite in the Eastern District of Texas, Marshall Division, for infringement of the epicRealm Patents (*epicRealm Licensing, LP v. Franklin Covey Co., et al.*, case number 2:05-CV-356). On November 2, 2005, Judge T. John Ward consolidated that lawsuit with a previous infringement lawsuit (*epicRealm Licensing, LP v. Autoflex Leasing, Inc., et al.*, case number 2:05-CV-163) filed on May 2, 2005, by epicRealm, and involving the same patents and similar technology. *See Sua Sponte* Order, App. at A9. On November 9, 2005, Judge Ward transferred the consolidated action to Judge David Folsom, who already had jurisdiction over a third infringement lawsuit between epicRealm and Speedera Networks, Inc. (*epicRealm, Licensing, LP v. Speedera Networks, Inc.*, case number 2:05-CV-150, filed April 15, 2005). On November 16, 2005, Judge Folsom consolidated the *Autoflex* and

*Franklin Covey* lawsuits with the *Speedera* lawsuit. *See* consolidation Order, App. at A10-A11. EpicRealm ultimately settled its claims against Speedera Networks, Inc., and Judge Folsom terminated case number 2:05-CV-150 on December 13, 2005. *See* dismissal Order, App. at A12-A13. The consolidated Texas Action now involves case numbers 2:05-CV-163 and 2:05-CV-356 (the lawsuit involving Herbalife and Safelite). The Texas Action is still pending before Judge David Folsom in the Marshall Division of the Eastern District of Texas.

On January 26, 2006, Safelite sued Oracle Corp. as a third-party in the Texas Action, seeking indemnity and claiming that Oracle Corp. provided it with products and services that it used to generate dynamic web pages using the methods that epicRealm accused of infringement. EpicRealm eventually settled its claims against Safelite, and Safelite settled its claims against Oracle Corp. On June 29, 2006, the Court dismissed Safelite and Oracle Corp. from the Texas Action. *See* dismissal Orders, App. at A18-A19. On the very next day, Oracle Corp. and Oracle U.S.A. filed their declaratory judgment action against epicRealm.

One month later, on August 8, 2006, Quinstreet filed its declaratory judgment action against epicRealm. Quinstreet alleges that Herbalife has made demands for indemnity similar to those made by Safelite against Oracle. Herbalife, unlike Safelite however, is still a party to the Texas Action.

The Oracle Complaint and the Quinstreet Complaint seek identical relief — a declaration that the epicRealm Patents are not infringed and are invalid. Oracle Complaint at ¶¶ 29-36; Quinstreet Complaint at ¶¶ 24-31.

## IV.    ARGUMENT AND AUTHORITIES.

### A.    THE COURT SHOULD CONSOLIDATE THE ORACLE AND QUINSTREET CASES.

Federal Rule of Civil Procedure 42(a) provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

"Although common issues are a prerequisite to consolidation, the Court must also consider such factors as the saving of money, time and effort and any prejudice to the rights of the parties as a result of consolidation." *Tracinda Corp. v. DaimlerChrysler AG,* Nos. 00-984-JJF, 01-004-JJF and 00-993-JJF, 2001 WL 849736, at *1 (D. Del. July 26, 2001) (attached to App. at A146-A150); *see Syngenta Seeds, Inc. v Monsanto Co.,* No. 04-908-SLR, 2005 WL 678855, at *2 (D. Del. March 24, 2005) (attached to App. at A135-A138); *see also Rohm & Hass Co. v. Mobil Oil Corp.,* 525 F. Supp. 1298, 1309 (D. Del. 1981); *Ellerman Lines v. Atlantic & Gulf Stevedores, Inc.,* 339 F.2d 673, 675 (3rd Cir. 1964). In this instance, the common issues of law and fact, the saving of time, money and effort, and the lack of prejudice to the rights of the parties compel consolidation of the Oracle and Quinstreet cases.

### 1.    The Oracle and Quinstreet Cases Have Common Issues of Fact and Law.

The facts and law giving rise to the Oracle and Quinstreet Complaints are virtually identical. Both Oracle and Quinstreet seek a declaration that the epicRealm Patents are not infringed and are invalid. The two Complaints involve the exact same claims, they arise from an identical set of operative facts, and they will require the same

legal analysis for judicial resolution. Indeed, with the exception of parties' names, the relief sought by Oracle is repeated verbatim in the Quinstreet Complaint. Oracle Complaint at ¶¶ 29-36; Quinstreet Complaint at ¶¶ 24-31. Oracle and Quinstreet also base their Complaints on many of the same events that occurred in connection with the Texas Action, such as epicRealm's general request for discovery to all defendants regarding potential indemnity claims. Oracle Complaint at ¶¶ 15-28; Quinstreet Complaint at ¶¶ 15-23. The existence of these common issues of fact and law necessitate consolidation. Perhaps cognizant of the obvious similarities between the two cases, Quinstreet does not oppose consolidation.

>  **2.**    **Consolidation of the Oracle and Quinstreet Cases Will Save Time, Money, and Effort and Will Not Result in any Prejudice to the Rights of the Parties.**

In light of the overlapping facts and identical claims, it is in the interest of both the Court and the parties to consolidate the Oracle and Quinstreet cases. As both actions are at similar stages in the pretrial process, time, money, and effort would be saved with consolidation. Consolidating these two actions will conserve judicial resources and prevent overlapping and conflicting decisions on issues such as claim construction and patent validity. Consolidation will also limit the need for duplicative discovery and pretrial motions regarding the identical facts cited in the Oracle and Quinstreet Complaints.

Consolidation will not cause delay or prejudice to the rights of any party in any other manner. As a result, the Court should consolidate the Oracle and Quinstreet cases.

**B.    THE COURT SHOULD TRANSFER THE CONSOLIDATED ACTION TO THE EASTERN DISTRICT OF TEXAS.**

Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of the parties and witnesses and in the interests of justice.  28 U.S.C. § 1404(a); *Sumito Mitsubishi Silicon Corp. v. MEMC Electronic Materials, Inc.*, No. Civ. 04-852-SLR, 2005 WL 735880, at *2 (D. Del. March 30, 2005) (attached to App. at A131-A134).  The purpose of Section 1404(a) is "to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Virgin Wireless, Inc. v. Virgin Enterprises Ltd.*, 201 F. Supp. 2d 294, 299 (D. Del. 2002) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

Although this lawsuit arises under United States patent laws, Third Circuit law applies to epicRealm's motion to transfer under Section 1404(a).  *Storage Tech. Corp. v. Cisco Systems, Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003).  The Court of Appeals for the Third Circuit has identified the following public interest factors that a court should consider in deciding a Section 1404(a) transfer motion:

(1)    judicial efficiency and practical considerations that could make the trial easy, expeditious or inexpensive;

(2)    the local interest in deciding local controversies at home;

(3)    court congestion;

(4)    the enforceability of the judgment;

(5)    the public policies of the two fora; and

(6)    the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3rd Cir. 1995); *Sumito*, 2005 WL 735880, at *2.  The Third Circuit has also identified the following private interest factors for consideration:

- 7 -

(1)    plaintiff's forum preference as manifested in the original choice;
(2)    defendant's forum preference;
(3)    the convenience of the parties as indicated by their relative physical and financial condition;
(4)    the convenience of the witnesses;
(5)    the location of relevant books and records; and
(6)    whether the claim arose elsewhere.

*Jumara*, 55 F.3d at 879; *Sumito*, 2005 WL 735880, at *2.

### 1.    The Eastern District of Texas Is a Proper Venue.

Because epicRealm's principal place of business is in Texas, Oracle and Quinstreet could have filed their lawsuits in the Eastern District of Texas. The Court, therefore, need only determine whether the *Jumara* factors warrant a transfer. *See Nilssen v. Everbrite, Inc.*, No. Civ.A. 00-189-JJF, 2001 WL 34368396, at *1 (D. Del. Feb. 16, 2001) (attached to App. at A118-A122).

### 2.    The Public Interest Factors Weigh in Favor of Transfer.

#### i.    Judicial Economy and the First-Filed Rule Dictate Transfer.

Under the "first-filed rule," when two separate federal courts have jurisdiction over the same subject matter, the court which first had possession of the subject matter must decide it. *Genfoot, Inc. v. Payless Shoesource, Inc.*, No. Civ. 03-398-SLR, 2003 WL 22953183, at *1 (D. Del. Dec. 3, 2003) (attached to App. at A112-113). The first-filed rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." *E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 971 (3rd. Cir. 1988). Invocation of the rule is the norm, not the exception. *Genfoot*, 2003 WL 22953183, at *2. This Court has recognized that "the first suit should have priority, absent special circumstances." *Air Products and Chemicals, Inc. v. MG Nitrogen Services, Inc.*, 133 F. Supp. 2d 354, 356 (D. Del. 2001).

In *Air Products*, INS and MGI owned patents claiming a process for generating nitrogen gas for use as a drilling fluid in oil and gas drilling. *Air Products*, 133 F. Supp. 2d at 355-57. Tesco was a drilling company that allegedly used the infringing process to drill for oil and gas. *Id.* Air Products made and sold membrane equipment to Tesco for use in the infringing process. *Id.* at 355. On April 28, 2000, INS and MGI sued Tesco, but not Air Products, for patent infringement in the Southern District of Texas (the first-filed suit). *Id.* at 356. Seven days later, Air Products filed a second lawsuit against INS and MGI seeking a declaratory judgment of noninfringement and invalidity on the same patents involved in the Texas case. *Id.* INS and MGI moved for transfer of the case to the Southern District of Texas pursuant to the first-filed rule. *Id.* In granting the transfer, this Court recognized that "the interests of judicial economy dictate that an action involving the same patents-in-suit and most of the same parties should not proceed simultaneously in two different district courts." *Id.* at 357.

The facts of *Air Products* are almost identical to the facts of the Oracle case.[2] EpicRealm originally sued Safelite in the Eastern District of Texas for infringement of the epicRealm Patents. Safelite then sued Oracle Corp. as a third-party in the Texas Action, seeking indemnity and claiming that Oracle Corp. provided it with products and services that it used to generate dynamic web pages using the methods that epicRealm accused of infringement. The parties settled their claims against each other, and on the day after Safelite and Oracle Corp. were dismissed from the Texas Action, Oracle Corp.

---

[2] The facts are not completely identical. Although INS and MGI did not originally sue Air Products in their Texas action, they still claimed that Air Products had committed indirect infringement by supplying Tesco with the membrane equipment. EpicRealm, on the other hand, has never asserted infringement against any of Oracle's products or services, including the products and services that Oracle Corp. provided to Safelite.

and Oracle U.S.A. filed their declaratory judgment action against epicRealm seeking relief regarding many of the same issues before the court in the Texas Action.

The Quinstreet Complaint presents an even more compelling case for transfer under the first-filed rule. Although not a party to the Texas Action, Quinstreet claims that Herbalife has made indemnity demands similar to those made by Safelite against Oracle. Quinstreet Complaint at ¶ 18. Quinstreet claims that these indemnity obligations are dependent on epicRealm's infringement claims against Herbalife. Quinstreet Complaint at ¶ 23. Herbalife, unlike Safelite however, is still a defendant in the first-filed Texas Action. If Quinstreet believes that epicRealm's claims against Herbalife create an actual controversy between epicRealm and Quinstreet, then it should have joined the Texas Action as a party instead of filing its declaratory judgment claims over 1,300 miles away in a district that has no connection to the epicRealm Patents or epicRealm's claims against Herbalife. *See IP Development, Inc. v. TCI Cablevision of Calif., Inc.*, 248 F.3d 1333, 1341 (Fed. Cir. 2001) ("If TCI-California's interests are affected by a different suit regarding the 202 patent, then TCI-California should join that action as a party").

Considerations of judicial economy and expense also favor transfer of these lawsuits to the Eastern District of Texas. Oracle Corp. has already appeared as a party in the Texas Action, and the Texas Action involves the same patents and some of the same issues (e.g., invalidity) for which Oracle and Quinstreet seek relief. The court in the Texas Action has already issued its Scheduling Order (*see* January 13, 2006 Agreed Docket Control Order, App. at A14-A17); the parties have conducted extensive discovery, including the disclosure of infringement and invalidity contentions (*see* January 13, 2006 Agreed Docket Control Order, App. at A14-A15); the court received a

tutorial regarding the epicRealm Patents and related technology on July 7, 2006 (*see* July 7, 2006 Minutes of Tutorial, App. at A20); the court conducted its claim construction hearing on July 13, 2006 (*see* Minutes of Claim Construction Hearing, App. at A21-A22); the magistrate judge issued her report and recommendations regarding claim construction on August 16, 2006 (App. at A23-A56); and two parties have already filed motions for summary judgment (*see* true and correct copy of August 25, 2006 docket sheet from the Texas Action, App. at A79, A82).

Because of epicRealm's settlement with Safelite, and Safelite's settlement of its indemnity claim against Oracle, absent transfer, the Texas court will not have to decide whether Oracle's products and services infringe the epicRealm Patents. That is, however, the only issue presented in these two cases that is not also presented in the Texas Action. All other issues presented in these two cases are also presented in the Texas Action and will have to be decided by the Texas court. It makes sense to transfer this case to Texas so that the Texas court can decide the single additional issue relating to Oracle's products and services. The Texas court, which is already well versed with the patented technology, will have to address may other infringement issues and adding one more will not materially burden that court. Allowing this lawsuit to proceed in Delaware will run the risk of overlapping and conflicting decisions from two different federal courts regarding all other issues, such as claim construction and validity. The Texas court's extensive experience with the epicRealm Patents and related technology, therefore, weighs heavily in favor of transfer. *See Arrow Communication Laboratories, Inc. v. John Mezzalingua Associates, Inc.*, No. Civ. 05-357-SLR, 2005 WL 2786691, at *1-2 (D. Del. Oct. 26, 2005) (granting Section 1404(a) transfer where "there is a related case

which has been first filed or otherwise is the more appropriate venue in which to litigate the issues between the parties) (attached to App. at A98-A102); *Sumito*, 2005 WL 735880, at *3 (granting Section 1404(a) transfer where the transferee court had already "considered and ruled on many of the issues presented by plaintiffs' amended complaint"); *APV North America, Inc. v. Sig Simonazzi North America, Inc.*, 295 F. Supp. 2d 393, 399 (D. Del. 2002) (granting Section 1404(a) transfer where a trial date had been set and discovery had already been conducted in the transferee court . . . "The Court believes that allowing this action to proceed in Delaware would duplicate the parties' efforts and expenses, thereby reducing efficiency overall"); *Nilssen v. Everbrite, Inc.*, 2001 WL 34368396, at *4 (granting Section 1404(a) transfer where transferee court had extensive experience with the same patents, the transferee court had already issued its claim construction ruling, and case dispositive motions had been filed); *Brunswick Corp. v. Precor Inc.*, No. 00-691-GMS, 2000 WL 1876477, at *3 (D. Del. Dec. 12, 2000) (granting Section 1404(a) transfer where the transferee court already had extensive experience involving a parent patent of the patent at issue) (attached to App. at A103-A105).

       ii.       **Local Interest Bears Little Weight in the Section 1404(a) Analysis.**

The second public factor has little, if any, weight in the Section 1404(a) transfer analysis. Oracle and Quinstreet claim that their alleged disputes with epicRealm arose from events that occurred in the Texas Action. If these lawsuits have any local nature, then they must be local to the Eastern District of Texas. The Oracle and Quinstreet Complaints are in no way local to Delaware.

- 12 -

### iii.    Court Congestion Bears Little Weight in the Section 1404(a) Analysis.

This third public factor also has little weight in the transfer analysis. The judicial economy afforded by transferring the Oracle and Quinstreet cases to the Eastern District of Texas, Marshall Division, relieves any concerns regarding congestion that may result from these particular lawsuits.

### iv.    The Remaining Public Interest Factors Bear No Weight in the Section 1404(a) Analysis.

The remaining public interest factors have no weight in the transfer analysis – Oracle and Quinstreet can enforce a judgment against epicRealm in both the District of Delaware and the Eastern District of Texas; the public policies of the two districts do not favor one district over the other; and there is no diversity case requiring familiarity with any particular state laws.

### 3.    The Private Interest Factors Weigh in Favor of Transfer.

### i.    The "Home Turf" Rule Dictates that the Court Give Plaintiffs' Choice of Forum Little Deference.

Ordinarily, a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed. *Virgin Wireless*, 201 F. Supp. 2d at 300. A plaintiff's choice of forum, however, is not given as much deference when the plaintiff does not bring suit on its "home turf" – the area where its principal place of business is located. *Arrow Communication Laboratories*, 2005 WL 2786691, at *3 ("the convenience to the plaintiff is not as great as it would be were plaintiff litigating at or near plaintiff's principal place of business"). When a plaintiff chooses not to litigate on its home turf, it is easier for the defendant to satisfy the burden necessary to tip the balance of convenience in its favor. *Filmtec Corp. v. Allied-Signal, Inc.*, Civ. A. No. 88-225-JRR,

- 13 -

1989 WL 201603, at *4 (D. Del. June 1, 1989) (attached to App. at A106-A111); *General Instrument Corp. v. Mostek Corp.*, 417 F. Supp. 821, 823 (D. Del. 1976); *see, e.g., Jackson Jordan, Inc. v. Plasser American Corp.*, Civ. A. No. 82-459, 1982 WL 1464, at *2 (D. Del. Oct. 22, 1982) ("Since Jackson has no contact with Delaware and, hence, is not litigating on its 'home turf,' Jackson enjoys no home court advantage and its choice of forum is more easily overcome") (attached to App. at A116-A117).

Oracle Corp.'s and Oracle U.S.A.'s principal places of business are both in Redwood Shores, California. Oracle Complaint at ¶¶ 1-2. Quinstreet's principal place of business is in Foster City, California. Quinstreet Complaint at ¶ 1. A review of the web sites www.oracle.com/corporate.contact.us.html and www.quinstreet.com/contact.jsp reveals that Oracle and Quinstreet do not even have any offices in Delaware. *See* App. at A88-A94 (true and correct copies of web pages from Oracle's web site and Quinstreet's web site printed on August 25, 2006). By suing epicRealm in Delaware, Oracle and Quinstreet have chosen not to litigate on their home turfs. As a result, the Court should give little deference to Oracle's and Quinstreet's choices of forum.

    ii.    **EpicRealm's Choice of Forum and the Convenience to epicRealm of Litigating in Texas Both Weigh in Favor of Transfer.**

A defendant's choice of forum and the convenience to the parties are both factors that can weigh heavily in favor of transfer, especially when a plaintiff brings suit away from its home turf and causes great inconvenience to the defendant. *The Original Creatine Patent Co., Ltd. v. Kaizen, Inc.*, No. Civ.A. 02-471-SLR, 2003 WL 179996, at *4 (D. Del. Jan. 22, 2003) (granting Section 1404(a) transfer and noting that "the expense of trial in Delaware will weigh more heavily on Kaizen [the defendant]. Regardless of

- 14 -

the forum, OCPC [the plaintiff] will incur travel expenses. A transfer to California would eliminate rather than merely shift[] the travel expense of one party.") (attached to App. at A142-A145); *APV North America*, 295 F. Supp. 2d at 399 (granting Section 1404(a) transfer where trial in Delaware would have been "greatly inconvenient" to the defendant with "little benefit" to the plaintiff, who faced significant travel time and expenses regardless of the transfer); *Brunswick Corp.*, 2000 WL 1876477, at *2 (granting Section 1404(a) transfer where the plaintiff chose not to sue on its home turf, and the defendant would have faced great inconvenience if forced to litigate in Delaware); *Filmtec Corp.*, 1989 WL 201603. at *5 ("Having already chosen to litigate hundreds of miles from its home turf, plaintiff has necessarily determined that it is willing to put up with a good deal of inconvenience in order to try this case. Because plaintiff's inconvenience is thus inevitable, defendants' convenience becomes more relevant."); *The BOC Group, Inc. v. CVC Products, Inc.*, CIV. A. No. 87-354-CMW, 1988 WL 62593, at *1-2 (D. Del. June 6, 1988) (granting Section 1404(a) transfer where the plaintiff chose not to litigate on its home turf, and litigation in Delaware would have imposed great inconvenience on the defendant, a small corporation located in New York) (attached to App. at A139-A141); *Shatterproof Glass Corp. v. Guardian Indust. Corp.*, Civ. A. No. 86-607 CMW, 1987 WL 11773, at *1 (D. Del. May 4, 1987) ("When the plaintiff does not bring the action in its home turf . . . then transferring the action will often have little effect on the convenience of the forum to the plaintiff while greatly increasing the convenience to the defendant") (attached to App. at A123-A125); *Clopay Corp. v. Newell Companies, Inc.*, 527 F. Supp. 733, 737 (D. Del. 1981) (granting Section 1404(a) transfer where the plaintiff "offered no substantive reasons . . . indicating that the convenience to it of

- 15 -

litigating in Delaware even approaches the inconvenience which trial in this forum would impose on the defendants").

EpicRealm prefers to litigate this case in the Eastern District of Texas. EpicRealm is a patent licensing firm with its principal place of business and corporate offices in Dallas, Texas, just 150 miles from Marshall, Texas, where the Texas Action is pending.[3]  *See* Declaration of Terry Fokas ("Fokas Dec.") at ¶ 3, attached to App. at A95-A97.  EpicRealm has no connection to Delaware other than its incorporation here.  *See* Fokas Dec. at ¶ 4; *see also IKOS Systems, Inc. v. Cadence Design Systems, Inc.*, No. Civ.A. 02-1335-GMS, 2002 WL 31414136, at * 1 (D. Del. Oct. 21, 2002) (granting Section 1404(a) transfer even though both parties were incorporated in Delaware . . . "there seems to be little connection between Delaware and this action or the parties") (attached to App. at A114-A115); *Jackson Jordan*, 1982 WL 1464, at *1 (granting Section 1404(a) transfer where the defendant had no contacts with Delaware other than incorporation).  EpicRealm has no offices, employees, records, or assets in Delaware, and epicRealm currently conducts no business nor has it ever conducted any business in Delaware.  *See* Fokas Dec. at ¶ 4.  As a result, litigating this case in Delaware would create great physical and financial inconvenience for epicRealm.

The Eastern District of Texas may be more convenient for Oracle and Quinstreet as well.  California is closer to Texas than Delaware, and Oracle appears to have six offices in Texas, including an office in Dallas.  *See* App. at A92.  Regardless, Oracle and Quinstreet will face inconvenience no matter where this case is litigated.  EpicRealm's

---

[3] Although epicRealm is located in the Northern District of Texas, it chose to bring the Texas Action in the Eastern District of Texas for three reasons: (a) the Eastern District, unlike the Northern District, has in place a detailed and effective set of local patent rules; (b) the judges in the Eastern District have vast experience with patent litigation; and (c) the Eastern District provides a quick time to trial in patent cases.

choice of forum and the convenience to epicRealm of litigating in Texas, therefore, both weigh heavily in favor of transfer.

### iii.    The Location of Witnesses Weighs in Favor of Transfer.

The convenience of third-party witnesses is the most important factor in a Section 1404(a) transfer analysis. *Nilssen*, 2001 WL 34368396, at *2.[4]  The convenience of a witness is only relevant to the extent that the witness may be unavailable for trial. *Id.* For the purpose of a transfer analysis, a witness is considered unavailable for trial if the witness is not subject to the court's subpoena power. *Id.* (finding that the inconvenience to multiple third-party witnesses who were not subject to subpoena power in Delaware "strongly" weighed in favor of transfer); *see also Sherwood Medical Co. v. IVAC Medical Systems, Inc.*, No. 96-305 MMS, 1996 WL 700261, at *5 (D. Del. Nov. 25, 1996) (finding that the balance must be resolved in favor of transfer where two of the three inventors and three other key witnesses were not subject to subpoena power in Delaware) (attached to App. at A126-130).

Several of the key witnesses in this lawsuit – including one of the inventors, one of the prosecuting attorneys, two of the former chief executive officers, and the general counsel of epicRealm's predecessor company, epicRealm Operating, Inc ("epicRealm, Inc.) – are not subject to subpoena power in Delaware.  These witnesses are, however, subject to subpoena power in Texas.  They include:

a.    John Ferguson, former President and Chief Executive officer of epicRealm, Inc.  Mr. Ferguson has relevant information regarding the corporate history, sales and marketing efforts, and business operations of epicRealm, Inc.  Mr. Ferguson is a resident of Plano, Texas (Collin County, which is in the Eastern District of Texas);

---

[4] Current employees of the parties are presumed to be present at trial and are not considered in the transfer analysis. *Id.* at *3.

b.  B. Kent Hill, former President and Chief Executive officer of epicRealm, Inc. Mr. Hill has relevant information regarding the corporate history, various business models, and the cessation of business operations of epicRealm, Inc. Mr. Hill is a resident of Richardson, Texas (Collin and Dallas Counties);

c.  Ronald Howell, one of the named inventors on the epicRealm Patents. Mr. Howell has relevant information regarding the creation of the technology encompassed by the epicRealm Patents and the sales and marketing efforts of such technology by epicRealm, Inc. Mr. Howell is a resident of Rowlett, Texas (Dallas and Rockwall Counties);

d.  Bradley A. Carl, former Vice-President, Chief Operating Officer, and General Counsel of epicRealm, Inc. Mr. Carl has relevant information related to the prosecution of the epicRealm Patents, the corporate history of epicRealm, Inc., and the sale of the epicRealm Patents to epicRealm. Mr. Carl is a resident of Garland, Texas (Collin and Dallas Counties); and

e.  Matt Talpis, attorney involved in the prosecution of the epicRealm Patents. Mr. Talpis has relevant information related to the prosecution of the epicRealm Patents. Mr. Talpis is a resident of Austin, Texas (Travis County).

*See* Fokas Dec. at ¶ 6. The location of these five witnesses weighs strongly in favor of transfer to the Eastern District of Texas, where several of these witnesses reside.

### iv.  The Location of Documents Weighs in Favor of Transfer.

Although the parties can easily exchange and transport documents, the location of documents can still affect a Section 1404(a) analysis. *Arrow Communication Laboratories*, 2005 WL 2786691, at *3 (granting Section 1404(a) transfer where most of the defendant's documents were located at its home office in the transferee forum); *APV North America*, 295 F. Supp. 2d at 399 ("the location of witnesses and documents also favors a transfer of this action to Texas, because many of the relevant witnesses and documents are already available in Texas"); *Brunswick Corp.*, 2000 WL 1876477, at *2

("neither of the parties, their witnesses, or any of the potentially relevant documents and records are located in Delaware").

EpicRealm is in possession of 146 boxes of documents, representing several hundred thousand pages of information, concerning United States Patent No. 5,894,554 and United States Patent No. 6,415,335; the prosecution history of these patents and related documentation; and the corporate history of epicRealm Operating, Inc. ("epicRealm, Inc.") (the corporate predecessor company to epicRealm), including licensing agreements, Board of Directors minute books, sales and marketing data, and other relevant corporate information. *See* Fokas Dec. at ¶ 5. These documents are in epicRealm's possession in Dallas, Texas. *See* Fokas Dec. at ¶ 5. These documents exist solely in paper form, and they do not exist in electronic form. *See* Fokas Dec. at ¶ 5. In the event that transfer were not granted, epicRealm would be forced to bear the burden and cost of sorting and copying hundreds of thousands of pages of documents so that these documents would continue to be available for review by the defendants in the Texas Action, as well as the cost of transporting all of these documents and securing storage in Delaware for the Oracle and Quinstreet cases. These facts weigh in favor of transfer to the Eastern District of Texas.

        **v.**      **Oracle's and Quinstreet's Claims are Intimately Connected to the Eastern District of Texas.**

If a plaintiff's claims arise elsewhere or are connected to another forum, transfer is favored. *See Virgin Wireless*, 201 F. Supp. 2d at 300-301 (finding that the operative facts surrounding the plaintiff's declaratory judgment claim arose out of and favored transfer to New York). Both the Oracle Complaint and the Quinstreet Complaint are based on events occurring in the Texas Action, including: (1) Safelite's indemnity suit against

Oracle Corp. in the Texas Action; (2) Herbalife's demands for indemnity from Quinstreet; (3) correspondence from epicRealm to another defendant in the Texas Action that was unrelated to both Oracle and Quinstreet; and (4) epicRealm's generic request for discovery from Safelite and Herbalife regarding potential indemnity claims.    Oracle Complaint at ¶¶ 15-28; Quinstreet Complaint at ¶¶ 15-23.    Indeed, Quinstreet's claim that there is an actual controversy with epicRealm, a requirement for declaratory judgment subject matter jurisdiction, is based on epicRealm's continuing litigation with Herbalife in the Texas Action.

All of these events occurred before Oracle Corp. was dismissed from the Texas Action, and Quinstreet's alleged indemnitee, Herbalife, is still a party in the Texas Action.    If events related to the Texas Action form the basis for their declaratory judgment claims, then Oracle and Quinstreet should have filed these lawsuits against epicRealm in the Texas Action.    *See IP Development, Inc. v. TCI Cablevision of Calif., Inc.*, 248 F.3d 1333, 1341 (Fed. Cir. 2001) ("If TCI-California's interests are affected by a different suit regarding the 202 patent, then TCI-California should join that action as a party"); *see also Citizen Electronics Co., Ltd. v. OSRAM GMBH*, 377 F. Supp. 2d 149, 156-57 (D.D.C. 2005) ("none of the cases relied on by plaintiff addresses the unique circumstance of a plaintiff inexplicably waiting to file suit for over six months after the last event that could reasonably have caused an apprehension of suit").    Instead of suing epicRealm in Texas, however, Oracle Corp. waited until the day after it was dismissed from the Texas Action to file its lawsuit in Delaware.

The District of Delaware has no familiarity with the epicRealm Patents and no connection to the alleged dispute between the parties.    Because the Oracle and Quinstreet

Complaints are premised solely on facts that arise out of and are intimately connected to the Texas Action, this factor weighs heavily in favor of transfer.

## V.    CONCLUSION

For foregoing reasons, epicRealm Licensing, LP respectfully requests that the Court consolidate the Oracle and Quinstreet cases and transfer the consolidated action to the Eastern District of Texas, Marshall Division.

SAUL EWING LLP


 /s/ *Kimberly L. Gattuso*
Michael F. Bonkowski (No. 2219)
Kimberly L. Gattuso, Esquire (No. 3733)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, Delaware  19801-1611
(302) 421-6800


Of Counsel:

BAKER BOTTS L.L.P.
Larry D. Carlson, Esquire
Kevin J. Meek, Esquire
Jeff Moles, Esquire
2001 Ross Avenue
Dallas, TX  75201-2980

Attorneys for epicRealm Licensing, LP

DATED:     August 28, 2006

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QUINSTREET, INC.,                       :
                                        :
      Plaintiff,                        :
                                        :
v.                                      : C. A. No. 1:06-cv-00495 (SLR)
                                        :
EPICREALM LICENSING, LP,                :
                                        :
      Defendant.                        :


## CERTIFICATION OF COUNSEL IN ACCORDANCE WITH L.R. 7.1.1

    I, Kimberly L. Gattuso, Esquire hereby certify that Defendant's counsel has made reasonable efforts to reach agreement with the opposing attorneys on the matters set forth in defendant EpicRealm Licensing, LP's Motion to Consolidate and Transfer. Oracle opposes consolidation and transfer. Quinstreet does not oppose consolidation but does oppose transfer.


               SAUL EWING, LLP


               _/s/ Kimberly L. Gattuso_____
               Kimberly L. Gattuso, Esquire (No. 3733)
               222 Delaware Avenue, Suite 1200
               P.O. Box 1266
               Wilmington, Delaware  19801-1611
               (302) 421-6800

               Attorney for epicRealm Licensing, LP

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUINSTREET, INC.,                          :

          Plaintiff,                    :

                                :

v.                                         : C. A. No. 1:06-cv-00495 (SLR)

                                :

EPICREALM LICENSING, LP,                   :

          Defendant.                    :

APPENDIX IN SUPPORT OF DEFENDANT EPICREALM LICENSING, LP'S
MOTION TO CONSOLIDATE AND TRANSFER

SAUL EWING, LLP
Michael F. Bonkowski (No. 2219)
Kimberly L. Gattuso, Esquire (No. 3733)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, Delaware  19801-1611
(302) 421-6800

Of Counsel:

BAKER BOTTS L.L.P.
Larry D. Carlson, Esquire
Kevin J. Meek, Esquire
Jeff Moles, Esquire
2001 Ross Avenue
Dallas, TX  75201-2980

Attorneys for epicRealm Licensing, LP

DATED:      August 28, 2006

## TABLE OF CONTENTS

| <u>Description</u> | | <u>Page</u> |
|---|---|---|
| 1. | Oracle Complaint | A1-A8 |
| 2. | November 2, 2005 *Sua Sponte* Order consolidating the *Autoflex* and *Franklin Covey* cases | A9 |
| 3. | November 16, 2005 Order consolidating the *Speedera* case with the *Autoflex* and *Franklin Covey* cases | A10-A11 |
| 4. | December 12, 2005 Order dismissing the *Speedera* case | A12-A13 |
| 5. | January 13, 2006 Scheduling Order in the Texas Action | A14-A17 |
| 6. | June 29, 2006 Order dismissing Safelite Group, Inc. from the Texas Action | A18 |
| 7. | June 29, 2006 Order dismissing Oracle Corporation from the Texas Action | A19 |
| 8. | July 7, 2006 Minutes of Tutorial in the Texas Action | A20 |
| 9. | July 13, 2006 Minutes from Clam Construction Hearing in the Texas Action | A21-A22 |
| 10. | August 15, 2006 Report and Recommendation Regarding Claim Construction in the Texas Action | A23-A56 |
| 11. | August 25, 2006 docket sheet from the Texas Action | A57-A87 |
| 12. | Web page from the web site www.oracle.com/corporate.contact.us.html showing that Oracle has six offices in Texas but no offices in Delaware (printed August 25, 2006) | A88-A93 |
| 13. | Web page from the web site www.quinstreet.com/contact.jsp showing that Quinstreet has no offices in Delaware (printed August 25, 2006) | A94 |
| 14. | Declaration of Terry Fokas | A95-A97 |
| 15. | *Arrow Communication Laboratories, Inc. v. John Mezzalingua Associates, Inc.*, No. Civ. 05-357-SLR, 2005 WL 2786691 (D. Del. Oct. 26, 2005) | A98-A102 |

i

16.  *Brunswick Corp. v. Precor Inc.*, No. 00-691-GMS,           A103-A105
     2000 WL 1876477 (D. Del. Dec. 12, 2000)

17.  *Filmtec Corp. v. Allied-Signal, Inc.*, Civ. A. No.         A106-A111
     88-225-JRR, 1989 WL 201603 (D. Del. June 1, 1989)

18.  *Genfoot, Inc. v. Payless Shoesource, Inc.*,                A112-A113
     No. Civ. 03-398-SLR, 2003 WL 22953183
     (D. Del. Dec. 3, 2003)

19.  *IKOS Systems, Inc. v. Cadence Design Systems, Inc.*,       A114-A115
     No. Civ.A. 02-1335-GMS, 2002 WL 31414136
     (D. Del. Oct. 21, 2002)

20.  *Jackson Jordan, Inc. v. Plasser American Corp.*,           A116-A117
     Civ. A. No. 82-459, 1982 WL 1464 (D. Del. Oct. 22, 1982)

21.  *Nilssen v. Everbrite, Inc.*, No. Civ.A. 00-189-JJF,        A118-A122
     2001 WL 34368396 (D. Del. Feb. 16, 2001)

22.  *Shatterproof Glass Corp. v. Guardian Indust. Corp.*,       A123-A125
     Civ. A. No. 86-607 CMW, 1987 WL 11773
     (D. Del. May 4, 1987)

23.  *Sherwood Medical Co. v. IVAC Medical Systems, Inc.*,       A126-A130
     No. 96-305 MMS, 1996 WL 700261 (D. Del. Nov. 25, 1996)

24.  *Sumito Mitsubishi Silicon Corp. v. MEMC*                   A131-A134
     *Electronic Materials, Inc.*, No. Civ. 04-852-SLR,
     2005 WL 735880 (D. Del. March 30, 2005)

25.  *Syngenta Seeds, Inc. v Monsanto Co.*, No. 04-908-SLR,      A135-A138
     2005 WL 678855 (D. Del. March 24, 2005)

26.  *The BOC Group, Inc. v. CVC Products, Inc.*,                A139-A141
     CIV. A. No. 87-354-CMW, 1988 WL 62593
     (D. Del. June 6, 1988)

27.  *The Original Creatine Patent Co., Ltd. v. Kaizen,*         A142-A145
     *Inc.*, No. Civ.A. 02-471-SLR, 2003 WL 179996
     (D. Del. Jan. 22, 2003)

28.  *Tracinda Corp. v. DaimlerChrysler AG*,                     A146-A150
     Nos. 00-984-JJF, 01-004-JJF and 00-993-JJF,
     2001 WL 849736 (D. Del. July 26, 2001)

SAUL EWING LLP


 /s/ *Kimberly L. Gattuso*
Michael F. Bonkowski (No. 2219)
Kimberly L. Gattuso, Esquire (No. 3733)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, Delaware  19801-1611
(302) 421-6800


Of Counsel:

BAKER BOTTS L.L.P.
Larry D. Carlson, Esquire
Kevin J. Meek, Esquire
Jeff Moles, Esquire
2001 Ross Avenue
Dallas, TX  75201-2980

Attorneys for epicRealm Licensing, LP

DATED:      August 28, 2006

CLOCK COPY

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2006 JUN 30  PM 12: 00

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ORACLE CORPORATION and<br>ORACLE U.S.A. INC., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| EPICREALM LICENSING, LP, | )<br>) |
| Defendant. | )<br>)<br>) |

0 6 - 4 1 4

C.A. No. _____

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs Oracle Corporation and Oracle U.S.A. Inc., for their complaint against Defendant epicRealm Licensing, LP ("epicRealm"), allege as follows:

## THE PARTIES

1.     Plaintiff Oracle Corporation is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 500 Oracle Parkway, Redwood Shores, California 94065.

2.     Plaintiff Oracle U.S.A. Inc. is a corporation organized and existing under the laws of the State of Colorado, having its principal place of business at 500 Oracle Parkway, Redwood Shores, California 94065.  Oracle U.S.A. Inc. is a wholly owned subsidiary of Oracle Corporation (together referred to herein as "Oracle").

3.     Defendant epicRealm is a limited partnership organized and existing under the laws of the State of Delaware, having its principal place of business at 558 S. Central Expressway, Richardson, Texas 75080-6126.

## JURISDICTION AND VENUE

4.    This is a complaint for declaratory relief under the patent laws of the United States.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201(a) and 2202.

5.    This Court has personal jurisdiction over epicRealm by virtue of its organization under the laws of the State of Delaware.

6.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400(b).

## THE EPICREALM PATENTS

7.    U.S. Patent No. 5,894,554 (the "'554 patent") issued on April 13, 1999 and is entitled, System for Managing Dynamic Web Page Generation Requests by Intercepting Request at Web Server and Routing to Page Server Thereby Releasing Web Server to Process Other Requests.

8.    U.S. Patent No. 6,415,335 (the "'335 patent") issued on July 2, 2002 from a division of U.S. Patent Application No. 08/636,477, now the '554 patent, and is entitled, System and Method for Managing Dynamic Web Page Generation.

9.    epicRealm asserts that it is the owner and assignee of the '554 and '335 patents (the "epicRealm patents") and has the right to enforce the epicRealm patents against Oracle.  Copies of the epicRealm patents are attached hereto as Exhibits A and B.

## EPICREALM'S PATENT INFRINGEMENT LAWSUITS

10.    On May 2, 2005, epicRealm, then known as epicRealm Licensing, LLC, filed a patent infringement complaint in the District Court for the Eastern District of Texas (Marshall Division) accusing defendants Autoflex Leasing, Inc., eHarmony.com, Inc.,

- 2 -

A
2

Friendfinder Network, Inc., Grande Communication Networks, Inc., IJL-NCP, LLC and Transplace Texas, LP of infringing the epicRealm patents. That action was assigned Civil Action No. 2:05-CV-163 (the "'163 action") and was originally assigned to United States District Judge T. John Ward. On June 10, 2005, epicRealm filed a First Amended Complaint in the '163 action.

       11.    On August 5, 2005, epicRealm filed a patent infringement complaint in the District Court for the Eastern District of Texas (Marshall Division) accusing defendants Franklin Covey Co., Clark Consulting, Inc., The Macerich Company, Safelite Group, Inc., Herbalife International of America, Inc. and Pink Sheets, LLC of infringing the epicRealm patents. That action was assigned Civil Action Number 2:05-CV-356 (the "'356 action") and was originally assigned to United States District Judge T. John Ward. On November 2, 2005, epicRealm filed a First Amended Complaint in the '356 action.

       12.    On November 2, 2005, Judge Ward consolidated the '163 and '356 actions (the "Consolidated epicRealm Actions").

       13.    On November 9, 2005 and November 16, 2005 the Consolidated epicRealm Actions were reassigned to United States District Judge David Folsom.

       14.    On January 27, 2006, epicRealm filed a Second Amended Complaint in the Consolidated epicRealm Actions accusing defendants Autoflex Leasing, Inc., eHarmony.com, Inc., Friendfinder Network, Inc., GrandeCommunicat ions Networks, Inc., Transplace Texas, LP, Franklin Covey Co., Clark Consulting, Inc., Macerich Company,Saf elite Group, Inc., Herbalife International of America, Inc. and Pink Sheets, LLC of infringing the epicRealm patents.

**EPICREALM'S PATENT INFRINGEMENT ACCUSATIONS
AND ORACLE'S REASONABLE APPREHENSION OF SUIT**

15.     Inits   Second Amended Complaint, epicRealm alleges that the named defendants infringe the epicRealm patents because they use systems and methods for managing requests for dynamic web pages.

16.     Oracle sells and licenses software products to numerous customers for use in conjunction with the delivery of dynamic web pages.  Oracle has entered into agreements requiring Oracle to indemnify most of these customers in the event a customer is sued for patent infringement for its use of licensed Oracle software.

17.     Safelite Group, Inc. ("Safelite"), a defendant in the '356 action, is a customer of Oracle in that Safelite has purchased and licensed certain software products, including but not limited to Oracle E-Business Suite Release 11i, (collectively, the "Oracle Software") from Oracle.

18.     On January 26, 2006, Safelite filed a Third Party Complaint against Oracle and International Business Machines Corp. ("IBM") in the '356 action (the "Safelite Action").

19.     In its Third Party Complaint and in a January 26, 2006 letter from Safelite to Oracle (the "Safelite Letter"), Safelite alleged that under an "Oracle License & Services Agreement" dated November 29, 2002, as amended, (the "Oracle Agreement"), it purchased and licensed the Oracle Software from Oracle.

20.     In its Third Party Complaint and in the Safelite Letter, Safelite alleged that epicRealm's infringement contentions are broad enough to encompass or implicate "virtually any system/method that generates web pages with dynamic content" including "Oracle products licensed to Safelite."

- 4 -

21.    In its Third Party Complaint and in the Safelite Letter, Safelite alleged that under the Oracle Agreement and under common law it is entitled to indemnification from Oracle if a product provided by Oracle to Safelite is accused of infringing a third party's intellectual property rights, and Safelite demanded that Oracle agree to defend and indemnify Safelite from any and all epicRealm claims that any Oracle product infringes the epicRealm patents.

22.    In its Third Party Complaint, Safelite prayed that the District Court for the Eastern District of Texas hold Safelite entitled to be fully indemnified against any monetary judgment, against Safelite and in favor of epicRealm, as to any claim that any Oracle product provided or licensed to Safelite infringes any claim of the epicRealm patents.

23.    In a January 25, 2006 letter from epicRealm to Clark ConsultingI nc. ("Clark"), adef endant in the '356 action, epicRealm alleged that a system or method that employed proprietary server software "could, if used to generate web pages with dynamic content, be configured in a way that would infringe the claims of the epicRealm patents." The January 25, 2006 letter from epicRealm to Clark (the "epicRealm Letter") is attached hereto as Exhibit C.

24.    In the epicRealm Letter, epicRealm stated that Clark was required to provide discovery disclosures to epicRealm regarding Clark's use of proprietary server software for generating web pages.

25.    In the '356 action, epicRealm demanded and received discovery from Safelite regarding Safelite's use of the Oracle Software.

26.    In June 2006, epicRealm settled its dispute with Safelite and stipulated to a dismissal with prejudice of its claims against Safelite in the Consolidated epicRealm Actions.

- 5 -

The District Court for the Eastern District of Texas entered an order dismissing epicRealm's claims with prejudice on June 29, 2006.

27.    In June 2006, Safelite stipulated to dismissing with prejudice its Third Party Complaint against Oracle and IBM, pursuant to an agreement whereby Oracle contributed money to Safelite's settlement with epicRealm. The District Court for the Eastern District of Texas entered an order dismissing Safelite's Third Party Complaint with prejudice on June 29, 2006.

28.    epicRealm's patent infringement allegations in the Consolidated epicRealm Actions against Safelite and others, the epicRealm Letter, and epicRealm's demand for discovery of Oracle information from Safelite cause Oracle to have a reasonable apprehension that (1) epicRealm will accuse Oracle, Oracle's products and/or Oracle's customers of infringing one or more claims of the epicRealm patents, and/or (2) additional Oracle customers will sue Oracle for indemnity as a result of epicRealm's patent infringement claims.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment Of Noninfringement Of the epicRealm Patents)

29.    Oracle incorporates by reference Paragraphs 1 through 28 above.

30.    By virtue of epicRealm's patent infringement allegations in the Consolidated epicRealm Actions against Safelite and others, the epicRealm Letter, and epicRealm's demand for discovery of Oracle information from Safelite, an actual controversy exists between Oracle and epicRealm as to whether Oracle, Oracle'sproducts and/or one or more Oracle customers infringe the epicRealm patents.

- 6 -

31.    Oracle has not and does not infringe, literally or under the doctrine of equivalents, either directly, indirectlyor  willfully, any valid and enforceable claim of the epicRealm patents.

32.    Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to Oracle's noninfringement of the epicRealm patents is necessary and appropriate under the circumstances.

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment Of Invalidity Of The epicRealm Patents)

33.    Oracle incorporates by reference Paragraphs 1 through 32 above.

34.    By virtue of epicRealm's patent infringement allegations in the Consolidated epicRealm Actions against Safelite and others, the epicRealm Letter, and epicRealm's demand for discovery of Oracle information from Safelite, an actual controversy exists between Oracle and epicRealm as to the validity of the epicRealm patents.

35.    Each claim of the epicRealm patents is invalid for failure to meet one or more of the conditions of patentability specified in 35 U.S.C. §§ 101, 102, 103 and/or 112.

36.    Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to the validity of the epicRealm patents is necessary and appropriate under the circumstances.

**PRAYER**

WHEREFORE, Oracle requests entry of judgment in its favor and against epicRealm as follows:

a.    Declaring that Oracle and its software products that are used in conjunction with the delivery of dynamic web pages do not infringe, literally or under the doctrine of equivalents, either directly, indirectly or willfully, any valid and enforceable claim of the epicRealm patents;

b.    Declaring that the claims of the epicRealm patents are invalid;

c.    Decreeing this case an "exceptional case" within the meaning of 35 U.S.C. § 285 and awarding reasonable attorneys' fees to Oracle; and

d.    Awarding Oracle such other costs and further relief as the Court deems just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_Mary B. Graham_

Mary B. Graham (#2256)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302.658.9200

*Attorneys for Plaintiffs*
*Oracle Corporation and Oracle U.S.A. Inc.*

OF COUNSEL:

James G. Gilliland
Joseph A. Greco
Chad E. King
Robert J. Artuz
Marilee S. Chan
TOWNSEND AND TOWNSEND AND CREW LLP
379 Lytton Avenue
Palo Alto, CA  94301
650.326.2400

Dated:  June 30, 2006
526725

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| EPICREALM LICENSING, LLC, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 2:05-CV-163 (TJW) |
| AUTOFLEX LEASING, INC., ET AL., | § | |
| Defendants. | § | |
| | § | |
| | § | |

### *SUA SPONTE* ORDER

The Court, having reviewed its docket, notes that Civil Action No. 2:05-CV-356 is a separate lawsuit brought by EpicRealm Licensing, LLC against various defendants alleging infringement of the same patents asserted in this present action.   Pursuant to Fed. R. Civ. P. 42, this Court hereby consolidates Civil Action No. 2:05-CV-356 with this present action for pre-trial purposes without prejudice of any party's right to file a motion for separate trial.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| EPICREALM LICENSING, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:05-CV-150-DF |
| | § | |
| SPEEDERA NETWORK, INC., | § | |
| | § | |
| Defendant. | § | |

| | | |
|---|---|---|
| EPICREALM LICENSING, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:05-CV-163-DF |
| | § | |
| AUTOFLEX LEASING, INC., et. al., | § | |
| | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| EPICREALM LICENSING, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:05-CV-356-DF |
| | § | |
| FRANKLIN COVEY CO., et. al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

On November 2, 2005, Judge T. John Ward entered and Order in Civil Action No. 2:05-CV-163 (Doc. No. 58) wherein the case was consolidated with Civil Action No. 2:05-CV-356 for pretrial purposes pursuant to Rule 42 of the Federal Rules of Civil Procedure. Thereafter, Judge Ward reassigned both causes of action to this Court because they involve the same patents and similar

-1-

technology as a previously filed action currently pending in this Court – Civil Action No. 2:05-CV-150, which is before Magistrate Caroline Craven for pretrial.

The Court, having reviewed these matters, finds that they involve the same plaintiff alleging infringement of the same patents. Therefore, in order to avoid unnecessary cost and delay, it is hereby ORDERED that Civil Action Nos. 2:05-CV-150, 2:05-CV-163, and 2:05-CV-356 are consolidated pursuant to Rule 42 of the Federal Rules of Civil Procedure for pretrial purposes. It is further

ORDERED that, in accordance with the provisions of 28 U.S.C. § 636(b)(3) and the local rules for the assignment of duties to United States Magistrate Judges, this consolidated action is referred to the Honorable Caroline M. Craven for pretrial. It is further

ORDERED that this Order shall not prejudice any party's right to file a motion for separate trials. It is further

ORDERED that the Court's Order to conduct Rule 26(f) conference in Civil Action No. 2:05-CV-163 (Doc. No. 61) is VACATED. It is further

ORDERED that this consolidated action is hereby scheduled for status conference on Wednesday, December 14, 2005, at 10:00 a.m. **in TEXARKANA** before Judge Craven. Judge Craven shall notify the Parties regarding the issues to be addressed.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION



| EPICREALM LICENSING, LLC, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:05-CV-150-DF |
| | § | |
| SPEEDERA NETWORK, INC., | § | |
| Defendant. | § | |

| EPICREALM LICENSING, LLC, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:05-CV-163-DF |
| | § | |
| AUTOFLEX LEASING, INC., et al., | § | |
| Defendants. | § | |

| EPICREALM LICENSING, LLC, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:05-CV-356-DF |
| | § | |
| FRANKLIN COVEY CO., et al., | § | |
| Defendants. | § | |

**ORDER**

Recognizing the Stipulation of Dismissal filed by plaintiff epicRealm Licensing

Inc., and defendant Speedera Network Corporation, it is

ORDERED that the claims asserted herein by plaintiff epicRealm Licensing, Inc. against defendant Speedera Network Corporation be, and hereby are, dismissed with prejudice;

ORDERED that the claims asserted herein by counter-plaintiff Speedera Network Corporation against counter-defendant epicRealm Licensing, Inc. be, and hereby are, dismissed with prejudice;

ORDERED that the parties shall bear their own attorney's fees, expenses, and costs;

ORDERED that Civil Action No. 2:05-CV-163-DF, styled *epicRealm Licensing, LLC v. Autoflex Leasing, Inc., et al,* and Civil Action No. 2:05-CV-356-DF, styled *epicRealm Licensing, LLC v. Franklin Covey Co., et al.,* are still open and active cases, and are not dismissed by this Order; and

ORDERED that Civil Action No. 2:05-CV-163-DF will replace Civil Action No. 2:05-CV-150-DF as the lead case for docketing purposes.

DATED: _____

Case 2:05-cv-00163-DF-CMC   Document 132   Filed 01/13/2006   Page 2 of 5

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| EPICREALM LICENSING, LLC, | § | |
| Plaintiff, | § § § | |
| v. | § | 2:05-CV-163 |
| AUTOFLEX LEASING, INC., et al., | § § § | |
| Defendants. | § § | |

| | | |
|---|---|---|
| EPICREALM LICENSING, LLC, | § | |
| Plaintiff, | § § § | |
| v. | § | 2:05-CV-356 |
| FRANKLIN COVEY CO., et al., | § § § | |
| Defendants. | § § | |

## AGREED DOCKET CONTROL ORDER

Pursuant to agreement of the parties, the Court hereby enters the following Docket Control Order.

| ACTION ITEM | RULE | DATE DUE |
|---|---|---|
| Initial Case Management Conference | Patent L.R. 2-1, FRCP 26(f) | December 14, 2005 |
| Patentee serves Disclosure of Asserted Claims and Preliminary Infringement Contentions | Patent L.R. 3-1 | December 23, 2005 |
| Patentee makes Document Production Accompanying Disclosure | Patent L.R. 3.2 | December 23, 2005 |
| Deadline for adding parties without leave of court | | January 26, 2006 |

-1-

A
14

| ACTION ITEM | RULE | DATE DUE |
|---|---|---|
| Initial Disclosures.  No party may serve a deposition notice prior to this date. | FRCP 26 | February 16, 2006 |
| Accused Infringer serves Preliminary Invalidity Contentions | Patent L.R. 3-3 | February 21, 2006 |
| Accused Infringer makes Document Production Accompanying Preliminary Invalidity Contentions | Patent L.R. 3-4 | February 21, 2006 |
| All parties make Exchange of Proposed Terms and Claim Elements for Construction | Patent L.R. 4-1(a) | March 10, 2006 |
| All parties meet and confer to discuss list of Proposed Terms and Claim Elements for Construction | Patent L.R. 4-1(b) | After March 10, 2006 |
| All parties make Exchange of Preliminary Claim Construction and Extrinsic Evidence.  Any expert who may be called as a witness at the claim construction hearing shall be designated by this date.  If either side (plaintiff or any defendant) designates an expert, the other side (plaintiff or any defendant) may designate an expert within ten days thereafter.  After that ten day period has elapsed, any expert who has been designated may be deposed on claim construction issues before the May 26, 2006, deadline for the completion of claim construction discovery. | Patent L.R. 4-2 | March 31, 2006 |
| All parties meet and confer to discuss Preliminary Claim Constructions and Extrinsic Evidence | Patent L.R. 4-2(c) | After March 31, 2006 |
| All parties jointly file Joint Claim Construction and Prehearing Statement | Patent L.R. 4-3 | April 21, 2006 |
| Completion of Claim Construction Discovery | Patent L.R. 4-4 | May 26, 2006 |
| Patentee files opening claim construction brief | Patent L.R. 4-5(a) | June 9, 2006 |
| Accused Infringer files responsive claim construction brief | Patent L.R. 4-5(b) | June 23, 2006 |
| Patentee files reply brief on claim construction | Patent L.R. 4-5(c) | July 7, 2006 |

| ACTION ITEM | RULE | DATE DUE |
|---|---|---|
| Parties file joint claim construction chart | Patent L.R. 4.5(d) | Ten days before claim construction hearing |
| Claim Construction Hearing | Patent L.R. 4-6 | To be determined by the Court. Suggested dates: July 13 or 14, 2006 |
| Court's Claim Construction Ruling | | Court's discretion, as soon after claim construction hearing as practical. |
| Patentee makes Final Infringement Contentions | Patent L.R. 3-6(a) | Thirty days after claim construction ruling. |
| Accused Infringer makes disclosure relating to willfulness | Patent L.R. 3-8 | August 28, 2006 |
| Parties file amended pleadings | | October 22, 2006 |
| Accused Infringer makes Final Invalidity Contentions | Patent L.R. 3-6(b) | Fifty days after claim construction ruling. |
| Parties serve expert reports on those issues where party has burden of proof | | Fifty days after claim construction ruling. |
| Completions of all fact discovery, including discovery on invalidity and unenforceability | | November 22, 2006 |
| Parties serve expert rebuttal reports responsive to initial opening report | | Thirty days after opening expert report. |
| Expert deposition period opens | | Upon service of rebuttal expert reports. |
| Deadline for filing dispositive motions, including motions on invalidity and unenforceability | | December 22, 2006 |
| Deadlines for filing all *Daubert* motions | | December 22, 2006 |
| Completion of all expert discovery | | Forty-five days from rebuttal experts. |
| Patentee identifies trial witnesses | | January 22, 2007 |

-3-

| ACTION ITEM | RULE | DATE DUE |
|---|---|---|
| Accused Infringer identifies trial witnesses | | January 29, 2007 |
| Parties to file Proposed Joint Final Pretrial Order, Proposed Jury Instructions, Joint Verdict Forms and Motions in Limine. Prior to pretrial conference, parties shall confer with each other regarding the other party's Motion in Limine and shall submit to the Court in writing any objections they may have to the other party's Motion in Limine. | | February 12, 2007 |
| Final Pretrial Conference before Judge David Folsom | | March 5, 2007, in Marshall, TX |
| Jury Selection before Judge David Folsom | | March 6, 2007, in Marshall, TX |

**SIGNED** this 13th day of January, 2006.


CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE

Case 2:05-cv-00163-DF-CMC    Document 1622    Filed 06/22/2006    Page 1 of 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| EPICREALM LICENSING, LP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:05-CV-163 |
| | § | |
| AUTOFLEX LEASING, INC., et al., | § | |
| | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| EPICREALM LICENSING, LP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:05-CV-356 |
| | § | |
| FRANKLIN COVEY CO., et al., | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Recognizing the Stipulation of Dismissal filed by plaintiff epicRealm Licensing, LP and defendant Safelite Group, Inc., it is

ORDERED that the claims asserted herein by plaintiff epicRealm Licensing, LP against defendant Safelite Group, Inc. be, and hereby are, dismissed with prejudice;

ORDERED that the claims asserted herein by counter-plaintiff Safelite Group, Inc. against counter-defendant epicRealm Licensing, LP be, and hereby are, dismissed with prejudice; and

ORDERED that the parties shall bear their own attorneys' fees, expenses, and costs.

1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| EPICREALM LICENSING, LP, <br> Plaintiff, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 2-05CV-163 |
| AUTOFLEX LEASING, INC., *et al.*, <br> Defendants. | ) ) ) | Jury Trial Demanded |
| EPICREALM LICENSING, LP, <br> Plaintiff, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 2-05CV-356 |
| FRANKLIN COVEY CO., *et al.*, <br> Defendants. | ) ) ) | Jury Trial Demanded |
| SAFELITE GROUP, INC., <br> Third Party Plaintiff, | ) ) ) | |
| v. | ) ) | |
| ORACLE CORPORATION AND <br> INTERNATIONAL BUSINESS <br> MACHINES CORPORATION, <br> Third Party Defendants. | ) ) ) ) | |

**ORDER GRANTING SAFELITE GROUP, INC.'S NOTICE AND STIPULATION OF
DISMISSAL OF THIRD PARTY COMPLAINT AGAINST ORACLE CORPORATION
AND INTERNATIONAL BUSINESS MACHINES CORPORATION WITH PREJUDICE**

The Third Party Complaint of Safelite Group, Inc., against Oracle Corporation and

International Business Machines Corporation is hereby dismissed, with prejudice, and with each

party to bear its own costs.

So **ORDERED** this _____ day of _____, 2006.

_____
Judge, United States District Court
Eastern District of Texas
Marshall Division

Distribution:   All Counsel Of Record

A
19

U. S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| EPICREALM | § | |
| | § | |
| | § | |
| v | § | 2:05CV163 |
| | § | |
| AUTOPLEX | § | |

U. S. Magistrate Judge Caroline M. Craven
Law Clerk: Jennifer Orgeron
Courtroom Deputy: Lynn Ford
Technical Advisor: Richard Egan
Court Reporter: Karen Clark


Plaintiff:: Kevin Meek, Darin Deaver
Defense: Lance Lee, Steven Rocci

MINUTES OF TUTORIAL
7/7/06

9:05 Matter called/ Attorney announcements/9:08 Mr. Kevin Meeks presents tutorial on behalf of Plaintiff//10:06 Break/10:19 Mr. Lance Lee presents tutorial on behalf of Defendants/10:44 Mr. Rocci continues presentation on behalf of Defendants/11:08 Court discusses claim construction hearing -2 and 1/2 hours each side will be sufficient/11:10 Adjourn

Lynn Ford
Courtroom Deputy

U. S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| EPICREALM | § | |
| | § | |
| | § | |
| v | § | 2:05CV163 |
| | § | |
| AUTOPLEX | § | |

U. S. Magistrate Judge Caroline M. Craven
Law Clerk: Jennifer Orgeron
Courtroom Deputy: Lynn Ford
Technical Advisor: Richard Egan
Court Reporter: Libby Crawford

Plaintiff:: Kevin Meek, Darin Deaver, Ryan Loveless, Larry Carlson
Defense: Steven Rocci, Stephen Ravel, Ognjan Shentov, Kristoffer Leftwich, Lance Lee

<u>MINUTES OF CLAIM CONSTRUCTION HEARING</u>
7/13/06

9:05 Matter called/ Attorney announcements/9:08 Mr. Ravel addresses briefing/9:09 Kevin Meeks presents claim terms in five groups/9:30 Mr. Leftwich presents on behalf of Defendant/9:39 Mr. Egan questions counsel/Mr. Leftwich responds on behalf of Defendant/9:40 Mr. Egan questions plaintiffs/Mr. Meek responds/9:43 Mr. Leftwich responds/9:43 Mr. Meek presents group 2/9:49 Court questions Mr. Meek and he responds/9:50 Mr. Egan questions Mr. Meek and he responds and continues presentation/9:58 Court questions Mr. Meek and he responds and continues/10:17 Break till 10:30/10:35 Mr. Leftwich presents on behalf of defendants/10:45 Mr. Egan questions counsel and Mr. Meek and Mr. Leftwich respond/10:49 Mr. Meek continues and seeks permission to brief Watts case if mentioned in brief of Defendants/10:51 Mr. Leftwich responds/Court instructs parties to file motion if relief is necessary at that time/10:51 Mr. Meek continues presentation/11:04 Mr. Egan questions Mr. Meek and he responds/11:05 Mr. Leftwich presents for defendants/11:09 Mr. Ravel continues defendants' presentation/11:22 Mr. Meek continues for Plaintiff/11:30 Mr. Egan questions Mr. Meek/Mr. Meek responds and continues/11:39 Lunch break until 1:00/1:08 Mr. Leftwich presents for the defendants/1:14 Mr. Meek readdresses question previously asked by Mr. Egan and continues presentation on behalf of Plaintiff/1:33 Mr. Egan questions Mr. Meek and Mr. Meek responds/Dr. Shentov responds to Mr. Egan's question/Mr. Meek continues to respond and continues presentation of Group 4/1:42 Mr. Ravel presents on behalf of defendants/1:47 Dr. Shentov continues presentation on behalf of defendants/1:55 Mr. Egan questions Mr. Meek re: agreement on this construction/Mr. Meek responds/Dr. Shentov responds on behalf of defendants

and continues presentation/1:59 Mr. Egan questions Dr. Egan/2:00 Mr. Meek responds on behalf of plaintiff/Dr. Shentov responds on behalf of defendants and continues presentation/1:22 Break until 2:35/2:41 Mr. Meek discusses parties attempt to come to agreement on 'dispatching' and presents group 5 on behalf of plaintiff/3:03 Mr. Rocci presents group 5 on behalf of defendants/3:20 Mr. Meek responds on behalf of Plaintiff/3:24 Mr. Rocci responds/3:36 Court's goal is to have a Report and Recommendation by September 1/3:27 Adjourn

Lynn Ford
Courtroom Deputy

IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| EPICREALM, LICENSING, LLC | § | |
| | § | |
| v | § | No. 2:05CV163 |
| | § | |
| AUTOFLEX LEASING, INC., et al. | § | |

| | | |
|---|---|---|
| EPICREALM, LICENSING, LLC | § | |
| | § | |
| v | § | No. 2:05CV356 |
| | § | |
| FRANKLIN COVEY CO., et al. | § | |

**REPORT AND RECOMMENDATION**
**REGARDING CLAIM CONSTRUCTION**

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the

Adoption of Local Rules for Assignment of Duties to United States Magistrate Judges, the above-

entitled and numbered cause of action was referred to the undersigned for pretrial purposes. Claim

construction arguments in cause numbers 2:05-CV-163 and 2:05-CV-356 were combined, and

Defendants submitted joint briefing. The Court conducted a claim construction hearing on July 13,

2006. This Report and Recommendation construes certain terms in United States Patent Nos.

5,894,554 ("the '554 Patent) and 6,415,335 (the '335 Patent).

1

## I. BACKGROUND

The '554 Patent issued on April 13, 1999. The '335 Patent issued on July 2, 2002 and is a divisional application of the '554 Patent. The '554 Patent and the '335 Patent share a common specification.[1] The patents generally relate to managing Web sites. More particularly, the patents relate to managing dynamic Web page generation. Col. 2:15-23. The patents distinguish some Web pages as having a static nature that remains static until manually modified and other Web pages as being dynamic Web pages which contain content that is generated dynamically by retrieving the necessary requested data and generating the requested Web page dynamically. Col. 1:38-55. The patents describe prior art Web servers as handling both static and dynamic Web page requests. Col. 3:64 - Col. 4:37; Figures 2-3. The techniques described in the patents include routing a Web request from the Web server to a Page server. The Page server may than process the request, and the Web server is released to process other requests. Col. 2:20-35; Col. 4:54 - Col. 6:32. In this manner, dynamic Web pages may be generated by the Page servers.

Some of the claim construction disagreements involve common themes. For example, in general the Plaintiff construes various terms so that Web servers and Page servers do not have to be separate machines while the Defendants seek constructions that would include a separate machine concept. The Plaintiff also seeks constructions that do not include the concept of Uniform Resource Locators (URLs) while the Defendants add the term URL to some of the constructions they seek. Other conflicting claim construction positions are more specific to individual terms that are in dispute.

---

[1] References to the specification will refer to the column and line numbers of the '554 Patent.

2

## II. APPLICABLE LAW

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id.* Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id.* at 1314–15.

Claims "must be read in view of the specification, of which they are a part." *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single

3

best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id.* Also, the specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998); *see also Phillips*, 415 F.3d at 1323. The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (*quoting C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term

4

in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition is entirely unhelpful to a court. *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

The patents in suit also contain means-plus-function limitations that require construction. Where a claim limitation is expressed in "means plus function" language and does not recite definite structure in support of its function, the limitation is subject to 35 U.S.C. § 112, ¶ 6. *Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997). In relevant part, 35 U.S.C. § 112, ¶ 6 mandates that "such a claim limitation 'be construed to cover the corresponding structure . . . described in the specification and equivalents thereof.'" *Id.* (citing 35 U.S.C. § 112, ¶ 6). Accordingly, when faced with means-plus-function limitations, courts "must turn to the written description of the patent to find the structure that corresponds to the means recited in the [limitations]." *Id.*

Construing a means-plus-function limitation involves multiple inquiries. "The first step in construing [a means-plus-function] limitation is a determination of the function of the means-plus-function limitation." *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001). Once a court has determined the limitation's function, "the next step is to determine the corresponding structure disclosed in the specification and equivalents thereof." *Id.* A "structure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Id.* Moreover, the focus of the "corresponding structure" inquiry is not merely whether a structure is capable of performing the recited function, but rather whether the corresponding structure is "clearly linked or associated with the [recited] function." *Id.*

5

### III. DISCUSSION

**A.    Disputed Claim Terms**

1.    "Web Page"

"Web page" is utilized in asserted claims 1, 3, 6, 7, 9, and 11 of the '554 Patent and 1, 4, 7, and 8 of the '335 Patent.    The Plaintiff asserts that "Web page" does not need construction. Alternatively, if construed, the Plaintiff asserts that the proper construction of the term is "content displayable through a Web browser."  The Defendants assert that the terms should be construed as "an HTML document accessible through a URL."

The Court first notes that the Plaintiff's original briefing expressed concern that the Defendants construction implies that dynamically generated Web pages are not included within the term "Web page."  The Court finds this concern somewhat unfounded, and it is noted that the Defendants clearly referred to "Web page" in their briefing and oral argument as encompassing both static and dynamic Web pages.

The other assertions by the parties primarily revolve around two issues, the inclusion of terms "HTML" and "URL" in the construction.  The Plaintiff argues that the term "content" is utilized in the specification at least twice to describe what is displayed on a Web page. Col. 1:47-51; Col. 7:23-26.  Further, the Plaintiff points out that in the Defendants' own briefing Web pages are referred to as containing content.  Defendants' Brief at 11-12.  The Plaintiff further asserts that the Defendants are also attempting to read in limitations from the specification and that such a construction would exclude documents formatted in other formats such as SGML, XHTML, XML, and JPG.

The Defendants state that HTML is a software language and argue that as described within the specification HTML documents are what are sent back as Web pages. Col. 1:18-22; Figures 3

6

and 5. The Defendants also cite a Microsoft Press Computer Dictionary definition which states that "A Web page consists of an HTML file…" Defendants' Brief at 9. The Defendants further assert that "content" in the specification refers to information included in a Web page and that such content itself does not form a Web page.

The Court notes that the specification does appear to consistently refer to the HTML language and does not mention other software languages. However, the Defendant does not identify persuasive support within the specification that the invention must be limited to only one type of software language. Moreover, Defendants have not persuaded the Court that in light of the specification one skilled in the art would assume a Web page as referred to in the patents could only be generated with the HTML language. Further, upon review of the whole specification and claims, with respect to Web pages the described concepts are not related to the intricacies of what particular programming languages are used to display a Web page but rather merely the higher level differentiation of static pre-existing Web pages verse dynamically generated Web pages. In these circumstances, the Court finds it improper to incorporate the limitation of HTML within the more general term Web page that is utilized in the claims themselves.

With regard to the URL concept, the Plaintiff asserts that the Defendants' definition adds additional complexity to the claim construction as the meaning and scope of "accessible through a URL" could itself require construction. Further, citing the extrinsic evidence that the Defendants themselves put before the Court, the Plaintiff argues that it is known that when a Web browser sends a request what is actually sent does not match what is commonly known as a full URL. In oral argument the Plaintiff asserted that the Defendants' extrinsic evidence shows a URL as "http_URL ="http:" "//" host [ ":" port ] [ abs_path] thus requiring four components: a protocol (HTTP), a host,

7

a port and an absolute path. Further the Plaintiffs argue that this same extrinsic evidence shows that a request most commonly is structured for example "GET / pub / WWW / TheProject.html HTTP / 1.0" The Plaintiff asserts that this also emphasizes the concern over the ambiguity of the meaning of "accessible through a URL."

The Defendants turn to the specification, which includes the statement "[a] URL is a Web address that identifies the Web page and its location on the Web." Col. 1:30-33. The Defendants also note the language that states "[w]hen the appropriate Web site receives the URL, the Web page corresponding to the requested URL is located…." Col. 1:33-34. Further, the Defendants point to other examples in the specification, such as Figure 3, which refer to the Web browser sending the URL request. At oral argument, the Defendants also stated that what is sent by a Web browser does include the URL information.

The arguments of the parties highlight some of the concerns the Court has with the inclusion of the term URL. A definition of the meaning of URL within the usage of the patent would further be necessitated as URL is alternatively referred to as "what is examined by the Web browser," a URL request is received by the Web server, and a URL request can be sent to a page server. Col. 4:13-14; Col. 8:28-32; Col. 8:38-39. The specification does not make clear what is the particular structure and content that is meant by the use of the term "URL" at each of these stages of the process. Again, as with the HTML term, this is not surprising as the specification and claims as a whole do not focus on the particular type of request that is made or the particular structure/content of a request as it processed through the system beyond the static and dynamic distinction discussed above. Further, to add the term "accessible" to the construction would necessitate further claim construction as to what "accessible" means. As described within the specification, a Web page is

8

a mechanism through which static and dynamic content may be displayed.   The particular addressing mechanism at each step of the processing of a dynamic Web page is not noted in the specification to be a requirement or of particular importance to the claimed invention.  An inclusion of the term URL would improperly incorporate limitations from the specification for the term Web page which has a meaning that is adequately described within the full context of the specification.[2] **Thus, the Court construes "Web page" to mean "Web content displayable through a Web browser."**

2.    "Request"

"Request" is utilized in asserted claims 1, 9, 11 of the '554 Patent and 1, 15, and 29 of the '335 Patent.   The Plaintiff asserts that the proper construction of "request" is "a message that asks for content."  The Defendants assert that the term should be construed as "a message containing a URL that asks for a Web page specified by the URL."

The Court first notes that the term "request" generally appears in the claims in different circumstances.  In some claims (for example claim 1 of the '554 Patent), request is first utilized with relation to "a dynamic Web page generation request" and multiple references are then made to "said request."  Such claims also use the term "other requests" which imply a request different from "said request."  Other claims (for example claim 15 of the '335 Patent) begin with the general use of "a request" but later refer to "dynamically generating a page in response to said request."   These claims also refer to "other requests."  As noted in the specification, a request can refer to static Web

---

[2] Additional discussion regarding the inclusion of URL limitations is also provided below with regard to the term "request."

9

pages (such as a static document) or dynamic Web pages (such as a Web page dynamically generated by an application). Col. 1:38-56, Col. 4:16-32 Thus, in its general use, request is not limited to dynamic or static requests. It is also noted that both types of claims consistently refer to either "Web page" generation or "page" generation. The specification uniformly refers to pages in the context of Web pages. Thus, it is not unreasonable that in light of the consistent specification one would interpret "requests" as relating to requests for Web pages.

The primary point of distinction between the proposed constructions relates to inclusion of "URL" in the construction of request. The specification notes that "a Web browser allows a Web client to request a particular Web page from a Web site by specifying a Uniform Resource Locator (URL). A URL is a Web address that identifies the Web page and its location on the Web." Col. 1:29-32

The Defendants cites numerous places in the specification text in which "URL request" is utilized to refer to what is requested. The Plaintiff asserts that a request may be made at multiple points, such as shown in Figure 4 between the Web client and Web server, between the Web server and the Dispatcher and between the Dispatcher and the Page servers. The Plaintiff further argues that once a message is received by a Web server a full URL is not utilized subsequently, such as by Page servers.

The Defendants counter by noting numerous specification citations to the term "URL request" including "route the URL request to a Page server" and "the dispatcher sends the URL request to an appropriate Page server." Col. 6:9-10, Col. 8:38-39, *See* Defendants' Brief at 13-14. The Plaintiff responds that there is no teaching in the specification that a page server utilizes a URL.

10

Moreover, the Plaintiffs assert that it would be illogical for a request provided to the page server to utilize a URL as such address would refer to the Web server.

The Court notes that within the claims "request" is used in context of multiple steps of the page generation process. For example, within claim 1 a request may be provided to a Web server while "said request" is also received by a Page server. The specification provides varied and not always consistent uses of the terms "request" and "URL request." As noted above, URL request is often utilized. However, the more general term "request" is also often utilized. Col. 2:1-12; Col. 2:18-35; Col. 4:33-53; Col. 5:8-59; Col. 6:20-32; Col. 7:5-6. In at least two of these instances, language stating "requests or 'hits'" is utilized. Col. 4:38-39; Col. 7:5-6. Further, the Defendants have not shown within the specification that a Page server utilizes a URL. Thus, even when "URL request" is provided in the specification it is not clear that such request is required to contain a URL or is merely a request generated from an initial URL provided at a Web client. To require "request" to include a URL would thus include limitations that the specification does not clearly support and clearly require.

The remaining dispute between the parties relates to the use of "content" verse "Web page." This dispute relates to the underlying meaning of the term Web page as discussed above and thus does not need to be re-addressed. As the Court has noted, the context of the patent is uniformly directed towards Web page requests. Under the guidance provided in *Phillips*, it is appropriate when viewing the specification and the language of the claims themselves to limit "request" to Web page applications. **Thus, the Court construes "request" to mean "a message that asks for a Web page" (with the term Web page having the construction provided herein)**

11

3.     "Page Server"

"Page server" is utilized in asserted claims 1, 4, 7, and 9-11 of the '554 Patent and 1, 2, 5, 8, 15-16, 19, 22 and 29 of the '335 Patent. The Plaintiff asserts that the proper construction of "page server" is "a processing system operable to receive a request and dynamically generate content in response to the request." The Defendants assert that the term should be construed as "page-generating software that generates a dynamic Web page on a machine separate from the Web server machine." In the claim construction Oral Argument, the Plaintiff agreed to the use of "page-generating software" in place of the term "a processing system" as previous proposed by the Plaintiff. The differences between the parties with regard to the use of "content" verse "Web page" are rooted in the basic dispute over the meaning of Web page as discussed above. Both parties include the concept of dynamic generation in their proposed constructions.

In the post oral hearing briefing, the parties each acknowledged that the primary dispute regarding the construction of "page server" is whether the Page server has to be on a machine separate from the Web server. As discussed below, the Court agrees with the Plaintiff with regard to this point of dispute.

Each party points to the specification to support their asserted position. The Plaintiff asserts that the specification includes statements that indicate that the Page server could operate on the same machine as the Web server. In particular, the Plaintiffs have pointed to passages which state:

> FIG. 1 illustrates a typical computer system 100 in which the present invention operates. Col. 2:66-67.

> The preferred embodiment of the present invention is implemented as a software module, which may be executed on a computer system such as computer system 100 in a conventional manner. Col. 3:55-58.

12

Figure 1 illustrates a computer system having a processor, bus, memory and mass storage. Further, it is stated that "the preferred embodiment of the present invention" may be implemented on a personal computer or alternatively a workstation. Col. 2:67-Col. 3:5. The Plaintiff asserts that this language is consistent with the specification as a whole by asserting that the specification describes a partitioned software architecture in which in some embodiments the software modules may all reside on the same machine and in other embodiments the software modules may reside on different computers.

The Plaintiff also points to a passage that describes an embodiment that does not have the advantage of "off-loading the processing of Web requests from the Web server machine" to a separate machine. Col. 5:26-36. However, the Court notes that this passage makes specific reference to the division between a Web server and a Dispatcher, and it is not clear in this passage alone that the Page server is also included in this use of a single machine.

The Defendants argue that the specification describes a distinction over the prior art that amounts to an explicit characterization of the invention that disclaims the prior art. *See SciMed Life Sys. V. Advanced Cardiovascular Sys.*, 242 F.2d 1337, 1343 (Fed. Cir. 2001). In particular, the Defendants point to a passage of the specification that describes the multi-threading techniques of prior art Web servers. Col. 4:32-53. This passage concludes with "[t]he claimed invention addresses this need by utilizing a partitioned architecture to facilitate the creation and management of custom Web sites and servers." The Defendants assert that this clearly demonstrates that the purpose of the invention was to partition the various modules on separate machines. As to the passages cited by the Plaintiff, the Defendants assert those passages do not describe the entirety of the claimed invention. The Plaintiff asserts that the passage cited by the Defendants is directed toward the Web

13

site management "need" recited in the passage, and this need is addressed by a partitioned architecture.

The parties have thus each pointed to somewhat conflicting passages of the specification to support their positions. The passages cited by the Plaintiff establish that there is not a clear disavowal within the specification of the use of a partitioned software architecture on a single machine. The Defendants do correctly point to cases which stand for the proposition that when the specification makes clear that the invention does not include a particular feature than that feature is deemed to be outside of the reach of the claims of the patent. Defendants' Joint Sur-Reply, p. 8. However, in the specification before this Court, the specification does not make clear that the invention must only be operated on separate machines.

**The Court construes "page server" to be "page-generating software that generates a dynamic Web page."**

4.    "Web Server"

"Web Server" is utilized in asserted claims 1 and 11 of the '554 Patent and 1-2 of the '335 Patent. The Plaintiff asserts that the proper construction of "Web server" is "a processing system capable of processing an HTTP request and producing a response to such a request." The Defendants assert that the terms should be construed as "a machine running a Web server executable capable of storing, locating, and returning Web pages in response to Web client requests." In the claim construction Oral Argument, the Plaintiff stated that it would agree to language including "software" in place of the Plaintiff's originally proposed "system" language similar to the Plaintiff's agreement with regard to "page server."

14

The focus point of the dispute between the parties is whether the term "Web server" requires a machine or whether the term may merely represent software or a combination of the two. Both the Plaintiff and Defendants cite conflicting extrinsic evidence to support their positions in the form of dictionaries, industry guides, and protocols. Some of the Plaintiff's extrinsic evidence includes citations to extrinsic evidence first brought before the Court by the Defendants. The conflicting extrinsic evidence presented by the parties fits the rationale presented in *Phillips* regarding the cautions that should be considered relating to such evidence.

Looking to the specification, the Plaintiff points to passages in which "Web server" is not used to describe a machine. In particular, the Plaintiff points to the statement in the specification that:

> The preferred embodiment of the present invention is implemented as a software module, which may be executed on a computer system such as computer system 100 in a conventional manner. Col. 3:55-58.

The Plaintiff also highlights the following passage:

> This embodiment is appropriate for Web servers such as Netsite™ from Netscape, that support such extensions. A number of public domain Web servers, such as NCSA™ from the National Center for Supercomputing Applications at the University of Illinois, Urbana-Champaign, however, do not provide support for this type of extension. Thus, in an alternate embodiment, Interceptor 400 is an independent module, connected via an 'intermediate program' to Web server 201. This intermediate program can be a simple CGI application program that connects Interceptor 400 to Web server 201. Alternate intermediate programs the perform the same functionality can also be implemented. Col. 4:63-Col. 5:7.

The Defendants counter that the specification uses the terms "Web server," "Web server executable" and "Web server machine" and that the proper interpretation is that the machine is referred to as a Web server machine, the software is referred to as the "Web server executable" and

15

the combination is referred to as a "Web server."  To support this argument, the Defendants cite to various passages and figures in the specification.  Figures 2-4; Col. 4:39-41; Col. 4:59-62; Col. 5:7-36.

While the Defendants may be correct that "Web server" may be utilized at times as indicating a combination of a machine and software, the specification clearly does not require the term "Web server" to include a machine.  The passages of the specification noted above by the Plaintiff make clear that the Web server is contemplated to be at least in one embodiment, software.  It is also noted that in general in other passages of the specification the term "Web server machine" is more often used when describing the machine component and "Web server" to describe merely the software component.  Thus, for example, it is noted that the "Web servers process each of these requests on a single machine, namely the Web server machine," "Interceptor 400 resides on the Web server machine as an extension to Web server 201," and the Dispatcher "can, however, also reside on the same machine as the Web server."  Col. 4:39-42; Col. 4:61-62; Col. 5:20-21.  Passages such as these imply a utilization of the term "Web server" as the software module as opposed to the combination of both the machine and software.  Thus, some usage of "Web server" implies just software and at other times implies a combination of software and hardware.

The Court construes "Web server" to be "software, or a machine having software, that receives Web page requests and returns Web pages in response to the requests.

5.    "HTTP-complaint device"

"HTTP-complaint device" is utilized in asserted claims 15-16 and 19 of the '335 Patent.  The Plaintiff asserts that "HTTP-complaint device" does not need construction.  Alternatively, if

16

construed, the Plaintiff asserts that the proper construction is "a device that understands HTTP and whose behavior is affected by an HTTP request." The Defendants assert that the terms should be construed as "a machine running an executable capable of storing, locating and returning Web pages in response to Web client requests."

The Defendants assert the same construction for the terms "Web server" and "HTTP-complaint device." The Defendants' construction is based upon their assertion that the term does not appear in the specification and that the specification only discloses a Web server for performing the function described in the language surrounding the use of "HTTP-compliant device." As such, the Defendants assert that "HTTP-compliant device" should be construed the same as "Web server" as that is the only corresponding device described and enabled in the specification. To hold otherwise, assert the Defendants, would result in a claim that is overbroad and invalid for not being described and enabled.

Regarding the maxim that claims should be construed to be valid, in *Phillips* the Federal Circuit guidance states that this maxim is limited "to cases in which 'the court concludes, after applying all the available tools of claim construction, that the claim is still ambiguous.'" *Phillips*, 415 F.3d at 1327. The Court does not find that in light of the specification the term in question is ambiguous to one skilled in the art. Thus, the Defendants' validity concerns should be more properly addressed with regard to validity motions.

The Defendants also assert that the more general construction proposed by the Plaintiff would be so broad as to even encompass a Web client. However, the claim language itself makes clear that this concern is not valid as there is substantial functional language regarding what happens at the HTTP-compliant device including the transferring of a request from the HTTP-compliant device to

17

a page server, intercepting the request at the HTTP-compliant device, and concurrently processing other requests at the HTTP-compliant device.

The Defendants do however raise valid concerns over the Plaintiff's definition raising additional interpretation questions with regard to the meaning of "understands HTTP" and "behavior affected by an HTTP request." The Court agrees with the Defendants in this regard. The specification defines HTTP as "a communications protocol known as HyperText Transport Protocol (HTTP)." Col. 1:25-26. Mindful that not all terms in a claim need construction, **the Court adopts a construction of "HTTP-compliant device" to mean "a device that is compliant with the communication protocol known as HyperText Transport Protocol (HTTP)."**

6.    <u>"Said processing being performed by said page server while said Web server concurrently processes said other requests"</u>

"Said processing being performed by said page server while said Web server concurrently processes said other requests" is utilized in asserted claims 1 and 11 of the '554 Patent and 1, 15 and 29 of the '335 Patent. The Plaintiff asserts that the "said processing..." phrase does not need construction. Alternatively, if construed, the Plaintiff asserts that the proper construction is "said processing being performed by said page server while said Web server processes said other requests at the same time." The Defendants assert that the phrase should be construed as "said processing being performed by said page server while said Web server executable processes other requests literally at the same time on a different machine."

Three main points of distinction exist between the parties: the inclusion of "executable" with regard to the use of Web server, the inclusion of "literally" with regard to the "same time" language,

18

and the inclusion of the concept of the Page server and Web servers being on different machines. With regard to the term "Web server" as utilized within the "said processing…" phrase, the Court finds that the construction the Court provided above for "Web server" is applicable, and thus the inclusion of the term executable does not need to be re-addressed with relation to the "said processing…" phrase. Similarly, with regard to the concept of different machines, the Court has addressed that concept above and does not need to re-address that concept here.

With regard to "concurrently," both parties agree that this term includes the concept of something occurring "at the same time;" however, there is still a dispute as to whether it must be "literally at the same time." The Defendants argue that "concurrently" should be analyzed in the context of the discussion in the patents of the prior art time-interleaved multi-threading techniques. Accordingly, the Defendants argue that if concurrently is not read to be "literally at the same time" the claims would read on time-interleaved multi-threading techniques. Once again, such arguments are more suited for invalidity assertions. Moreover, it is noted that in the passage in which the patents utilize the term "concurrently" to describe the Web server and the Page server operations, the patents also describe this concept as "to simultaneously process." Col. 6:21-27. With regard to the prior art time-interleaved multi-threading discussion (which the Defendants assert is not literally at the same time) the patent also uses the term "simultaneously." Col. 4:48-51. The patents do not distinguish one use of the term simultaneously from the other by the inclusion of the literal concept. The Court does not find support in the intrinsic evidence to support a requirement that "at the same time" must be "literally at the same time." **Thus, the court construes "said processing being performed by said page server while said Web server concurrently processes said other**

19

requests" to mean "said processing being performed by said page server while said Web server processes said other requests at the same time."


7.    "Intercepting"

"Intercepting" is utilized in asserted claims 1, 9, 10 and 11 of the '554 Patent and 1 and 15 of the '335 Patent. The Plaintiff asserts that the proper construction of "intercepting" is "stopping, deflecting, or interrupting the processing of a request." The Defendants assert that the term should be construed as "diverting a request received at the Web server machine instead of the Web server executable processing it." Both parties argue that the other party's interpretations carry implicit meanings beyond the mere constructions asserted above. The Plaintiff asserts that the Defendants' construction implicitly requires a request to go around or bypass a Web server without any processing by the Web server. The Defendants assert that the Plaintiff's construction allows for the Web server executable to begin processing a request, even if only to recognize that is should not complete the processing. The parties also disagree as to whether the terms "stopping, deflecting, or interrupting" verses "diverting" are more appropriate. A portion of the disagreement between the parties is based upon the fundamental dispute as to whether a Web server is a machine, software, or combination thereof. As noted above, the Court construes a Web server as software, or a machine having software.

The Defendants assert that the prosecution histories of the '554 Patent and of the '335 Patent add clarity to the meaning of the term "intercepting." The Defendants are correct that prosecution history may be used to limit the claims so as to exclude interpretations that may have been disclaimed or disavowed. However as discussed below, the cited portions of the prosecution

20

histories of the '554 Patent and the '335 Patent do not amount to a clear disclaimer as suggested by the Defendants. *See Middleton, Inc. v. Minnesota Mining & Mfg. Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002).

With regard to the '554 Patent file history, the Defendants point to language added via an Examiner's Amendment and to the Bookman reference for support of a disclaimer of claim scope. The amendment in question was made in a Notice of Allowability that was issued along with an Interview Summary of a December 17, 1998 examiner interview and a form PTO-892 Notice of References Cited. The PTO-892 Notice of References Cited listed the Bookman reference and an additional reference. At that time, other art was also included in the prosecution history including, for example, references that were the basis of previous rejections. The Interview Summary merely states that the prior art discussed was the "prior art of record." The description and other comments of the interview do not provide any other details as to why the Examiner Amendment was made. The Amendment in question added, to claim 1 for example, the language "wherein said routing step further includes the steps of intercepting said request at said Web server, routing said request from said Web server to a dispatcher, and dispatching said request to said page server." As the Plaintiff points out, the record does not show that Bookman was even particularly discussed in the interview let alone the art requiring the amendment to be made. On this basis alone, the Court may reject the Defendants' assertion that because of Bookman the claim language must be interpreted in the manner that the Defendants allege. Further, even if Bookman had been the art requiring such amendment, the record still does not provide any insight into the meaning of "intercepting" as the record is silent as to any further meaning of "intercepting" or the other additional terms recited in the amendment (routing from a Web server to a dispatcher and dispatching said request to a page server).

21

With regard to the '335 Patent prosecution history, the Defendants assert that statements made by the Applicants regarding the Leaf reference support the Defendants' proposition that partial processing does not equate to intercepting.   In particular, the Defendants cite to a quote on pages 9-10 of a Response To Office Action dated May 23, 2001. The Defendants focus on a statement that Leaf did not suggest intercepting because "merely routing a request from a web server to the transaction gateway does not involve interception." The Defendants state that Leaf has Web server executable that partially processes a request before routing it on to the dispatcher.  From this, the Defendants argue that the Applicants disclaimed partially processing a request and then routing it to the dispatcher.   It is noted that the Applicants' Response in question, however, does not characterize Leaf in the manner suggested by the Defendants or make any references to partially processing. Further, the distinction between a Web server and Web server executable made by the Defendants is not clear in Leaf.  In addition, it is noted that the full context of the Applicants' remarks regarding Leaf includes the statement that "Leaf does not teach or suggest 'intercepting said request.' Instead, Leaf teaches that the web server routes the request directly to the transaction gateway client." '335 Patent File History, Response to Office Action Dated May 23, 2001, p. 9-10. This statement merely suggests that directly routing a request from a web server to a transaction gateway is not intercepting and does not provide clear guidance as to the question of partial processing or the difference between a Web server and Web server executable.   Thus, the prosecution history cited by the Defendants does not provide the clear guidance asserted by the Defendants.

It is noted that the Defendants' proposed construction adds Web server machine to the term of "intercepting." This language is somewhat redundant with the language surrounding the term

"intercepting" in most claims and does not conform to claim 15 of the '335 Patent which uses the term HTTP-complaint device. The context of the term as used in the claims themselves provides some guidance as to the proper construction. The claims themselves note that the intercepting of the request is at the Web server or the HTTP-compliant device.[3] For example, Claim 1 uses language such as "routing said request from said Web server to a page server," and "wherein said routing step further includes the steps of intercepting said request at said Web server, routing said request from said Web server to a dispatcher, and dispatching said request to said page server." This conforms with the specification, which states that the request is initially routed from the Web Client 200 to the Web Server 201. Col. 4:54-60. Also, Figure 4 appears to show the request going to the Web server executable 201(E). A construction that has the request bypassing the Web server is therefore not appropriate.

As to whether the beginning phrase of the construction should include "stopping, deflecting, or interrupting" as proposed by the Plaintiff, the Plaintiff provides little support for such language other than a general purpose dictionary. Although the Plaintiff asserts that the Defendants' construction requires bypassing the Web server, the Court does not interpret the phrase "diverting" to require such bypassing. However, the term "diverting" seems to carry an additional connotation that the request is sent somewhere else. When looking at the claims, however, the concept of the request being sent elsewhere is included in the "routing said request" (claims 1, 9, and 11 of the '554 Patent) or "transferring said request" (claim 15 of the '335 Patent) limitation that immediately follows the intercepting phrase. Thus, the Court does not feel that either construction adds clarity

---

[3] Claim 15 of the '335 Patent uses the term HTTP-compliant device while the other claims recite a Web server.

23

to the meaning of the concept of "intercepting" as used in the claims. Moreover, the parties have not pointed to anything in the intrinsic record that suggests which is more accurate: "diverting" or "stopping, deflecting or interrupting." These terms are not used in the specification and each in turn may need their own construction. The Court is not convinced that the term "intercepting" needs construction itself or that the constructions proposed by the parties add any needed clarity.

More helpful would be to construe the entire intercepting phrase: "intercepting said request at said Web server" (claims 1, 9, and 11 of the '554 Patent) and "intercepting said request at said HTTP-compliant device" (claim 15 of the '554 Patent). The specification describes the Interceptor as intercepting "the handling of a request." Col. 8:31-32. To conform with the description provided within the specification, the phrase "intercepting said request at said Web server" (claims 1, 9, and 11 of the '554 Patent) means at least "intercepting the handling of a request at a Web server" and the phrase "intercepting said request at said HTTP-compliant device" means at least "intercepting the handling of a request at a said HTTP-compliant device."

What is left for the Court to determine is whether the phrase "instead of the Web Server executable processing it" should be added to the end of the definition as proposed by the Defendants. The Defendants' primary support for their position is the language of the specification that states "instead of Web server executable 201(E) processing the URL request, however, interceptor 400 intercepts the request and routes it to Dispatcher 402." Col. 4:58-60. The Defendants argue that this language provides no room for partial processing of a request by Web server executable. The Court, however, finds such language ambiguous. The Defendants would like to interpret this cited quote ("instead of the Web server executable 201(E) processing the URL request") to mean "instead of the Web server executable 201(E) processing **any of** the URL request" wherein the Plaintiff would like

24

to interpret this citation to mean "instead of the Web server executable 201(E) **completely** processing the URL request" The specification, however, provides little guidance.

As discussed above, however, the specification does establish that a Web server may be software. Further, the specification establishes that the Web server does perform at least some action with relation to a request, namely receiving a request. Col. 4:55-58; Col. 8:28-31; Figure 4; Figure 5. Further, it is noted that in at least one embodiment the interceptor 400 is "an extension of the Web server 201" and the interceptor 400 also performs actions on a request. Col. 4:59-62. As Defendants have asserted that their proposed claim langue would exclude the Web server from any processing of the request, their proposed claim language would impermissibly exclude the embodiments disclosed within the specification. Thus, the Court declines to add the additional limitation sought by the Defendants.

For these reasons, **the Court finds that "intercepting said request at said Web server" means "intercepting the handling of a request at a Web server" and the phrase "intercepting said request at said HTTP-compliant device" means at least "intercepting the handling of a request at a said HTTP-compliant device."**


8.    "Transferring"

"Transferring" is utilized in asserted claims 15-16 and 29 of the '335 Patent.  The Plaintiff asserts that the "transferring" does not need construction. Alternatively, if construed, the Plaintiff asserts that the proper construction is "sending." The Defendants assert that the term should be construed as "sending toward a destination and relinquishing control of."

The parties agree to the use of the term of "sending" but disagree as to whether any additional

25

language is necessary. With regard to the Defendants' use of "toward a destination," it is noted that the surrounding claim language of each claim already includes this concept. For example, claim 15 states that the transferring is of "a request from an HTTP-complaint device to a page server." Similarly, claim 29 states that the transferring is of "a request from an HTTP-complaint device to a dispatcher." The inclusion of "toward a destination" within the term "transferring" itself is therefore unnecessary based upon the context of the claims themselves.

With regard to the "relinquishing control of" language sought by the Defendants, the Defendants point to a Microsoft Press Computer Dictionary definition that includes in transferring the concept of passing program control. Further, the Defendants assert that the purpose of the patent is to reduce processing burden. The Plaintiff argues that two other dictionary definitions noted by the Defendants do not include the relinquishing concept.

Once again, it is more instructive to look to the claims themselves. More particularly, in claim 15 of the '335 Patent immediately after the "transferring...to a page server" the claim continues with "said page server receiving said request and releasing said HTTP-compliant device to process other requests...." Likewise, claim 29 of the '335 Patent includes later in the claim "said page server receiving said request and releasing said HTTP-compliant device to process other requests..." To include relinquishing within the definition of transferring would possibly conflict with the latter claim language or alternatively be redundant. Further, to the extent that the Defendants assert that the purpose of the patent is to reduce processing burden, the recited releasing language is more related to that concept then the transferring.

As both parties have proposed definitions using the term "sending," the Court includes that term in its construction. **The Court construes "transferring" to mean "sending."**

26

A
48

9.    "Dispatching"

The parties originally proposed different constructions for the term "dispatching." As the parties have subsequently submitted an agreed construction, a Court construction is no longer required.


10.    "Releasing"

"Releasing" is utilized in asserted claims 1, 9 and 11 of the '554 Patent and 1, 15, and 29 of the '335 Patent. The Plaintiff asserts that the "releasing" does not need construction. Alternatively, if construed, the Plaintiff asserts that the proper construction is "freeing." The Defendants assert that the term should be construed as "communicating to said Web server that it may now process other requests."[4] A central point in the dispute between the parties is the Plaintiff's arguments that releasing can implicitly occur as a result of routing without communication to the Web server. The Defendants assert that there must be communication to the Web server.

The Plaintiff asserts that the term "freeing" is supported by the specification and notes that the specification states that the result of routing is that the Web server is free to continue servicing client requests. In particular, the Plaintiff points out that the specification states "Web server executable 201(E) is thus free to continue servicing client requests on Web serer 201 while the request is processed 'off-line.'" Col. 5:16-18. Thus, the Plaintiff asserts that the specification implies that releasing is an automatic consequence of routing the request to another processing element and that nothing in the specification requires communication to the Web server to effectuate

_____

[4]For claim 9 of the '554 Patent, the Defendants substitute "second computer system" in place of "Web server" and similarly in claims 15 and 29 of '335 Patent the Defendants substitute "HTTP-compliant device" in place of "Web server."

27

the release.

The Defendants assert that the '335 Patent prosecution history shows that merely routing a request from a Web server to a Page server and thereby implicitly releasing the Web server was disclaimed by the Applicants during the prosecution history as being different from releasing. The Plaintiff counters by asserting that the full context of the prosecution history quote in question does not stand for the proposition asserted by the Defendants. The portion of the prosecution history in question includes:

> At no time does Rogers teach or suggest 'concurrently' processing other requests or 'releasing said Web server to process other requests' because merely retrieving data from multiple sources does not teach or suggest these elements. Response to Office Action, Nov. 27, 2001 at 9.

The Court is persuaded that by reviewing the full context of the portion of the prosecution history in question a clear disavowal was not made by the Applicants. Thus, the prosecution history does not mandate that releasing cannot implicitly occur due to routing from a web server to a page server.

However, the Defendants raise a more relevant argument with regard to the claim language itself. "Releasing" is used in each claim as part of the phrase "said page server receiving said request and releasing said Web server to process other requests."[5] It is therefore the Page server that does the releasing. The larger context of the use of releasing in the claims themselves indicates that the Page server has a role in the releasing as in the claims themselves it is the Page server that releases the Web server. This language also conforms to the Summary of Invention and Abstract. Col. 2:25-26; Abstract, line 8.

---

[5] "Second computer system" is used rather than "Web server" in claim 9 of the '554 Patent. "HTTP-compliant device" is used rather than "Web server" in claims 15 and 29 of '335 Patent.

28

The Court is thus persuaded that the Defendants are partly correct that as required by the claim language itself the Page server takes some action to releasing the Web server. However, the Defendants do not provide adequate support in the specification or elsewhere to mandate that such action is limited to communication from the Page server to the Web server. As there could be other actions that the Page server may take to affirmatively release the Web server, it would be inappropriate to limit the claim to one type of action, particularly when support is lacking in the record for that particular type of action. The specification does not necessarily limit the claims to a particular technique by the Page server as to how the claimed release by the Page server is accomplished. For example, the limitations proposed by Defendants could be argued to not include Page server actions that are communications from the Page server to other intermediate elements (such as the Dispatcher) or Page server actions that involve affirmatively not sending some expected regular communication. **The Court therefore interprets "said page server receiving said request and releasing said Web server to process other requests" to mean "said page server receiving said request and said page server performing an act (separate from merely receiving the request) to free the Web server to process other requests." Claims 9 of the '554 Patent and claims 15 and 29 of the '335 Patent are likewise construed with the substitution of "second computer system" and "HTTP-compliant device" respectively for "Web server."**

**B.    Means Plus Function Elements**

The parties propose different constructions of three means plus function elements. In each case, the parties agree to the function but disagree as to what is the corresponding structure that is

29

disclosed in the specification pursuant to 35 U.S.C. §112, ¶6. The following means plus function elements contained in claim 9 of the '554 Patent are disputed:

> (a) "means for generating said request,"
> (b) "means for receiving said request from said first computer" and
> (c)"page server processing means processing said requests and dynamically generating a web page in response to said request."

Throughout the pre-hearing and post-hearing briefing, the parties have substantially changed their positions as to the appropriate legal standards and the appropriate structure that should be applied to each element.

As to the function, the parties have agreed to functions that match the claimed language recited above: "generating said request," "receiving said request from said first computer," and "processing said requests and dynamically generating a web page in response to said request" respectively.

The Plaintiffs propose that the corresponding structure for each means plus function element is "any software, processor or equivalent therefore that performs the function of _____" (where the blank is the agreed function for that means plus function element). The Defendants in contrast point to particular structure disclosed within the specification. For the "means for generating," the Defendants propose "a processor, such as Box 102 of Figure 1, on a Web client 200 of Figure 4, running a Web browser." For the "means for receiving," the Defendants propose "Web server 201 of Figure 4 running a web server executable." For the "page server processing means," the Defendants propose "a processor, such as Box 102 of Figure 1, on a page server machine, such as Box 404(1)-(n) of Figure 4, running undisclosed page-generating software."

30

First, the Court notes that means plus function elements shall be construed to cover the corresponding structure described in the specification and equivalents thereof. 35 U.S.C. §112, ¶6. To avoid confusion, the Plaintiff indicated that it did not object to removing the word "equivalents" internal to its proposed construction. Plaintiff's Reply Brief at 58. The Court agrees that it would be clearer for "equivalents" to modify the entire construed structure.

As proposed by the Plaintiff, the corresponding structure could be any software or could be any processor that performs the agreed function. As proposed by the Plaintiff, software would not even be required as the Plaintiff uses the "or" conjunction. Plaintiff's construction of any software or processor is essentially unbounded and contradicts the guidance that has been established for interpreting means plus function elements. *Medical Instrumentation and Diagnostics Corp. v. Elekta AB*, 344 F.3d, 1205, 1211 (Fed. Cir. 2003)("We cannot allow a patentee to claim in function terms essentially unbounded by any reference to what one skilled in the art would understand from the public record.") Having chosen to utilize the means plus function claiming structure, the Plaintiff cannot now avoid its implications. Moreover, for computer implemented implementations the corresponding structure for means elements is limited to the specific structure and specific algorithms disclosed in the specification as opposed to the generic "software" or "processor" as asserted by the Plaintiff. *See Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1253-54 (Fed. Cir. 2005); *WMS Gaming Inc. v. International Game Technology*, 184 F.3d 1339, 1348-49 (Fed. Cir. 1999). Thus, the court must look to the specific structures and algorithms disclosed with the specification.

As noted above, the specification states:

31

> FIG. 1 illustrates a typical computer system 100 in which the present invention operates. Col. 2:66-67.

> The preferred embodiment of the present invention is implemented as a software module, which may be executed on a computer system such as computer system 100 in a conventional manner. Col. 3:55-58.

As described within the specification, the various software components operate on computer systems such as computer system 100 of Figure 1 that includes a processor 102.[6] Col. 2:66-67; Col. 3:8-11; Col. 3:55-63.

1.    "means for generating said requests,"

For example, the "means for generating a request" is described as a Web client machine running a Web browser. Col. 1:24-26; Col. 2 :4-7; Col. 4:12-15; Col. 4:55-57; Col. 6:27-31; *See* Col. 8:25-29. This particular structure is noted in the specification for accomplishing the claimed function. One skilled in the art would understand from the specification that a Web client computer having a processor which operates a Web browser is the corresponding structure that accomplishes the function of generating a request.

**The Court construes the corresponding structure of the "means for generating" to be "a processor of a computer that is, or has, a Web client running a Web browser" or equivalents thereof.**

---

[6] It is noted that as to the component of the computer system, both parties agree that reference to the processor is appropriate.

2.  "means for receiving said request from said first computer"

    With regard to the "means for receiving said request from said first computer" element, the specification shows the Web server 201 receiving requests from the Web client 200.  Figure 4; Figure 5; Col. 4:54-59; *See* Figure 2; Col. 3:64-Col. 4:10.  The Web server 201 is also repeatedly described as including Web server executable.  *Id.*  As described above, the specification also establishes that that even if a Web server is software, the software module operates on a computer as described within the specification.

    **The Court construes the corresponding structure of the "means for receiving" to be "a processor of a computer that is, or has, a Web server running Web server executable" or equivalents thereof.**

3.  "page server processing means processing said requests and dynamically generating
    a web page in response to said request."

    With regard to the function of the "page server processing means processing said requests and dynamically generating a web page in response to said request" element, the specification shows that such function is accomplished by Page server 404(1)-(n).  Figure 4; Figure 5; Col. 5:37-Col. 6:31; Col. 8:39-43.  As noted above, the parties agree that a Page server is page generation software.  Further, as also noted above with the other means plus function elements, the specification establishes that software is operated on a computer system as described with the specification.  Moreover, with regard to Page servers, it is noted that in one embodiment Page servers reside on a separate machine to accomplish the claimed function.  Col. 5 line 49-50.  Thus, the Court finds that

the Page server processing means is Page server software (as construed above) operating on a computer processor.

**The Court construes the corresponding structure of the "page server processing means" to be "a processor of a computer that runs Page server software (wherein Page server software is page-generating software that generates a dynamic Web page)."**

**IT IS SO RECOMMENDED.**

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn,* 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).

CASREF, JURY, LEAD, PATENT

## U.S. District Court [LIVE]
## Eastern District of TEXAS LIVE (Marshall)
## CIVIL DOCKET FOR CASE #: 2:05-cv-00163-DF-CMC

epicRealm Licensing, LLC v. Autoflex Leasing, Inc. et al    Date Filed: 05/02/2005
Assigned to: Judge David Folsom                             Jury Demand: Both
Referred to: Magistrate Judge Caroline Craven               Nature of Suit: 830 Patent
Lead case: 2:05-cv-00163-DF-CMC   (View Member Cases)       Jurisdiction: Federal Question
Cause: 35:271 Patent Infringement

**Plaintiff**

**epicRealm Licensing, LLC**                 represented by   **Larry Dean Carlson**
                                                              Baker Botts - Dallas
                                                              2001 Ross Ave
                                                              600 Trammell Crow Center
                                                              Dallas, TX 75201-2980
                                                              214/953-6525
                                                              Fax: 12149536503
                                                              Email: larry.carlson@bakerbotts.com
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Andrew Wesley Spangler**
                                                              Brown McCarroll - Longview
                                                              1127 Judson Rd - Ste 220
                                                              PO Box 3999
                                                              Longview, TX 75606-3999
                                                              903-236-9800
                                                              Fax: 19032368787
                                                              Email: aspangler@mailbmc.com
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Deborah J Race**
                                                              Ireland Carroll & Kelley
                                                              6101 S Broadway
                                                              Suite 500
                                                              Tyler, TX 75703
                                                              903/561-1600
                                                              Email: drace@icklaw.com
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Elizabeth L DeRieux**
                                                              Brown McCarroll
                                                              1127 Judson Rd - Ste 220
                                                              PO Box 3999
                                                              Longview, TX 75606-3999
                                                              903/236-9800
                                                              Fax: 9032368787
                                                              Email: ederieux@mailbmc.com

*ATTORNEY TO BE NOTICED*

**Franklin Jones, Jr**
Jones & Jones - Marshall
201 W Houston St
PO Drawer 1249
Marshall, TX 75670
903/938-4395
Fax: 9039383360
Email: maizieh@millerfirm.com
*ATTORNEY TO BE NOTICED*

**Jeffrey Wayne Moles**
Quinn Emanuel Urquhart Oliver &
Hedges, LLP NY
51 Madison Ave
New York, NY 10010
214/953-6500
Fax: 12146614669
Email: jeff.moles@bakerbotts.com
*ATTORNEY TO BE NOTICED*

**Kevin James Meek**
Baker Botts
2001 Ross Ave
600 Trammell Crow Center
Dallas, TX 75201-2980
214/953-6500
Fax: 12146614680
Email: kevin.meek@bakerbotts.com
*ATTORNEY TO BE NOTICED*

**Otis W Carroll, Jr**
Ireland Carroll & Kelley
6101 S Broadway
Suite 500
Tyler, TX 75703
903/561-1600
Fax: 9035811071
Email: Fedserv@icklaw.com
*ATTORNEY TO BE NOTICED*

**Sidney Calvin Capshaw, III**
Brown McCarroll - Longview
1127 Judson Rd - Ste 220
PO Box 3999
Longview, TX 75606-3999
903/236-9800
Fax: 19032368787
Email: ccapshaw@mailbmc.com
*ATTORNEY TO BE NOTICED*

V.

**Consol Plaintiff**

**epicRealm Licensing, LLC**                    represented by   **Larry Dean Carlson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Franklin Jones, Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Otis W Carroll, Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sidney Calvin Capshaw, III**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Autoflex Leasing, Inc.**                    represented by   **Paul Alexander Bezney**
Adkerson, Hauder & Bezney
1400 Bryan Tower
2001 Bryan Tower
Dallas, TX 75201-3005
214/740-2523
Fax: 12147402544
Email: paul@ahblaw.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael W Tieff**
Woodcock Washburn LLP
1650 Market Street, 46th Floor
Philadelphia, PA 19103
215/568-3100
Fax: 12155683439
Email: mtieff@woodcock.com
*ATTORNEY TO BE NOTICED*

**Richard B LeBlanc**
Woodcock Washburn LLP
1650 Market Street, 46th Floor
Philadelphia, PA 19103
215/568-3100
Fax: 215/568-3439
Email: rleblanc@woodcock.com
*ATTORNEY TO BE NOTICED*

**Steven J Rocci**

A
59

Woodcock Washburn LLP
1650 Market Street, 46th Floor
Philadelphia, PA 19103
215/568-3100
Fax: 12155683439
Email: rocci@woodcock.com
*ATTORNEY TO BE NOTICED*

**Tracy Lynn Stoker**
Adkerson Hauder & Bezney P.C.
2001 Bryan St
Ste 1400 Bryan Tower
Dallas, TX 75201
214/740-2532
Fax: 972/960-3221
Email: tracy@AHBlaw.net
*ATTORNEY TO BE NOTICED*

**Defendant**

**eHarmony.com, Inc.**          represented by    **Christopher R Ottenweller**
*TERMINATED: 08/18/2006*                         Orrick Herrington & Sutcliffe - Menlo
                                                 Park
                                                 1000 Marsh Rd
                                                 Menlo Park, CA 94025
                                                 650/614-7400
                                                 Fax: 16506147401
                                                 Email: cottenweller@orrick.com
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

                                                 **Eric Hugh Findlay**
                                                 Ramey & Flock
                                                 100 East Ferguson
                                                 Ste 500
                                                 Tyler, TX 75702
                                                 903/597-3301
                                                 Fax: 9035972413
                                                 Email: efindlay@rameyflock.com
                                                 *ATTORNEY TO BE NOTICED*

                                                 **Gabriel M Ramsey**
                                                 Orrick Herrington & Sutcliffe - Menlo
                                                 Park
                                                 1000 Marsh Rd
                                                 Menlo Park, CA 94025
                                                 650/614-7400
                                                 Fax: 16506147401
                                                 Email: gramsey@orrick.com
                                                 *ATTORNEY TO BE NOTICED*

                                                 **Ronald Stephen Vickery**
                                                 Ramey & Flock
                                                 100 East Ferguson

Ste 500
Tyler, TX 75702
903/597-3301
Fax: 9035972413
Email: rvickery@rameyflock.com
*ATTORNEY TO BE NOTICED*

**Defendant**

Friendfinder Network, Inc.                    represented by    **Tyler Alexander Baker**
Fenwick & West - Mountain View
Silicon Valley Center
801 California St
Mountain Valley, CA 94041
650/335-7624
Email: tbaker@fenwick.com
*TERMINATED: 05/30/2006*
*LEAD ATTORNEY*

**Candace J Morey**
Fenwick & West - San Francisco
275 Battery St
Ste 1500
San Francisco, CA 94111
415/875-2300
Fax: 415/281-1350
Email: cmorey@fenwick.com
*TERMINATED: 05/30/2006*

**Eric Miller Albritton**
Attorney at Law
PO Box 2649
Longview, TX 75606
903/757-8449
Fax: 19037587397
Email: ema@emafirm.com
*ATTORNEY TO BE NOTICED*

**Henry C Su**
Howrey LLP East Palo Alto
1950 University Avenue, 4th Floor
East Palo Alto, CA 94303-2250
650-798-3500
Fax: 650-798-3600
Email: suh@howrey.com
*TERMINATED: 11/22/2005*

**Ira P Rothken**
Rothken Law Firm
1050 Northgate Dr
Suite 520
San Rafael, CA 94903
415/924-4250
Fax: 14159242905

Email: ira@techfirm.org
*ATTORNEY TO BE NOTICED*

**Michael J Sacksteder**
Fenwick & West - San Francisco
275 Battery St
Ste 1500
San Francisco, CA 94111
415/875-2300
Fax: 415/281-1350
Email: msacksteder@fenwick.com
*TERMINATED: 05/30/2006*

**Otto O Lee**
Intellectual Property Law Group
12 South First Street 12th Floor
San Jose, Ca 95113
Email: olee@iplg.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Grande Communication Networks, Inc.**          represented by **Charles Ainsworth**
Parker Bunt & Ainsworth
100 E Ferguson
Suite 1114
Tyler, TX 75702
US
903/531-3535
Fax: 903/533-9687
Email: charley@pbatyler.com
*ATTORNEY TO BE NOTICED*

**J Stephen Ravel**
Kelly Hart & Hallman - Austin
301 Congress Ave.
Suite 2000
Austin, TX 78701
US
512-495-6400
Fax: 512-495-6401
Email: steve_ravel@khh.com

**William W Brookshire, III**
Bracewell & Giuliani LLP
500 North Akard
Suite 4000
Dallas, TX 75201-3387
214/758-1071
Fax: 12147581010
Email:
william.brookshire@bracewellgiuliani.com

*TERMINATED: 11/03/2005*

A
62

**Defendant**

IJL-NCP, LLC

**Defendant**

| | | |
|---|---|---|
| **Transplace Texas, L.P.**<br>*TERMINATED: 08/18/2006* | represented by | **Jane Politz Brandt**<br>Thompson & Knight<br>1700 Pacific Ave<br>Suite 3300<br>Dallas, TX 75201-4693<br>214/969-1105<br>Fax: 12149691751<br>Email: jane.brandt@tklaw.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

It's Just Lunch International LLXC

**Defendant**

IJL Holdings, Inc.

V.

**Consol Defendant**

| | | |
|---|---|---|
| Franklin Covey Co. | represented by | **David J Beck**<br>Beck Redden & Secrest<br>1221 McKinney St, Suite 4500<br>One Houston Center<br>Houston, TX 77010-2020<br>713/951-3700<br>Fax: 17139513720<br>Email: dbeck@brsfirm.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Aaron Levangie**<br>Mintz Levin<br>One Financial Center<br>Boston, MA 02111<br>617/542-6000<br>Fax: 617/542-2241<br>Email: alevangie@mintz.com<br>*ATTORNEY TO BE NOTICED*<br><br>**Ibrahim M Hallaj**<br>Mintz Levin<br>One Financial Center<br>Boston, MA 02111<br>617/542-6000<br>Fax: 617/542-2241<br>Email: ihallaj@mintz.com |

*ATTORNEY TO BE NOTICED*

**William D Belanger**
Mintz Levin
One Financial Center
Boston, MA 02111
617/542-6000
Fax: 617/542-2241
Email: wbelanger@mintz.com
*ATTORNEY TO BE NOTICED*

**Consol Defendant**
**Clark Consulting, Inc.,**                    represented by   **Charles Ainsworth**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles Homer Clark**
Clark Lea & Ainsworth
604 West Woldert
Tyler, TX 75702
903/593-2514
Fax: 9035951294
Email: chc@charlesclarklaw.com
*ATTORNEY TO BE NOTICED*

**Consol Defendant**
**The Macerich Company**                    represented by   **Damon Michael Young**
Young Pickett & Lee
4122 Texas Blvd
PO Box 1897
Texarkana, TX 75504-1897
903/794-1303
Fax: 19037925098
Email: dmyoung64@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles Samuel Cotropia**
Sidley Austin Brown & Wood
717 N Harwood
Suite 3400
Dallas, TX 75201
214/981-3305
Email: ccotropia@sidley.com
*ATTORNEY TO BE NOTICED*

**Kristoffer B Leftwich**
Sidley Austin - Dallas
717 N Harwood
Suite 3400
Dallas, TX 75201
214-981-3300

A
64

Fax: 214-981-3400
Email: kleftwich@sidley.com
*ATTORNEY TO BE NOTICED*

**Lance Lee**
Young Pickett & Lee
4122 Texas Blvd
PO Box 1897
Texarkana, TX 75504-1897
903/794-1303
Fax: 19037945098
Email: wlancelee@aol.com
*ATTORNEY TO BE NOTICED*

**Consol Defendant**

**Safelite Group, Inc.**
*TERMINATED: 06/29/2006*

represented by **Edward Lawrence Merritt**
Harbour Smith Harris & Merritt
404 N Green St
P O Drawer 2072
Longview, TX 75606-2072
903/757-4001
Fax: 19037535123
Email: emerritt@harbourlaw.com
*TERMINATED: 02/09/2006*
*LEAD ATTORNEY*

**John F Prescott, Jr**
Ice Miller Donadio & Ryan
One American Square
Box 82001
Indianapolis, IN 46282
317/236-2398
Fax: 13175924736
Email: John.Prescott@icemiller.com
*ATTORNEY TO BE NOTICED*

**Consol Defendant**

**Herbalife International of America,
Inc.,**

represented by **Kenneth Robert Adamo**
Jones Day
2727 N Harwood St
Dallas, TX 75201-1515
214-969-4856
Email: kradamo@jonesday.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**A Gregory Gibbs**
Jones Day - New York
222 E 41 Street
New York, NY 10017
Email: ggibbs@jonesday.com
*ATTORNEY TO BE NOTICED*

**Carl R Roth**
The Roth Law Firm, P.C.
115 N Wellington Suite 200
P O Box 876
Marshall, Tx 75670
903/935-1665
Fax: 19039351797
Email: cr@rothfirm.com

**Charles Ainsworth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Charles Smith**
The Roth Law Firm
115 N. Wellington
Suite 200
P.O. Box 876
Marshall, TX 75671-0876
US
903/935-1665
Fax: 19039351797
Email: ms@rothfirm.com

**Ognjan V Shentov**
Jones Day - New York
222 E 41 Street
New York, NY 10017
212/326-3939
Fax: 212/755-7306
Email: ovshentov@jonesday.com
*ATTORNEY TO BE NOTICED*

**Richard H An**
Jones Day - New York
222 E 41 Street
New York, NY 10017
212/326-3939
Fax: 212/755-7306
Email: rhan@jonesday.com

**William J Brown, Jr**
Jones Day - Irvine
3 Park Plaza
Suite 1100
Irvine, CA 92614-8502
949/553-7547
Fax: 949/553-7539
Email: wbrown@jonesday.com
*ATTORNEY TO BE NOTICED*

**Consol Defendant**

**Pink Sheets, LLC**                    represented by **Eric Nevins Whitney**

*TERMINATED: 07/13/2006*

Greenberg Traurig
2200 Ross Ave
Suite 5200
Dallas, TX 75201
972/419-1276
Email: whitneye@gtlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**George C Lewis**
Greenberg Traurig - Denver
1200 17th St
Suite 2400
Denver, CO 80202
303/572-6575
Fax: 13035726575
Email: lewisg@gtlaw.com
*ATTORNEY TO BE NOTICED*

**Gregg I Anderson**
Greenberg Traurig - Denver
1200 17th St
Suite 2400
Denver, CO 80202
303/572-6500
Fax: 13035726540
Email: andersong@gtlaw.com
*ATTORNEY TO BE NOTICED*

**Counter Claimant**
**Grande Communication Networks, Inc.**

V.

**Counter Defendant**
**epicRealm Licensing, LLC**                    represented by    **Larry Dean Carlson**
                                                                 (See above for address)
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

**Counter Claimant**
**Friendfinder Network, Inc.**

V.

**Counter Defendant**
**epicRealm Licensing, LLC**                    represented by    **Larry Dean Carlson**
                                                                 (See above for address)
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

**Counter Claimant**

A
67

eHarmony.com, Inc.
*TERMINATED: 08/18/2006*

V.

**Counter Defendant**

epicRealm Licensing, LLC

**Counter Defendant**

epicRealm Licensing, LLC

**Counter Claimant**

eHarmony.com, Inc.
*TERMINATED: 08/18/2006*

V.

**Counter Defendant**

epicRealm Licensing, LLC

**Counter Claimant**

Autoflex Leasing, Inc.

V.

**Counter Defendant**

epicRealm Licensing, LP                     represented by  **Larry Dean Carlson**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Counter Claimant**

Clark Consulting, Inc.,                     represented by  **Charles Ainsworth**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

epicRealm Licensing, LP

**Counter Claimant**

Grande Communication Networks, Inc.

V.

**Counter Defendant**

epicRealm Licensing, LLC

**Counter Claimant**

Franklin Covey Co.

V.

**Counter Defendant**

epicRealm Licensing, LLC

| Date Filed | # | Docket Text |
|---|---|---|
| 05/02/2005 | 1 | COMPLAINT against Autoflex Leasing, Inc., eHarmony.com, Inc., Friendfinder Network, Inc., Grande Communication Networks, Inc., IJL-NCP, LLC, Transplace Texas, L.P. (Filing fee $ 250.) , filed by epicRealm Licensing, LLC. (Attachments: # 1 # 2 # 3 Civil Cover Sheet)(ehs) Modified on 2/7/2006 (ehs, ). (Entered: 05/03/2005) |
| 05/02/2005 | 2 | CORPORATE DISCLOSURE STATEMENT filed by epicRealm Licensing, LLC (ehs) (Entered: 05/03/2005) |
| 05/02/2005 | | Summons Issued as to Autoflex Leasing, Inc., eHarmony.com, Inc., Friendfinder Network, Inc., Grande Communication Networks, Inc., IJL-NCP, LLC, Transplace Texas, L.P. (ehs) (Entered: 05/03/2005) |
| 05/02/2005 | | Filing fee: $ 250.00, receipt number 2-1-208 (ehs) (Entered: 05/03/2005) |
| 05/02/2005 | 3 | Magistrate Consent Form Mailed to epicRealm Licensing, LLC (ehs) (Entered: 05/03/2005) |
| 05/02/2005 | | DEMAND for Trial by Jury by epicRealm Licensing, LLC. (ehs) (Entered: 05/03/2005) |
| 05/02/2005 | 4 | Form mailed to Commissioner of Patents and Trademarks. (ehs) (Entered: 05/03/2005) |
| 05/03/2005 | 5 | NOTICE of Attorney Appearance by Otis W Carroll, Jr on behalf of epicRealm Licensing, LLC (Carroll, Otis) (Entered: 05/03/2005) |
| 05/04/2005 | 6 | NOTICE of Attorney Appearance by Sidney Calvin Capshaw, III on behalf of epicRealm Licensing, LLC (Capshaw, Sidney) (Entered: 05/04/2005) |
| 05/23/2005 | 7 | Return of Personal Service Executed as to Autoflex Leasing, Inc. on 5/4/2005, answer due: 5/24/2005. (ch, ) (Entered: 05/23/2005) |
| 05/23/2005 | 8 | Return of Personal Service Executed as to Transplace Texas, L.P. on 5/5/2005, answer due: 5/25/2005. (ch, ) (Entered: 05/23/2005) |
| 05/23/2005 | 9 | Return of Service Executed Certified Mail as to Grande Communication Networks, Inc. on 5/7/2005, answer due: 5/27/2005. (ch, ) Modified on 5/23/2005 (ch, ). (Entered: 05/23/2005) |
| 05/23/2005 | 10 | Return of Service Executed Certified Mail as to Friendfinder Network, Inc. on 5/10/2005, answer due: 5/31/2005. (ch, ) Modified on 5/23/2005 (ch, ). (Entered: 05/23/2005) |
| 05/23/2005 | 11 | Return of Service Executed Certified Mail as to IJL-NCP, LLC on 5/10/2005, answer due: 5/31/2005. (ch, ) Modified on 5/23/2005 (ch, ). (Entered: 05/23/2005) |

| 05/23/2005 | 12 | Return of Service Executed Certified Mail as toe Harmony.com, Inc. on 5/10/2005, answer due: 5/31/2005. (ch, ) (Entered: 05/23/2005) |
|---|---|---|
| 05/23/2005 | 13 | *Defendant's* ANSWER to Complaint by Autoflex Leasing, Inc..(Bezney, Paul) (Entered: 05/23/2005) |
| 05/23/2005 | 14 | CORPORATE DISCLOSURE STATEMENT filed by Autoflex Leasing, Inc. identifying None as Corporate Parent. (Bezney, Paul) (Entered: 05/23/2005) |
| 05/25/2005 | 15 | ANSWER to Complaint with Jury Demand by Transplace Texas, L.P..(Brandt, Jane) (Entered: 05/25/2005) |
| 05/25/2005 | 16 | CORPORATE DISCLOSURE STATEMENT filed by Transplace Texas, L.P. identifying Transplace GP, LLC and Transplace LP, LLC as Corporate Parent. (Brandt, Jane) (Entered: 05/25/2005) |
| 05/26/2005 | 17 | Joint MOTION for Extension of Time to File Answer *Move or otherwise respond to complaint* by Grande Communication Networks, Inc.. (Attachments: # 1 Text of Proposed Order)(Brookshire, William) (Entered: 05/26/2005) |
| 05/27/2005 | 18 | Consent MOTION for Extension of Time to File Answer re 1 Complaint, by Friendfinder Network, Inc.. (Attachments: # 1 Text of Proposed Order)(Su, Henry) (Entered: 05/27/2005) |
| 05/27/2005 | 19 | NOTICE of Attorney Appearance by Henry C Su on behalf of Friendfinder Network, Inc. (Su, Henry) (Entered: 05/27/2005) |
| 05/27/2005 | 20 | NOTICE of Attorney Appearance by Tyler Alexander Baker on behalf of Friendfinder Network, Inc. (Baker, Tyler) (Entered: 05/27/2005) |
| 05/31/2005 | 21 | ***FILED IN ERROR. SEE CORRECTED DOCUMENT #23*** <br><br> MOTION for Extension of Time to File Answer by eHarmony.com, Inc.. (Attachments: # 1 Text of Proposed Order)(Findlay, Eric) Modified on 6/1/2005 (ehs, ). (Entered: 05/31/2005) |
| 06/01/2005 | 22 | ***FILED IN ERROR. PLEASE IGNORE. NO CERTIFICATE OF SERVICE.*** <br><br> NOTICE of Attorney Appearance by Franklin W Jones, Jr on behalf of epicRealm Licensing, LLC (Jones, Franklin) Modified on 6/1/2005 (fal, ). (Entered: 06/01/2005) |
| 06/01/2005 | 23 | ***REPLACES DOCUMENT #21 WHICH WAS FILED IN ERROR*** <br><br> MOTION for Extension of Time to File Answer by eHarmony.com, Inc.. (Attachments: # 1 Text of Proposed Order)(Findlay, Eric) Modified on 6/1/2005 (ehs, ). (Entered: 06/01/2005) |
| 06/02/2005 | 24 | ORDER granting 23 Motion for Extension of Time to Answer. Deadline extended to 7/8/05 . Signed by Judge T. John Ward on 6/2/05. (ehs) (Entered: 06/02/2005) |
| 06/02/2005 | | Answer Due Deadline Updated for eHarmony.com, Inc. to 7/8/2005. (ehs) (Entered: 06/02/2005) |
| 06/02/2005 | 25 | NOTICE of Attorney Appearance by Franklin W Jones, Jr on behalf of |

| | | epicRealm Licensing, LLC (Jones, Franklin) (Entered: 06/02/2005) |
|---|---|---|
| 06/02/2005 | 26 | ORDER granting 17 Motion for Extension of Time to Answer. Time extended to 6/16/05 . Signed by Judge T. John Ward on 6/2/05. (ehs) (Entered: 06/02/2005) |
| 06/02/2005 | | Answer Due Deadline Updated for Grande Communication Networks, Inc. to 6/16/2005. (ehs) (Entered: 06/02/2005) |
| 06/02/2005 | 27 | NOTICE of Attorney Appearance by Eric Hugh Findlay on behalf of eHarmony.com, Inc. (Findlay, Eric) (Entered: 06/02/2005) |
| 06/02/2005 | 28 | NOTICE of Attorney Appearance by Eric Miller Albritton on behalf of Friendfinder Network, Inc. (Albritton, Eric) (Entered: 06/02/2005) |
| 06/03/2005 | 29 | ORDER granting 18 Motion for Extension of Time to Answer. Answer deadline set for 6/21/05 . Signed by Judge T. John Ward on 6/3/05. (ehs) (Entered: 06/06/2005) |
| 06/03/2005 | | Answer Due Deadline Updated for Friendfinder Network, Inc. to 6/21/2005. (ehs) (Entered: 06/06/2005) |
| 06/08/2005 | 30 | MOTION for Leave to File *First Amended Complaint* by epicRealm Licensing, LLC. (Attachments: # 1Exhibit A #(2) Proposed Order)(Carlson, Larry) Modified on 6/9/2005 (fal, ). (Entered: 06/08/2005) |
| 06/08/2005 | 31 | NOTICE of Attorney Appearance by Tracy Lynn Stoker on behalf of Autoflex Leasing, Inc. (Stoker, Tracy) (Entered: 06/08/2005) |
| 06/09/2005 | 32 | NOTICE of Attorney Appearance by Ronald Stephen Vickery on behalf of eHarmony.com, Inc. (Vickery, Ronald) (Entered: 06/09/2005) |
| 06/10/2005 | 33 | ORDER granting 30 Motion for Leave to File to file first amended complaint . Signed by Judge T. John Ward on 6/10/05. (ehs) (Entered: 06/10/2005) |
| 06/10/2005 | 34 | AMENDED COMPLAINT against Autoflex Leasing, Inc., eHarmony.com, Inc., Friendfinder Network, Inc., Grande Communication Networks, Inc., IJL-NCP, LLC, Transplace Texas, L.P., filed by epicRealm Licensing, LLC.( ehs ) (Entered: 06/10/2005) |
| 06/13/2005 | | Summons Issued as to IJL-NCP, LLC. (ch, ) (Entered: 06/13/2005) |
| 06/14/2005 | 35 | AMENDED ANSWER to *Plaintiff's First* 34 Amended Complaint by Autoflex Leasing, Inc.. (Bezney, Paul) (Entered: 06/14/2005) |
| 06/20/2005 | 36 | APPLICATION to Appear Pro Hac Vice by Attorney Ira P Rothken for Friendfinder Network, Inc.. (ch, ) (Entered: 06/20/2005) |
| 06/20/2005 | | Pro Hac Vice Filing fee paid by Rothken; Fee: $25.00, receipt number: 2-1-383 (ch, ) (Entered: 06/20/2005) |
| 06/21/2005 | 37 | *GRANDE COMMUNICATIONS, INC.'S ORIGINAL* ANSWER to Amended Complaint *OF EPICREALM LICENSING, LLC*, First COUNTERCLAIM against epicRealm Licensing, LLC by Grande Communication Networks, Inc.. (Brookshire, William) (Entered: 06/21/2005) |
| 06/22/2005 | | Magistrate consent form mailed to J. Clifford Gunter, III. (fal, ) (Entered: 06/22/2005) |
| 06/24/2005 | 38 | ANSWER to Amended Complaint by Transplace Texas, L.P..(Brandt, Jane) |

| | | (Entered: 06/24/2005) |
|---|---|---|
| 06/24/2005 | 39 | Consent MOTION for Extension of Time to File Answer re 34 Amended Complaint by Friendfinder Network, Inc.. (Attachments: # 1 Text of Proposed Order)(Su, Henry) (Entered: 06/24/2005) |
| 06/27/2005 | 40 | ORDER granting 39 Motion for Extension of Time to Answer. Deadline for Friendfinder to answer is set for 7/8/05 . Signed by Judge T. John Ward on 6/27/05. (ehs) (Entered: 06/27/2005) |
| 06/29/2005 | | Mail Returned as Undeliverable. Mail sent to J Clifford Gunter, III returned stating "RTS unable to deliver as no such number (ehs) (Entered: 06/29/2005) |
| 06/29/2005 | | Mail Returned as Undeliverable. Mail sent to J Clifford Gunter, III stating "RTS unable to deliver for reason shown, no such number" (ehs) (Entered: 06/29/2005) |
| 06/29/2005 | 41 | ***FILED IN ERROR. PLEASE IGNORE.***<br><br>NOTICE by epicRealm Licensing, LLC *Return of Service Upon Defendant IJL Holdings, Inc. through Secretary of State* (Carlson, Larry) Modified on 6/30/2005 (fal, ). (Entered: 06/29/2005) |
| 06/29/2005 | 42 | ***FILED IN ERROR. PLEASE IGNORE.***<br><br>NOTICE by epicRealm Licensing, LLC *Return of Service Upon Defendant It's Just Lunch International LLC through Secretary of State* (Carlson, Larry) Modified on 6/30/2005 (fal, ). (Entered: 06/29/2005) |
| 06/30/2005 | | ***FILED IN ERROR. PLEASE IGNORE Documents #41 and #42. Return of service not electronically filed by the attorney.*** (fal, ) (Entered: 06/30/2005) |
| 07/05/2005 | 48 | SUMMONS Returned Executed by epicRealm Licensing, LLC. as to deft IJL-NCP, LLC served on 6/15/2005 by process server, answer due 7/5/2005. (ehs) (Entered: 07/11/2005) |
| 07/05/2005 | 49 | SUMMONS Returned Executed by epicRealm Licensing, LLC. as to deft IJL Holdings, Inc. served on 6/15/2005 by process server, answer due 7/5/2005. ( ehs ) (Entered: 07/11/2005) |
| 07/08/2005 | 43 | ANSWER to Amended Complaint, COUNTERCLAIM against epicRealm Licensing, LLC by Friendfinder Network, Inc..(Su, Henry) (Entered: 07/08/2005) |
| 07/08/2005 | 44 | CORPORATE DISCLOSURE STATEMENT filed by Friendfinder Network, Inc. identifying Various, Inc. as Corporate Parent. (Su, Henry) (Entered: 07/08/2005) |
| 07/08/2005 | 45 | *Plaintiff's Reply/* ANSWER to Counterclaim *of Grande Communications, Inc.* by epicRealm Licensing, LLC.(Carlson, Larry) (Entered: 07/08/2005) |
| 07/08/2005 | | Magistrate consent form mailed to Tyler Baker. (fal, ) (Entered: 07/08/2005) |
| 07/08/2005 | 46 | *Plaintiff's Reply/* ANSWER to Counterclaim *of Friendfinder Network, Inc.* by epicRealm Licensing, LLC.(Carlson, Larry) (Entered: 07/08/2005) |
| 07/08/2005 | 47 | ANSWER to Amended Complaint *and Affirmative Defenses,* COUNTERCLAIM against epicRealm Licensing, LLC by eHarmony.com, Inc.. |

| | | (Findlay, Eric) (Entered: 07/08/2005) |
|---|---|---|
| 07/13/2005 | 50 | NOTICE by epicRealm Licensing, LLC *Rule 41(a)(1)(i) Notice of Dismissal of Defendants It's Just Lunch International, LLC and IJL Holdings, Inc.* (Carlson, Larry) (Entered: 07/13/2005) |
| 07/15/2005 | 51 | *Plaintiff's Reply/* ANSWER to Counterclaim *by eHarmony.com, Inc. filed* by epicRealm Licensing, LLC.(Carlson, Larry) (Entered: 07/15/2005) |
| 08/12/2005 | 52 | APPLICATION to Appear Pro Hac Vice by Attorney Christopher R Ottenweller for eHarmony.com, Inc.. (ehs, ) (Entered: 08/17/2005) |
| 08/12/2005 | | Pro Hac Vice Filing fee paid by Chris Ottenweller; Fee: $25, receipt number: 2-1-603 (ehs, ) (Entered: 08/17/2005) |
| 09/26/2005 | 53 | MOTION to Change Venue *to Judge Folsom* by Autoflex Leasing, Inc., Friendfinder Network, Inc.. (Attachments: # 1 Text of Proposed Order) (Albritton, Eric) (Entered: 09/26/2005) |
| 10/10/2005 | 54 | RESPONSE to Motion re 53 MOTION to Change Venue *to Judge Folsom* filed by epicRealm Licensing, LLC. (Attachments: # 1 Text of Proposed Order Proposed Order Denying Defendant's Motion to Transfer)(Carlson, Larry) (Entered: 10/10/2005) |
| 10/24/2005 | 55 | APPLICATION to Appear Pro Hac Vice by Attorney Gabriel M Ramsey for eHarmony.com, Inc.. (ch, ) (Entered: 10/25/2005) |
| 10/24/2005 | | Pro Hac Vice Filing fee paid by: Ramsey $ 25.00, receipt number 2-1-835 (ch, ) Modified on 10/25/2005 (ch, ). (Entered: 10/25/2005) |
| 11/01/2005 | 56 | ***#57 CORRECTS THIS DOCUMENT***<br><br>MOTION to Substitute Attorney, MOTION to Withdraw *Attorney* by Grande Communication Networks, Inc.. (Ravel, J) Modified on 11/1/2005 (mpv, ). (Entered: 11/01/2005) |
| 11/01/2005 | 57 | Amended MOTION to Substitute Attorney, Amended MOTION to Withdraw as Attorney by Grande Communication Networks, Inc.*REPLACES #56.* (Attachments: # 1 Text of Proposed Order)(Ravel, J) Modified on 11/1/2005 (mpv, ). (Entered: 11/01/2005) |
| 11/01/2005 | | ***FILED IN ERROR. Document # 56, Motion to Substitute/Withdraw Attorney. PLEASE IGNORE. Replaced by #57***<br><br>(mpv, ) (Entered: 11/01/2005) |
| 11/02/2005 | 58 | ORDER to consolidate Civil Action No 2:05cv356 with this present action for pre-trial purposes without prejudice. Signed by Judge T. John Ward on 11/2/05. (ehs, ) (Entered: 11/02/2005) |
| 11/03/2005 | 59 | ORDER granting 57 Motion to Substitute Attorney. Added attorney J Stephen Ravel for Grande Communication Networks, Inc.. Attorney William W Brookshire, III terminated, granting 57 Motion to Withdraw as Attorney. Added attorney J Stephen Ravel for Grande Communication Networks, Inc.. Attorney William W Brookshire, III terminated . Signed by Judge T. John Ward on 11/3/05. (ehs, ) (Entered: 11/03/2005) |
| | | |

| 11/09/2005 | 60 | ORDER REASSIGNING CASE. Case reassigned to Judge David Folsom for all further proceedings. Judge T. John Ward no longer assigned to case. Signed by Judge T. John Ward on 11/9/05. (ehs, ) (Entered: 11/10/2005) |
| --- | --- | --- |
| 11/14/2005 | 61 | VACATED Per Order #42 in 2:05cv150 - ORDER TO CONDUCT RULE 26 (f) CONFERENCE Rule 26 Meeting Report due by 1/9/2006.. Signed by Judge David Folsom on 11/14/05. (mrm, ) Modified on 11/17/2005 ehs, ). (Entered: 11/14/2005) |
| 11/15/2005 | 62 | ***FILED IN ERROR; PLEASE IGNORE; FILED BY WRONG ATTY; ATTY TO FILE APPL TO APPEAR PHV*** <br><br> NOTICE of Attorney Appearance by Paul Alexander Bezney on behalf of Autoflex Leasing, Inc. (Bezney, Paul) Modified on 11/15/2005 (mpv, ). (Entered: 11/15/2005) |
| 11/15/2005 | 63 | ***FILED IN ERROR; PLEASE IGNORE; FILED BY WRONG ATTY: ATTY TO FILE APPL TO APPEAR PHV*** <br><br> NOTICE of Attorney Appearance by Paul Alexander Bezney on behalf of Autoflex Leasing, Inc. (Bezney, Paul) Modified on 11/15/2005 (mpv, ). (Entered: 11/15/2005) |
| 11/15/2005 | | ***FILED IN ERROR. Document # 62 and 63, Notices of Atty Appearance. PLEASE IGNORE. FILED BY WRONG ATTYS; ATTYS TO FILE APPL TO APPEAR PHV*** <br><br> (mpv, ) (Entered: 11/15/2005) |
| 11/16/2005 | 64 | ORDER that case be consolidated with 2:05cv150 and 2:05cv356. Cases associated.Case referred to Magistrate Judge Craven and set for status conference on 12/14/05 at 10:00 am in Texarkana. Order #61 is VACATED in this case. Signed by Judge David Folsom on 11/16/05. (ehs, ) (Entered: 11/17/2005) |
| 11/16/2005 | | ORDER REFERRING CASE to Magistrate Judge Caroline Craven. Signed by Judge David Folsom on 11/16/05. (ehs, ) (Entered: 11/17/2005) |
| 11/16/2005 | | Set/Reset Hearings: Status Conference set for 12/14/2005 10:00 AM before Magistrate Judge Caroline Craven. (ehs, ) (Entered: 11/17/2005) |
| 11/18/2005 | 68 | APPLICATION to Appear Pro Hac Vice by Attorney Michael J Sacksteder for Friendfinder Network, Inc.. (ch, ) (Entered: 11/23/2005) |
| 11/18/2005 | | Pro Hac Vice Filing fee paid by Sacksteder; Fee: $25, receipt number: 2-1-929 (ch, ) (Entered: 11/23/2005) |
| 11/21/2005 | 65 | MOTION to Withdraw *Henry Su as Counsel of Record* by Friendfinder Network, Inc.. (Attachments: # 1 Text of Proposed Order)(Albritton, Eric) (Entered: 11/21/2005) |
| 11/21/2005 | 66 | NOTICE of Hearing: Status Conference set for 12/14/2005 10:00 AM in Ctrm 403 (Texarkana) before Magistrate Judge Caroline Craven. (lf, ) (Entered: 11/21/2005) |
| 11/22/2005 | 67 | ORDER granting 65 Motion to Withdraw Henry Su as counsel for Friendfinder. Signed by Judge Caroline Craven on 11/22/05. (ehs, ) (Entered: 11/22/2005) |

| 11/22/2005 | 69 | APPLICATION to Appear Pro Hac Vice by Attorney Steven J Rocci for Autoflex Leasing, Inc.. (ch, ) (Entered: 11/23/2005) |
|---|---|---|
| 11/22/2005 | | Pro Hac Vice Filing fee paid by Rocci; Fee: $25, receipt number: 2-1-938 (ch, ) (Entered: 11/23/2005) |
| 11/22/2005 | 70 | APPLICATION to Appear Pro Hac Vice by Attorney Michael W Tieff for Autoflex Leasing, Inc.. (ch, ) (Entered: 11/23/2005) |
| 11/22/2005 | | Pro Hac Vice Filing fee paid by Tieff; Fee: $25, receipt number: 2-1-938 (ch, ) (Entered: 11/23/2005) |
| 11/28/2005 | 71 | ORDER regarding Status Conference. Parties to submit any items to be discussed at the conference on or before 12/12/05. Signed by Judge Caroline Craven on 11/28/05. (ehs, ) (Entered: 11/29/2005) |
| 12/13/2005 | 72 | ORDERED that the claims asserted herein by Pla epicRealm Licensing, Inc. against Dft Speedera Network Corporation be, and hereby are, dismissed with prejudice Cause # 2:05cv150; ORDERED that the claims asserted herein by counter-plaintiff Speedera Network Corporation against counter-defendant epicRealm Licensing, Inc. be, and hereby are, dismissed with prejudice; Ordered that the parties shall bear their own attorney's fees, expenses and costs; ORDERED that Civil Action No. 2:05cv163-DF, styled epicRealm Licensing, LLC vv. Autoflex Leasing, Inc, et al and Civil Action No. 2:05cv356-DF, styled epicRealm Liscensing LLC vs Franklin Covey Co., et al, are still open and active cases, and are not dismissed by this Order; and ORDERED that Civil Action No. 2-05-cv-163-DF will replace Civil Action No. 2-05-cv-150-DF as the lead case for docketing purposes. Signed by Judge David Folsom on 12/13/05. (mpv, ) (Entered: 12/13/2005) |
| 12/14/2005 | 74 | Minute Entry for proceedings held before Judge Caroline Craven : Status Conference held on 12/14/2005. (Court Reporter none.) (lf, ) (Entered: 12/16/2005) |
| 12/15/2005 | 73 | ORDER - a final pretrial conference date of 3/5/07 and a jury selection date of 3/6/07. Parties to submit to the Court within 21 days from the date of entry of this Order, an agreed docket control order. Signed by Judge Caroline Craven on 12/15/05. (ehs, ) (Entered: 12/15/2005) |
| 12/16/2005 | 75 | ORDER - the Court is considering the appointment of Mr. Richard Egan of O'Keefe, Egan & Peterman, LLP of Austin, TX. Parties are to file any objections to this appointment within 5 days from the date of this Order. Objections to be filed under seal. Signed by Judge Caroline Craven on 12/16/05. (ehs, ) (Entered: 12/16/2005) |
| 12/22/2005 | 76 | Joint MOTION for Discovery *Joint Motion for Entry of Discovery Order* by It's Just Lunch International LLXC, IJL Holdings, Inc., Autoflex Leasing, Inc., eHarmony.com, Inc., Friendfinder Network, Inc., Grande Communication Networks, Inc., IJL-NCP, LLC, Transplace Texas, L.P.. (Attachments: # 1 Text of Proposed Order)(Lee, Lance) (Entered: 12/22/2005) |
| 12/22/2005 | 77 | ORDER setting discovery limitations as set forth herein. Signed by Judge Caroline Craven on 12/22/05. (ehs, ) (Entered: 12/27/2005) |
| 12/29/2005 | 78 | AFFIDAVIT OF ENGAGEMENT OF RICHARD EGAN as the Court's Technical Advisor in this action . (mpv, ) (Entered: 12/29/2005) |

| 12/29/2005 | 79 | ORDER appointing Richard Egan as a technical advisor according to the terms and conditions set forth herein. Signed by Judge Caroline Craven on 12/29/05. (ehs, ) (Entered: 12/29/2005) |
|---|---|---|
| 01/05/2006 | 80 | AMENDED ORDER - Court appoints Richard Egan to serve as a technical advisor in this cause of action. Mr. Egan will execute an affidavit indicating his understanding of this Order prior to begining his engagement. Signed by Judge Caroline Craven on 1/4/06. (ehs, ) (Entered: 01/05/2006) |
| 01/05/2006 | 81 | MOTION for Extension of Time to File *AGREED MOTION FOR EXTENSION OF DEADLINE TO PROVIDE THE COURT WITH A PROPOSED DOCKET CONTROL ORDER AND PROPOSED PROTECTIVE ORDER* by Autoflex Leasing, Inc., eHarmony.com, Inc., Friendfinder Network, Inc., Grande Communication Networks, Inc., Transplace Texas, L.P.. (Attachments: # 1 Text of Proposed Order)(Albritton, Eric) (Entered: 01/05/2006) |
| 01/09/2006 | 82 | ORDER granting 81 Motion for Extension of Time to File proposed orders. Deadline extended to 1/12/06. Signed by Judge Caroline Craven on 1/9/06. (ehs, ) (Entered: 01/10/2006) |
| 01/12/2006 | 83 | NOTICE by epicRealm Licensing, LLC *Agreed Submission in Response To The Court's December 15, 2005, and January 9, 2006, Orders* (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D)(Carlson, Larry) (Entered: 01/12/2006) |
| 01/13/2006 | 84 | NOTICE by epicRealm Licensing, LLC re 83 Notice (Other) *PROTECTIVE ORDER* (Carlson, Larry)(Filed Per Judge) Modified on 1/17/2006 (mpv, ). (Entered: 01/13/2006) |
| 01/13/2006 | 85 | ORDER CONCERNING CLAIM CONSTRUCTION HEARING ORDERING that claim construction hearing is scheduled for July 13 and July 14, 2006 and will continue through July 14 only if necessary. The hearing will begin at 9:00 am on July 13 and it will be conducted in the Fourth Floor Courtroom unless otherwise notified. Courtesty copies of all claim construction briefings should be forwarded to both the Court and technical advisor Richard Egan. At the earing pla is limited to 5 hours and dfts are limited to 5 hours.. Signed by Judge Caroline Craven on 1/13/2006. (sm, ) (Entered: 01/13/2006) |
| 01/13/2006 | 86 | AGREED DOCKET CONTROL/SCHEDULING ORDER: Final Pretrial Conference set for 3/5/2007 in Ctrm 106 (Marshall) before Judge David Folsom. Amended Pleadings due by 10/22/2006. Joinder of Parties due by 10/22/2006. Jury Selection set for 3/6/2007 in Ctrm 106 (Marshall) before Judge David Folsom. JOINT Proposed Pretrial Order due by 2/12/2007.. Signed by Judge Caroline Craven on 1/13/2006. (sm, ) (Entered: 01/13/2006) |
| 01/17/2006 | 87 | PROTECTIVE ORDER as set forth herein. Signed by Judge Caroline Craven on 1/17/06. (ehs, ) (Entered: 01/17/2006) |
| 01/17/2006 | 88 | MOTION to Withdraw as Attorney by Transplace Texas, L.P.. (Attachments: # 1 Text of Proposed Order)(Brandt, Jane) Certificate of Conference added on 1/18/2006 (mpv, ). Modified on 1/18/2006 (mpv, ). (Entered: 01/17/2006) |
| 01/18/2006 | 89 | CORPORATE DISCLOSURE STATEMENT filed by eHarmony.com, Inc. (Vickery, Ronald) (Entered: 01/18/2006) |
| 01/18/2006 | 90 | ORDER granting 88 Motion to Withdraw as Attorney Robert C Earle as Counsel |

| | | of Record for Transplace . Signed by Judge Caroline Craven on 1/18/06. (ehs, ) (Entered: 01/19/2006) |
|---|---|---|
| 01/20/2006 | 91 | CORPORATE DISCLOSURE STATEMENT filed by Grande Communication Networks, Inc. identifying Grande Communications Holdings, Inc. as Corporate Parent. (Ravel, J) (Entered: 01/20/2006) |
| 01/26/2006 | 92 | MOTION for Leave to File *Second Amended Complaint* by epicRealm Licensing, LLC. (Attachments: # 1 Exhibit Exhibit A (proposed Second Amended Complaint)# 2 Text of Proposed Order)(Carlson, Larry) (Entered: 01/26/2006) |
| 01/27/2006 | 93 | ORDER granting 92 Motion for Leave to File Second Amended Complaint. Signed by Judge Caroline Craven on 1/27/06. (ch, ) (Entered: 01/27/2006) |
| 01/27/2006 | 94 | ORDER that Dfts Motion for Extention of Time to Respond to Pla First Request for Production to All dfts (Doc#106 in case 2:05-cv-356) is hereby granted. The deadline for dfts response or objections to pla First Request for Production to All dfts shall be 2/16/06. Signed by Judge Caroline Craven on 1/27/06. (ch, ) (Entered: 01/27/2006) |
| 01/27/2006 | 95 | SECOND AMENDED COMPLAINT against Autoflex Leasing, Inc. et al, filed by epicRealm Licensing, LLC.(ch, ) (Entered: 01/30/2006) |
| 01/30/2006 | | NOTICE Per Judge Craven; Re: Case #2:05cv163 and 2:05cv356; parties have now been added in each case as consolidated parties, anything pertaining to both cases should be filed in both cases. (mpv, ) (Entered: 01/30/2006) |
| 02/06/2006 | 96 | *FRIENDFINDER NETWORK, INC.* ANSWER to Complaint *SECOND AMENDED*, First COUNTERCLAIM *OF FRIENDFINDER NETWORK, INC.* against epicRealm Licensing, LLC by Friendfinder Network, Inc..(Baker, Tyler) (Entered: 02/06/2006) |
| 02/07/2006 | 97 | NOTICE of Attorney Appearance by Jeffrey Wayne Moles on behalf of epicRealm Licensing, LLC (Moles, Jeffrey) (Entered: 02/07/2006) |
| 02/07/2006 | 98 | *Reply and* ANSWER to Counterclaim *of Friendfinder Network, Inc.* by epicRealm Licensing, LLC.(Carlson, Larry) (Entered: 02/07/2006) |
| 02/08/2006 | 99 | ANSWER to Complaint with Jury Demand *and*, COUNTERCLAIM *to Second Amended Complaint 95* against epicRealm Licensing, LLC by eHarmony.com, Inc..(Vickery, Ronald) (Entered: 02/08/2006) |
| 02/08/2006 | 100 | ANSWER to Amended Complaint, COUNTERCLAIM against epicRealm Licensing, LP by Autoflex Leasing, Inc..(Bezney, Paul) (Entered: 02/08/2006) |
| 02/09/2006 | 101 | *Clark Consulting, Inc.'s* ANSWER to Amended Complaint *Second Amended Complaint*, COUNTERCLAIM against epicRealm Licensing, LP by Clark Consulting, Inc.,.(Ainsworth, Charles) (Entered: 02/09/2006) |
| 02/09/2006 | 102 | ANSWER to Complaint *(Second Amended)*, COUNTERCLAIM against epicRealm Licensing, LLC by Grande Communication Networks, Inc..(Ravel, J) (Entered: 02/09/2006) |
| 02/09/2006 | 103 | ANSWER to Amended Complaint by Transplace Texas, L.P..(Brandt, Jane) (Entered: 02/09/2006) |
| 02/09/2006 | 104 | ANSWER to Amended Complaint *Second*, COUNTERCLAIM against |

| | | epicRealm Licensing, LLC by Franklin Covey Co..(Beck, David) (Entered: 02/09/2006) |
|---|---|---|
| 02/10/2006 | 105 | *Reply and* ANSWER to Counterclaim *of eHarmony* by epicRealm Licensing, LLC.(Carlson, Larry) (Entered: 02/10/2006) |
| 02/10/2006 | 106 | *Reply and* ANSWER to Counterclaim *of Grande Communications* by epicRealm Licensing, LLC.(Carlson, Larry) (Entered: 02/10/2006) |
| 02/10/2006 | 107 | *Reply and* ANSWER to Counterclaim *of Autoflex Leasing* by epicRealm Licensing, LP.(Carlson, Larry) (Entered: 02/10/2006) |
| 02/14/2006 | 123 | APPLICATION to Appear Pro Hac Vice by Attorney Richard B LeBlanc for Autoflex Leasing, Inc..APPROVED (poa, ) (Entered: 02/24/2006) |
| 02/14/2006 | | Pro Hac Vice Filing fee paid by LeBlanc; Fee: $25, receipt number: 2-1-1179 (poa, ) (Entered: 02/24/2006) |
| 02/16/2006 | 108 | NOTICE of Disclosure by epicRealm Licensing, LLC *(Notice of Service of Initial Disclosures)* (Moles, Jeffrey) (Entered: 02/16/2006) |
| 02/16/2006 | 109 | NOTICE by eHarmony.com, Inc. *of Compliance* (Vickery, Ronald) (Entered: 02/16/2006) |
| 02/16/2006 | 110 | NOTICE of Disclosure by Clark Consulting, Inc., (Ainsworth, Charles) (Entered: 02/16/2006) |
| 02/16/2006 | 111 | NOTICE of Disclosure by Transplace Texas, L.P. (Brandt, Jane) (Entered: 02/16/2006) |
| 02/16/2006 | 112 | NOTICE of Disclosure by Grande Communication Networks, Inc. (Ravel, J) (Entered: 02/16/2006) |
| 02/16/2006 | 113 | NOTICE of Disclosure by Autoflex Leasing, Inc. (Rocci, Steven) (Entered: 02/16/2006) |
| 02/16/2006 | 114 | NOTICE of Disclosure by Pink Sheets, LLC *Notice of Initial Disclosures and Objections and Answers to Plaintiff's First Request for Production to All Defendants* (Whitney, Eric) (Entered: 02/16/2006) |
| 02/16/2006 | 115 | NOTICE of Disclosure by Friendfinder Network, Inc. (Albritton, Eric) (Entered: 02/16/2006) |
| 02/21/2006 | 116 | NOTICE by eHarmony.com, Inc. *of Discovery Compliance* (Vickery, Ronald) (Entered: 02/21/2006) |
| 02/22/2006 | 117 | NOTICE of Disclosure by Friendfinder Network, Inc. *Notice of Compliance Pursuant to P.R. 3-3 and P.R. 3-4* (Albritton, Eric) (Entered: 02/22/2006) |
| 02/22/2006 | 118 | NOTICE by Pink Sheets, LLC *Confirming Service of Answers to Plaintiff's First Set of Common Interrogatories to All Defendants* (Whitney, Eric) (Entered: 02/22/2006) |
| 02/22/2006 | 119 | NOTICE by The Macerich Company *of Service of the Defendants' Rule 3-3 Invalidity Contentions and Rule 3-4 Document Production* (Leftwich, Kristoffer) (Entered: 02/22/2006) |
| 02/22/2006 | 120 | NOTICE by Franklin Covey Co. *Notice of Compliance with Patent Rules 3-3 and 3-4* (Beck, David) (Entered: 02/22/2006) |

| 02/22/2006 | 121 | NOTICE by eHarmony.com, Inc. *of Discovery Compliance to Patent Rule 3-4(a)* (Vickery, Ronald) (Entered: 02/22/2006) |
|---|---|---|
| 02/24/2006 | 122 | NOTICE of Attorney Appearance by Charles Ainsworth on behalf of Grande Communication Networks, Inc. (Ainsworth, Charles) (Entered: 02/24/2006) |
| 02/27/2006 | 124 | NOTICE by Autoflex Leasing, Inc. *of Service of Compliance* (Tieff, Michael) (Entered: 02/27/2006) |
| 02/28/2006 | 125 | First MOTION for Summary Judgment *of Noninfringement* by Autoflex Leasing, Inc.. Responses due by 3/15/2006 (Attachments: # 1 Exhibit Exhibit 1# 2 Exhibit Exhibit 2# 3 Exhibit Exhibit 3# 4 Exhibit Exhibit 4# 5 Exhibit Exhibit 5# 6 Exhibit Exhibit 6# 7 Exhibit Exhibit 7)(Rocci, Steven) Proposed Order added on 2/28/2006 (mpv, ). Modified on 2/28/2006 (mpv, ). (Entered: 02/28/2006) |
| 02/28/2006 | 126 | ***FILED IN ERROR; PLEASE IGNORE; PROPOSED ORDER NOW ATTACHED TO #125***<br><br>Additional Attachments to Main Document: 125 First MOTION for Summary Judgment *of Noninfringement.*. (Rocci, Steven) Modified on 2/28/2006 (mpv, ). (Entered: 02/28/2006) |
| 02/28/2006 | | ***FILED IN ERROR. Document # 126, Additional Attachments to Main Document #125 (PROPOSED ORDER) now attached to #125. PLEASE IGNORE.***<br><br>(mpv, ) (Entered: 02/28/2006) |
| 03/01/2006 | 130 | APPLICATION to Appear Pro Hac Vice by Attorney Candace J Morey for Friendfinder Network, Inc.. (ch, ) (Entered: 03/10/2006) |
| 03/01/2006 | | Pro Hac Vice Filing fee paid by Morey; Fee: $25, receipt number: 2-1-1207 (ch, ) (Entered: 03/10/2006) |
| 03/02/2006 | 127 | NOTICE by Autoflex Leasing, Inc. *of Proof of Service for Subpoena of Apple Computer* (Rocci, Steven) (Entered: 03/02/2006) |
| 03/08/2006 | 128 | MOTION for Extension of Time to File Response/Reply as to 125 First MOTION for Summary Judgment *of Noninfringement (Unopposed)* by epicRealm Licensing, LLC. (Attachments: # 1 30 (b)(6) Deposition Notice of Autoflex# 2 30 (b)(6) Deposition Notice of# 3 Joseph Camblin Notice of Deposition# 4 Text of Proposed Order)(Carlson, Larry) (Entered: 03/08/2006) |
| 03/09/2006 | 129 | ORDER granting 128 Motion for Extension of Time to File Response to Deft's Motion for Summary Judgment of Noninfringement and Brief in Support shall be due ten days after epicRealm takes the three depositions referred to in its motion . Signed by Judge Caroline Craven on 3/9/06. (ehs, ) (Entered: 03/09/2006) |
| 03/09/2006 | 134 | APPLICATION to Appear Pro Hac Vice by Attorney Otto O Lee for Friendfinder Network, Inc.. (ch, ) (Entered: 03/15/2006) |
| 03/09/2006 | | Pro Hac Vice Filing fee paid by Lee; Fee: $25, receipt number: 2-1-1251 (ch, ) (Entered: 03/15/2006) |
| 03/10/2006 | 131 | NOTICE by Franklin Covey Co., Clark Consulting, Inc.,, The Macerich |

| | | |
|---|---|---|
| | | Company, Safelite Group, Inc., Herbalife International of America, Inc.,, Pink Sheets, LLC, Autoflex Leasing, Inc., eHarmony.com, Inc., Friendfinder Network, Inc., Grande Communication Networks, Inc., Transplace Texas, L.P. *of Compliance with Local Patent Rule 4-1(a)* (Ainsworth, Charles) (Entered: 03/10/2006) |
| 03/13/2006 | 132 | NOTICE of Attorney Appearance by Charles Ainsworth on behalf of Herbalife International of America, Inc., (Ainsworth, Charles) (Entered: 03/13/2006) |
| 03/14/2006 | 133 | NOTICE by eHarmony.com, Inc. *of Discovery Compliance* (Vickery, Ronald) (Entered: 03/14/2006) |
| 03/30/2006 | 135 | NOTICE of Attorney Appearance by Elizabeth L DeRieux on behalf of epicRealm Licensing, LLC (DeRieux, Elizabeth) (Entered: 03/30/2006) |
| 03/31/2006 | 136 | NOTICE by Safelite Group, Inc. *Defendants' Notice of Compliance* (Prescott, John) (Entered: 03/31/2006) |
| 04/10/2006 | 137 | SEALED PATENT RESPONSE to SEALED PATENT MOTION re 125 First MOTION for Summary Judgment *of Noninfringement* filed by epicRealm Licensing, LLC. (Attachments: # (1) Exhibit Exhibits)(Carlson, Larry) (Entered: 04/10/2006) |
| 04/12/2006 | 138 | MOTION for Extension of Time to File Response/Reply *Brief in Support of its Motion for Summary Judgment of Noninfringement* by Autoflex Leasing, Inc.. (Rocci, Steven) Proposed Order added on 4/12/2006 (mpv, ). Modified on 4/12/2006 (mpv, ). (Entered: 04/12/2006) |
| 04/13/2006 | 139 | ORDER granting 138 Motion for Extension of Time to File reply brief in support of its motion for summary judgment of non-infringement. Responses due by 4/24/2006. Signed by Judge Caroline Craven on 4/13/06. (ehs, ) (Entered: 04/13/2006) |
| 04/19/2006 | 140 | MOTION for Leave to File *Additional Materials with its Reply Brief in Support of Motion for Summary Judgment of Non-Infringement* by Autoflex Leasing, Inc.. (Attachments: # 1 Text of Proposed Order Proposed Order)(Rocci, Steven) (Entered: 04/19/2006) |
| 04/20/2006 | 141 | ORDER granting 140 Motion for Leave to File additional materials with its reply brief in support of motion for summary judgment of non-infringement. Signed by Judge Caroline Craven on 4/20/06. (ehs, ) (Entered: 04/20/2006) |
| 04/21/2006 | 142 | STATUS REPORT *Joint Claim Construction and Pre-Hearing Statement* by epicRealm Licensing, LLC. (Carlson, Larry) (Entered: 04/21/2006) |
| 04/24/2006 | 143 | SEALED PATENT DOCUMENT *Autoflex's Reply Brief of Motion for Summary Judgment of Noninfringement*. (Attachments: # (1) Exhibit Exhibit 8# (2) Exhibit Exhibit 9# (3) Exhibit Exhibit 10# (4) Exhibit Exhibit 11# (5) Exhibit Exhibit 12# (6) Exhibit Exhibit 13)(Rocci, Steven) (Entered: 04/24/2006) |
| 05/04/2006 | 144 | ***FILED IN ERROR; PLEASE IGNORE; EXCEEDS PAGE LIMIT; ATTY HAS NOW FILED A MOTION FOR LEAVE TO FILE #148 WHICH WAS GRANTED; SUR-REPLY HAS BEEN REFILED as #[150] ***<br><br>SEALED PATENT RESPONSE to SEALED PATENT MOTION re 125 First MOTION for Summary Judgment *of Noninfringement* filed by epicRealm |

| | | |
|---|---|---|
| | | Licensing, LLC. (Attachments: # (1) Exhibit)(Carlson, Larry) Modified on 5/9/2006 (mpv, ). (Entered: 05/04/2006) |
| 05/04/2006 | 145 | NOTICE of Attorney Appearance by Deborah J Race on behalf of epicRealm Licensing, LLC (Race, Deborah) (Entered: 05/04/2006) |
| 05/05/2006 | 146 | MOTION for Leave to File Excess Pages *with Sur-Reply to Autoflex's Motion for Summary Judgment (Unopposed Motion for Leave)* by epicRealm Licensing, LLC. (Attachments: # 1 Text of Proposed Order)(Carlson, Larry) (Entered: 05/05/2006) |
| 05/05/2006 | 147 | MOTION to Withdraw *of attorney Stanley B. Block as Counsel for Defendant Herbalife* by Herbalife International of America, Inc.,. (Attachments: # 1 Text of Proposed Order)(Ainsworth, Charles) (Entered: 05/05/2006) |
| 05/08/2006 | 148 | ORDER granting 146 Motion for Leave to File Additional Materials with its Sur-Reply to Autoflex's Motion for Summary Judgment of Noninfringement and Brief in Support. Signed by Judge Caroline Craven on 5/8/06. (ch, ) (Entered: 05/08/2006) |
| 05/08/2006 | 149 | ORDER granting 147 Motion to Withdraw as cnsl for Herbalife International of America. Stanley B Block is hereby withdrawn as cnsl for deft . Signed by Judge Caroline Craven on 5/8/06. (ehs, ) (Entered: 05/08/2006) |
| 05/09/2006 | 150 | ***REPLACES #144***<br><br>SEALED PATENT RESPONSE to SEALED PATENT MOTION re 125 First MOTION for Summary Judgment *of Noninfringement (epicRealm's Sur-Reply) (REPLACES DOCUMENT NUMBER 144)* filed by epicRealm Licensing, LLC. (Attachments: # (1) Exhibit)(Carlson, Larry) Modified on 5/9/2006 (mpv, ). (Entered: 05/09/2006) |
| 05/25/2006 | 151 | MOTION to Withdraw as Attorney by Friendfinder Network, Inc.. (Baker, Tyler) Additional attachment(s) added on 5/26/2006 (sm, ). (Entered: 05/25/2006) |
| 05/25/2006 | 152 | Additional Attachments to Main Document: 151 MOTION to Withdraw as Attorney.. (Baker, Tyler) (Entered: 05/25/2006) |
| 05/30/2006 | 153 | ORDER granting 151 Motion to Withdraw as Attorney. Attorney Michael J Sacksteder; Tyler Alexander Baker and Candace J Morey terminated . Signed by Judge Caroline Craven on 5/30/06. (ehs, ) (Entered: 05/30/2006) |
| 05/31/2006 | 154 | APPEAL OF MAGISTRATE JUDGE DECISION to District Court by epicRealm Licensing, LLC (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F# 7 Exhibit G# 8 Exhibit H# 9 Exhibit I# 10 Exhibit J)(Carlson, Larry) (Entered: 05/31/2006) |
| 06/01/2006 | 155 | ORDER scheduling a tutorial before Judge Carven. Parties to provide a copy of tutorial DVDs of the presentations for both the Court and technical advisor, Richard Egan.Claims Construction Hearing set for 7/13/2006 09:00 AM before Magistrate Judge Caroline Craven. Tutorial set for 7/7/2006 09:00 AM before Magistrate Judge Caroline Craven. Signed by Judge Caroline Craven on 6/1/06. (ehs, ) (Entered: 06/01/2006) |
| 06/05/2006 | 156 | MOTION for Leave to File Excess Pages by The Macerich Company. (Attachments: # 1 Text of Proposed Order)(Leftwich, Kristoffer) (Entered: |

| | | 06/05/2006) |
|---|---|---|
| 06/05/2006 | 157 | ORDER granting Macerich 156 Motion for Leave to File motion for summary judgment of no infringement and brief in support in Excess of the Page limit . Signed by Judge Caroline Craven on 6/5/06. (ehs, ) (Entered: 06/05/2006) |
| 06/05/2006 | | ***FILED IN ERROR. Document # 158, Sealed motion for summary judgment. (Document refiled as document 159)PLEASE IGNORE.***<br><br>(rml, ) (Entered: 07/10/2006) |
| 06/06/2006 | 159 | SEALED PATENT MOTION *for Summary Judgement of No Infringement and Brief in Support* by The Macerich Company. (Attachments: # (1) Exhibit 1 to Motion for Sumary Judgement# (2) Exhibit 2 to Motion for Summary Judgement# (3) Exhibit 3 to Motion for Summary Judgement# (4) Exhibit 4 to Motion for Summary Judgement# (5) Exhibit 5 to Motion for Summary Judgement# (6) Exhibit 6 to Motion for Summary Judgement# (7) Exhibit 7 to Motion for Summary Judgement# (8) Exhibit 8 to Motion for Summary Judgement# (9) Exhibit 9 to Motion for Summary Judgement# (10) Exhibit 10 to Motion for Summary Judgement# (11) Exhibit 11 to Motion for Summary Judgement# (12) Exhibit 12 to Motion for Summary Judgement# (13) Exhibit 13 to Motion for Summary Judgement# (14) Exhibit 14 to Motion for Summary Judgement# (15) Exhibit 15 to Motion for Summary Judgement# (16) Exhibit 16 to Motion for Summary Judgement# (17) Exhibit 17 to Motion for Summary Judgement# (18) Exhibit 18 to Motion for Summary Judgement# (19) Exhibit 19 to Motion for Summary Judgement# (20) Exhibit 20 to Motion for Summary Judgement# (21) Exhibit 21 to Motion for Summary Judgement# (22) Exhibit 22 to Motion for Summary Judgement# (23) Proposed Order)(Leftwich, Kristoffer) Modified on 6/6/2006 (mpv, ). (Entered: 06/06/2006) |
| 06/07/2006 | 160 | ***FILED IN ERROR; DEFICIENT DOCUMENT; DOCKETED INCORRECTLY; ATTY MUST REFILE***<br><br>NOTICE by Pink Sheets, LLC re 154 Appeal of Magistrate Judge Decision to District Court, *DEFENDANT PINK SHEETS, L.L.C.'S RESPONSE TO OBJECTIONS OF PLAINTIFF TO REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE* (Whitney, Eric) Modified on 6/8/2006 (mpv, ). (Entered: 06/07/2006) |
| 06/07/2006 | | NOTICE of Deficiency regarding the NOTICE by Pink Sheets, LLC re 154 Appeal of Magistrate Judge Decision to District Court, DEFENDANT PINK SHEETS, L.L.C.'S RESPONSE TO OBJECTIONS OF PLAINTIFF TO REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE #160 submitted Docketed Incorrectly. Correction should be made by one business day (mpv, ) (Entered: 06/08/2006) |
| 06/08/2006 | 161 | ***REPLACES #160***<br><br>RESPONSE to 154 Appeal of Magistrate Judge Decision to District Court, *DEFENDANT PINK SHEETS, L.L.C.'S RESPONSE TO OBJECTIONS OF PLAINTIFF TO REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE* by Pink Sheets, LLC. (Whitney, Eric) Modified on 6/8/2006 (mpv, ). (Entered: 06/08/2006) |
| 06/09/2006 | 162 | BRIEF filed *PLAINTIFF EPICREALM LICENSING, LP'S OPENING CLAIM* |

| | | |
|---|---|---|
| | | *CONSTRUCTION BRIEF* by epicRealm Licensing, LLC. (Attachments: # <u>1</u> Appendix # <u>2</u> Appendix)(Meek, Kevin) (Entered: 06/09/2006) |
| 06/19/2006 | <u>163</u> | MOTION for Extension of Time to File Response/Reply *to The Macerich Company's Motion for Summary Judgment of No Infringement (UNOPPOSED)* by epicRealm Licensing, LLC. (Attachments: # <u>1</u> Text of Proposed Order) (Moles, Jeffrey) (Entered: 06/19/2006) |
| 06/20/2006 | <u>164</u> | ORDER granting <u>163</u> Motion for Extension of Time to File Response to deft's motion for summary judgment. Pltf's response to deft Macerich Co's motion for summary judgment shall be due ten days after epicRealm takes the four depositions identified in its motion for extension of time . Signed by Judge Caroline Craven on 6/20/06. (ehs, ) (Entered: 06/20/2006) |
| 06/23/2006 | <u>165</u> | BRIEF filed *Defendants' Responsive Claim Construction Brief* by Grande Communication Networks, Inc., Friendfinder Network, Inc., eHarmony.com, Inc., Franklin Covey Co., Clark Consulting, Inc.,, The Macerich Company, Herbalife International of America, Inc.,, Pink Sheets, LLC, Friendfinder Network, Inc., eHarmony.com, Inc., Autoflex Leasing, Inc., Clark Consulting, Inc.,, Grande Communication Networks, Inc., Franklin Covey Co., Autoflex Leasing, Inc., eHarmony.com, Inc., Friendfinder Network, Inc., Grande Communication Networks, Inc., Transplace Texas, L.P.. (Attachments: # <u>1</u> Appendix A# <u>2</u> Appendix B# <u>3</u> Appendix B-1# <u>4</u> Appendix B-2# <u>5</u> Appendix B-3# <u>6</u> Appendix B-4# <u>7</u> Appendix B-5# <u>8</u> Appendix B-6# <u>9</u> Appendix B-7# <u>10</u> Appendix B-8# <u>11</u> Appendix B-9# <u>12</u> Appendix B-10# <u>13</u> Appendix B-11# <u>14</u> Appendix B-12# <u>15</u> Appendix B-13# <u>16</u> Appendix B-14# <u>17</u> Appendix B-15# <u>18</u> Appendix B-16# <u>19</u> Appendix B-17# <u>20</u> Appendix B-18# <u>21</u> Appendix B-19# <u>22</u> Appendix B-20# <u>23</u> Appendix B-21)(Brandt, Jane) (Entered: 06/23/2006) |
| 06/26/2006 | <u>166</u> | STIPULATION of Dismissal *between epicRealm and Safelite* by epicRealm Licensing, LLC. (Attachments: # <u>1</u> Text of Proposed Order)(Moles, Jeffrey) (Entered: 06/26/2006) |
| 06/27/2006 | <u>167</u> | NOTICE by Safelite Group, Inc. *and Stipulation of Dismissal of Third Party Complaint Against Oracle Corporation and International Business Machines Corporation with Prejudice* (Attachments: # <u>1</u> Text of Proposed Order Order Granting Granting Notice and Stipulation of Dismissal of Third Party Complaint)(Prescott, John) (Entered: 06/27/2006) |
| 06/27/2006 | <u>168</u> | ***FILED IN ERROR; DEFICIENT DOCUMENT; PLEASE IGNORE*** <br><br> MOTION for Summary Judgment *Letter Brief* by Autoflex Leasing, Inc.. (Attachments: # <u>1</u> Exhibit)(Rocci, Steven) Modified on 6/28/2006 (mpv, ). (Entered: 06/27/2006) |
| 06/27/2006 | | NOTICE of Deficiency regarding the MOTION for Summary Judgment Letter Brief #168 submitted Docketed Incorrectly. Correction should be made by one business day. (mpv, ) (Entered: 06/28/2006) |
| 06/28/2006 | <u>169</u> | ***REPLACES #168*** <br><br> NOTICE by Autoflex Leasing, Inc. re <u>125</u> First MOTION for Summary Judgment *of Noninfringement Letter Brief* (Attachments: # <u>1</u> Exhibit)(Rocci, Steven) Modified on 6/28/2006 (mpv, ). (Entered: 06/28/2006) |
| 06/28/2006 | <u>170</u> | MOTION for Leave to File *Response to Autoflex Letter Brief (UNOPPOSED)* by |

| | | |
|---|---|---|
| | | epicRealm Licensing, LLC. (Attachments: # 1 Text of Proposed Order)(Moles, Jeffrey) (Entered: 06/28/2006) |
| 06/29/2006 | 171 | ORDER granting 170 Motion for Leave to File a response to Dft Autoflex Leasing - Dallas LP's Letter Brief regarding its Motion for Summary Judgment of Noninfringement. Deadline is 10 days of the entry of this order . Signed by Judge Caroline Craven on 6/29/06. (ch, ) (Entered: 06/29/2006) |
| 06/29/2006 | 172 | ORDER re 166 Stipulation of Dismissal filed by epicRealm Licensing, LLC; ORDERED that the claims asserted herein by plf epicRealm Licensing, LP against dft Safelite Group, Inc. be, and hereby are, dismissed with prejudice. ORDERED that the claims asserted herein by counter-plf Safelite Group, Inc. against Counter-dft epicRealm Licensing LP be, and hereby are, dismissed with prejudice. Safelite Group, Inc. terminated.. Signed by Judge David Folsom on 6/29/06. (mrm, ) (Entered: 06/29/2006) |
| 06/29/2006 | 173 | ORDER GRANTING SAFELITE GROUP, INC.'S NOTICE AND STIPULATION OF DISMISSAL OF THIRD PARTY COMPLAINT AGAINST ORACLE CORPORATION AND INTERNATIONAL BUSINESS MACHINES CORPORATION WITH PREJUDICE; re 167 Notice (Other), filed by Safelite Group, Inc.,, . Signed by Judge David Folsom on 6/29/06. (mrm, ) (Entered: 06/29/2006) |
| 06/30/2006 | 174 | NOTICE of Attorney Appearance by Jane Politz Brandt on behalf of Transplace Texas, L.P. (Brandt, Jane) (Entered: 06/30/2006) |
| 07/07/2006 | 175 | Minute Entry for proceedings held before Judge Caroline Craven : Tutorial held on 7/7/2006. (Court Reporter Karen Clark 903/657-8626.) (lf, ) (Entered: 07/07/2006) |
| 07/07/2006 | 176 | BRIEF filed *PLAINTIFF EPICREALM LICENSING, LP'S REPLY TO DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF* by epicRealm Licensing, LLC. (Attachments: # 1 Appendix A# 2 Appendix B# 3 Appendix C)(Meek, Kevin) (Entered: 07/07/2006) |
| 07/11/2006 | 177 | MOTION Defs requesting an Order for Pltf to Resubmit its Reply to conform to Local Rules *Defendants' Motion for an Order Requiring Plaintiff to Resubmit its Reply to Defendants' Responsive Claim Construction Brief* by Franklin Covey Co., Clark Consulting, Inc.,, The Macerich Company, Herbalife International of America, Inc.,, Pink Sheets, LLC, Autoflex Leasing, Inc., Friendfinder Network, Inc., Grande Communication Networks, Inc.. (Attachments: # 1 Text of Proposed Order)(Ainsworth, Charles) (Entered: 07/11/2006) |
| 07/13/2006 | 178 | ORDER; ORDERED that Plfs above-entitled and numbered cause of action against Pink Sheets LLC is hereby DISMISSED WITHOUT PREJDUCIE. Pink Sheets, LLC terminated.. Signed by Judge David Folsom on 7/12/06. (mrm, ) (Entered: 07/13/2006) |
| 07/13/2006 | 179 | ORDER denying 177 Motion for an Order requiring pltf's to resubmit its reply to deft's responsive claim construction brief. Court will allow the lengthy reply brief submitted by pltf. Defts have fourteen days from the date of this order in which to file a surreply addressing the new arguments they contend were made in pltf's reply brief. Signed by Judge Caroline Craven on 7/13/06. (ehs, ) (Entered: 07/13/2006) |
| 07/13/2006 | 180 | SEALED PATENT DOCUMENT *EpicRealm's Response to Autoflex's Letter* |

| | | |
|---|---|---|
| | | *Brief in Support of its Motion for Summary Judgment of Noninfringement.* (Carlson, Larry) (Entered: 07/13/2006) |
| 07/13/2006 | 181 | ORDER granting pltf's motion for leave to file a Response to deft Autoflex Leasing - Dallas LP's Letter Brief regarding its motion for summary judgment of noninfringement. Response due within ten days of the entry of this order. Signed by Judge Caroline Craven on 7/12/06. (ehs, ) (Entered: 07/13/2006) |
| 07/13/2006 | 182 | Minute Entry for proceedings held before Judge Caroline Craven : Markman Hearing held on 7/13/2006. (Court Reporter Libby Crawford.) (lf, ) (Entered: 07/13/2006) |
| 07/25/2006 | 183 | MOTION for Leave to File *Defendants' Unopposed Motion for Leave to File Additional Materials to Supplement the Claim Construction Record* by Franklin Covey Co., Clark Consulting, Inc.,, The Macerich Company, Herbalife International of America, Inc.,, Autoflex Leasing, Inc., Friendfinder Network, Inc., Grande Communication Networks, Inc.. (Attachments: # 1 Text of Proposed Order # 2 Exhibit A - Part 1# 3 Exhibit A - Part 2# 4 Exhibit A - Part 3# 5 Exhibit A - Part 4# 6 Exhibit A - Part 5# 7 Exhibit B - Part 1# 8 Exhibit B - Part 2# 9 Exhibit B - Part 3# 10 Exhibit B - Part 4# 11 Exhibit B - Part 5# 12 Exhibit B - Part 6# 13 Exhibit B - Part 7# 14 Exhibit B - Part 8)(Albritton, Eric) (Entered: 07/25/2006) |
| 07/26/2006 | 184 | STATUS REPORT *JOINT CLAIM CONSTRUCTION SUBMISSION REGARDING AGREED CONSTRUCTION* by epicRealm Licensing, LLC. (Meek, Kevin) (Entered: 07/26/2006) |
| 07/27/2006 | 185 | REPLY to #176 BRIEF filed PLAINTIFF EPICREALM LICENSING, LP'S REPLY TO DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF by epicRealm Licensing, LLC. *Defendants' Joint Sur-Reply to Epicrealm's Reply to Defendants' Responsive Claim Construction Brief* filed by Grande Communication Networks, Inc., Friendfinder Network, Inc., Franklin Covey Co., Clark Consulting, Inc.,, The Macerich Company, Herbalife International of America, Inc.,, Friendfinder Network, Inc., Autoflex Leasing, Inc., Clark Consulting, Inc.,, Grande Communication Networks, Inc., Franklin Covey Co., Autoflex Leasing, Inc., Friendfinder Network, Inc., Grande Communication Networks, Inc.. (Attachments: # 1 Exhibit Joint Claim Construction Chart)(Ainsworth, Charles) Modified on 7/31/2006 (mpv, ). (Entered: 07/27/2006) |
| 07/27/2006 | 186 | ORDER granting 183 Motion for Leave to File Additional Materials to Supplement the Claim Construction Record. The prosecution histories of the patents-in-suit, as well as the references cited herein, may be filed as attachments to supplement dfts' responsive claim construction brief. If not done so, dfts shall provide courtesy copies of the additional materials to both the Court and the technical advisor, Richard Egan. Signed by Judge Caroline Craven on 7/27/06. (djh, ) (Entered: 07/31/2006) |
| 08/01/2006 | 187 | MOTION for Leave to File *RESPONSE TO DEFENDANTS' JOINT SURREPLY* by epicRealm Licensing, LLC. (Attachments: # 1 Exhibit PLAINTIFF EPICREALM LICENSING, LP'S RESPONSE TO DEFENDANTS' JOINT SURREPLY# 2 Exhibit Proposed Order)(Meek, Kevin) (Entered: 08/01/2006) |
| 08/02/2006 | 188 | ORDER granting 187 Motion for Leave to File response to deft's joint surreply . Signed by Judge Caroline Craven on 8/2/06. (ehs, ) (Entered: 08/02/2006) |

| 08/02/2006 | 189 | RESPONSE to Deft's Joint Surreply by epicRealm Licensing, LLC. (ehs, ) (Entered: 08/02/2006) |
| 08/10/2006 | 190 | TRANSCRIPT of Proceedings/Markman Hearing held on 7/13/06 before Judge David Folsom. Court Reporter: Libby Crawford. (mpv, ) (Entered: 08/10/2006) |
| 08/10/2006 | 191 | STIPULATION of Dismissal by epicRealm Licensing, LLC. (Attachments: # 1 Text of Proposed Order)(Moles, Jeffrey) (Entered: 08/10/2006) |
| 08/10/2006 | 192 | STIPULATION of Dismissal by epicRealm Licensing, LLC. (Attachments: # 1 Text of Proposed Order)(Moles, Jeffrey) (Entered: 08/10/2006) |
| 08/15/2006 | 194 | REPORT AND RECOMMENDATIONS REGARDING CLAIM CONSTRUCTION construing certain terms in United States Patent Nos. 5,894,554 and 6,415,335. Objections to R&R due by 8/29/2006. Signed by Judge Caroline Craven on 8/15/06. (kjr, ) (Entered: 08/16/2006) |
| 08/16/2006 | 193 | SEALED PATENT RESPONSE TO SEALED PATENT MOTION *epicRealm's Response to Macerich's #[159] Motion for Summary Judgment of No Infringement.* (Attachments: # (1) Exhibit 1# (2) Exhibit A to Declaration# (3) Exhibit B to Declaration# (4) Exhibit C to Declaration# (5) Exhibit D to Declaration# (6) Exhibit E to Declaration# (7) Exhibit F to Declaration# (8) Exhibit 2# (9) Text of Proposed Order)(Moles, Jeffrey) Modified on 8/16/2006 (mpv, ). (Entered: 08/16/2006) |
| 08/18/2006 | 195 | NOTICE of Change of Address by Charles Ainsworth (Ainsworth, Charles) (Entered: 08/18/2006) |
| 08/18/2006 | 196 | ORDER re 192 Stipulation of Dismissal filed by epicRealm Licensing, LLC,, eHarmony.com, Inc.; eHarmony.com, Inc. and eHarmony.com, Inc. terminated.. Signed by Judge David Folsom on 8/18/06. (mrm, ) (Entered: 08/18/2006) |
| 08/18/2006 | 197 | ORDER re 191 Stipulation of Dismissal filed by epicRealm Licensing, LLC,, Transplace Texas, L.P. terminated.. Signed by Judge David Folsom on 8/18/06. (mrm, ) (Entered: 08/18/2006) |
| 08/22/2006 | 198 | Joint MOTION for Extension of Time to File -- *[Joint Motion to Extend the Deadline to File Objections to Judge Craven's Report and Recommendation on Claim Construction]* by The Macerich Company. (Attachments: # 1 Text of Proposed Order)(Lee, Lance) (Entered: 08/22/2006) |
| 08/23/2006 | 199 | NOTICE of Attorney Appearance by Andrew Wesley Spangler on behalf of epicRealm Licensing, LLC (Spangler, Andrew) (Entered: 08/23/2006) |
| 08/23/2006 | 200 | MOTION for Extension of Time to File *Defendants Autoflex Leasing, Inc., Clark Consulting, Inc., Franklin Covey, Co., Friendfinder Network,Inc. Grande Communication Networks, Inc., Herbalife International of America, Inc. and The Macerick Company's Unopposed Motion for Extension of Time to Comply with P.R. 3-8* by Clark Consulting, Inc.,. (Attachments: # 1 Text of Proposed Order) (Ainsworth, Charles) (Entered: 08/23/2006) |
| 08/24/2006 | 201 | ORDER granting 200 Motion for Extension of Time to Comply with Patent Rule 3-8. Deadline extended to 9/11/06. Signed by Judge Caroline Craven on 8/24/06. (ch, ) (Entered: 08/24/2006) |
| 08/24/2006 | 202 | ORDER granting 198 Motion for Extension of Time to File objections. Signed by Judge Caroline Craven on 8/24/06. (ch, ) (Entered: 08/24/2006) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 08/25/2006 20:05:13 | | | |
| PACER Login: | bb0035 | Client Code: | 066241.0132 |
| Description: | Docket Report | Search Criteria: | 2:05-cv-00163-DF-CMC |
| Billable Pages: | 17 | Cost: | 1.36 |



(Sign In / Register for a free Oracle Web account)

secure search 

**TECHNOLOGY PRODUCTS**

**APPLICATION PRODUCTS**

**FUSION APPLICATIONS**

**ORACLE SERVICES**

**CUSTOMERS | PARTNERS**

**ORACLE CORPORATION**

CONTACT ORACLE

   Contact Oracle Home

   Global Contacts

   United States Offices ←

   Support

   Education

   Consulting

RSS

Legal | Privacy

Worldwide Sites

## United States Field Offices

Each Oracle office provides specific services to Oracle customers, from sales and consulting to education and support. To learn more about these offerings, contact the Oracle office near you. Note: Business center locations are indicated with an asterisk (*).

Alabama

## World Headquarters

**Redwood Shores**
Oracle Corporation
500 Oracle Parkway
Redwood Shores CA, 94065
Corporate Phone: 650.506.7000

## Alabama

**Birmingham***
One Perimeter Park South
Suite 100N
Birmingham, AL 35243
Main Phone: 205.403.8950
Main Fax: 205.403.8957

**Montgomery**
400 Interstate Park Drive
Suite 415
Montgomery, AL 36109
Main Phone: 334.273.0327
Main Fax: 334.273.7915

## Arizona

**Phoenix**
3200 E. Camelback
Suite 255
Phoenix, AZ 85018
Main Phone: 602.224.6200
Main Fax: 602.224.6250

## California

**Costa Mesa**
611 Anton Blvd
Suite 700
Costa Mesa, CA 92626
Main Phone: 714.444.8300
Main Fax: 714.444.8400

555 Anton Blvd, Suite 400
Costa Mesa, CA 92626
Main Phone: 714.755.5420
Main Fax: 714.755.5430

**El Segundo**
222 N. Sepulveda Blvd.
Suite 2300
El Segundo, CA 90245
Main Phone: 310.760.3160
Main Fax: 310.364.0059

**Encino**
15760 Ventura Blvd., 14th floor
Encino, CA 91436
Main Phone: 818.817.2900
Main Fax: 818.379.9810

**Pleasanton**
4500 PeopleSoft Parkway
Pleasanton, CA 94588
Phone Numbers:
925.251.4700
925.694.3000
800.380.7638

**Headquarters**
**Redwood Shores**
Oracle Corporation
500 Oracle Parkway
Redwood Shores CA, 94065
Corporate Phone: 650.506.7000

**Rocklin**
1001 Sunset Boulevard
Rocklin, CA 95765
Main Phone: 916.315.3500
Main Fax: 916.315.3000

**San Diego**
12230 El Camino Real
4th Floor
San Diego, CA 92130
Main Phone: 858.350.0302

**San Francisco**
1 Front Street
Suite 400
San Francisco, CA 94111
Main Phone: 650.506.7000

**Santa Monica**
3420 Ocean Park Boulevard
Suite 2000
Santa Monica, CA 90405
Main Phone: 310.760.3160

Main Fax: 858.509.8100                                    Main Fax: 310.460.0603

San Rafael
1 Thorndale Drive
Suite 275
San Rafael, CA 94903-3534
Main Phone: 925.251.4702
Main Fax: 415.507.2099

## Colorado

**Colorado Springs**
12320 Oracle Blvd.
Colorado Springs, CO 80921
Main Phone: 719.577.8000
Main Fax: 719.757.2037

**Denver**
7604 Technology Way
Denver, CO 80237
Main Phone: 303.334.4000
Main Fax: 303.334.3700

## Florida

**Miami**
6505 Blue Lagoon Drive
Suite 400
Miami, FL 33126
Main Phone: 305.260.7200
Main Fax: 305.265.9434

**Orlando**
5955 TG Lee Blvd.
Orlando, FL 32822
Main Phone: 407.458.1200
Main Fax: 407.851.2759

**Orlando**
7453 TG Lee Blvd
Orlando, FL 32822
Main Phone: 407.458.1200
Main Fax: 407.251.0812

**Tallahassee***
2804 Remington Green Circle
Suite 4
Tallahassee, FL 32308
Main Phone: 850.422.0771
Main Fax: 850.383.0221

**Tampa**
2502 Rocky Point Drive
Suite 600
Tampa, FL 33607
Main Phone: 813.287.1700
Main Fax: 813.282.1182

## Georgia

**Atlanta**
1100 Abernathy Road
Northpark Town Center, Bldg 500
Suite1120
Atlanta, GA 30328
Main Phone: 770.394.0110
Main Fax: 770.396.7601

## Hawaii

**Honolulu**
First Hawaiian Tower
1132 Bishop St.
Suite 2312
Honolulu, HI 96813
Main Phone: 808.533.0239
Main Fax: 808.599.4186

3353 Peachtree Rd NE
Suite 300
Atlanta, GA 30326
Main Phone: 404.439.5500
Main Fax: 404.233.7574

## Illinois

**Chicago**
233 South Wacker Dr.
45th Floor
Chicago, IL 60606
Main Phone: 312.651.8000
Main Fax: 312.559.8402

**Westchester**
Three Westbrook Corporate Center
Suite 700
Westchester, IL 60154
Main Phone: 312.651.8000
Main Fax: 312.559.8402

203 North LaSalle
Suite 1400
Chicago, IL 60601

## Indiana

**Indianapolis**
8777 Purdue Road
Suite 100

## Kansas

**Kansas City**
9 Corporate Woods
9200 Indian Creek Pkwy

## Kentucky

**Lexington***
2333 Alexandria Drive
Lexington, KY 40504

A
89

Indianapolis, IN 46268
Main Phone: 317.879.8799
Main Fax: 317.879.8555

Suite 580
Overland Park, KS 66210
Main Phone: 913.663.3400
Main Fax: 913.663.3408

Main Phone: 859.514.6072
Main Fax: 859.514.6001

## Maryland

**Columbia**
Lakeview 1
9821 Broken Land Parkway
Columbia, MD 21046
Main Phone: 410.309.5000
Main Fax: 410.309.5031

## Massachusetts

**Boston**
One Beacon Street
4th Floor
Boston, MA 02108
Main Fax: 617.367.9950

**Burlington**
10 Van de Graaff Drive
Burlington, MA 01803-5146
Main Phone: 781.744.0000
Main Fax: 781.744.0001

**Cambridge**
25 First Street, Third Floor
Cambridge, MA  02141
Main Phone: 617.621.5500
Main Fax: 617.621.5600

30 Corporate Drive
3rd Floor
Burlington, MA 01803
Main Phone: 781.744.0000
Main Fax: 781.744.0001

8 New England Executive Park
Fourth Floor
Burlington, MA 01803
Main Phone: 781.359.8500
Main Fax: 781.359.8555

## Michigan

**Detroit**
3290 West Big Beaver Rd.
Suite 300
Troy, MI 48084
Main Phone: 248.816.8050
Main Fax: 248.816.8270

**Grand Rapids**
2025 East Beltline Way
Suite 105
Grand Rapids, MI 49546
Main Phone: 616.977.4011
Main Fax: 616.957.8990

## Minnesota

**Minneapolis**
8000 Norman Center Drive
Bloomington, MN 55437
Main Phone: 952.897.4000
Main Fax: 952.835.6016

4300 Market Pointe Drive
Suite 280
Minneapolis, MN 55435-5424
Main Phone: 952.838.1700
Main Fax: 952.838.1711

950 Nicollet Mall
Minneapolis, MN 55403
Main Phone: 612.587.5000
Main Fax: 612.587.5100

## Missouri

**St. Louis**
1610 Des Peres Road
Suite 120
St. Louis, MO 63131
Main Phone: 314.821.2244
Main Fax: 314.984.5269

## Nebraska

**Omaha***
12020 Shamrock Plaza
Omaha, NE 68154
Main Fax: 402.778.5135

## New Hampshire

**Nashua**
One Oracle Drive
Nashua, NH 03062
Main Phone: 603.897.3000
Main Fax: 603.897.3300

A
90

## New Jersey

**Iselin**
517 Route One South
Suite 4000
Iselin, NJ 08830
Main Phone: 732.636.2000
Main Fax: 732.636.5915

**Trenton***
172 West State Street
Trenton, NJ 08697-2041
Main Phone: 609.396.6314
Main Fax: 609.393.1990

**Moorestown**
224 Strawbridge Drive
Suite 300
Moorestown, NJ 08057
Main Phone: 856.914.4740
Main Fax: 856.914.4742

**Teaneck**
Glenpointe Centre East
300 Frank W. Burr Boulevard
Suite 300
Teaneck, NJ 07666
Main Phone: 201.907.0808
Main Fax: 201.907.0430

## New York

**Albany**
7 Southwoods Boulevard
Suite 201
Albany, NY 12211
Main Phone: 518.427.9353
Main Fax: 518.432.6841

**New York**
444 Madison Avenue
Suite 300
New York, NY 10022
Main Phone: 212.520.7300
Main Fax: 212.520.7311

**New York**
520 Madison Avenue
30th Floor
New York, NY 10022
Main Phone: 212.508.7700
Main Fax: 212.508.7703

**Rochester**
400 Linden Oaks
3rd Floor
Rochester, NY 14625
Main Phone: 585.267.5300
Main Fax: 585.267.5310

**New York**
Education Center
540 Madison Avenue
3th Floor
New York, NY 10022
Main Phone: 212.508.7700
Main Fax: 212.303.7515

**Tarrytown**
560 White Plains Road
Suite 315
Tarrytown, NY 10591
Main Phone: 914.524.1600
Main Fax: 914.524.0517

## North Carolina

**Charlotte**
2550 West Tyvola Road
Suite 200
Charlotte, NC 28217
Main Phone: 704.357.3155
Main Fax: 704.423.1307

**Durham**
2800 Meridian Parkway
Durham, NC 27713
Main Phone: 919.287.0200
Main Fax: 919.287.0397

**Raleigh**
One Copley Parkway
Suite 500
Morrisville, NC 27560
Main Phone: 919.388.9401
Main Fax: 919.465.5000

## Ohio

**Cincinnati**
312 Elm Street
Suite 1525
Cincinnati, OH 45202
Main Phone: 513.651.4444
Main Fax: 513.651.4463

**Columbus**
500 South Front Street
Suite 1100
Columbus, OH 43215
Main Phone: 614.280.6500
Main Fax: 614.280.6573

**Cincinnati**
625 Eden Park Drive, Suite 150
Cincinnati, OH 45202
Main Phone: 513.564.1600
Main Fax: 513.564.1611

**Dayton***
2661 Commons Blvd., 1st Floor
Dayton, OH 45431
Main Phone: 937.427.4269
Main Fax: 937.427.1242

**Cleveland**
4 Summit Park Drive
Suite 350
Independence, Ohio 44131
Main Phone: 216.328.9100
Main Fax: 216.328.9160

## Oklahoma

**Tulsa**
One Memorial Place
7633 East 63rd Street
Tulsa, OK 74133

## Oregon

**Portland**
1211 SW 5th
Suite 800
Portland, OR 97204
Main Phone: 503.228.1520
Main Fax: 503.220.5150

## Pennsylvania

**Berwyn**
400 Berwyn Park
899 Cassatt Rd., Ste 210
Berwyn, PA 19312
Phone: 610.408.8060
Fax: 610.408.4815

**Pittsburgh**
500 Cherrington Pkwy
Suite 400
Coraopolis, PA 15108
Main Phone: 412.262.5200
Main Fax: 412.262.5311

**King of Prussia**
1016 West 9th Avenue
Suite 300
King of Prussia, PA 19406
Main Phone: 610.491.9881
Main Fax: 610.491.9897

### Rhode Island

**Providence**
One Financial Plaza, Suite 2210
49 Westminster Street
Providence, RI 02903
Main Phone: 401.824.3000
Main Fax: 401.824.3001

### Tennessee

**Knoxville***
9111 Cross Park Drive
Suite D-200
Knoxville, TN 37203
Main Phone: 865.692.9843
Main Fax: 865.690.9145

**Memphis***
3242 Players Club Circle
Memphis, TN 38125
Main Phone: 901.748.3613
Main Fax: 907.748.3248

**Nashville***
3200 West End Avenue
Suite 500
Nashville, TN 37203
Main Phone: 615.783.1735
Main Fax: 615.783.1608

### Texas

**Austin**
111 Congress Avenue
Suite 700
Austin, TX 78701
Main Phone: 512.703.6200
Main Fax: 512.703.6250

**Dallas**
222 West Las Colinas Blvd.
Suite 1000
Irving, TX 75039
Main Phone: 972.401.5800
Main Fax: 972.401.5734

**Houston**
Two Allen Center
1200 Smith St.
Suite 1500
Houston, TX 77002
Main Phone: 713.654.0919
Main Fax: 713.654.8743

1801 W. Braker Lane
Suite 200
Austin, TX 78758
Main Phone: 512.908.2100
Main Fax: 512.908.2110

11400 Burnet Road
Suite 5200
Austin, TX 78758
Main Phone 512.491.2600
Main Fax: 512.491.0078

**San Antonio***
1777 N.E. Loop 410
Suite 600
San Antonio, TX 78217
Main Phone: 210.841.5755
Main Fax: 201.820.2609

### Utah

**Salt Lake City**
170 South Main Street
Suite 1150
Salt Lake City, UT 84101
Main Phone: 801.595.5600
Main Fax: 801.595.5650

**Sandy**
9350 South 150 East
Suite 600
Sandy, Utah 84070
Main Phone: 801.258.2000
Main Fax: 801.258.2111

### Virginia

**Chesapeake**
1401 Greenbrier Parkway
Suite 110
Chesapeake, VA 23320

**Reston**
1900 Oracle Way
Reston, VA 20190
Main Phone: 703.478.9000

**Richmond**
10900 Nuckols Road
Suite 120
Glen Allen, VA 23060

Main Phone: 757.413.6122          Main Fax: 703.318.6340          Main Phone: 804.967.7200
Main Fax: 757.413.6123                                              Main Fax: 804.967.7223

**Washington**

**Seattle**
500 108th Ave NE
Suite 1300
Bellevue, WA 98004
Main Phone: 425.646.0200
Main Fax: 425.646.9540

**Seattle**
411 108th Avenue. NE
Suite 2100
Bellevue, WA 98004
Main Phone: 425.201.8400
Main Fax: 425.201.8411

**Washington D.C.**

**Washington D.C.**
1015 15th Street NW
Suite 250
Washington, DC 20005
Main Phone: 202.835.7360
Main Fax: 202.467.4250

**Wisconsin**

**Milwaukee**
1110 N. Old World Third Street
Suite 400
Milwaukee, WI 53203
Main Phone: 414.270.4300
Main Fax: 414.272.3380

**Onalaska***
115 10th Avenue South
Onalaska, WI 54650
Main Phone: 608.781.5005
Main Fax: 608.781.5042


E-mail this page
Printer View

A
93

# QuinStreet.

| | MISSION | SOLUTION | APPROACH | NEWS | ABOUT |

- Clients
- Management
- Careers
- Contact Us
- Investor Relations

## Corporate offices

**Corporate Headquarters**
**QuinStreet, Inc.**
1051 E. Hillsdale Blvd. Foster City,
CA 94404 United States
Tel: +650 578 7700
Fax: +650 578 7604

**QuinStreet, Japan**
Level 18, Ebisu Garden Place Tower
Ebisu 4-20-3 Shibuya-ku Tokyo
150-6018 Japan
Tel: +03 5789 5372

**QuinStreet, LLC**
250 Parkway Drive, Suite 150
Lincolnshire, IL 60069 United States
Tel: +847 325 5010
Fax: +847 325 5566

**QuinStreet Software India Pvt.**
**Ltd.**
Suite 101-A, Gandhi Empire 2
Sareen Estate, Kondhwa Road Pune
411040 Maharashtra, India
Tel: +91 20 26837532

**QuinStreet, Europe**
4 Beacon End Courtyard, London
Road Stanway, Colchester Essex
C03 0NU United Kingdom
Tel: +44 1206 711 250
Fax: +44 1206 711 259

**QuinStreet Media, Inc.**
5420 Kietze Lane, Ste 109 Reno, N
89511 United States
Tel: +775 321 3600

## Contact us

| | |
|---|---|
| Type of Inquiry | --- Select One-- |
| First Name | |
| Last Name | |
| Email | |
| Re-type Email | |
| Company | |
| Company URL | |
| Daytime phone | |
| Ext. | |

Please type your question here

©2006 QuinStreet, Inc. All rights reserved.  PRIVACY POLICY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUINSTREET, INC.,                          :
                                           :
                Plaintiff,                 :
                                           :
v.                                         :  C. A. No. 1:06-cv-00495 (SLR)
                                           :
EPICREALM LICENSING, LP,                   :
                                           :
                Defendant.                 :

## DECLARATION OF TERRY FOKAS

I, Terry Fokas, declare as follows:

1.      My name is Terry Fokas.  I am over the age of 21 and am competent to make this declaration.  I have personal knowledge of the facts described herein, and those facts are true and correct.

2.      I am the Managing Partner of epicRealm Licensing, LP ("epicRealm").

3.      EpicRealm is a patent licensing firm with its principal place of business and corporate offices in Dallas, Texas.

4.      EpicRealm has no connection to the State of Delaware other than its incorporation in such jurisdiction.  EpicRealm has no offices, employees, records, or assets in Delaware, and epicRealm currently conducts no business nor has it ever conducted any business in Delaware.

5.      EpicRealm is in possession of 146 boxes of documents, representing several hundred thousand pages of information, concerning United States Patent No. 5,894,554 and United States Patent No. 6,415,335 (collectively, "the epicRealm Patents"); the prosecution history of these patents and related documentation; and the corporate history of epicRealm

- 1 -

Operating, Inc. ("epicRealm, Inc.") (the corporate predecessor company to epicRealm), including licensing agreements, Board of Directors minute books, sales and marketing data, and other relevant corporate information. These documents are in epicRealm's possession in Dallas, Texas. These documents exist solely in paper form, and they do not exist in electronic form.

      6.     As Managing Partner of epicRealm, I am aware of the following individuals who are potential third-party witnesses in the above-captioned case and who have knowledge or information which is relevant to this litigation and/or to the epicRealm Patents, including:

a.     John Ferguson, former President and Chief Executive officer of epicRealm, Inc. Mr. Ferguson has relevant information regarding the corporate history, sales and marketing efforts, and business operations of epicRealm, Inc. Mr. Ferguson is a resident of Plano, Texas (Collin County, which is in the Eastern District of Texas);

b.     B. Kent Hill, former President and Chief Executive officer of epicRealm, Inc. Mr. Hill has relevant information regarding the corporate history, various business models, and the cessation of business operations of epicRealm, Inc. Mr. Hill is a resident of Richardson, Texas (Collin and Dallas Counties);

c.     Ronald Howell, one of the named inventors on the epicRealm Patents. Mr. Howell has relevant information regarding the creation of the technology encompassed by the epicRealm Patents and the sales and marketing efforts of such technology by epicRealm, Inc. Mr. Howell is a resident of Rowlett, Texas (Dallas and Rockwall Counties);

d.     Bradley A. Carl, former Vice-President, Chief Operating Officer, and General Counsel of epicRealm, Inc. Mr. Carl has relevant information related to the prosecution of the epicRealm Patents, the corporate history of epicRealm, Inc., and the sale of the epicRealm Patents to epicRealm. Mr. Carl is a resident of Garland, Texas (Collin and Dallas Counties); and

e.     Matt Talpis, attorney involved in the prosecution of the epicRealm Patents. Mr. Talpis has relevant information related to the prosecution of the epicRealm Patents. Mr. Talpis is a resident of Austin, Texas (Travis County).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 25, 2006.

Terry Fokas

- 3 -

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUINSTREET, INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : C. A. No. 1:06-cv-00495 (SLR) |
| | : |
| EPICREALM LICENSING, LP, | : |
| | : |
| Defendant. | : |

## ORDER GRANTING EPICREALM LICENSING, LP'S
## MOTION TO CONSOLIDATE AND TRANSFER

The Court has decided to grant defendant epicRealm Licensing, LP's Motion to Consolidate and Transfer. Accordingly, it is:

ORDERED that Civil Action No. 1:06-cv-00495-SLR (*Quinstreet, Inc. v. epicRealm Licensing, LP*) and Civil Action No. 1:06-cv-00414-SLR (*Oracle Corp. and Oracle U.S.A. Inc. v. epicRealm Licensing, LP*) shall be consolidated and transferred to the Eastern District of Texas, Marshall Division.

SO ORDERED this _____ day of _____, 2006.

_____
United States District Judge

## CERTIFICATE OF SERVICE

I, Kimberly L. Gattuso, Esquire, hereby certify that on this 28th day of August, 2006, I electronically filed a true and correct copy of the foregoing Motion and Appendix to Motion using CM/ECF which will send notification of such filing.  A copy of the document was served on the following attorneys of record in the manner indicated:

**VIA HAND DELIVERY**
Mary B. Graham, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
Wilmington, DE  19899-1347


Anne Shea Gaza, Esquire
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE  19899


　　　　　　　　　　*/s/ Kimberly L. Gattuso*
Kimberly L. Gattuso, Esquire (No. 3733)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, Delaware  19801-1611
(302) 421-6800