IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUINSTREET, INC.,

        Plaintiff,

v.

EPICREALM LICENSING, LP,

        Defendant.

C.A. No. 1:06-cv-00495 (SLR)

## PLAINTIFF QUINSTREET, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT EPICREALM LICENSING, LP'S MOTION TO TRANSFER

OF COUNSEL:

Robert S. Beiser
Richard A. Zachar
Ludwig E. Kolman
Vedder, Price, Kaufman & Kammholz, P.C.
222 North LaSalle Street
Suite 2500
Chicago, Illinois 60601
312.609.7500

and

Gordon C. Atkinson
Cooley Godward LLP
101 California Street, 5th Flr.
San Francisco, California 94111
415.693.2000

Dated: September 12, 2006

Robert H. Richards, III (#706)
rrichards@rlf.com
Jeffrey L. Moyer (#3309)
moyer@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger
One Rodney Square
920 N. King Street
Wilmington, Delaware 19899-0551
302-651-7700

Attorneys for Plaintiff QuinStreet, Inc.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

I.    NATURE AND STAGE OF PROCEEDINGS ...................................................... 1

II.   SUMMARY OF ARGUMENT ............................................................................ 5

III.  ARGUMENT ....................................................................................................... 6

      A.    Standard For Motions To Transfer Venue Under Section 1404(a) ...................... 6

      B.    QuinStreet's Choice of Forum Is Entitled To Substantial Deference
            because QuinStreet has rational reasons for choosing this forum ...................... 7

      C.    This Court Should Deny Defendant's Motion To Transfer Because
            QuinStreet's Choice Of Forum Is Entitled To Substantial Deference
            Which Defendant Has Not Overcome .......................................................... 10

IV.   CONCLUSION ................................................................................................. 24

- i -

# TABLE OF AUTHORITIES

**Page**

<u>Cases</u>

*Ace Capital v. Varadam Foundation,*
 392 F. Supp. 2d 671 (D. Del. 2005)................................................................. 8

*Ade Corp. v. KLA-Tencor Corp.,*
 138 F. Supp. 2d 565 (D. Del. 2001)........................................................... *passim*

*Air Products and Chemicals, Inc. v. MG Nitrogen Services, Inc.*
 133 F. Supp. 2d 354 (D. Del. 2001)................................................................. 16

*APV North America, Inc. v. Sig Simonazzi North America, Inc.,*
 295 F. Supp. 2d 393 (D. Del. 2002)....................................................... 14, 21, 22

*Argos v. Orthotec, LLC,*
 304 F. Supp. 2d 591 (D. Del. 2004) ..................................................... 10, 17, 23

*Arrow Communication Laboratories, Inc. v. John Mezzalingua Associates, Inc.,*
 No. Civ. 05-357-SLR, 2005 WL 2786691 (D. Del. Oct. 26, 2005) ........................... 13

*BAE Sys. Aircraft Controls, Inc. v. Eclipse Aviation Corp.,*
 224 F.R.D. 581 (D. Del. 2004) ............................................................... 16, 24

*Brunswick Corp. v. Precor Inc.,*
 No. 00-691-GMS, 2000 WL 1876477 (D. Del. Dec. 12, 2000) ............................... 15

*C.R. Bard, Inc. v. Guidant Corp.,*
 997 F.Supp. 556, 46 U.S.P.Q.2d 1713 (D. Del. 1998) ..................................... 20

*Clopay Corp. v. Newell Companies, Inc.,*
 527 F. Supp. 733 (D. Del. 1981)................................................................. 21

*Codex Corp. v. Milgo Electronic Corp.,*
 553 F.2d 735 (1st Cir. 1977)................................................................. 13

*Filmtec Corp. v. Allied Signal, Inc.,*
 Civ. A. No. 88-225-JFF, 1989 WL 201603 (D.Del. June 1, 1989) ........................... 21

*Intel v. Broadcom Corp.,*
 167 F. Supp. 2d 692 (D. Del. 2001)........................................................... 7, 17

*Joint Stock Soc. Trade House of Descendants of Peter Smirnoff, Official Purveyor to the
 Imperial Court v. Heublein, Inc.,*
 *936 F. Supp. 177 (D. Del. 1996)* ........................................................... 7, 10

*Jumara v. State Farm Ins. Co.,*
 55 F.3d 873 (3d Cir. 1995) ............................................................. 6, 10, 18, 19

*Motorola, Inc. v. PC-Tel, Inc.,*
 58 F. Supp. 2d 349 (D. Del. 1999)..................................................... 6, 20, 22, 24

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Nilssen v. Everbrite, Inc.*
    No. Civ. A. 00-189-JJF, 2001 WL 34368396 (D. Del. Feb. 16, 2001) .................................... 12

*Praxair, Inc. v. ATMI, Inc.,*
    No. Civ. 03-1158-SLR, 2004 WL 883395 (D. Del. Apr. 20, 2004) ........................... 18, 19

*Schering Corp. v. Amgen, Inc.,*
    969 F. Supp. 258 (D. Del. 1997) ....................................................................... 17, 24

*Shatterproof Glass Corp. v. Guardian Indust. Corp.,*
    Civ. A. No. 86-607-CMW, 1987 WL 11773 (D. Del. May 4, 1987) ............................... 21

*Sony Electronics v. Orion IP, LLC,*
    No. C.A. 05-255 (GMS), 2006 WL 680657 (N.D. Ill. Mar. 14, 2006) .................... 11, 16

*Sumito Mitsubishi Silicon Corp v. MEMC Electronic Materials, Inc ,*
    No. Civ. 04-852-SLR 2005 WL 735880(D. Del. Mar. 30, 2005)..... ............................... 14

*BOC Group, Inc. v. CVC Products, Inc., Civ. A.*
    No. 87-354-CMW, 1988 WL 62593 (D. Del. June 6, 1988) ....................................... 21

*Original Creative Patent Company Ltd. v. Kaizen, Inc.,*
    No. Civ.A. 02-471-SLR, 2003 WL 179996 (D. Del. 2003) ....................................... 21

*Tsoukanelis v. Country Pure Foods, Inc.,*
    337 F. Supp. 2d 600 (D. Del. 2004)......................................................................... 10, 20

*Tuff Torq Corp. v. Hydro-Gear Ltd. P'ship,*
    882 F.Supp. 359 (D. Del. 1994)............................................................................. 7, 15, 19

*Wesley-Jessen Corp. v. Pilkington Visioncare, Inc ,*
    157 F.R.D. 215 (D.Del.1993) ............................................................................. 7, 10, 19, 22

### Statutes

28 U.S.C. 1404(a) ................................................................................................... 6

For its response to Defendant epicRealm Licensing, LP's ("Defendant") motion to consolidate and to transfer, Plaintiff QuinStreet, Inc. ("QuinStreet") states that it is not opposed to consolidation of this action with the action titled *Oracle Corp. & Oracle U.S.A., Inc. v. epicRealm Licensing, LP*, C.A. No. 1:06-cv-00414-SLR. However, QuinStreet strenuously opposes any transfer of this action to Texas for the reasons set forth herein.

## I.    NATURE AND STAGE OF PROCEEDINGS

On June 30, 2006, Oracle Corporation and Oracle U.S.A., Inc. (collectively, "Oracle") filed a complaint in the U.S. District Court for the District of Delaware, seeking relief in the form of a declaration that: (i) Oracle's products and services do not infringe U.S. Patent Nos. 5,894,554 ("the '554 Patent") and 6,415,335 ("the '335 Patent") owned by Defendant; and (ii) Defendant's two patents are invalid.

On August 8, 2006, QuinStreet filed its complaint in the U.S. District Court for the District of Delaware that, like the Oracle complaint, seeks relief in the form of a declaration that: (i) QuinStreet's products and services do not infringe the '554 Patent and the '335 Patent, and (ii) Defendant's two patents are invalid. (*See* D. I. 1.)

However, contrary to Defendant's contention,[1] QuinStreet's complaint is not based upon events that occurred in Defendant's lawsuit against Herbalife International of America, Inc. ("Herbalife"), pending in the Eastern District of Texas (the "Texas action"). Rather, QuinStreet's complaint is in response to and sets forth the imminent threat that Defendant will bring suit for patent infringement directly against QuinStreet—QuinStreet is not a party to the Texas action—or its other customers for whom QuinStreet hosts web sites.

QuinStreet's business is to provide online direct marketing services through a full-service approach that combines direct marketing expertise, extensive search and media reach, and

---

[1] See D.I. 7, Section 1 of Defendant's Motion to Consolidate and Transfer at pages 1 - 2.

industry-leading technologies. (Declaration of Michael McDonough, dated September 12, 2006 and filed contemporaneously herewith ("McDonough Dec."), ¶ 3.)  In addition to hosting web sites for clients, a secondary part of its business, a principal feature of QuinStreet's services is the generation of customer leads that are then sold to its clients.  To generate these leads, QuinStreet owns and maintains thousands of online marketing web sites designed to attract potential customers interested in products or services advertised on those sites.  The interaction of interested individuals with these web sites involves the delivery of dynamic web pages.  (*Id.*)

These web sites are national in scope and coverage and are available to and are visited by Delaware citizens who have access to the Internet.  (*Id.*)  In addition, QuinStreet has several Delaware clients to whom it sells leads generated by these sites. (*Id.* at ¶ 4.)  Thus, QuinStreet's business involves both contacts between Delaware citizens who visit its web sites, and with Delaware businesses who purchase the leads that result.  QuinStreet currently works with nearly 200 United States and overseas clients, representing 300 different brands, and is a leader in this industry.  (*Id.* at ¶ 3.)  The visitors to QuinStreet's lead-generating web sites and to the sites it hosts for clients number in the hundreds of thousands per day.  Indeed, in a recent Nielson survey of all Internet participants, QuinStreet ranked eighth in estimated on-line advertising spending.  (*Id.*)  All of QuinStreet's lead-generating web sites, which represent almost all of the web sites owned or hosted by QuinStreet, utilize dynamic web page generating systems which are different than the system used by QuinStreet to host the Herbalife web site that is at issue in the Texas action.   (*Id.* at ¶ 10.)  Indeed, all of the web sites which QuinStreet hosts for others employ systems that have been substantially upgraded from what is used on the Herbalife site.  Nearly all of QuinStreet's customers use dynamic web page generating systems not implicated in the pending Texas action. (*Id.* at ¶ 11.)

- 2 -

Nevertheless, under the broad interpretation of its patents adopted by Defendant, these other sites would fall within the coverage of those patents, and thus expose QuinStreet to threat of suit by Defendant.  That this threat is imminent is evidenced by Defendant's actions in bringing, to date, three separate lawsuits accusing thirteen original defendants with patent infringement; by Defendant's broad construction of its patents' claims in these actions (D. I. 1 at ¶¶ 15 –23.); by the fact that Defendant, situated in Dallas, chooses to bring its suits in Marshall, Texas, approximately three hours drive away, a venue with a reputation for verdicts favoring patent holders and an arduous docket which creates inordinate pressures to settle; and by the fact that Defendant is not in business to practice its patents and provide web managment services, but is rather in the business of procuring licenses authorizing others to practice its patents.

QuinStreet alleges that Defendant contends that its patents must be broadly construed to cover virtually all systems and methods where dynamic web page requests are intercepted at a web server or other HTTP-compliant device and transferred to page server software capable of processing dynamic web pages.  (*Id.* at ¶ 19.)  According to Defendant, any system and method wherein dynamic web page requests are intercepted at a web server or other HTTP-compliant device and transferred to page server software capable of processing dynamic web pages and in which the web server or the HTTP-compliant device is then released to process concurrently other requests, violates its patents.  (*Id.*)

Defendant has also taken the position that its claims of patent infringement were not confined to any particular web site software or architecture, such as that involved in the Texas action, but asserted that other systems or methods employing server software "could, if used to generate web pages with dynamic content, be configured in a way that would infringe the claims of the epicRealm patents." (*Id.* at ¶ 20.)

- 3 -

As QuinStreet explains in its complaint, QuinStreet employs several systems and methods for dynamic web page generation where dynamic web page requests are intercepted at a web server and routed to other server software for processing that would fall within the ambit of the claims of Defendant's patents as interpreted by Defendant. These are methods and systems different than the one which QuinStreet uses in hosting the Herbalife web site accused by Defendant in the Texas action. Whether any or all of these other systems infringe Defendant's patents is the question raised by Quinstreet in this action. Given that Defendant has sought discovery from Herbalife in the course of the pending Texas action regarding *QuinStreet's* use of server software for generating web pages, QuinStreet's request for declaratory relief is appropriate. (*Id.* at ¶ 23.)

More importantly, QuinStreet alleges that one of its customers, who was *not* a party to any previous litigation brought by Defendant in Texas, informed QuinStreet that it is canceling its contract with QuinStreet under which QuinStreet had agreed to provide dynamic web page generating services. (*Id.* at ¶ 22.) That customer expressly cited the Texas action as its reason for doing so. (*Id.*)

QuinStreet's allegations concerning the Texas action merely provide factual background for establishing why there is a ripe case or controversy between QuinStreet and Defendant for this Court to hear. QuinStreet contends that in light of the following facts: (1) Defendant's suits against numerous entities and the position Defendant has taken in those actions; (2) the nature of Defendant's business, i.e., to seek licenses of its patents; (3) QuinStreet's web sites and web hosting services that it reasonably believes has been or will be identified by Defendant as infringing; and (4) QuinStreet's lost business due to Defendant's claims against other QuinStreet customers, QuinStreet has a ripe case or controversy that may be heard by this Court. However,

- 4 -

the *basis* for QuinStreet's complaint for declaratory relief is not that Herbalife was sued, nor any other activity related to the Texas proceedings. The basis for the present claim is that QuinStreet maintains web sites and provides web hosting services to others which use methods and systems for providing dynamic web pages that may or may not infringe Defendant's patents. QuinStreet believes it does not infringe those patents, and that the patents, if construed to cover its systems, are invalid, and therefore, to preserve and foster its business, seeks declarations to that effect. The Texas action has been and remains irrelevant to most substantive matters raised by QuinStreet's complaint.

QuinStreet offers and sells its various on-line marketing services directly or through subsidiary entities to customers located throughout the United States. (McDonough Dec. ¶ 4.) Its lead-generating web sites are located on servers situated around the country, including in Delaware. These web sites are accessible from anywhere in the country, and visitors to those sites include citizens of Delaware. QuinStreet's web hosting clients include national businesses with customers in Delaware visiting their sites. (*Id.*) In addition, at least one indirect QuinStreet subsidiary is a Delaware LLC and another QuinStreet subsidiary physically hosts its servers in Delaware. (*Id.* at ¶¶ 5-6.)

## II.    SUMMARY OF ARGUMENT

QuinStreet's choice of venue should not be disturbed. QuinStreet has rational reasons for filing its suit in Delaware. Accordingly, this Court should defer to QuinStreet's choice of forum. In this action, QuinStreet raises numerous factual issues that have no relationship to the Texas action. QuinStreet is not and was not a party to the Texas action and, therefore, the "first-to-file" rule does not apply.

Any arguable "involvement" by QuinStreet in the Texas action was limited to QuinStreet's indemnification obligations to Herbalife, which means that any interest QuinStreet

- 5 -

has in the Texas action is necessarily limited to the claims asserted against, and defenses asserted by, *Herbalife*. Given its indemnification obligations to Herbalife, QuinStreet is required to act solely in the best interests of Herbalife's interests, even where that might not be in the best interest of QuinStreet with respect to QuinStreet's other web site activities. Accordingly, QuinStreet appropriately selected a neutral forum that would be able to exercise personal jurisdiction over Defendant.

As shown herein, Defendant's motion to transfer is based upon the fundamentally mistaken premise that QuinStreet raises claims of non-infringement and invalidity that are identical to those raised by Herbalife in the Texas action. Defendant misstates the applicability of the "home turf" rule and the relevance of the first-to-file rule.

More importantly, however, Defendant fails to establish that the public and private factors considered by courts in deciding Section 1404(a) motions to transfer weigh *strongly* in favor of transfer. Indeed, an examination of these factors reveal that they weigh more heavily in favor of Delaware retaining jurisdiction.

## III.   ARGUMENT

### A.    Standard For Motions To Transfer Venue Under Section 1404(a).

Section 1404(a) provides that "[f]or the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it might have been brought." 28 U.S.C. 1404(a).

The Third Circuit has set forth a list of public and private factors to assist the courts in evaluating whether transfer is proper. *Jumara v. State Farm Ins. Co*, 55 F.3d 873, 879 (3d Cir. 1995) (setting forth five public interest and six private interest factors to consider when deciding whether to transfer an action pursuant to Section 1404(a)); *see also Motorola, Inc. v. PC-Tel, Inc.*, 58 F. Supp. 2d 349, 357 (D. Del. 1999) (listing *Jumara* factors).

- 6 -

A plaintiff's choice of forum is entitled to substantial deference and should not be disturbed unless the public and private interests weigh "*strongly* in favor of a transfer." *Joint Stock Soc. Trade House of Descendants of Peter Smirnoff, Official Purveyor to the Imperial Court v. Heublein, Inc.*, 936 F. Supp. 177, 185 (D. Del. 1996) (emphasis in original). Even if the public and private factors slightly favor defendant's choice of forum, that alone is insufficient to justify transfer – the private and public factors in favor of defendant's choice of forum must substantially outweigh plaintiff's choice of forum before transfer will be permitted. *Id.*

Under this standard, QuinStreet's choice of forum should remain undisturbed. QuinStreet has a rational basis for choosing Delaware as its forum and the balance of public and private factors are neutral or favor Delaware over Texas.

**B.    QuinStreet's Choice of Forum Is Entitled To Substantial Deference because QuinStreet has rational reasons for choosing this forum.**

While Defendant concedes that a plaintiff's choice of forum is a "paramount consideration" when considering a transfer request (D.I. 7 at p. 13), Defendant contends that QuinStreet's choice of a Delaware forum is not entitled to deference because Delaware is not QuinStreet's home turf. In making this argument, Defendant overlooks the well-entrenched view by Delaware courts that, even if plaintiff's chosen forum is not plaintiff's "home turf," the court should still specifically give deference to plaintiff's choice when it is due to "legitimate, rational concerns." *See, e.g., Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692 (D. Del. 2001) (rejecting defendant's argument that because California is plaintiff's "home turf" that plaintiff's choice of Delaware forum should not be given much weight); *Tuff Torq Corp. v. Hydro-Gear Ltd. P'ship*, 882 F. Supp. 359, 364 (D. Del. 1994) (plaintiff's legitimate concerns in selecting Delaware forum entitled to substantial deference and warranted denial of motion to transfer); *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215, 218 (D. Del. 1993) (absent

- 7 -

showing of "unique or unexpected burden, plaintiff's reasonable choice of forum should not be disturbed). QuinStreet chose Delaware as its forum for several rational and justifiable reasons.

By choosing to litigate in Delaware rather than its "home turf" of California or Illinois, QuinStreet avoided a potential battle over personal jurisdiction. *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 573 (D. Del. 2001) (explaining that defendant's status as Delaware company and avoidance of expensive personal jurisdiction fight a reasonable consideration in plaintiff's choice of forum). Defendant is an LLC organized under the laws of Delaware; it is not only subject to Delaware's jurisdiction, Delaware has a decided interest in hearing this action. *See Ace Capital v. Varadam Found.*, 392 F. Supp. 2d 671, 676 (D. Del. 2005) (noting Delaware's interest in litigation regarding companies incorporated within its jurisdiction). Given the prospect of a personal jurisdiction battle in California or Illinois[2] and the potential bias of Defendant's "home turf" of Texas, QuinStreet opted for a forum where personal jurisdiction could be asserted, yet where neither party has a marked advantage over the other with respect to the local community. *See Heublein, Inc.*, 963 F. Supp. at 186 (recognizing rational choice to litigate in neutral forum where defendant is citizen). Such a decision is rational and entitled to substantial deference.[3] *Ade Corp.*, 138 F. Supp. 2d at 573 (plaintiff's selection of Delaware over defendant's home turf in patent infringement action entitled to substantial weight).

---

[2]  EpicRealm is incorporated in Delaware, has it principal place of business in Dallas, Texas, and on information and belief, has no office or employees, and conducts no business, in either California or Illinois.

[3]  The significance of the home turf concept is, in the era of multiple office and indeed multi-national corporate structures, along with Internet-based business practices and electronic data storage, substantially diminished. Employees and records are disbursed geographically, so that traditional notions of convenience and accessibility to evidence associated with a central headquarters are less important. In this case, for example, potential QuinStreet witnesses reside in London and Pune, India.

- 8 -

QuinStreet also recognized that it may benefit from litigating separately from Herbalife. In challenging whether QuinStreet's other dynamic web page products and services actually infringe Defendant's patents, QuinStreet may want to raise factual and legal arguments in support of its claims that may ultimately conflict with positions taken by Herbalife in the Texas action. (McDonough Dec. ¶ 8.) The scope of the infringement issues involved in this action extend well beyond the specific QuinStreet services used by Herbalife. (*Id.*) In fact, the systems and methods employed by QuinStreet to deliver the vast majority of its dynamic web pages that are at issue in this action are not used by Herbalife. (*Id.* at ¶ 10.) QuinStreet avoids potential conflict with its indemnitee by litigating in Delaware.

Moreover, by choosing to litigate in Delaware, QuinStreet has availed itself of a neutral forum in which to present for de novo review, matters that have previously been decided by the Texas court, but which QuinStreet was not afforded an opportunity to advocate on its own behalf. (*Id.* at ¶ 8.) The Texas action has already proceeded beyond the *Markman* hearing. QuinStreet did not have the opportunity to present its own position on claim construction in the Texas *Markman* hearing; rather Herbalife's position on claim construction was presented based on seeking constructions that would maximize the prospects that the Herbalife web site would be found not to infringe. A new forum provides QuinStreet with the opportunity to raise fully its own position on claim construction while limiting any potential conflict with or prejudice to Herbalife's defense. On the other hand, transferring this case to Texas will have the effect of denying QuinStreet full input into claim construction.

Finally, QuinStreet elected to litigate in Delaware because there was already an action pending in Delaware between Oracle and Defendant involving the same patents at issue here. (McDonough Dec. ¶ 8.) In addition, one or more of QuinStreet's systems for generating

- 9 -

dynamic web pages utilize Oracle software. (*Id.*) These facts, plus the experience of the Delaware courts in hearing patent claims and their ability to provide an efficient resolution to QuinStreet's claims further supported its decision to file in Delaware. (*Id.*)

These rational considerations justify full deference to QuinStreet's choice of forum. *See, eg., Tsoukanelis v. Country Pure Foods, Inc.*, 337 F. Supp. 2d 600, 604 (D. Del. 2004), (finding plaintiff's rational choice of Delaware forum should not be disturbed); *Heubline*, 963 F. Supp. at 186 (defendant did not meet heavy burden to overcome plaintiff's rational choice of forum); *Wesley-Jessen Corp.*, 157 F.R.D. at 218 (same).

**C.    This Court Should Deny Defendant's Motion To Transfer Because QuinStreet's Choice Of Forum Is Entitled To Substantial Deference Which Defendant Has Not Overcome.**

**1.    Public Factors Weigh In Favor Of QuinStreet's Choice Of Forum**

The Third Circuit articulated the following private factors to be considered when deciding a motion to transfer under Section 1404(a): (1) The interest in judicial efficiency; (2) The local interest in deciding local controversies at home; (3) The relative administrative difficulty in the two fora resulting from court congestion; (4) The public policies of the fora; and (5) The familiarity of the trial judge with the applicable state law in diversity cases; (6) The enforceability of the judgment. *Jumara*, 55 F.3d at 879; *Argos v. Orthotec LLC*, 304 F. Supp. 2d 591, 597 (D. Del. 2004) (listing *Jumara* factors).

**a.    Interest in Judicial Efficiency weighs in favor of QuinStreet's choice of forum.**

Because QuinStreet's complaint for declaratory judgment expands the scope of products and services at issue beyond the subject matter of the Texas litigation, transferring this action to Texas will not create judicial efficiency, but diminish it.

- 10 -

In *Sony Electronic, Inc. v. Orion IP, LLC*, No. C.A. 05-255(GMS), 2006 WL 680657 (D.

Del. Mar. 14, 2006), the defendant advanced the same argument that Defendant advances here –

that litigation involving the same patents is already underway in Texas and therefore, it would be

more efficient to litigate in Texas. However, the Delaware district court rejected that argument,

explaining:

> Orion also argues that because litigation involving the same
> patents is already underway in Texas, judicial resources will be
> saved granting a transfer. Although there may be some efficiency
> to be gained by consolidating certain aspects of discovery, Orion
> ignores the possibility that collateral issues specific to any one of
> the many unrelated parties involved in both cases may create
> inefficiencies that would not arise if the proceedings remained
> separate.

*Sony Electronics*, 2006 WL 680657, at *2.

In this case, as in Sony Electronics, collateral issues with respect to the unrelated parties

or the unrelated products involved in both the prior pending Texas action and this Delaware

action will defeat any efficiencies gained by consolidation.   Much of the written discovery in the

Texas action has been completed.   However, in excess of 95% of QuinStreet's purportedly

infringing conduct that will likely be at issue in this action is not at issue in the Texas action.

(McDonough Dec. ¶ 10.)   Transferring this action to Texas, rather than increasing efficiency,

will only unnecessarily complicate the currently pending Texas action because of the substantial

amounts of additional discovery and other matters that will need to be completed before the

Texas action could proceed. After discovery regarding QuinStreet's other sites is had, Defendant

would be required to present its preliminary infringement contentions as to these new sites, to be

followed by QuinStreet's preliminary invalidity contentions. Thereafter, in order for QuinStreet

to be afforded a proper opportunity to have input into claim construction issues, the Markman

process would have to be repeated.   In the meantime, the case would effectively be on hold.

Plainly, this is not a desireable outcome from any perspective, and certainly not from a judicial efficiency standpoint.[4]

Conversely, much of the discovery that has been undertaken in the Texas action involves discovery relating to third parties that has little or nothing to do with QuinStreet and its claims here. While Defendant would arguably need to reproduce much of the same discovery regarding the development of its patents in this action as in the Texas action, to the extent that discovery from Defendant is duplicative of that it has already produced, because that discovery has already been compiled and reviewed by Defendant's counsel, the burden on Defendant with reproducing that discovery to QuinStreet is minimal.

Finally, requiring QuinStreet to present its claim construction and to establish non-infringement with respect to its dynamic web page generating systems not used by Herbalife in Texas would present QuinStreet with the substantial risk that any new arguments that QuinStreet may proffer will conflict with arguments advanced by Herbalife. Because of QuinStreet's indemnification obligations to Herbalife, transferring this action to Texas could put QuinStreet in a situation where it would be precluded from acting in its own interests in favor of advancing Herbalife's position.

Defendant cites *Nilssen v. Everbrite, Inc.* and argues that transfer to the Texas court may promote efficiency because Defendant is already litigating the validity of its patents there and that the Texas court, having already conducted a *Markman* hearing, would provide a more educated judge and increased efficiency. No. Civ. A. 00-189-JJF, 2001 WL 34368396, at *4 (D. Del. Feb. 16, 2001) However, it would appear that in *Nilssen,* the plaintiff in the Delaware

---

[4]    The foregoing discussion ignores other matters that could further impact the orderly progress of the Texas action. Since QuinStreet is not a party to the action, pleadings will have to be filed, joinder or crossclaim issues may arise, other scheduling matters may be affected, etc.

- 12 -

case was also a plaintiff in the Illinois case to which the Delaware court transferred the proceedings.[5]   Also, *Nilssen* did not address a situation where an indemnitor sought a different forum due to potential conflicts between its position and that taken by the indemnitee in the litigation pending in the transferee forum.

Moreover, a trial court's past experience with the patents-in-suit also weighs *against* transfer.  As the First Circuit recognized, an "educated judge" may properly be considered a negative factor weighing against transfer where the transferee court will be hearing a matter de novo.  It explained:

> [A]lthough the presence of an "educated judge' has been considered significant by some courts, [...] since it is possible that some economies will be achieved by proceeding before the same judge, there are two sides to this coin.  While a judge who has already found a patent valid as against one defendant may not be disqualified from reconsidering the issue against another, [...] if he is the fact finder, and the factual issues are the same, it may be difficult for the district judge to give, or to feel he is giving, a new defendant a de novo, impartial consideration.  **We consider prior judicial experience in such a situation more a negative than an affirmative reason for transfer.**

*Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735, 739 (1st Cir. 1977) (internal citations omitted) (emphasis added).  Although *Codex* addresses a situation where the transferee court had already decided the issue of validity, the difficulty identified by the First Circuit, providing a new party with impartial, de novo consideration, is just as relevant for claim construction as it is on patent validity.

Defendant's other cited authorities are factually distinguishable from this action.  In *Arrow Communication Lab., Inc. v. John Mezzalingua Assoc., Inc.*, No. Civ. 05-357-SLR, 2005

---

[5]   While the court does not say explicitly that plaintiff Nilsson is party to both the Delaware and Illinois cases, it does note that plaintiff is the inventor and owner of the three patents that are in issue in both cases.  Under these circumstances, Nilsson has not assigned those patents to another.  That leaves only an exclusive licensee as someone with authority to sue on the patents, but the patent owner would generally be a party to litigation brought by such a licensee.

WL 2786691 (D. Del. Oct. 26, 2005) the parties were identical and defendant was seeking transfer based upon its later-filed declaratory judgment. The court noted that it was "undisputed" that the two pending suits involve "the same patent and the same issues" and denied defendant's motion to transfer. In this case, QuinStreet was not a party to the prior pending action and it raises factual issues relating to non-infringement of web hosting methods not implicated in the pending Texas action or its indemnification of Herbalife.

Nor is *Sumito Mitsubishi Silicon Corp. v. MEMC Elec. Materials, Inc.*, No. Civ. 04-852-SLR, 2005 Wl 735880 (D. Del. Mar. 30, 2005) instructive for this case. *Sumito* involved a motion to transfer from Delaware to California, where the parties have been litigating related patents for three years and where the two plaintiffs' principal places of business were Japan and California. In this case however, QuinStreet is not a party to the Texas action nor is Texas QuinStreet's principal place of business.

*APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393 (D. Del. 2002) is also easily distinguishable. In that case, the court noted that because there were no allegations of patent infringement in Delaware and the accused products were not made in Delaware, plaintiff's choice of forum was given less deference. In light of that, and other factors, including the fact that the parties were involved in prior pending litigation in the transferee forum, the court found transfer was warranted. Unlike in *APV North America*, QuinStreet advertises to customers in Delaware thousands of lead-generating web sites which use dynamic web page systems that purportedly read on Defendant's patents under Defendant's broad construction of its patents, and then interacts with those Delaware customers who respond by serving up the requested dynamic web pages. If these activities infringe, then the infringing activity concludes in Delaware. Moreover, QuinStreet has indirect subsidiaries that are organized in Delaware or maintain web

site servers in Delaware that market services that depend in part on the delivery of dynamic web pages that may be accused of infringement under Defendant's interpretation of its patents. ((McDonough Dec. ¶¶ 5-6).

In *Brunswick Corp. v. Precor Inc.*, No. 00-691-GMS, 2000 WL 1876477 (D. Del. Dec. 12, 2000), the court addressed a transfer motion where substantial litigation involving related patents was pending between the same two parties in another forum. That is not the situation here. As Defendant admits, QuinStreet is not a party to the Texas action. Accordingly, this decision is also inapposite.

        b.      **The first-to-file rule does not support transfer of this matter.**

Courts adopted the first-to-file rule to conserve judicial resources and safeguard litigants by preventing concurrent duplicative litigation of the same issues between the same parties in more than one federal court. *Tuff Torq Corp.*, 882 F. Supp. at 364. Contrary to Defendant's position, however, the first-to-file rule is neither applicable nor will it promote efficiency.

The first-to-file rule does not apply to QuinStreet's complaint for declaratory judgment because there is no concurrent, duplicative litigation of the same issues between the same parties in more than one federal court. Defendant acknowledges that QuinStreet was not a party to the Texas action.[6] (D.I. 7 p. 10.) Thus, while the first-to-file rule is invoked where there is blatant forum shopping, "such blatant forum shopping did not occur here because [QuinStreet] was not a party in the [Texas] litigation." *Tuff Torq Corp.*, 882 F. Supp. at 364.

Most of QuinStreet's products and services are irrelevant to the Texas action. The only overlap between the Texas action and this one are the two patents-in-suit and the defendant. The

---

[6] Any arguable "involvement" by QuinStreet in the Texas action was strictly related to its role as indemnitor for Herbalife. As such, it was acting solely as an "insurer" of Herbalife – it was not a participant on its own behalf nor are QuinStreet's other dynamic web page systems at issue in the Texas action because Herbalife does not use them.

many factual matters raised by QuinStreet's complaint in this action are not at issue in the Texas action. QuinStreet estimates that in excess of 95% of the conduct for which it seeks a declaration of non-infringement has no relevance to the Texas action because the dynamic web page generation systems used are not the one used by Herbalife. (McDonough Dec. ¶ 10.) QuinStreet seeks, among other things, a declaration that the web services which drive the vast majority of its own web sites and its other, non-Herblife web hosting sites, methods and systems which are *not* and never were used by Herbalife, do not infringe Defendant's patents. (D.I. 1 at ¶ 27.) Defendant's attempt to bootstrap this litigation to the Texas action should be rejected. *Sony*, 2006 WL 680657, at * 2 ("simply because Orion initiated an action in Texas involving one set of parties, it should not be able to 'bootstrap itself into staying there' when subsequent litigation arises involving a different set of parties") (quoting *Codex Corp.*, 553 F.2d at 739).

Defendant relies on the decision in *Air Products and Chemicals, Inc. v. MG Nitrogen Services, Inc.* to support its position that the judicial economy provided by the first-to-file rule justifies transfer. 133 F. Supp. 2d 354 (D. Del. 2001). However, *Air Products* is factually inapposite. In *Air Products*, the court found there was a near identity in parties and products in dispute in the two suits, which the court found militated in favor of transfer. *Id.* at 357. That is not the situation here. Combining this action with the Texas action only compounds the scope of the Texas action and risks delay for the many unrelated parties still litigating in Texas – it does not encourage sound judicial administration, especially given that the Texas action has progressed beyond the *Markman* phase.

Defendant fails to establish that litigation in Texas will be more efficient for the courts and the parties than litigation in Delaware and therefore, QuinStreet's choice of venue should not be disturbed. *See BAE Sys. Aircraft Controls, Inc. v. Eclipse Aviation Corp.*, 224 F.R.D. 581,

- 16 -

589 (D. Del. 2004) (finding that transfer would merely delay proceedings without adding any efficiency); *Intel Corp.*, 167 F. Supp. 2d at 706 (finding "judicial economy does not militate in favor of transferring the case").

**c.    Local interest in Delaware courts to settle conflicts between Delaware residents weighs in favor of QuinStreet's choice of forum.**

Defendant dismisses Delaware's interest in this action based on its conclusory statement that QuinStreet's dispute with Defendant arose from the Texas action. Defendant's cursory and unsupported argument is factually off-base. QuinStreet's claims arise from marketing and utilizing dynamic web page systems in Delaware and across the country which, based on Defendant's broad construction of its patents, may be perceived as infringing Defendant's patents. The Texas action is merely QuinStreet's justification that the controversy between it and Defendant is ripe for adjudication.

Delaware has a marked interest in adjudicating this action. Delaware courts repeatedly express the interest Delaware has in deciding legal disputes involving a business entity formed under Delaware law. *Schering Corp. v. Amgen Inc.*, 969 F. Supp. 258, 269 (D. Del. 1997). As this Court explained:

> Given [defendant's] choice for incorporation, the court finds that it voluntarily exposed itself to the possibility of litigation in Delaware. [Defendant] cannot now attempt to shield itself from litigation in this forum by arguing that no conduct occurred in Delaware, that no injury was felt in Delaware, and that deposition and trial in Delaware would involve additional expense.

*Argos*, 304 F. Supp. 2d at 598 (D. Del. 2004). As in *Argos*, Defendant attempts to shield itself from litigation in this forum by making the same arguments rejected by this Court in *Argos*. They should be rejected here as well.

- 17 -

As noted above, QuinStreet markets its web sites and related services to, and utilizes these systems on behalf of, clients and customers located in Delaware. (McDonough Dec. ¶ 4.) QuinStreet also has subsidiaries that are organized or operate in Delaware with a direct interest in the validity and scope of the patents-in-suit. For example, Coyote Publishing LLC, an indirect subsidiary of QuinStreet and a Delaware LLC operates websites that may be deemed to infringe, based upon Defendant's position in the Texas litigation. (*Id.* at ¶ 5.) Another QuinStreet entity operates the "faceyourkitchen.com" website which features dynamic web pages and is hosted in Delaware. (*Id.* at ¶ 6.) Given these circumstances, Delaware has a strong interest in hearing a patent case that may directly and adversely effect many of its citizens. *Praxair, Inc. v. ATMI, Inc.*, No. Civ. 03-1158-SLR, 2004 WL 883395 (D. Del. Apr. 20, 2004) (finding Delaware had an interest in hearing patent infringement suit).

Delaware's interest is at least equal to that of any other forum. Accordingly, this factor weighs in favor of this court denying transfer and retaining jurisdiction over this action.

> **d.    Remaining factors are either neutral or weigh in favor of QuinStreet's choice of forum.**

As Defendant concedes, the remaining factors have little weight in this analysis. Defendant has not established that it would be unduly difficult for this Court to hear this action. Nor has Defendant identified any public policies that might be harmed by this Court hearing matters relating solely to federal patent law. As QuinStreet raises no state law claims, familiarity with Texas or Delaware law is not at issue. Nor are there any concerns over the enforceability of this Court's judgment.

> **2.    Private Factors Weigh In Favor Of QuinStreet's Choice Of Forum.**

The private factors articulated by the Third Circuit in *Jumara* are: (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the

- 18 -

claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the location of books and records. *Jumara*, 55 F.3d at 879.

The substantial deference to which QuinStreet's forum preference is entitled was discussed above and need not be reiterated here. The remaining factors either weigh in favor of QuinStreet's choice of forum, or are not entitled to enough weight to overcome QuinStreet's choice.

**a.    QuinStreet's claims are related to Delaware.**

Patent claims are national in scope and the dispute involves Defendant, which is a Delaware LLC. *Praxair, Inc.*, 2004 WL 883395, at *2 (rejecting motion to transfer, noting "[p]atent cases are explicitly federal issues and the rights determined thereunder are national in scope"). Defendant, a Delaware LLC, licenses its patents to entities across the country for use in web sites with an international reach. (McDonough Dec. ¶ 4.) Accordingly, this action is not merely regional but national in scope and clearly related to Delaware. Moreover, QuinStreet has at least one subsidiary that is organized in Delaware which offers products or services that may be at issue in this action and another subsidiary that hosts its web site servers in Delaware. (*Id.* at ¶¶ 5-6.)

**b.    Trial in Delaware would only marginally impact Defendant, which is insufficient to displace QuinStreet's forum.**

The current state of technology renders implausible Defendant's argument that litigating in Delaware would be unduly onerous. *See Tuff Torq Corp.*, 882 F. Supp. at 363 ("Technological changes have made an already high burden on the moving party, to show that the factors strongly favor transfer, even higher.") To justify transfer on the basis of inconvenience to Defendant, Defendant must prove that litigating in Delaware would pose a "unique or unusual burden" on its operations. *Wesley-Jessen Corp*, 157 F.R.D. at 218.

- 19 -

Defendant makes no such assertion. At best, Defendant offers the mere implication that litigating in Delaware would be burdensome to Defendant. (D.I. 7, at p. 16.) Delaware courts have stated that unsupported claims of "disaster" should be given no weight. *Motorola*, 58 F. Supp. 2d at 358 ("The court is not swayed by these unsupported assertions of disaster.") Here, however, Defendant does not bother with the pretense of a claimed "disaster" from litigating in Delaware. Instead, Defendant uses string citations to a number of Delaware authorities finding an undue burden on defendants to disguise its true position - that "EpicRealm prefers to litigate this case in the Eastern District of Texas." (D.I. 7, at p. 16.)

Defendant clearly focuses on how much more convenient litigating QuinStreet's claims in Texas would be. That is not enough. *See C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, (D. Del. 1998) (rejecting motion to transfer where defendant failed to establish a unique or unusual burden on its operations, but merely advanced greater convenience to it of transferee forum). As noted by this Court, given Defendant's voluntary organization under Delaware laws, Defendant's argument of greater convenience in Texas carries little weight:

> Defendant voluntarily chose to incorporate in Delaware and avail itself of the laws of this State. As such, defendant cannot now claim that litigation in Delaware is too burdensome and warrants a transfer of venue without putting forth more than the argument that Ohio is a more convenient forum for it.

*Tsoukanelis*, 337 F. Supp. 2d at 604.

Moreover, the majority of the authorities cited by Defendant in favor of transfer based on a defendant's convenience generally do not show any consideration for the position embraced by later decisions from Delaware courts (shown in Section III-B *supra*) that a plaintiff's choice of forum is entitled to substantial weight even if not its home turf, where there is a rational basis for

- 20 -

plaintiff's choice.[7]    However, as explained in Section III-B, above, a plaintiff's choice of forum is entitled to substantial deference, even when not its "home-turf" if the plaintiff has rational reasons for making its forum selection.

Defendant's remaining authorities do not hold otherwise.  In *APV North America*, the court recognized the paramount import of plaintiff's choice of forum, but found that the lack of any infringing activity in Delaware, among a number of other factors, tipped the balance substantially in favor of transfer.  295 F. Supp. 2d at 399.  Likewise, *Original Creative Patent Company, Ltd. v. Kaizen, Inc.*, No. Civ.A. 02-471-SLR, 2003 WL 179996 (D. Del. Jan. 22, 2003), the court gave due deference to plaintiff's choice of forum, but found, among other factors, that it had not been established that defendant engaged in any alleged infringement in Delaware and that defendant met its burden to justify transfer.    Unlike in *APV North America* and *The Original Creative Patent Co.* decisions, the potentially infringing services are marketed and utilized by QuinStreet and its affiliates in Delaware.  Moreover, Delaware citizens do access and receive dynamic web pages in Delaware served up by QuinStreet, and Delaware clients purchase leads generated by QuinStreet lead-generating web sites.  (McDonough Dec. ¶ 4.)

That Defendant is located in Texas, making Texas a more convenient forum for it, does not justify transfer where Defendant has failed to identify any substantial prejudice to its ability

---

[7] Defendant's authorities either do not discuss why plaintiff chose Delaware or find plaintiff articulated no substantive rationale supporting its decision to do so. *See Filmtec Corp. v. Allied Signal, Inc.*, Civ. A. No. 88-225-JFF, 1989 WL 201603 (D. Del. June 1, 1989) (no consideration of plaintiff's rational reasons for filing in Delaware) ; *BOC Group, Inc. v. CVC Prod., Inc.*, Civ. A. No. 87-354-CMW, 1988 WL 62593 (D. Del. June 6, 1988) (same); *Shatterproof Glass Corp. v. Guardian Indus. Corp.*, Civ. A. No. 86-607-CMW, 1987 WL 11773 (D. Del. May 4, 1987) (same); *Clopay Corp. v. Newell Comp., Inc.*, 527 F. Supp. 733 (D. Del. 1981) (plaintiff offered no substantive reasons to support decision to litigate in Delaware)

to do business if this action continues in Delaware.[8]  *See Motorola*, 58 F. Supp. 2d at 358;

*Wesley-Jessen*, 157 F.R.D. at 218. Accordingly, this factor does not favor transfer.

<blockquote>

**c.    Defendant has identified no witnesses or evidence that will not be available for trial in Delaware.**

</blockquote>

Defendant also claims that most relevant documents and third-party witnesses are located

in Texas. QuinStreet respectfully submits that the most relevant witnesses concern the operation

of the QuinStreet dynamic web page systems, who are located in California, London, and India,

not Texas. (McDonough Dec ¶ 8.)  Indeed, it would be more convenient for QuinStreet's

witnesses to fly from California, London, or Bombay to Philadelphia and travel the short

distance to Wilmington, Delaware than it would be for them to fly to Dallas and drive three

hours to Marshall, Texas. (*Id.*)

Moreover, Defendant does not claim that its "third-party" witnesses will be unavailable

for trial, only that they are beyond the subpoena power of this Court. However, Delaware courts

have rejected this "test" for unavailability.  *See ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp.

2d 565, 570-71 (D. Del. 2001) ("the better approach is to recognize that witnesses have and will

appear here without having to be subpoenaed"); *APV North America*, 295 F. Supp. 2d at 399

(rejecting argument based on inconvenience to witnesses where movant did not establish that the

witnesses would be unavailable for trial). Indeed, given the relationship of the identified persons

to Defendant, it hardly seems likely they would be unavailable for trial. *See ADE Corp.*, 138 F.

Supp. 2d at 570-71 (noting third party witnesses' interest in the outcome of pending Delaware

action made it likely that they would be willing to appear).  Nor is it clear that testimony relating

---

[8] Given that Defendant, although located in the Dallas Texas metropolitan area, elected to file suit in Marshall, Texas – nearly three hours away – Defendant's claim that this action should be transferred to avoid "inconvenience" is suspect at best.

to Defendant's previous corporate form and business operation will be critical to Defendant's case in this action.

This Court has denied motions to transfer venue where the movant, like Defendant here, was unable to specify any witnesses or documents that were unavailable for trial. *See, e.g.*, *Argos*, 304 F. Supp. 2d at 598 (denying transfer because "the court notes that Orthotec has not averred in its briefing documents that witnesses would be unavailable for trial in Delaware")

In this case, Defendant merely argues that litigating in Delaware would be unduly burdensome because it has accumulated over 146 boxes of documents during discovery in Texas and litigating in Delaware would require Defendant to obtain storage in Delaware to house these documents. (D.I. 7 at p. 19.) This argument is not merely inadequate to overcome QuinStreet's choice of forum, it defies common sense.

Discovery will occur where the parties and witnesses are located regardless of forum and the discovery documents will be held by each party's lead trial counsel during discovery and preparation for trial. That Defendant has accumulated substantial amounts of documents in preparing for the Texas actions or in response to discovery is of little moment, other than it will make discovery production in this case far less burdensome. And to the extent that some portion of those documents appear to relate to damage issues, they will not be relevant in Delaware. In any case, even in the Texas action, the number of documents required for *trial* will no doubt be substantially less than the 146 boxes of documents accumulated in preparation for suit and discovery.

Defendant does not argue that these documents will not be available for trial. Nor does it assert that all 146 boxes of documents will even be necessary to try this case. The inconvenience involved in shipping documents to Delaware that will not be used at trial is not a reason for

- 23 -

granting transfer. Even assuming *arguendo*, that all 146 boxes of documents accumulated by Defendant were required for trial in this action, they would not conceivably be usable at trial unless transferred into a searchable electronic format. Accordingly, any inconvenience to Defendant is minimal and does not justify rejecting QuinStreet's rational choice of forum. *BAE Sys. Aircraft Controls, Inc.*, 224 F.R.D. at 589 (holding that private convenience factors do not support motion to transfer); *Ade Corp.*, 138 F. Supp. 2d at 573 ("the court does not find the convenience of the parties weighs in favor of a change of venue"); *Motorola Inc.*, 58 F. Supp. 2d at 359 (defendant "failed to carry its heavy burden in convincing the court that the 'balance of convenience' tips strongly in favor" of defendant's choice of forum); *Schering Corp.*, 969 F. Supp. at 269 (convenience factors identified by defendant, "when compared to the strong deference accorded a plaintiff's choice of forum, do not warrant transfer").

## IV.    CONCLUSION

Defendant epicRealm Licensing, LLC has failed to meet its burden in establishing that the convenience to Defendant substantially outweighs QuinStreet's choice of forum. Accordingly, Defendant's motion to transfer venue must be denied.

- 24 -

OF COUNSEL:

Robert S. Beiser
Richard A. Zachar
Ludwig E. Kolman
Vedder, Price, Kaufman & Kammholz, P.C.
222 North LaSalle Street
Suite 2500
Chicago, Illinois 60601
312.609.7500

and

Gordon C. Atkinson
Cooley Godward LLP
101 California Street, 5th Flr.
San Francisco, California 94111
415.693.2000

Dated:  September 12, 2006

Robert H. Richards, III (#706)
rrichards@rlf.com
Jeffrey L. Moyer (#3309)
moyer@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger
One Rodney Square
920 N. King Street
Wilmington, Delaware  19899-0551
302-651-7700

   Attorneys for Plaintiff QuinStreet, Inc.

- 25 -

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2006, I caused to be served by hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

> Michael F. Bonkowski, Esquire
> Kimberly L. Gattuso, Esquire
> Saul Ewing LLP
> 222 Delaware Avenue, Suite 1200
> P.O. Box 1266
> Wilmington, DE 19899-1266

I hereby certify that on September 12, 2006, I sent by Federal Express the foregoing document to the following non-registered participants:

> Larry D. Carlson, Esquire
> Kevin J. Meek, Esquire
> Jeff Moles, Esquire
> Baker Botts LLP
> 2001 Ross Avenue
> Dallas, TX 75201-2980

Anne Shea Gaza (#4093)
Gaza@rlf.com