IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUINSTREET, INC.,                          :
                                           :
                Plaintiff,                 :
                                           :
v.                                         :        C. A. No. 1:06-cv-00495 (SLR)
                                           :
EPICREALM LICENSING, LP,                   :
                                           :
                Defendant.                 :

**DEFENDANT EPICREALM LICENSING, LP'S REPLY
IN SUPPORT OF ITS MOTION TO CONSOLIDATE AND TRANSFER**

SAUL EWING, LLP
Michael F. Bonkowski, Esquire (No. 2219)
Kimberly L. Gattuso, Esquire (No. 3733)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, Delaware  19801-1611
(302) 421-6800

Of Counsel:

BAKER BOTTS L.L.P.
Larry D. Carlson, Esquire
Kevin J. Meek, Esquire
Jeff Moles, Esquire
2001 Ross Avenue
Dallas, TX  75201-2980

Attorneys for epicRealm Licensing, LP

DATED:      September 19, 2006

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................... 1

II.    CONTRARY TO QUINSTREET'S CLAIM, THIS ACTION IS CLOSELY
       CONNECTED TO THE PENDING TEXAS ACTION.......................................... 2

III.   CONVENIENCE OF THE WITNESSES ................................................. 3

IV.    CONVENIENCE OF THE PARTIES .................................................... 6

V.     LOCAL INTEREST ............................................................................ 9

VI.    JUDICIAL EFFICIENCY, FIRST FILED CASE: THE TEXAS COURT IS
       ALREADY FAMILIAR WITH THE TECHNOLOGY, THE PATENTS,
       CLAIM CONSTRUCTION, AND INFRINGEMENT ISSUES........................... 9

VII.   *AIR PRODUCTS* AND RELATED CASES........................................... 14

VIII.  CONCLUSION................................................................................. 16

# TABLE OF AUTHORITIES

## CASES

*ADE Corp. v. KLA-Tencor Corp.,*
   138 F. Supp. 2d 565 (D. Del. 2001)..............................................................4

*Air Products and Chemicals, Inc. v. MG Nitrogen Services, Inc.,*
   133 F. Supp. 2d 354 (D. Del. 2001)....................................................2, 14-16

*Affymetrix Inc. v. Synteni, Inc.,*
   28 F. Supp. 2d 192 (D. Del. 1998).........................................................3, 5-6

*APV North America, Inc. v. Sig Simonazzi North America, Inc.,*
   295 F. Supp. 2d 393 (D. Del. 2002)..........................................................7-8

*Arrow Communication Laboratories, Inc. v. John Mezzalingua Associates, Inc.,*
   No. Civ. A. 05-357-SLR, 2005 WL 2786691 (D. Del. Oct. 26, 2005).............. 8, 11, 15-16

*BP Chemicals Ltd. v. Union Carbide Corp.,*
   4 F.3d 975, 978 (Fed. Cir. 1993).................................................................2

*Brunswick Corp. v. Precor Inc.,*
   No. 00-691-GMS, 2000 WL 1876477 (D. Del. Dec. 12, 2000) ..........................7

*Cashedge, Inc. v. Yodlee Inc.,*
   No. Civ. A. 06-170-JJF, 2006 WL 2038504 (D. Del. July 19, 2006)................11

*Codex Corp. v. Milgo Electronics Corp.,*
   553 F.2d 735 (1st Cir. 1977)..................................................................9-10

*DVI, Inc. v. DVI Financial Services, Inc.,*
   No. 03-12656 MFW, 2004 WL 1498593 (D. Del. June 23, 2004)......................3

*Filmtec Corp. v. Allied-Signal, Inc.,*
   Civ. A. No. 88-225-JRR, 1989 WL 201603 (D. Del. June 1, 1989)...................7

*Glickenhaus v. Lytton Financial Corp.,*
   205 F. Supp. 102 (D. Del. 1962)...............................................................6

*Green Isle Partners, Ltd. S.E. v. Ritz Carlton Hotel Co.,*
   C.A. No. 01-202-JJF  (D. Del. Nov. 2, 2001)..............................................8

i

*Jumara v. State Farm Ins. Co.,*
 55 F.3d 873 (3rd Cir. 1995) ................................................................8

*Kewanee Oil Co. v. M & T Chemicals, Inc.,*
 315 F. Supp. 652 (D. Del. 1970) .........................................................6

*Memminger v. Infocure Corp.,*
 2000 U.S. Dist. LEXIS 22077 (D. Del. Nov. 14, 2000) ......................3

*Mentor Graphics Corp. v. Quickturn Design Systems, Inc.,*
 77 F. Supp. 2d 505 (D. Del. 1999) ......................................................8

*Nilssen v. Everbrite, Inc.,*
 No. Civ.A. 00-189-JJF, 2001 WL 34368396 (D. Del. Feb. 16, 2001) ...........3-5, 11, 15-16

*Shatterproof Glass Corp. v. Guardian Indust. Corp.,*
 Civ. A. No. 86-607 CMW, 1987 WL 11773 (D. Del. May 4, 1987) ..................7

*Sherwood Medical Co. v. IVAC Medical Systems, Inc.,*
 No. 96-305 MMS, 1996 WL 700261 (D. Del. Nov. 25, 1996).....................4-5

*Sony Electronics, Inc. v. Orion IP, LLC,*
 No. C.A. 05-255(GMS), 2006 WL 680657 (D. Del. Mar. 14, 2006) ................12

*Sumito Mitsubishi Silicon Corp. v. MEMC Electronic Materials, Inc.,*
 No. Civ. 04-852-SLR, 2005 WL 735880 (D. Del. March 30, 2005) .............8, 10

*The BOC Group, Inc. v. CVC Products, Inc.,*
 CIV. A. No. 87-354-CMW, 1988 WL 62593 (D. Del. June 6, 1988) ...............7

*The Original Creatine Patent Co., Ltd. v. Kaizen, Inc.,*
 No. Civ.A. 02-471-SLR, 2003 WL 179996 (D. Del. Jan. 22, 2003) ...............6-7

*Virgin Wireless, Inc. v. Virgin Enterprises Ltd.,*
 201 F. Supp. 2d 294 (D. Del. 2002)....................................................11

*Zoetics, Inc. v. Yahoo!, Inc.,*
 No. Civ. A. 06-108-JJF, 2006 WL 1876912 (D. Del. July 6, 2006)...............3-4

**STATUTES**

28 U.S.C. § 1404(a) ................................................................1, 5-10, 15-16

Defendant epicRealm Licensing, LP ("epicRealm") files this Reply in support of its Motion to Transfer and in response to the Memorandum of Law in Opposition to Defendant EpicRealm Licensing, LP's Motion to Transfer ("QuinStreet Opposition") filed by plaintiff QuinStreet, Inc. ("QuinStreet").

## I.    INTRODUCTION

QuinStreet argues that its Complaint in this action is "not based upon events that occured" in the consolidated epicRealm patent infringement suits in the Eastern District of Texas (the "Texas Action"). QuinStreet Opposition at 1.  The opposite is true, however.  QuinStreet's own Complaint and Opposition make clear that this case is based almost exclusively on epicRealm's conduct in connection with the Texas Action.

The convenience of the witnesses, typically the most important factor in a section 1404(a) analysis, argues forcefully for transfer to Texas.  EpicRealm has identified five non-party fact witnesses located in Texas.  All these witnesses are unavailable to attend trial in Delaware, and Delaware case law is clear that the use of videotaped depositions in this situation is a poor substitute for live testimony.  By contrast, QuinStreet has not named even a single non-party fact witness, much less one who is located in Delaware.

Convenience of the parties, another section 1404(a) factor, also strongly supports transfer to Texas.  Transfer to Texas will greatly convenience epicRealm, a small company located in Dallas, Texas, a 150 mile car ride from the courthouse in Marshall, Texas.  Transfer to Texas may also convenience QuinStreet, which is located in Foster City, California, because Texas is closer to California than is Delaware.  Certainly, transfer to Texas will not inconvenience QuinStreet or its witnesses.

Last, the trial court in Texas has acquired substantial expertise concerning the epicRealm patents and related technology.  It would be a waste of judicial resources for this Court to have to

1

get up to speed on the patents and technology when the Texas court already has that expertise. Transferring this case to Texas, where the Texas court can address any additional issues presented with little incremental investment of time or effort, would be far more efficient.

The facts of this case are eerily similar to the facts in *Air Products and Chemicals, Inc. v. MG Nitrogen Services, Inc.*, 133 F. Supp. 2d 354 (D. Del. 2001). Because this Court transferred that patent declaratory judgment case to Texas, it should transfer this case to Texas also.

## II.     CONTRARY TO QUINSTREET'S CLAIM, THIS ACTION IS CLOSELY CONNECTED TO THE PENDING TEXAS ACTION

QuinStreet claims that its Complaint in this case is "not based upon events that occurred" in the Texas Action. QuinStreet Opposition at 1. This is wrong.

As the Court of Appeals for the Federal Circuit has made clear, a declaratory judgment plaintiff's "reasonable apprehension of suit turns on the conduct of the patentee." *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993). All of the epicRealm conduct on which QuinStreet bases its Complaint took place in connection with the Texas Action:

- QuinStreet alleges that it reasonably anticipated epicRealm would sue it because "epicRealm contends that its patents must be broadly construed." Complaint ¶ 19; QuinStreet Opposition at 3. EpicRealm provided its views about the scope of its patents in its Preliminary Infringement Contentions served in the Texas Action and in correspondence to defendants in the Texas Action. *E.g.*, Complaint ¶¶ 19, 20.

- QuinStreet argues that the threat of suit from epicRealm is "imminent" because epicRealm has filed three patent infringement actions in the Eastern District of Texas. QuinStreet Opposition at 3. One of these has since settled, and the remaining two have been consolidated into the Texas Action.

- QuinStreet argues that epicRealm has sought discovery from Herbalife regarding systems provided to Herbalife by QuinStreet. QuinStreet Complaint ¶ 23; QuinStreet Opposition at 4. Of course, epicRealm sought this discovery in the Texas Action.

- QuinStreet alleges that it reasonably anticipated suit by epicRealm because a customer cancelled its contract with QuinStreet. Complaint ¶ 22. "That customer

expressly cited the Texas action as its reason for doing so." QuinStreet Opposition at 4.

- QuinStreet argues that there is a "ripe case or controversy" because of the "position" that epicRealm has taken in the Texas Action. QuinStreet Opposition at 4.

In short, contrary to QuinStreet's claim, this action is based almost exclusively upon activities of epicRealm taken in connection with the Texas Action. QuinStreet is wrong in claiming that this action is "not based upon events that occurred" in the Texas Action.

## III.    CONVENIENCE OF THE WITNESSES

"'Convenience of the expected trial witnesses is the most important factor to consider when determining whether or not transfer is appropriate.'" *Zoetics, Inc. v. Yahoo!, Inc.*, No. Civ. A. 06-108-JJF, 2006 WL 1876912, at *4 (D. Del. July 6, 2006) (quoting *Memminger v. Infocure Corp.*, 2000 U.S. Dist. LEXIS 22077, at *12-13 (D. Del. Nov. 14, 2000)); *accord, e.g.*, *DVI, Inc. v. DVI Financial Services, Inc.*, No. 03-12656 MFW, 2004 WL 1498593, at *2 (D. Del. June 23, 2004) ("'most crucial factor'"); *Nilssen v. Everbrite, Inc.*, No. Civ. A. 00-189-JJF, 2001 WL 34368396, at *2 (D. Del. Feb. 16, 2001) ("the most important factor"); *Affymetrix Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998) ("'[p]robably the most important factor'"; "traditionally weighed quite heavily").

In its Motion to Transfer, at 17-18, epicRealm identified five fact witnesses, including one of the inventors, who are located in Texas. EpicRealm described the subject matter of the testimony that it anticipates eliciting from each of these witnesses at trial. These witnesses are not subject to the trial subpoena power of this Court, but in the event of transfer to the Eastern District of Texas, could be subpoenaed by the Texas court to testify at trial.

QuinStreet argues that these witnesses should be considered available for trial in Delaware because they might be persuaded to travel to Delaware to attend trial. QuinStreet

Opposition at 22-23. None of these witnesses is a current employee of epicRealm. Four are ex-employees, and the fifth, a patent lawyer who helped prosecute epicRealm's patent applications, is no longer associated with epicRealm or with any law firm that does business for it. EpicRealm currently has no control over these witnesses and does not know whether they would be willing to appear in Delaware for trial or not.

In any event, Delaware courts have consistently held that a witness is deemed to be "unavailable" to testify at trial if the witness is beyond the subpoena power of the trial court; no additional showing of unavailability is required. EpicRealm "bears no burden to show that the witnesses it plans to subpoena would be 'reluctant' to testify. 'It is sufficient . . . [that] the witness is not subject to a Court's subpoena power.'" *Zoetics*, 2006 WL 1876912, at *5. "A party need not allege that a witness definitely will be unavailable for trial; rather, it is sufficient for purposes of venue transfer analysis if the witness is not subject to a court's subpoena power." *Nilssen*, 2001 WL 34368396, at *4.[1]

Moreover, it is no answer for QuinStreet to say that epicRealm can present the testimony of these witnesses at trial by videotaped deposition because "videotaped depositions are not an adequate substitute for live trial testimony." *Nilssen*, 2001 WL 34368396, at *3; *accord, e.g., DVI, Inc.*, 2004 WL 1498593, at *2 ("[T]he Court notes that it has previously rejected the argument made by Plaintiff that deposition testimony may serve as an adequate substitute for material non-party witnesses that a party is unable to procure for trial"); *Sherwood Medical Co.*

---

[1] QuinStreet cites *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565 (D. Del. 2001), for the proposition that epicRealm must show that these witnesses are willing to travel to Delaware in addition to showing that they are not subject to subpoena power of the Delaware court. That case, however, presented a different situation than this lawsuit. In *ADE Corp.*, the defendant's attorney admitted that the third-party witness in question, one of the inventors, would likely be available for trial in Delaware. *Id.* at 571. EpicRealm, however, cannot say the same for the five fact witnesses it has identified. None has stated whether he is willing to travel to Delaware.

*v. IVAC Medical Systems, Inc.*, No. 96-305 MMS, 1996 WL 700261, at *5 (D. Del. Nov. 25, 1996) ("Videos are unlikely to hold the rapt attention of a jury").

In its opposition, QuinStreet vaguely claims that certain fact witnesses are located in California, London, and India. QuinStreet Opposition at 22. QuinStreet does not name a single one of these witnesses. Given that fact, this Court should disregard these witnesses in connection with its section 1404(a) convenience analysis. *Affymetrix, Inc.*, 28 F. Supp. 2d at 205.

QuinStreet does not say whether these unnamed witnesses are employees of QuinStreet or not. Given QuinStreet's statement that these witnesses may testify concerning "the operation of the QuinStreet dynamic web page systems," and its failure to affirmatively allege that they are not employees, it is likely that these witnesses are in fact QuinStreet employees. Of course, the convenience of witnesses who are employed by a party carries no weight at all in connection with a section 1404(a) convenience analysis. *Affymetrix, Inc.*, 28 F. Supp. 2d at 203 ("no weight"); *accord, e.g., Nilssen,* 2001 WL 34368396, at *3 ("not considered").

QuinStreet argues that witnesses traveling from California, London, or India could more conveniently attend trial in Delaware than trial in Texas. QuinStreet Opposition at 22. Both courthouses, however, have international airports within convenient driving distance. Attendance at trial in either Delaware or Texas for such overseas witnesses would be equally inconvenient. Also, for the unnamed witnesses QuinStreet claims to have in California, because Texas is closer to California than is Delaware, transfer to Texas would actually enhance the convenience of these witnesses.

Last, QuinStreet lamely claims that it has "engaged an expert from the University of Delaware." Declaration of Michael McDonough ¶ 9. Again, QuinStreet does not name this

alleged expert. It does not share with the Court the expert's area of expertise, whether the expert is a technical or damages expert, whether the expert is a consulting or testifying expert, and if a testifying expert, the nature of the trial testimony anticipated from the expert. In any event, the convenience of an expert witness is entitled to little or no consideration in connection with a section 1404(a) convenience analysis. *Affymetrix*, 28 F. Supp. 2d at 203 ("little weight"); *Kewanee Oil Co. v. M & T Chemicals, Inc.*, 315 F. Supp. 652, 654 (D. Del. 1970) ("little or no consideration"); *Glickenhaus v. Lytton Financial Corp.*, 205 F. Supp. 102, 106 (D. Del. 1962) ("little or no significance").

In short, QuinStreet has not named a single witness located in Delaware. By contrast, epicRealm has named five witnesses located in Texas and described the subject matter of the testimony that it expects to elicit from these witnesses at trial. These are not employees of epicRealm, and epicRealm has no control over them. Because these witnesses are not subject to the trial subpoena power of this Court, they are deemed unavailable. The convenience of the witnesses factor, often deemed to be the most important, argues overwhelmingly for transfer to Texas.

## IV.    CONVENIENCE OF THE PARTIES

This is not a situation in which transfer will merely shift any inconvenience from one party to the other. Marshall, Texas, is a car ride from epicRealm's headquarters in Dallas, Texas. Transfer to Texas will eliminate venue inconvenience for epicRealm. Transfer to Texas will not additionally inconvenience QuinStreet, which is headquartered in Foster City, California.

In this situation, Delaware courts have held that convenience of the parties is a powerful section 1404(a) factor. *E.g.*, *The Original Creatine Patent Co., Ltd. v. Kaizen, Inc.*, No. Civ.A. 02-471-SLR, 2003 WL 179996, at *3-4 (D. Del. Jan. 22, 2003) (granting section 1404(a) transfer and noting: "Geographically, Delaware is inconvenient to everyone. All witnesses, documents

6

and employees are located outside of this forum . . . Regardless of the forum, OCPC will incur travel expenses. A transfer to California would eliminate rather than merely shifting the travel expense of one party."); *APV North America, Inc. v. Sig Sigmonazzi North America, Inc.,* 295 F. Supp. 2d 393, 399 (D. Del. 2002) (granting section 1404 (a) transfer where trial in Delaware would have been "greatly inconvenient" to the defendant with "little benefit" to the plaintiff, who faced significant travel time and expenses regardless of the transfer); *Brunswick Corp. v. Precor Inc.,* No. 00-691-GMS, 2000 WL 1876477, at *2 (granting section 1404(a) transfer where the plaintiff chose not to sue on its home turf, and the defendant would have faced great inconvenience if forced to litigate in Delaware); *Filmtec Corp. v. Allied-Signal, Inc.,* No. 88-225-JRR, 1989 WL 201603, at *5 (D. Del. June 1, 1989) ("Having already chosen to litigate hundreds of miles from its home turf, plaintiff has necessarily determined that it is willing to put up with a good deal of inconvenience in order to try this case. Because plaintiff's inconvenience is thus inevitable, defendants' convenience becomes more relevant."); *The BOC Group, Inc. v. CVC Products, Inc.,* Civ. A. No. 87-354-CMW, 1988 WL 62593, at *1-2 (D. Del. June 6, 1988) (granting section 1404(a) transfer where the plaintiff chose not to litigate on its home turf, and litigation in Delaware would have imposed great inconvenience on the defendant, a small corporation located in New York); *Shatterproof Glass Corp. v. Guardian Indust. Corp.,* Civ. A. No. 86-607 CMW, 1987 WL 11773, at *1 (D. Del. May 4, 1987) ("When the plaintiff does not bring the action in its home turf . . . then transferring the action will often have little effect on the convenience of the forum to the plaintiff while greatly increasing the convenience to the defendant").

QuinStreet accurately points out that epicRealm's state of incorporation is Delaware. While that fact is relevant, it does not prevent a transfer that would materially advance the

overall convenience of the parties and witnesses.  "Although a party's incorporation in Delaware is not irrelevant to the Court's decision, it is not dispositive.  Where an alternative forum is more convenient and has more substantial connections with the litigation, 'incorporation in Delaware will not prevent transfer.'"  *APV North America, Inc.*, 295 F. Supp. 2d at 399-400 (quoting *Green Isle Partners, Ltd. S.E. v. Ritz Carlton Hotel Co.*, C.A. No. 01-202-JJF (D. Del. Nov. 2, 2001)); *accord, e.g., Mentor Graphics Corp. v. Quickturn Design Systems, Inc.*, 77 F. Supp. 2d 505, 509 n. 6 (D. Del. 1999) ("Although the court does not mean to suggest that defendant's state of incorporation is irrelevant to a venue transfer inquiry, it is certainly not dispositive.  Indeed, it is not mentioned in § 1404, nor is it among the eleven factors identified by the Third Circuit Court Appeals in *Jumara*.").

As epicRealm pointed out in its Motion to Transfer, at 13-14, the "home turf" rule recognizes that a plaintiff's filing where its principal place of business is located argues against transfer, because transfer will necessarily inconvenience such a plaintiff.  On the other hand, if a plaintiff chooses to file suit in a venue other than its principal place of business, ordinarily its convenience does not factor into the section 1404(a) analysis because a transfer will not inconvenience such a plaintiff.  *E.g., Arrow Communication Laboratories, Inc. v. John Mezzalingua Associates, Inc.*, No. Civ. A. 05-357-SLR, 2005 WL 2786691, at *2 ("[T]ransfer of an action is usually regarded as less inconvenient to a plaintiff if the plaintiff has not chosen its 'home turf' or a forum where the alleged wrongful activity or injury occurred . . . ."); *Sumito Mitsubishi Silicon Corp. v. MEMC Electronic Materials, Inc.*, No. Civ. 04-852-SLR, 2005 WL 735880, at *2 (same).  In this case, QuinStreet chose to file suit in a venue that is 2,498 miles from its "home turf."  www.geobytes.com/CityDistanceTool.htm?loadpage.  Accordingly, under

the "home turf" rule, QuinStreet's convenience should not be a factor in the section 1404(a) analysis.

## V.    LOCAL INTEREST

In an effort to find some connection between this litigation and Delaware, QuinStreet argues that it has three customers located in Delaware.  QuinStreet Opposition at 2; Declaration of Michael McDonough ¶ 4.  QuinStreet has a total of two hundred United States customers, however.  QuinStreet Opposition at 2; Declaration of Michael McDonough ¶ 3.  Accordingly, the three Delaware customers represent just one and one half percent of QuinStreet's customer base.

QuinStreet does not advise us how many customers it has in Texas.  Given the population disparity between Texas and Delaware,[2] and QuinStreet's silence on this issue, it is likely that QuinStreet has more customers in Texas than it does in Delaware.  Also, in the earlier filed Texas Action, epicRealm has sued QuinStreet's indemnitee, Herbalife.  Unlike QuinStreet's three customers in Delaware that may potentially be affected by epicRealm's patents in some hypothetical future litigation, QuinStreet's customer Herbalife is currently facing an infringement lawsuit on the same patents in the Eastern District of Texas.  If this lawsuit is local in nature, it is more local to Texas than to Delaware.

## VI.    JUDICIAL EFFICIENCY, FIRST FILED CASE: THE TEXAS COURT IS ALREADY FAMILIAR WITH THE TECHNOLOGY, THE PATENTS, CLAIM CONSTRUCTION, AND INFRINGEMENT ISSUES.

QuinStreet argues that it is a bad thing — not a good thing — for a case to be assigned to an "educated judge," a judge with experience concerning the patents-in-suit.  QuinStreet Opposition at 13.  In support of this bizarre proposition, QuinStreet cites a 1977 First Circuit Court of Appeals decision, *Codex Corp. v. Milgo Electronics Corp.,* 553 F.2d 735, 739 (Fed. Cir.

---

[2]  As of 2005, Delaware had a population of 843,524 and Texas had a population of 22,859,968.  *See* http://www.census.gov, Population Finder (accessed on September 19, 2006).

1977). In that case, however, the First Circuit held only that in a nonjury case in which a judge had already found a patent valid, it might be difficult for the judge to give full and fair consideration to an additional validity challenge by a different defendant. The *Codex* decision, however, has nothing to do with the facts of this case because the trial court in the Texas Action, which is a jury case, has not in any way addressed the validity of the epicRealm patents.

By contrast, in numerous decisions Delaware courts have affirmed the evident proposition that it is a good thing — not a bad thing — for a patent case to be assigned to a judge who is familiar with the patent and the relevant technology. For example, in *Sumito Mitsubishi Silicon Corp. v. MEMC Electronic Materials, Inc.*, No. Civ. 04-052-SLR, 2005 WL 735880 (D. Del. Mar. 30, 2005), Sumito sued MEMC, requesting a declaratory judgment of noninfringement and invalidity of certain patents and alleging that MEMC's attempts to enforce those patents violated the antitrust laws. Earlier, MEMC had sued Sumito for infringement of the patents in the Northern District of California. In the Delaware action, pursuant to 28 U.S.C. § 1404(a), MEMC moved to transfer to the Northern District of California. The Delaware court granted that motion, concluding that the "facts of the case balance strongly in favor of transfer to the Northern District of California" because of the preexisting patent infringement suit in that district.

> The court in the Northern District Litigation has considered and ruled on many of the issues presented by plaintiffs' amended complaint. In particular, that court has already considered briefs regarding whether the '302 patent was fraudualently obtained, was invalid under the doctrine of inequitable conduct, or was invalid for patent misuse. Furthermore, the court has already considered whether plaintiffs' Samsung wafer infringed the '302 patent. . . . Finally, the court was presented with several briefs addressing whether the '302 patent was invalid. . . . Thus, all of plaintiffs' contentions relating [to] the '302 patent have already been presented to the court in the Nothern District Litigation. . . . The court in the Northern District Litigation has three years of

> experience with this litigation and has already issued several orders
> regarding infringement of the '302 patent. Its grasp of the facts and
> issues in connection with the '302 patent, together with the
> similarity between the '302 patent and the '380 patent, make that
> court a more appropriate venue for the present matter.

Id. at *3.

*Nilssen v. Everbrite, Inc.,* No. Civ. A. 00-189-JJF, 2001 WL 34368396 (D. Del. Feb. 16, 2001), is similar authority. Nilssen sued Everbrite in Delaware for patent infringement. Everbrite moved to transfer to the Northern District of Illinios. In granting that motion, the Delaware court relied on the existence of a previously filed, related patent infringement action in the Northern District of Illinois.

> In the instant action, Plaintiff has alleged infringement of three
> patents that are also at issue in the litigation in the Northern
> District of Illinios. In those Illinois cases, Markman rulings have
> already been issued and case dispositive motions have already
> been filed. . . . Therefore, the Court concludes that the waste of
> judicial resources in requiring two different courts to become
> familiar with three patents, and to render Markman rulings on each
> of those patents, is a factor that strongly weighs in favor of
> transfer.

Id. at *4; *accord, e.g., Cashedge, Inc. v. Yodlee Inc.,* No. Civ. A. 06-170-JJF, 2006 WL 2038504, at *2 (D. Del. July 19, 2006) (transferring to a venue with a related patent action in which the Court had already received a technology tutorial and heard argument on Markman issues); *Arrow Communications Laboratories, Inc.,* 2005 WL 2786691, at *1 ("A motion to transfer venue may also be granted if there is a related case which has been first filed or otherwise is the more appropriate venue in which to litigate the issues between the parties."); *Virgin Wireless, Inc. v. Virgin Enterprises Ltd.,* 201 F. Supp. 2d 294, 301 ("It would be a waste of judicial resources to allow [two lawsuits in different courts] to progress in parallel.")

In the Texas Action, the trial court has received a tutorial on the patented technology (*see* July 7, 2006 Minutes of Tutorial attached to the Appendix in Support of Defendant EpicRealm

11

Licensing, LP's Motion to Consolidate and Transfer ("App.") at A20), has conducted a full day

Markman hearing (*see* Minutes of Claim Construction Hearing, App. at A21-A22), has issued a

claim construction report and recommendation (App. at A23-A56), and just recently issued a

report and recommendation regarding a motion for summary judgment of noninfringement

(attached as Exhibit 1 to this Reply).  The trial court in the Texas action, therefore, has acquired

substantial expertise concerning the patents-in-suit and the relevant technology.  For this court to

have to come up to speed on the patents and technology would be an unnecessary waste of

judicial resources.  It would be far more efficient to transfer this case to Texas, where the Texas

trial court can apply the expertise that it has already attained to resolve the issues that will arise

in this case.

      QuinStreet cites *Sony Electronics, Inc. v. Orion IP, LLC*, No. C.A. 05-255(GMS), 2006

WL 680657 (D. Del. Mar. 14, 2006), for the proposition that transfer to Texas will decrease

efficiency.  Orion originally filed suit against Sony in Texas.  *Id.* at *1.  Sony, along with seven

other unrelated entities, later filed a declaratory judgment action against Orion in Delaware.  *Id.*

at *1.  The Delaware court severed Sony from the other seven plaintiffs and transferred Sony's

case to the Texas court.  *Id.* at *1.  The court denied Orion's motion to transfer the remaining

seven plaintiffs because those entities had no connection to the Texas case, and their products

and services were not implicated in the Texas case.  *Id.* at *1-2.

      As explained above, QuinStreet, unlike the non-Sony plaintiffs, is intimately connected to

the Texas Action.  The products and services that QuinStreet provides to Herbalife are directly at

issue in the Texas Action, and epicRealm's accusations regarding those products and services are

at the heart of QuinStreet's claims for declaratory relief.  Moreover, QuinStreet claims that its

apprehension of suit on the products and services that it provides to its other customers arises from events occurring in the Texas Action.

QuinStreet makes a few additional arguments against transfer that relate to the Texas action. None has merit. QuinStreet argues that transfer to Texas will delay and complicate the Texas action. QuinStreet Opposition at 11-12. This assumes, however, that this action, if transferred, would be consolidated for trial with the Texas Action. While consolidation of this case with the Texas action for certain pretrial issues would serve judicial economy and efficiency, epicRealm does not seek consolidation for trial, nor is it likely that the two actions would be tried together since the Texas Action is set for trial on March 7, 2007, less than six months from now.

QuinStreet argues that if this case is transferred to Texas, QuinStreet may take positions that are inconsistent with positions taken by its indemnitee Herbalife in the Texas Action. It is difficult to conceive of what such a conflict might be. Certainly as to the Herbalife products and services charged with infringement in the Texas Action, QuinStreet and Herbalife are aligned in their twin goals of proving noninfringement and invalidity. Even if the interests of QuinStreet and Herbalife might diverge with respect to products and services not used by Herbalife, because this case and the Texas Action will probably not be tried together, QuinStreet will not be forced to present these potentially conflicting arguments to the same jury that hears Herbalife's claims and defenses.[3]

---

[3] QuinStreet argues both sides of the issue whether it will be allowed to participate in the Markman claim construction process in Texas in the event of transfer. In one part of its Opposition, QuinStreet argues that because the trial court in Texas has already made its claim construction recommendation, transfer to Texas "will have the effect of denying QuinStreet full input into claim construction." QuinStreet Opposition at 9. Elsewhere in its Opposition, it argues the opposite, that in the event of transfer, "the Markman process would have to be repeated," thus delaying trial of the Texas Action. QuinStreet Opposition at 11-12.

Last, QuinStreet argues that this Court's sister court in the Eastern District of Texas is biased,[4] and that the docket in the Texas Action is "arduous." QuinStreet Opposition at 3. QuinStreet's claims, which are based on unsupported statements made in its own declaration, are without merit. The rulings by the court in the Texas Action have been even-handed. For example, the Texas court dismissed one of the defendants sued by epicRealm, granting that defendant's motion to dismiss for lack of personal jurisdiction. *See* Order dated July 12, 2006, attached as Exhibit 2 to this Reply. And the docket in the Texas Action is far from "arduous." EpicRealm filed its infringement action against Herbalife on August 5, 2005, and the case is set for trial on March 6, 2007, more than a year and a half from the date of filing. Moreover, even as of this late date, more than a year after the case was filed, Herbalife apparently still believes that it has plenty of time to conduct the deposition discovery necessary to prepare for trial: Herbalife has not yet taken or even requested its first deposition in the Texas Action.

## VII.    *AIR PRODUCTS* AND RELATED CASES

The facts of this case are nearly identical to the facts in *Air Products and Chemicals, Inc. v. MG Nitrogen Services, Inc.*, 133 F. Supp. 2d 354 (D. Del. 2001). In *Air Products*, INS and MGI sued Tesco for patent infringement in the Southern District of Texas (the first-filed suit). *Id.* at 356. Air Products made and sold membrane equipment to Tesco for use in the infringing process, which involved oil and gas drilling methods. *Id.* at 355-57. Air Products, who like QuinStreet was not a party to the original lawsuit in Texas, filed a separate lawsuit in Delaware against INS and MGI seeking a declaratory judgment of noninfringement and invalidity on the same patents involved in the Texas case. *Id.* The Delaware court transferred Air Products' case

---

[4] QuinStreet alleges that the Texas Action is in "a venue with a reputation for verdicts favoring patent holders." QuinStreet Opposition at 3. By contrast, it contends that in Delaware "neither party has a marked advantage over the other with respect to the local community, " and that by filing in Delaware, "QuinStreet has availed itself of a neutral forum." *Id.* at 8-9.

to Texas, recognizing that "the interests of judicial economy dictate that an action involving the same patents-in-suit and most of the same parties should not proceed simultaneously in two different district courts." *Id.* at 357.

QuinStreet dismisses *Air Products*, claiming that this Court's decision was based on a near identity in parties and products that were in dispute. QuinStreet Opposition at 16. Contrary to QuinStreet's suggestions, the facts of this case match the facts of *Air Products*. Both cases involve suppliers (Air Products and QuinStreet) that sue patent holders (INS/MGI and epicRealm) for declaratory judgment in Delaware after these patent holders have already sued the suppliers' customers (Tesco and Herbalife) for infringement in Texas. QuinStreet's products and services, like the products and services of Air Products, are implicated in the Texas Action, and the implication of these products and services forms the basis for the alleged threat of suit by epicRealm.

QuinStreet also dismisses several other cases cited by epicRealm, again relying on hypothetical conflicts between it and Herbalife to argue that this case is wholly separate and distinct from the Texas Action. QuinStreet's dismissal of *Arrow Communication Laboratories, Inc. v. John Mezzalingua Associates, Inc.*, No. Civ. A. 05-357-SLR, 2005 WL 2786691, at *1-2 (D. Del. Oct. 26, 2005), and *Nilssen v. Everbrite, Inc.*, No. Civ.A. 00-189-JJF, 2001 WL 34368396, at *1 (D. Del. Feb. 16, 2001), is particularly troublesome. QuinStreet ignores the focus of these two cases and instead points out minor discrepancies between these cases and this lawsuit. The focus of these two cases is clear, however — related lawsuits pending in other jurisdictions may provide a more experienced and efficient forum for litigating similar issues involving the same patents and similar issues. *Arrow Communication Laboratories*, 2005 WL 2786691, at *1-2 (granting section 1404(a) transfer where "there is a related case which has been

first filed or otherwise is the more appropriate venue in which to litigate the issues between the parties"); *Nilssen*, 2001 WL 34368396, at *1 ("[T]he Court concludes that the waste of judicial resources in requiring two different courts to become familiar with three patents, and to render Markman rulings on each of these patents, is a factor that strongly weighs in favor of transfer.").

## VIII.    CONCLUSION

EpicRealm recognizes that it has the burden on the transfer issue and that this Court denies more section 1404(a) motions than it grants.  In this case, however, the close connection to the Texas Action, the convenience of the parties and the five non-party fact witnesses that epicRealm has identified, and considerations of judicial efficiency all argue strongly for transfer to Texas.  The facts of the *Air Products* case are virtually identical to the facts of this case.  The Court should transfer this patent declaratory judgment action to Texas, just as it tranferred the patent declaratory judgment action in *Air Products* to Texas.

SAUL EWING LLP


 /s/ *Kimberly L. Gattuso*
Michael F. Bonkowski, Esquire (No. 2219)
Kimberly L. Gattuso, Esquire (No. 3733)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, Delaware  19801-1611
(302) 421-6800


Of Counsel:

BAKER BOTTS L.L.P.
Larry D. Carlson, Esquire
Kevin J. Meek, Esquire
Jeff Moles, Esquire
2001 Ross Avenue
Dallas, TX  75201-2980

Attorneys for epicRealm Licensing, LP

DATED:       September 19, 2006

17

# **<u>Exhibit 1</u>**

## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| EPICREALM, LICENSING, LLC | § | |
| | § | |
| v. | § | No. 2:05CV163 |
| | § | |
| AUTOFLEX LEASING, INC., et al. | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the

Adoption of Local Rules for Assignment of Duties to United States Magistrate Judges, Autoflex's

Motion For Summary Judgment of Noninfringement (Docket Entry # 125) was referred to the

Honorable Caroline M. Craven for the purpose of making a report and recommendation. The Court,

having reviewed the relevant briefing, is of the opinion Autoflex's motion should be **DENIED**.

### I.

### Background

EpicRealm Licensing, LLC ("Plaintiff") sued Autoflex Leasing – Dallas LP ("Autoflex") and

five unrelated companies (collectively "Defendants"), alleging Defendants are infringing United

States Patent Nos. 5,894,554 and 6,415,335 (the "Patents"). The Patents allegedly encompass certain

systems and methods to dynamically generate web pages. Plaintiff's Patents purport to cover a

process in which a web server interacts with middleware to use page servers and other data sources

to generate HTML web pages that are subsequently transmitted over the Internet.

On February 28, 2005, Autoflex filed its Motion For Summary Judgment of Noninfringement

(Docket Entry # 125). Autoflex's motion asserts it does not perform any of the acts Plaintiff says

cause the alleged infringement, and thus, it cannot be liable for infringement regardless of whatever

Exhibit 1

merit Plaintiff's patents may or may not have.  In general, Autoflex urges that it is entitled to summary judgment because a third-party web server, NetIn.com, owns, operates, and maintains the web servers where Autoflex's web pages reside.

Plaintiff, in a response filed on April 10, 2006, states that after Autoflex filed its current motion, the parties took three depositions on the issues raised by the motion. According to Plaintiff, the parties deposed Robert Fournerat of NetIn.com, Inc. ("NetIn.com"), Autoflex's web hosting services provider; Joseph Camblin of Jozee Designs, Autoflex's web site designer; and Andrew Adams, Autoflex's Rule 30(b)(6) designee on the topic of the relationship between Autoflex and NetIn.com. Plaintiff attached to its response excerpts from the transcripts of these depositions and asserts the deposition excerpts establish that there are genuine issues of material fact.

Specifically, Plaintiff contends Autoflex's motion is premised on its factual allegations that it merely purchases "canned" web hosting services from an "independent, third party company known as NetIn.com" and that these services are "the same type of services that NetIn.com offers and provides to all of its customers" and that "Autoflex has no knowledge and does not care about the particular equipment and methods that NetIn.com uses for its web hosting services."[1] Plaintiff argues these factual allegations are wrong.  Specifically, Plaintiff argues NetIn.com provides tailored, customized services to meet the specific needs of Autoflex, and those services are different from, not the same as, web hosting services that NetIn.com provides to other customers.

Autoflex, in reply, asserts the three recent depositions prove that (1) the Autoflex web site has never employed the Tomcat connector module; (2) the Autoflex web site charged with infringement does not process requests for dynamic content; and (3) neither Autoflex itself, nor

---

[1]  Autoflex's mot. at pgs. 5, 6 & 13.

2

Exhibit 1

Autoflex's web designer, Joe Camblin, carry out or direct the carrying out of any portion of any claim of Plaintiff's patents. Even assuming that NetIn.com uses a Tomcat connector module to service the Autoflex web site, Autoflext asserts it still could not be liable under § 271(a) because NetIn.com, and not Autoflex, performs all of the acts accused of infringement.

Autoflex addresses the cases relied upon by Plaintiff, regarding agents that carry out one or more of the steps of a patented process. *See e.g. Hill v. Amazon.com, Inc.*, 2006 WL 151911 (E.D. Tex. 2006). Autoflex states in those cases, the accused infringer itself performed at least one step of a patented multi-step method and engaged another to perform the remaining steps. According to Autoflex, because it does not carry out any of the steps or components that are accused of leading to infringement, it cannot be liable for infringement under § 271(a) as a matter of law. If the Court is inclined to extend the *Hill* line of cases to entities which carry out no step of the accused method or process, Autoflex contends Plaintiff has not shown the necessary connection for imputing NetIn.com's conduct to Autoflex for purposes of § 271(a). Autoflex further maintains Plaintiff has not identified sufficient evidence to prove Autoflex induced infringement under § 271(b).

In a surreply, Plaintiff first takes issue with Autoflex's assertions that its web site does not process requests for dynamic content and that the web site does not employ the Tomcat connector module, stating Autoflex made the assertions for the first time in its reply brief. Next, Plaintiff asserts, at a minimum, the summary judgment record creates a genuine issue of material fact concerning the existence of an agency relationship between Autoflex and Mr. Camblin. Plaintiff attached deposition excerpts and Plaintiff's Preliminary Infringement Contentions in support.

Exhibit 1

## II.

## Summary Judgment Standard

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings,

affidavits and other evidence available to the Court establish that there are no genuine issues of

material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(C).

The movant bears the responsibility of informing the district court of the basis for its motion and

identifying those portions of the pleadings, depositions, answers to interrogatories and admissions

on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue

of material fact. *Topalian v. Ehrman,* 954 F.2d 1125 (5th Cir.1992), *cert. denied,* 113 S.Ct. 82

(1992).

The nonmovant is not required to respond to a motion for summary judgment until the

movant first meets its burden of demonstrating that there are no factual issues warranting trial. *Ashe*

*v. Corley,* 992 F.2d 540 (5th Cir.1993). Once the movant has shown the absence of material fact

issues, however, the opposing party has a duty to respond, via affidavits or other means, asserting

specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e). It is not enough

for the party opposing summary judgment to rest on mere conclusory allegations or denials in his

pleadings. *Topalian,* 954 F.2d at 1131. The nonmovant must point out, with factual specificity,

evidence demonstrating the existence of a genuine issue of material fact on every component of the

nonmovant's case. *Dunn v. State Farm & Casualty Co.,* 927 F.2d 869, 872 (5th Cir.1991). If the

nonmoving party fails to make a sufficient showing on an essential element of his case with respect

to which he has the burden of proof, the moving party is entitled to judgment as a matter of law.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265 (1986). In

Exhibit 1

assessing the proof, the court views the evidence in the light most favorable to the nonmovant. *Matshusita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Court's responsibility is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The inquiry is "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250; *see also Cooper v. Ford Motor Co.*, 748 F.2d 677, 679 (Fed. Cir. 1984); *see also SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985)(*en banc*)("[T]he district court must view the evidence in a light most favorable to the nonmovant and draw all reasonable inferences in its favor, . . . and must resolve all doubt over factual issues in favor of the party opposing summary judgment."); *Hibernia Nat'l. Bank v. Carner*, 997 F.2d 94, 97 (5th Cir. 1993). The Federal Circuit has held that "summary judgment is as appropriate in a patent case as in any other *_*_*." *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984); *see also Meyers v. Brooks Shoe, Inc.*, 912 F.2d 1459, 1461 (Fed. Cir. 1990)(summary judgment is appropriate in patent cases).

### III.

### Summary Judgment Evidence

**A.     Autoflex's Evidence**

Autoflex is an automobile leasing company that offers a variety of programs for leasing or purchasing new or used cars. Adams Aff. at ¶ 3. Internet users can learn about Autoflex and its

Exhibit 1

services through its web site, www.autoflex.com.  *Id.* at ¶ 4.  Autoflex does not own, operate,

maintain, control, or direct the operation or control or operation of the web server used to host the

Autoflex web site.  Autoflex does not own, maintain, or control a web server of any kind, and it has

never done so.  *Id.* at ¶ 5.

Autoflex purchases web hosting services from an independent, third-party company known

as NetIn.com (www.netin.com).  *Id.* at ¶ 5.  NetIn.com has provided web hosting services to

Autoflex since 1999.  *Id.* at ¶ 7.  NetIn.com maintains and controls the web servers, hardware, and

software that are necessary to host the Autoflex web site. *Id.* at ¶ 6.

Autoflex was unaware of the patents-in-suit until served with the complaint in May of 2005.

*Id.* at ¶ 8. Autoflex has no first-hand knowledge about the specific software, hardware, or methods

used by NetIn.com to host the Autoflex web site.  *Id.* at ¶ 7.

**B.    Plaintiff's Evidence**

Autoflex promotes its products and services and conducts business with its customers,

through its web site, www.autoflex.com. In February of 1998, Autoflex employed Joseph Camblin,

of Jozee Designs, to provide it with web design services. Camblin Dep. at 12-13 & 36, lines 18-19.

Shortly thereafter, Mr. Camblin referred NetIn.com to Autoflex, and Autoflex and NetIn.com agreed

for NetIn.com to provide Autoflex with web hosting services. Camblin Dep. at 13-14.

Mr. Camblin was Autoflex's agent with respect to the provision of web hosting services by

NetIn.com. Robert Fournerat, of NetIn.com, "understood that Mr. Camblin had authority to speak

for Autoflex." Fournerat Dep. at 21, lines 10-13. Fournerat had an early conversation with Autoflex's

Ray Adams, in which Mr. Adams said that "Joe [Camblin] is the lead man on this, you know, work

with him and get this done for him." *Id.* at 21, lines 16-20. Ray Adams said that "Joe [Camblin] kind

Exhibit 1

of has the authority to lead this, you know, this project, work with him." *Id* at 21-22.

In his deposition, Mr. Camblin confirmed that he was "the front end guy," the "Autoflex web site guy." Camblin Dep. at 18, lines 20-24 & 36. Finally, Autoflex's Andrew Adams admitted that Mr. Camblin had "authority to communicate with NetIn.com on behalf of Autoflex about [the] website www.autoflex.com." Adams Dep. at 18, lines 17-21.

Autoflex had specific requirements with respect to the web hosting services provided by NetIn.com. It communicated those requirements to NetIn.com and made sure that NetIn.com satisfied them. Autoflex's Andrew Adams testified that "[w]here Autoflex had a specific need with respect to the NetIn.com server that provided the web hosting services for its web site, . . . [Autoflex's] Ray Adams would contact NetIn.com to make sure those needs were addressed." Adams Dep. at 41, lines 4-8. Mr. Fournerat testified: "[F]airly much they get what they want. They ask for it, if I can do it, if it's, of course, legal, reasonable, then, you know, we don't bicker about prices or anything like that. We just do it for them." Fournerat Dep. at 23-24.

For example, in late 1999 or early 2000, Autoflex determined that it needed a secure server so that customers could provide credit card numbers and similar private, financial information without fear of compromise. Fournerat Dep. at 24-25; Camblin Dep. at 25. Through Mr. Camblin, Autoflex communicated that need to NetIn.com. Fournerat Dep. at 36; Camblin Dep. at 25. NetIn.com then installed the relevant software and configured the server to meet this Autoflex need. Fournerat Dep. at 37-38; Camblin Dep. at 25.

Autoflex also decided that it wanted a separate domain name - or separate part of their web site - for www.physiciansautonetwork.com. Fournerat Dep. at 20, lines 8-17. Autoflex spoke directly with Mr. Fournerat about that need. *Id.* at 20, lines 20-23. On another occasion, Autoflex

Exhibit 1

asked for online web log analysis. To meet that need, NetIn.com licensed a product called Web Trends, then installed and configured that software on the server used for Autoflex. Fournerat Dep. at 38-39.

Mr. Fournerat recently authored an e-mail to Autoflex's Andrew Adams stating: "[T]he services you get from us do not match our standard offerings. We give Autoflex this latitude because you have been such a good customer, and we have a good working relationship with your web designer, Joe Camblin. Anyway, the point is that you get a lot of customized services from us that we, roll up into something we call, Virtual Host III." Fournerat Dep. at 46-48. In his deposition, Mr. Fournerat confirmed that these statements in his e-mail are all true. Fournerat Dep. at 47-48.

Exhibit 2 to the deposition of Mr. Fournerat is a twenty-three page document with detailed information about Apache server software and related modules. Fournerat Dep. at 28. Mr. Fournerat confirmed in his deposition that Mr. Camblin asked him for this type of information about the server that NetIn.com used to service Autoflex, and Mr. Fournerat provided such information to Mr. Camblin. Fournerat Dep. at 29-30. "[H]e would want to know version numbers, for example, and - and what environments - what environmental controls are enabled or disabled." Fournerat Dep. at 31, lines 9-11. Mr. Fournerat provided Mr. Camblin with information about the Apache web server software modules on the Autoflex server. Fournerat Dep. at 30-34. Mr. Fournerat also had "conversations with Joe [Camblin] about Tomcat" but not in the context of Autoflex. Fournerat Dep. at 34-35.

Exhibit 1

## IV.

### Discussion

**A.    Plaintiff's claims against Autoflex**

In its Complaint, Plaintiff alleges that defendants are infringing the claims of its patents "as defined by *35* U.S.C. § 271 (a), (b), and/or (c)." Second Amended Complaint ¶ 17. Section 27 1 (a) defines direct infringement. Sections 271 (b) and (c) define inducement to infringe and contributory infringement, respectively. Plaintiff is asserting against Autoflex only claims of direct infringement and inducement to infringe under 35 U.S.C. § 271(a) and (b). To the extent that the language from its Complaint quoted above constitutes the assertion against Autoflex of a claim for contributory infringement under *35* U.S.C. 5 271(c), Plaintiff moved, in its response to Autoflex's motion, to withdraw that claim.

**B.    Direct Infringement**

**1.    35 U.S.C. § 271(a)**

Liability for infringement under 35 U.S.C. § 271(a), referred to as "direct infringement," can be found only if an accused infringer "makes, uses, offers to sell, or sells" the patented invention within the United States, or if it "imports" the patented invention into the United States. "A method claim is infringed only by one practicing the patented method." *Schumer v. Laboratory Computer Sys., Inc.*, 308 F.3d 1304, 1309 n. 3 (Fed. Cir. 2002).

**2.    Arguments**

Autoflex states a third-party web hosting company, NetIn.com, owns, operates, and maintains the web server and the alleged page server that carries out the allegedly infringing acts. According to Autoflex, because it does not itself perform the claimed method steps, it cannot be liable for

Exhibit 1

infringement of the method claims under § 271(a) as a matter of law. Autoflex further asserts it does not make, use, offer for sale, sell, or import a computer system or "machine readable medium" as claimed in the asserted product claims, and thus Autoflex is not liable for direct infringement of these claims as a matter of law. In this regard, Autoflex asserts that to be guilty of direct infringement, one must practice each step of a claimed method or process and, with respect to an apparatus or systems claim, make, use, offer for sale, sell, or import a device that contains every element of the asserted claim.

Plaintiff asserts that while this is true as a general rule, a fact issue exists as to whether an exception to the above general rule applies to the facts of this case. According to Plaintiff, an exception exists when a third party performs one or more steps of a claimed method or process, or engages in some or all of the activities that constitute an infringement of an apparatus or systems claim, and if there is an agency or contractual relationship with the third party, or if there is a connection between the accused infringer and the third party that makes imposition of liability appropriate.

In support of their motion, Autoflex relies upon, among other cases, *BMR Resources, Inc. v. Paymentech, L.P.*, 2006 U.S. Dist. LEXIC 37746 (N.D. Tex. May 24, 2006). In *BMR Resources*, the patentee alleged that the defendant was liable for direct infringement of a multi-step method claim. The patent claimed an interactive method that enabled a caller to make purchases on his or her debit card using a standard touch-tone telephone. *Id.* at *2. Using the invention, a caller might "initiate a bill payment transaction, obtain information regarding authorization of the transaction, and inquire about previously processed transactions." *Id.*

The defendant was "in the business of assisting clients, typically retail merchants, with

10

Exhibit 1

processing payment transactions" by routing the information to an affiliated financial institution.

*Id.* at *2-*3. The defendant moved for summary judgment of noninfringement, asserting it did not

carry out several steps of the claimed method. Both parties agreed that at least part of the claimed

process was performed by debit networks and participating financial institutions. *Id.* at *12. The

patentee opposed the defendant's motion and relied upon the exception that when multiple entities

carry out every step as set forth in the claim, a party is liable for direct infringement if a different

party performing the steps is "connected" to the other entity. *Id.* at *8.

The court noted that courts vary as to what kind of "connection" between the entities is

required. *Id.* The court in *BMR Resources* concluded that the plaintiff must prove that "the party

accused of infringement directs or controls the actions of the other entity or entities performing the

steps of the process patent." *Id.* at *22. The court granted the defendant's motion for summary

judgment, finding the record contained no evidence creating a genuine issue of material fact as to

whether the defendant directed or controlled the activities of the debit networks and financial

institutions. *Id.* at *13. Not only did the plaintiff fail to present evidence of control, but the plaintiff

also failed to present sufficient evidence of any connection between the defendant and the financial

institutions. *Id.* at *22. The plaintiff "only provide[d] evidence that [the defendant] sends some sort

of information to the financial institutions through the debit networks." *Id.*

In response, Plaintiff first asserts it has presented sufficient evidence that Autoflex directs

and controls the activities of its web hoster, NetIn.com. According to Plaintiff, unlike the defendant

in *BMR Resources*, "Autoflex does not provide data and then leave NetIn.com free to perform steps

of the patented method without instructions. Instead, Autoflex directs and controls the actions of

Exhibit 1

NetIn.com by communication specific requirements and specific needs to NetIn.com."[2]

Next, Plaintiff contends that although evidence of direction or control is one means of establishing direct infringement by a defendant who does not perform every step of a patented method, "litigants in the Eastern District of Texas may also establish direct infringement by providing evidence of a contractual or agency relationship between a defendant and a third-party who performs certain steps of a patented method."[3] *See Hill v. Amazon.com, Inc.*, 2006 WL 151911 (E.D. Tex. 2006). Plaintiff maintains it has provided evidence of a contractual relationship between Autoflex and NetIn.com.

In its reply, Autoflex asserts NetIn.com does not use a Tomcat connector module to service Autoflex's web site and NetIn.com has never provided dynamic web page processing for Autoflex. Assuming NetIn.com uses a Tomcat connector module to service the Autoflex web site, Autoflex states NetIn.com performs *all* of the acts accused of infringement. In this regard, Autoflex argues the rule of law discussed in *Hill* does not apply when the third party that is connected with the accused infringer performs all of the steps of the claimed invention, and the accused infringer performs none. Finally, Autoflex claims Plaintiff has not presented sufficient evidence for a reasonable juror to find Autoflex either retained NetIn.com as its agent or directed or controlled NetIn.com's allegedly infringing activities.

**3.    Discussion**

"A party cannot avoid direct infringement merely by having another entity perform one or more of the required steps when that party is connected with the entity performing one or more of

---

[2] Plaintiff's response to Autoflex's letter brief at 3.

[3] *Id.* at 3, n. 1.

12

Exhibit 1

the required steps." *Marley Mouldings Ltd. v. Mikron Indus.*, Inc., 2003 WL 1989640, at 3 (N.D. Ill. Apr. 30, 2003). "Under such facts, the party that is contracting out part of the process or method and then completing the process may be infringing the patented invention because that party, through its connection with the entity performing only part of the process, is in actuality performing the combination of each and every step of the claimed method." *Id.*

In *Hill v. Amazon.com, Inc.*, 2006 WL 151911 (E.D. Tex. 2006), the patents-in-suit concerned electronic catalogs. The claims described a main computer, operated by the defendants, that stored constant and variable data, and a remote computer, operated by the customers, that periodically updated data on the remote computer with data received from the main computer. *Id.* at * 1. The defendants moved for summary judgment of noninfringement on the ground that they did not perform the steps that related to the remote computers. *Id.*

The defendants in *Hill* cited "the general rule that, to be liable as a direct infringer, one must perform all of the steps of the claimed method." *Id.* at *2. District Judge T. John Ward noted that despite the general rule, "several courts have suggested that when different entities perform the claimed steps of the patented method, one party may be liable for direct infringement depending on the extent to which it is connected to or controls the other entity." *Id.* Judge Ward held the "plaintiff may prevail if it shows that the defendants exert sufficient control or have a sufficient connection to users operating the remote computers required by the claims." *Id.*

In so holding, Judge Ward agreed with the holdings in *Cordis Corp. v. Medtronic Ave., Inc.*, 194 F. Supp.2d 323, 349 n.19 (D. Del. 2002), that for the exception to apply, a plaintiff patent owner need not show that the two entities "'work in concert,' 'work jointly,' or have an 'agency relationship.'" *Hill*, 2006 WL 151911 at *2. "[A]n agency relationship or concerted activity would

13

Exhibit 1

be sufficient to impose liability in circumstances where one party does not perform all the steps of the claimed method." *Id.* "In the absence of an agency or contractual relationship, the case law appears to require a showing that the defendant and the third party are connected at least to the extent that the defendant must actually direct the third party to perform the remaining steps of the method." *Id.*

Regarding Autoflex's argument that *Hill* does not apply in cases where the third party performs all of the steps of the claimed invention, Plaintiff points out that the Court of Appeals for the Federal Circuit has held that "one cannot escape liability for infringement as a manufacturer of infringing products simply by employing an agent or independent contractor to carry out the actual physical manufacturing." *Pellegrini v. Analog Devices*, Inc., 375 F.3d 1113, 1118 (Fed. Cir. 2004). Similarly, in *Lineguard, Inc. v. Linetec, Inc.*, 1987 WL 11832 (N.D. Ill. 1987)(unpublished), the court held there was a genuine issue of material fact concerning the liability of defendants who had infringing tape made for them by a third-party even though the defendants did not manufacture the tape themselves. *Id.* at *1. In *Free Standing Stuffer, Inc. v. Holly Dev. Co.*, 1974 WL 20219, 187 U.S.P.Q. 323 (N.D. Ill. 1974), the court held that the defendant was liable for infringement even though third parties performed the steps of the method patent. According to the court, "[i]nfringement is not avoided by contracting with others to carry out the method of a patent. . . . Interposing an agent or independent contractor between the principal and the infringing acts does not absolve the principle from liability." *Id.* at 335 (citations omitted).

The Court cannot say the rule of law discussed in *Hill* does not apply to the facts of this case. According to *Hill*, "an agency relationship or concerted activity would be sufficient to impose liability in circumstances where one party does not perform all the steps of the claimed method."

14

Exhibit 1

*Hill*, 2006 WL 151911 at *2. "In the absence of an agency or contractual relationship, the case law appears to require a showing that the defendant and the third party are connected at least to the extent that the defendant must actually direct the third party to perform the remaining steps of the method." *Id.*

"Agency is the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act." *B&G Enters., Ltd. v. U.S.*, 220 F.3d 1318, 1323 (Fed. 2000). The evidence, viewed in the light most favorable to Plaintiff, suggests Autoflex authorized Joseph Camblin of Jozee Designs to act on its behalf with respect to the web hosting services provided by NetIn.com. There is evidence that Mr. Camblin had authority to act and speak for Autoflex in his dealings with NetIn.com in connection with these services. Fournerat Dep. at 21-22; Adams Dep. at 18, 34. NetIn.com's Robert Fournerat stated in his deposition that he told Mr. Camblin about the Apache and Tomcat server software identified in epicRealm's Preliminary Infringement Contentions. Fournerat Dep. at 27-35. In his deposition, Mr. Camblin stated he knows what "software NetInc.com uses on its server" based on Fournerat's telling him the information. Camblin Dep. at 30, line 15 -31, line 17.

There is also a genuine issue of material fact as to whether Mr. Camblin was subject to the control of Autoflex. Mr. Camblin stated that he "would never" take any action with respect to the Autoflex web site "without Autoflex's authorization." Camblin Dep. at 44, lines 7-14. He further stated that he was not "authorized to make any changes to the Autoflex web site without Autoflex's authorization." *Id.* at lines 15-20. Mr. Camblin testified that he would not have selected VeriSign as the vendor to provide security services for the Autoflex web site without "run[ning] it past

15

Exhibit 1

[Autoflex's] Andy Adams." *Id.* at 27, lines 12-16.

"In general, when an agent is employed to perform certain duties for his principal and acquires knowledge material to those duties, the agent's knowledge is imputed to the principal." *Apollo Fuel Oil v. U.S.*, 195 F.3d 74, 76 (2d Cir. 1999); *accord, e.g., St. Paul Fire & Marine Ins. Co. v. FDIC*, 968 F.2d 695, 700 (8th Cir. 1992)("In general, an agent's actual notice or knowledge may be imputed to the agent's principal."). Here, there is evidence that Autoflex, through Mr. Camblin, is aware of the operating system, the Apache server software, the Apache software modules, and the Tomcat server software that NetIn.com uses to meet Autoflex's needs. Fournerat Dep. at 28-35. Based on the evidence, Plaintiff has created a fact issue regarding the connection between Autoflex and NetIn.com to "compel the denial of the motion for summary judgment." *Hill*, 2006 WL 151911, * 3.

Autoflex's assertions, raised for the first time in its reply brief, that its web site "does not process requests for dynamic content" and that the web site "has never employed the Tomcat connector module" are not persuasive either. NetIn.com's Fournerat does not dispute that, at least in the past, header responses generated by the Autoflex web site showed the presence of a Tomcat module. Fournerat Dep. at 60-61. When Autoflex's counsel asked Mr. Fournerat to confirm that the Tomcat module was not used to service the Autoflex account, Mr. Fournerat testified: "That's correct - well, not that I'm aware." Fournerat Dep. at 61. The summary judgment record is not clear that Autoflex's web site does not and has never employed a Tomcat module.

In addition, the summary judgement record presents a fact issue regarding the identity of the server and system that generate dynamic content in response to requests from Internet visitors. Mr. Fournerat testified that some other server being employed by Autoflex generated the dynamic

16

Exhibit 1

content, not the NetIn.com server. Fournerat Dep. at 25, 30, 54-55. However, Autoflex's Andrew Adams testified that he believes Autoflex never used a web hosting services provider other than NetIn.com. Adams Dep. at 22, 42.

Moreover, Plaintiff states its Preliminary Infringement Contentions provide that its infringement claim is not limited to Autoflex systems that use a Tomcat module. "If documents produced by Autoflex (including its web service providers) establish that the web pages with dynamic content generated by the Autoflex web site are created by a server or system other than the server operated by NetIn.com, then [Plaintiff] will identify such additional infringing systems in its Final Infringement Contentions served pursuant to Local Patent Rule 3-6."[4]

The Court finds a genuine issue of material fact exists concerning the existence of an agency relationship between Mr. Camblin and Autoflex. Autoflex has not convinced the Court no genuine issues of material fact exist regarding Plaintiff's claim for direct infringement against Autoflex. Thus, the Court recommends this portion of Autoflex's motion for summary judgment be **DENIED.**

## C.    Indirect infringement

Liability for inducing infringement is statutorily defined in 35 U.S.C. §§ 271(b). Section 271(b) provides that"[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "In order to succeed on a claim of inducement, the patent must show, first that there has been direct infringement, and second, that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005)(quotations omitted). "[M]ere knowledge alone of possible infringement by others does not

---

[4]    Plaintiff's surreply at 3.

Exhibit 1

amount to inducement; specific intent and action to induce infringement must be proven." *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363 (Fed. Cir. 2003).

Autoflex is liable for inducement to infringe under *35* U.S.C. § 271(b) if Plaintiff can show that NetIn.com directly infringes any of the claims of its patents and that Autoflex intended "to cause the acts which constitute the infringement." *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990). Such proof may be made by circumstantial evidence. *Id.* at 1469 n.5. This portion of Autoflex's motion assumes direct infringement on the part of NetIn.com. Autoflex argues only that Plaintiff cannot raise a genuine issue of material fact concerning the intent element of inducement to infringe because Autoflex was a mere arms length purchaser of services, buying from NetIn.com "the same type of services that NetIn.com offers and provides to all of its customers."[5]

In *Trustees of Columbia University v. Roache Diagnostics GMBH,* 272 F. Supp.2d 90 (D. Mass. 2002), the court noted that "while control over a third party infringer's actions is relevant evidence as whether a defendant has induced the third party to directly infringe, control is not a necessary condition for a finding of inducement liability." *Id.* at 106. In *VLT Corp. v. Unitrode Corp.*, 130 F.Supp.2d 178 (D. Mass. 2001), the court examined the Federal Circuit opinions of *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464 (Fed. Cir. 1990) and *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660 (Fed. Cir. 1988), *cert. denied*, 488 U.S. 968 (1988). Based on this examination, the *VLT* court rejected the argument "that an inducing defendant must have some control over the design, manufacture, or marketing of an infringing device to be held liable under Section 271(b)." *Roache*, 272 F.Supp.2d at 106. According to the court in *Roache*, the

---

[5] Autoflex's mot. at pgs. 13-14.

Exhibit 1

key question is whether the defendant "encouraged those actions [of the third party] with the requisite prior knowledge and specific intent to infringe." *Id.*

Here, Plaintiff has presented evidence suggesting that Autoflex, with knowledge of the allegedly infringing software, directed and has continued to direct NetIn.com to provide it with the allegedly infringing web hosting services. The Court finds sufficient evidence exists as to Autoflex's intent "to cause the acts which constitute the infringement." As to its claim against Autoflex for inducement to infringe under *35* U.S.C. § 271(b), the Court finds genuine issues of material fact exist, compelling a recommendation that this portion of Autoflex's motion be denied. Based on the foregoing, it is

**RECOMMENDED** that Autoflex's Motion For Summary Judgment of Noninfringement (Docket Entry # 125) be **DENIED.**

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 29th day of August, 2006.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE

# **Exhibit 2**



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| EPICREALM LICENSING, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:05-CV-163-DF |
| | § | |
| AUTOFLEX LEASING, INC., et. al., | § | |
| | § | |
| Defendants. | § | |

| EPICREALM LICENSING, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:05-CV-356-DF |
| | § | |
| FRANKLIN COVEY CO., et. al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

This matter comes before the Court on Defendant Pink Sheets LLC's Motion to Dismiss Plaintiff EpicRealm's Complaint (Doc. No. 40). This matter was referred United States Magistrate Judge Caroline M. Craven to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Report and Recommendation was entered on May 16, 2006, recommending that Defendants' motion be granted (Doc. No. 179). Plaintiff filed objections to the report and recommendation on May 31, 2006 (Doc. No. 184).

On matters referred to the magistrate under 28 U.S.C. § 636(b), the district court makes a *de novo* determination of those parts of the magistrate's report, findings, or recommendations to which timely objection is made. 28 U.S.C. § 636(b)(1); *Garcia v. Boldin,* 691 F.2d 1172, 1179 (5th Cir. 1982). The district court may accept, reject, or modify in whole or in part, the magistrate's findings

-1-

Exhibit 2

or recommendation. *Id.* at 1179.  Upon a *de novo* review, and after reviewing all relevant pleadings, the Court finds Defendant's motion to should be granted.  Accordingly, the Court adopts Judge Craven's Report and Recommendation in its entirety, subject to any additional findings and modification herein.  Notwithstanding, in accordance with the precedent in this circuit, the Court addresses those issues raised by Defendant's objections below.

A federal court may only exercise jurisdiction over a nonresident corporate defendant to the extent allowed under state law. *See Alpine View Co. Ltd. v. Atlas Copco AB,* 205 F.3d 208, 214 (5th Cir.2000).  It has been held that the reach of the Texas long-arm statute is equivalent to that of the United States Constitution. *Id.*  Thus, the question before the court is whether the exercise of personal jurisdiction over the defendant would offend the Due Process clause of the Fourteenth Amendment. *Id.*; *see also* Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (Vernon 1997).

The Due Process clause allows a court "the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protection of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Alpine View Co. Ltd.,* 205 F.3d at 215 (citations omitted).  The defendant's demeanor and connections with the forum state must demonstrate that the defendant should reasonably anticipate being haled into court in the forum state. *See Holt Oil & Gas Corporation v. Harvey,* 801 F.2d 773, 777 (5th Cir.1986), *cert. denied,* 481 U.S. 1015 (1987).  Thus, to exercise personal jurisdiction, the court must examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice. *See Shaffer v. Heitner,* 433 U.S. 186, 204 (1977).

The personal jurisdiction analysis is subdivided into an analysis of the minimum contacts that

Exhibit 2

give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction. *See Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir. 1994). Here, Plaintiff only asserts specific jurisdiction over Pink Sheets. Specific jurisdiction is appropriate where the corporation has purposefully directed its activities at the forum state and the "litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984)).

The contacts that may be considered for purposes of evaluating specific personal jurisdiction are limited to those that give rise to or directly relate to the underlying claim of the lawsuit. *Red Wing Shoes Co. v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355, 1359 (Fed. Cir. 1998). And this applies equally to the option of a website. That is, when a defendant's website is asserted to avail the court of specific personal jurisdiction, the website must be directly related to the underlying claim. Here, the grounds relied on by Plaintiff for specific jurisdiction amount to nothing more than Pink Sheets' general contacts with Texas, which are too far removed from Plaintiff's patent infringement claims. Thus, the Court cannot conclude that specific jurisdiction is established.

Accordingly, The Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct. The Court hereby adopts the Report of the United States Magistrate Judge as the findings and conclusions of this Court. Therefore, it is hereby

**ORDERED** that Plaintiff's above-entitled and numbered cause of action against Pink Sheets LLC is hereby **DISMISSED WITHOUT PREJUDICE.**

**SIGNED this 12th day of July, 2006.**

DAVID FOLSOM
UNITED STATES DISTRICT JUDGE

-3-

Exhibit 2

## CERTIFICATE OF SERVICE

I, Kimberly L. Gattuso, Esquire, hereby certify that on this 19th day of September, 2006,

I electronically filed a true and correct copy of the foregoing Reply using CM/ECF which will

send notification of such filing.  A copy of the document was served on the following attorneys

of record in the manner indicated:

**VIA HAND DELIVERY**
Anne Shea Gaza, Esquire
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE  19899

 /s/ *Kimberly L. Gattuso*
Kimberly L. Gattuso (No. 3733)

18