## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUINSTREET, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Civil Action No. 06-495 SLR |
| EPICREALM LICENSING, LP, | ) | |
| | ) | |
| Defendant. | ) | |

### NOTICE OF ACTION
### BY THE UNITED STATES PATENT AND TRADEMARK OFFICE

Plaintiff Quinstreet, Inc. hereby provides notice to the Court that the United States

Patent and Trademark Office ("PTO") has granted reexamination of the patents involved in the

above-captioned action.    Copies of the PTO communications reflecting the grant of

reexamination are attached hereto as Exhibits A and B.

OF COUNSEL:
Robert S. Beiser
Richard A. Zachar
Ludwig E. Kolman
Vedder, Price, Kaufman & Kammholz, P.C.
222 North LaSalle Street
Suite 2500
Chicago, Illinois 60601
312.609.7500

and

Gordon C. Atkinson
Cooley Godward LLP
101 California Street, 5th Flr.
San Francisco, California 94111
415.693.2000

Dated: May 18, 2007

Robert H. Richards, III (#706)
rrichards@rlf.com
Jeffrey L. Moyer (#3309)
moyer@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger
One Rodney Square
920 N. King Street
Wilmington, Delaware 19899-0551
302-651-7700

Attorneys for Plaintiff QuinStreet, Inc.

# EXHIBIT A



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,584 | 04/03/2007 | 6415335 | FRIENDFINDER RX2 | 3276 |

7590      05/04/2007

Matthew B. Talpis, Esq.
BAKER BOTTS, L.L.P.
2001 Ross Ave.
Suite 600
Dallas, TX  75201-2980

| EXAMINER |
|---|
| Scott L. Weaver |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | IFW |

DATE MAILED: 05/04/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev 10/03)

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

INTELLECTUAL PROPERTY LAW GROUP LLP

12 SOUTH FIRST STREET

SUITE 1205

SAN JOSE, CA 95113

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. _90/008,584_.

PATENT NO. _6415335_.

ART UNIT _3992_.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. | Patent Under Reexamination |  |
|---|---|---|---|
|  | 90/008,584 | 6415335 |  |
|  | Examiner | Art Unit |  |
|  | Scott L. Weaver | 3992 |  |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>03 April 2007</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐  PTO-892,    b)☒  PTO/SB/08,    c)☒  Other: <u>Decision on Request</u>

1. ☒    The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐    The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)). Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181 ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

a) ☐  by Treasury check or,

b) ☐  by credit to Deposit Account No. _____, or

c) ☐  by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

cc:Requester ( if third party requester )
U.S. Patent and Trademark Office
PTOL-471 (Rev. 08-06)        Office Action in *Ex Parte* Reexamination        Part of Paper No. 20070425

Application/Control Number: 90/008,584                          Page 2
Art Unit: 3992

### *Decision on Request for Ex Parte Reexamination*

Reexamination has been requested for claims 1-29 of United States Patent Number
6,415,335 to Lowery et al. issued on July 2, 2002 from divisional application No. 09/234,048
claiming priority to the 5,894,554 patent to Lowery filed on April 23, 1996 and subject of
reexamination control number 90/008,342.

A substantial new question of patentability affecting claims 1-29 of United States Patent Number
6,415,3356 to Lowery is raised by the request for reexamination filed on April 3, 2007 for the
reasons set forth below.

### *The References Cited in The Request*

The Request identifies the following documents as providing teachings relevant to claims 1-29
of United States Patent Number 6,415,335 to Lowery.

Exhibit B:    Installation and Planning Guide for Microsoft Internet Information Server,
              Version 1.0 ("Installation Guide").

Exhibit C:    ODBC Web Database Add-on for Microsoft Internet Server Beta Release Notes
              (Exhibit B and C collectively hereafter referred to as "ODBC Notes").

Exhibit D:    Oracle® Web Server User's Guide, Release 1.0 (1995).

Exhibit E:    Katrina Montinola, "The Oracle WebServer: A Technical Discussion," September
              25, 1995 (Exhibit D and E collectively hereafter referred to as "the Oracle
              references").

Exhibit F:    John Gaffney, "Illustra's Web DataBlade Module, An Illustra Technical
              Paper," SIGMOD Record, Vol. 25, No. 1, March 1996 (hereafter "Illustra").

Exhibit G:    Carl Lagoze, Erin Shaw, James R. Davis and Dean B. Krafft, "Dienst:
              Implementation Reference Manual," pp. 1-69 (May 5, 1995)
              (hereafter "Lagoze" or "Dienst").

Exhibit H:    Alexander Clausnitzer, Pavel vogel and Stephan Wiesener, "A WWW Interface to
              the OMNIS/Myriad Literature Retrieval Engine" (1995) (hereafter "Clausnitzer").

Exhibit I:    Christian Derler, "The World-Wide Web Gateway to Hyper-G: Using a
              Connectionless Protocol to Access Session-Oriented Services," Institut fur
              Informationsverarbeitung und Computergestutzte neue Medien, pp. 1-104 (March
              1995) (hereafter "Derler") .

Exhibit J:    U.S. Patent No. 6,249,291 to Popp (hereafter Popp).

Application/Control Number: 90/008,584                                        Page 3
Art Unit: 3992

Exhibit K:     Bowman et al., "Harvest: A scalable, Customizable Discovery and Access
               System" (March 12, 1995) (hereafter "Harvest").

Exhibit L:     Antchev et al., "A WWW Learning Environment for Mathematics" (December
               12, 1995) (hereafter "Antchev").

Exhibit M:     Ashley Beitz, Renato Iannella, Andreas Vogel, zhonghua Yang, "integrating
               WWW and Middleware"(May 2, 1995) (hereafter "Beitz").

Exhibit N:     Ari Luotonen, and Kevin Altis, "World-Wide Web Proxies" (April 1994)
               (hereafter "Luotonen").

Exhibit O:     Richard Knudson, "Application Development with Microsoft's Internet
               Information Server" (February 2, 1996) (hereafter "Knudson").


Each of the references listed as Exhibit B through Exhibit O above has not previously been made
of record during prosecution of the application which became the 6,415,335 patent to Lowery
and as such has not been previously considered nor addressed during an 'examination' of the
application which became the 6,415,335 patent to Lowery, nor in a final holding of invalidity
by the Federal Courts. The references listed above are not cumulative to the prior art of record.

### *Prosecution History*

The 6,415,335 patent to Lowery discloses management of dynamic web page generation
requests to a web server with the request intercepted and routed from web server to a page server
such as to release the web server from processing the request and so that the web server may
process other requests concurrently. A dynamically generated web page with data dynamically
retrieved from one or more data sources is generated from the intercepted request and sent back
to the requesting client or stored on machine accessible to web server for later retrieval (col. 2,
ln.. 21-32; col. 4, ln. 54-62; col. 5, ln. 38-48; col. 6 ,ln. 19-31).

Claim 1 is representative:

   1. A computer-implemented method for managing a dynamic Web page generation
   request to a Web server, said computer-implemented method comprising the steps
   of:
   routing a request from a Web server to a page server, said page server
   receiving said request and releasing said Web server to process other requests
   wherein said routing step further includes the steps of:
   intercepting said request at said Web server and routing said request to
   said page server;
   processing said request, said processing being performed by said page server

Application/Control Number: 90/008,584                                   Page 4
Art Unit: 3992

> while said Web server concurrently processes said other requests;
> and
> dynamically generating a Web page in response to said request, said Web page
> including data dynamically retrieved from one or more data sources.
>
> 2. The computer-implemented method in claim 1 wherein said step of routing
> said request includes the steps of:
> routing said request from said Web server to a dispatcher;  and
> dispatching said request to said page server.

The examiner did not indicate a reasons for allowance during prosecution of the application
which became the 6,415,335 patent to Lowery.

### *Issues Raised in the Request*

**The Requestor alleges that an SNQ is raised by Exhibits B and C collectively (ODBC
Notes).**

It is agreed that the consideration of Exhibit B and C (ODBC Notes) raises a substantial new
question of patentability as to claims 1-12, 15-26 and 29 of the 6,415,335 patent to Lowery.

Request pages 14-15 are hereby incorporated by reference from the request for reexamination for
their explanation of the teaching provided in ODBC Notes that was not present in the
prosecution of the application which became the 6,415,335 patent to Lowery.

In summary, ODBC Notes provides a discussion of features of the Microsoft Internet
Information Server as shown in figure 2 of page 2 of the Release Notes Document portion of
ODBC Notes which provides dynamic generation of web pages using a database connector as
described in steps one through six on pages 14-15 of the request. Requester takes the position
that the web server performs as a dispatcher dispatching the requests to database(s) and
necessarily releases connections in order to support the described multiple simultaneous
connections.

There is a substantial likelihood that a reasonable examiner would have considered the ODBC
Notes reference describing these features important in making a decision as to the patentability
of claims 1-12, 15-26 and 29 during the examination of the application which became the
6,415,335 patent to Lowery. The ODBC Notes references describing the dynamic generation of
a web page using the database connector and dispatch of requests to database by web server as
described on pages 14-15 and 35-44 of the request was not before the office during any previous
examination of the application which became the 6,415,335 patent to Lowery.

Accordingly, ODBC Notes raises a substantial new question of patentability as to claims 1-12,
15-26 and 29, which question has not been decided in a previous examination of the 6,415,335
patent to Lowery.

Application/Control Number: 90/008,584                                    Page 5
Art Unit: 3992

**The Requestor alleges that an SNQ is raised by Exhibits D and E collectively (the Oracle references).**

It is agreed that the consideration of Exhibit D and E (the Oracle references) raises a substantial new question of patentability as to claims 1-12, 15-26 and 29 of the 6,415,335 patent to Lowery.

Request pages 17-18 are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in the Oracle references that was not present in the prosecution of the application which became the 6,415,335 patent to Lowery.

In summary, the Oracle references provides a discussion of features of Release 1.0 of Oracle Web Server, which disclose a Listener which determines if a received request from a client is for a dynamic or static document (p.1-3 Exhibit C and p.3 Exhibit D). A web agent is invoked if the request is for a dynamic document and thus the interception of the request occurs at the listener. The web agent is described as serving as a dispatcher which dispatches a request to a dynamic web page server (Oracle Server 7) and releasing the listener to process other incoming requests.

There is a substantial likelihood that a reasonable examiner would have considered the Oracle references describing these features important in making a decision as to the patentability of claims 1-12, 15-26 and 29 during the examination of the application which became the 6,415,335 patent to Lowery. The Oracle references describing the dynamic generation of a web page using the described components including the Listener, Agent, and server to dispatch requests as described on pages 17-18 and 44-56 of the request was not before the office during any previous examination of the application which became the 6,415,335 patent to Lowery.

Accordingly, the Oracle references raises a substantial new question of patentability as to claims 1-12, 15-26 and 29, which question has not been decided in a previous examination of the 6,415,335 patent to Lowery.

**The Requestor alleges that an SNQ is raised by Exhibit F (Illustra).**

It is agreed that the consideration of Exhibit F (Illustra) raises a substantial new question of patentability as to claims 1-6, 8-11,15-20, 22-25, and 29 of the 6,415,335 patent to Lowery.

Request pages 21-22 section C are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Illustra that was not present in the prosecution of the application which became the 6,415,335 patent to Lowery.

In summary, Illustra provides a discussion of features of the Illustra web server architecture for generating a dynamic web page as shown on page 110 figure 2 of Illustra.

There is a substantial likelihood that a reasonable examiner would have considered the Illustra reference describing these features important in making a decision as to the patentability of

Application/Control Number: 90/008,584                                     Page 6
Art Unit: 3992

claims 1-6, 8-11,15-20, 22-25, and 29 during the examination of the application which became
the 6,415,335 patent to Lowery. The Illustra reference describing the dynamic generation of a
web page using the described components as described on pages 21-22 and 56-63 of the request
was not before the office during any previous examination of the application which became the
6,415,335 patent to Lowery.

Accordingly, Illustra raises a substantial new question of patentability as to claims 1-6, 8-11,15-
20, 22-25, and 29, which question has not been decided in a previous examination of the
6,415,335 patent to Lowery.

**The Requestor alleges that an SNQ is raised by Exhibit G (Lagoze (Dienst))**

It is agreed that the consideration of Exhibit G (Lagoze (Dienst)) raises a substantial new
question of patentability as to claims 1-5, 8-11,15-19, 22-25, and 29 of the 6,415,335 patent to
Lowery.

Request pages 22-24 section D are hereby incorporated by reference from the request for
reexamination for their explanation of the teaching provided in Lagoze (Dienst)) that was not
present in the prosecution of the application which became the 6,415,335 patent to Lowery.

In summary, Lagoze (Dienst)) provides a discussion of Dienst which includes a system and
method for managing requests for documents ("Web Pages") stored on page server (Dienst
server) or other server from WWW clients. The requester indicates that Dienst discloses the
requests from the client being intercepted at the server by a CGI (Common Gateway Interface)
stub as shown via figure 2 on page 10 of Dienst. The CGI stub dispatches the requests to a page
server (Dienst server) which retrieve the requested dynamic content for delivery to the requesting
client and which allows the WWW server to handle other incoming requests.

There is a substantial likelihood that a reasonable examiner would have considered the Lagoze
reference (Dienst) describing the dynamic generation of a web page using the Dienst Server ,
WWW server and CGI stub important in making a decision as to the patentability of claims 1-5,
8-11,15-19, 22-25, and 29 during the examination of the application which became the 6,415,335
patent to Lowery. The Lagoze (Dienst) reference describing the dynamic generation of a web
page using the described components as described on pages 22-24 and 63-73 of the request was
not before the office during any previous examination of the application which became the
6,415,335 patent to Lowery.

Accordingly, Lagoze (Dienst) raises a substantial new question of patentability as to claims 1-5,
8-11,15-19, 22-25, and 29, which question has not been decided in a previous examination of the
6,415,335 patent to Lowery.

**The Requestor alleges that an SNQ is raised by Exhibit H (Clausnitzer).**

It is agreed that the consideration of Exhibit H (Clausnitzer) raises a substantial new question of
patentability as to claims 1-6, 8-11,15-20, 22-25, and 29 of the 6,415,335 patent to Lowery.

Request pages 24-26 section E are hereby incorporated by reference from the request for
reexamination for their explanation of the teaching provided in Clausnitzer that was not present
in the prosecution of the application which became the 6,415,335 patent to Lowery.

In summary, Clausnitzer provides a discussion of a WWW interface to a search and retrieval
system as shown in figure 5 as shown on page 25 of the request. The figure and explanation
accompanying show a CGI gateway program, OMNIS servers and document servers which
manages requests for documents stored on a server from WWW clients. The request indicates
the requests from the client being intercepted at the server by a CGI (Common Gateway
Interface) stub as shown via figure 5 of Clausnitzer.

There is a substantial likelihood that a reasonable examiner would have considered the
Clausnitzer reference describing these features important in making a decision as to the
patentability of claims 1-6, 8-11,15-20, 22-25, and 29 during the examination of the application
which became the 6,415,335 patent to Lowery. The Clausnitzer reference describing the
dynamic generation of a web page using the described components as described on pages 24-26
and 73-81 of the request was not before the office during any previous examination of the
application which became the 6,415,335 patent to Lowery.

Accordingly, Clausnitzer raises a substantial new question of patentability as to claims 1-6, 8-
11,15-20, 22-25, and 29, which question has not been decided in a previous examination of the
6,415,335 patent to Lowery.

**The Requestor alleges that an SNQ is raised by Exhibit I (Derler).**

It is agreed that the consideration of Exhibit I (Derler) raises a substantial new question of
patentability as to claims 1-7, 15-21, and 29 of the 6,415,335 patent to Lowery.

Request pages 26-29 section F are hereby incorporated by reference from the request for
reexamination for their explanation of the teaching provided in Derler that was not present in the
prosecution of the application which became the 6,415,335 patent to Lowery.

In summary, Derler provides a discussion of a WWW (world wide web) Gateway which includes
software features including Master, Slave, and Child processes which intercept and dispatch
requests to the page server (a Hyper-G server) while the WWW Gateway processes other
requests. Derler describes the generation of dynamic web pages using architecture as shown in
figure 4 17 on page 95.

There is a substantial likelihood that a reasonable examiner would have considered the Derler
reference describing the dynamic generation of a web page using the Master, Slave, Child
processes of the gateway and Hyper-G server important in making a decision as to the
patentability of claims 1-7, 15-21, and 29 during the examination of the application which
became the 6,415,335 patent to Lowery. The Derler reference describing the dynamic generation
of a web page using the described components as described on pages 26-29 and 81-90 of the
request was not before the office during any previous examination of the application which
became the 6,415,335 patent to Lowery.

Accordingly, Derler raises a substantial new question of patentability as to claims 1-7, 15-21,
and 29 which question has not been decided in a previous examination of the 6,415,335 patent to
Lowery.

**The Requestor alleges that an SNQ is raised by Exhibit J (Popp).**

It is agreed that the consideration of Exhibit J (Popp) raises a substantial new question of
patentability as to claims 1-4, 6, 8-11, 15-18, 20-24 and 29 of the 6,415,335 patent to Lowery.

Request pages 29-31 section G are hereby incorporated by reference from the request for
reexamination for their explanation of the teaching provided in Popp that was not present in the
prosecution of the application which became the 6,415,335 patent to Lowery.

In summary, Popp provides a discussion of using a web server, CGI Messenger and page servers
to generate dynamic web pages. The CGI messenger takes over the request for dynamic content
and acts as a dispatcher releasing the web server to process other incoming requests.

There is a substantial likelihood that a reasonable examiner would have considered the Popp
reference describing the dynamic generation of a web page using these features important in
making a decision as to the patentability of claims 1-4, 6, 8-11, 15-18, 20-24 and 29 during the
examination of the application which became the 6,415,335 patent to Lowery. The Popp
reference describing the dynamic generation of a web page using the described components as
described on pages 29-31 and 90-97 of the request was not before the office during any previous
examination of the application which became the 6,415,335 patent to Lowery.

Accordingly, Popp raises a substantial new question of patentability as to claims 1-4, 6, 8-11, 15-
18, 20-24 and 29 which question has not been decided in a previous examination of the
6,415,335 patent to Lowery.

Application/Control Number: 90/008,584                                    Page 9
Art Unit: 3992

Requestor further alleges that claims 5-14, and 19-28, may be unpatentable in consideration of
various combinations of exhibits A-J and secondary references K-O as indicated on pages 97-
101 of the request. Since each of the exhibits A-J as indicated in the request is considered to raise
a substantial new question of patentability as noted above, the combinations of exhibits in
combination therewith as suggested on pages 97-101 of the request also raises substantial new
question of patentability for similar reasons.

All claims 1-29 of the 6,415,335 patent to Lowery will be reexamined as requested in the
request filed on 4/03/2007.

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the
provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination
proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will
be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in *ex parte*
reexamination proceedings are provided for in 37 CFR 1.550(c).

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise
the Office of any litigation activity, or other prior or concurrent proceeding, involving U.S.
Patent Number 6,415,335 throughout the course of this reexamination proceeding. The third
party requester is also reminded of the ability to similarly apprise the Office of any such activity
or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282
and 2286.

Application/Control Number: 90/008,584                                    Page 10
Art Unit: 3992

Please mail any communications to:
Attn: Mail Stop "Ex Parte Reexam"
Central Reexamination Unit
Commissioner for Patents
P. O. Box 1450
Alexandria VA  22313-1450

Please FAX any communications to:
(571) 273-9900
Central Reexamination Unit

Please hand-deliver any communications to:
Customer Service Window
Attn:  Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany Street
Alexandria, VA  22314

Any inquiry concerning this communication or earlier communications from the Reexamination
Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the
Central Reexamination Unit at telephone number (571) 272-7705.

Scott L. Weaver                                    Conferees:
Primary Examiner
Central Reexam Unit 3992
(571) 272-7548

        SCOTT L. WEAVER                              ROLAND G. FOSTER
      CRU EXAMINER-AU 3992                        CRU EXAMINER-AU 3992


                                                   MARK J. REINHART
                                                     SPRE-AU 3992
                                              CENTRAL REEXAMINATION UNIT

### NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte* reexamination or an *inter partes* reexamination is designated as the correspondence address of the patent.

> *Revisions and Technical Corrections Affecting Requirements for Ex Parte and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

The correspondence address for any pending reexamination proceeding not having the same correspondence address as that of the patent is, by way of this revision to 37 CFR 1.33(c), <u>automatically changed to that of the patent file</u> as of the effective date.

This change is effective for any reexamination proceeding which is pending before the Office as of May 16, 2007, <u>including the present reexamination proceeding</u>, and to any reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for the present proceeding is different from the correspondence address of the patent, it is strongly encouraged that the patent owner affirmatively file a Notification of Change of Correspondence Address in the reexamination proceeding and/or the patent (depending on which address patent owner desires), to conform the address of the proceeding with that of the patent and to clarify the record as to which address should be used for correspondence.

Telephone Numbers for reexamination inquiries:

| | |
|---|---|
| Reexamination and Amendment Practice | (571) 272-7703 |
| Central Reexam Unit (CRU) | (571) 272-7705 |
| Reexamination Facsimile Transmission No. | (571) 273-9900 |

C:\kiva\kenreex\ RRR-new-PO-address_by-rule.doc
May 1, 2007

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

INTELLECTUAL PROPERTY LAW GROUP LLP

12 SOUTH FIRST STREET

SUITE 1205

SAN JOSE, CA 95113

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. _90/008,574_.

PATENT NO. _5894554_.

ART UNIT _3992_.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

# EXHIBIT B



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO |
|---|---|---|---|---|
| 90/008.574 | 04/03/2007 | 5894554 | FRIENDFINDER.RX1 | 2817 |

8791    7590    05/04/2007

BLAKELY SOKOLOFF TAYLOR & ZAFMAN
12400 WILSHIRE BOULEVARD
SEVENTH FLOOR
LOS ANGELES, CA 90025-1030

| EXAMINER |
|---|
| Scott L. Weaver |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | IFW |

DATE MAILED: 05/04/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

:

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

INTELLECTUAL PROPERTY LAW GROUP LLP

12 SOUTH FIRST STREET

SUITE 1205

SAN JOSE, CA 95113

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/008,574*.

PATENT NO. *5894554*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| | Control No. | Patent Under Reexamination |
|---|---|---|
| *Order Granting / Denying Request For Ex Parte Reexamination* | 90/008,574 | 5894554 |
| | Examiner | Art Unit | |
| | Scott L Weaver | 3992 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>03 April 2007</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892,    b)☒ PTO/SB/08,    c)☒ Other: <u>Decision on Request</u>

1. ☒    The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐    The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)). Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181 ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

   a) ☐ by Treasury check or,

   b) ☐ by credit to Deposit Account No. _____,  or

   c) ☐ by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

Application/Control Number: 90/008,574                                                      Page 2
Art Unit: 3992

## Decision on Request for Ex Parte Reexamination

Reexamination has been requested for claims 1-11 of United States Patent Number
5,894,554 to Lowery et al. issued on April 13, 1999 from application No. 08/636,477 filed on
April 23, 1996.

A substantial new question of patentability affecting claims 1-11 of United States Patent
Number 5,894,554 to Lowery is raised by the request for reexamination filed on
April 3, 2007 for the reasons set forth below.

## The References Cited in The Request

The Request identifies the following documents as providing teachings relevant to claims 1-11
of United States Patent Number 5,894,554 to Lowery

Exhibit B:    Installation and Planning Guide for Microsoft Internet Information Server,
              Version 1.0 ("Installation Guide").

Exhibit C:    ODBC Web Database Add-on for Microsoft Internet Server Beta Release Notes
              (Exhibit B and C collectively hereafter referred to as "ODBC Notes").

Exhibit D:    Oracle® Web Server User's Guide, Release 1.0 (1995).

Exhibit E:    Katrina Montinola, "The Oracle WebServer: A Technical Discussion," September
              25, 1995 (Exhibit D and E collectively hereafter referred to as "the Oracle
              references").

Exhibit F:    John Gaffney, "Illustra's Web DataBlade Module, An Illustra Technical
              Paper," SIGMOD Record, Vol. 25, No. 1, March 1996 (hereafter "Illustra").

Exhibit G:    Carl Lagoze, Erin Shaw, James R. Davis and Dean B. Krafft, "Dienst:
              Implementation Reference Manual," pp 1-69 (May 5, 1995)
              (hereafter "Lagoze" or "Dienst")

Exhibit H:    Alexander Clausnitzer, Pavel vogel and Stephan Wiesener, "A WWW Interface to
              the OMNIS/Myriad Literature Retrieval Engine" (1995) (hereafter "Clausnitzer").

Exhibit I:    Christian Derler, "The World-Wide Web Gateway to Hyper-G: Using a
              Connectionless Protocol to Access Session-Oriented Services," Institut fur
              Informationsverarbeitung und Computergestutzte neue Medien, pp. 1-104 (March
              1995) (hereafter "Derler").

Exhibit J:    U.S. Patent No. 6,249,291 to Popp (hereafter Popp).

Application/Control Number: 90/008,574                                    Page 3
Art Unit: 3992

Exhibit K:    Bowman et al., "Harvest: A scalable, Customizable Discovery and Access
              System" (March 12, 1995) (hereafter "Harvest").

Exhibit L:    Antchev et al., "A WWW Learning Environment for Mathematics" (December
              12, 1995) (hereafter "Antchev").

Exhibit M:    Ashley Beitz, Renato Iannella, Andreas Vogel, zhonghua Yang, "integrating
              WWW and Middleware"(May 2, 1995) (hereafter "Beitz").

Exhibit N:    Ari Luotonen, and Kevin Altis, "World-Wide Web Proxies" (April 1994)
              (hereafter "Luotonen").

Exhibit O:    Richard Knudson, "Application Development with Microsoft's Internet
              Information Server" (February 2, 1996) (hereafter "Knudson").

Each of the references listed as Exhibit B through Exhibit O has not previously been made of
record during prosecution of the application which became the 5,894,554 patent to Lowery and
as such has not been previously considered nor addressed during an 'examination' of the
application which became the 5,894,554 patent to Lowery, nor in a final holding of invalidity by
the Federal Courts. The references listed above are not cumulative to the prior art of record.

### *Prosecution History*

The 5,894,554 patent to Lowery discloses management of dynamic web page generation requests
to a web server with the request intercepted and routed from web server to a page server such as
to release the web server from processing the request and so that the web server may process
other requests concurrently. A dynamically generated web page with data dynamically retrieved
from one or more data sources is generated from the intercepted request and sent back to the
requesting client or stored on machine accessible to web server for later retrieval (col.2,ln.21-33;
col.4,ln 54-62; col.5,ln 38-48; col.6,ln.21-32).

Claim 1 is representative:

        1. A computer-implemented method for managing a dynamic Web page generation
        request to a Web server, said computer-implemented method comprising the steps
        of:
        routing said request from said Web server to a page server, said page server
        receiving said request and releasing said Web server to process other requests,
        wherein said routing step further includes the steps of intercepting said
        request at said Web server, routing said request from said Web server to a
        dispatcher, and dispatching said request to said page server;
        processing said request, said processing being performed by said page server

Application/Control Number: 90/008,574                                    Page 4
Art Unit: 3992

      while said Web server concurrently processes said other requests; and
      dynamically generating a Web page in response to said request, said Web page
      including data dynamically retrieved from one or more data sources.

The examiner did not indicate reasons for allowance during prosecution of the application which
became the 5,894,554 patent to Lowery. The record indicates that the prior art of record did not
teach or suggest 'dynamically generating a Web page in response to a request wherein the Web
page includes data dynamically retrieved from one or more data sources, as claimed'.

### Issues Raised in the Request

**The Requestor alleges that an SNQ is raised by Exhibits B and C collectively (ODBC
Notes).**

It is agreed that the consideration of Exhibit B and C (ODBC Notes) raises a substantial new
question of patentability as to claims 1-11 of the 5,894,554 patent to Lowery.

Request pages 12-16 are hereby incorporated by reference from the request for reexamination for
their explanation of the teaching provided in ODBC Notes that was not present in the
prosecution of the application which became the 5,894,554 patent to Lowery.

In summary, ODBC Notes provides a discussion of features of the Microsoft Internet
Information Server as shown in figure 2 of page 2 of the Release Notes Document portion of
ODBC Notes which provides dynamic generation of web pages using a database connector as
described in steps one through six on pages 12-16 of the request. Requester takes the position
that the web server performs as a dispatcher dispatching the requests to database(s) and
necessarily releases connections in order to support the described multiple simultaneous
connections.

There is a substantial likelihood that a reasonable examiner would have considered the ODBC
Notes reference describing these features important in making a decision as to the patentability
of claims 1-11 during the examination of the application which became the 5,894,554 patent to
Lowery. The ODBC Notes references describing the dynamic generation of a web page using the
database connector and dispatch of requests to database by web server as described on pages 12-
16 and 34-42 of the request was not before the office during any previous examination of the
application which became the 5,894,554 patent to Lowery.

Accordingly, ODBC Notes raises a substantial new question of patentability as to claims 1-11,
which question has not been decided in a previous examination of the 5,894,554 patent to
Lowery.

Application/Control Number: 90/008,574                                   Page 5
Art Unit: 3992

**The Requestor alleges that an SNQ is raised by Exhibits D and E collectively (the Oracle references).**

It is agreed that the consideration of Exhibit D and E (the Oracle references) raises a substantial new question of patentability as to claims 1-3 and 5-11 of the 5,894,554 patent to Lowery.

Request pages 16-20 are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in the Oracle references that was not present in the prosecution of the application which became the 5,894,554 patent to Lowery.

In summary, the Oracle references provides a discussion of features of Release 1.0 of Oracle Web Server, which disclose a Listener which determines if a received request from a client is for a dynamic or static document (p. 1-3 Exhibit C and p.3 Exhibit D). A web agent is invoked if the request is for a dynamic document and thus the interception of the request occurs at the listener. The web agent is described as serving as a dispatcher which dispatches a request to a dynamic web page server (Oracle Server 7) and releasing the listener to process other incoming requests.

There is a substantial likelihood that a reasonable examiner would have considered the Oracle references describing these features important in making a decision as to the patentability of claims 1-11 during the examination of the application which became the 5,894,554 patent to Lowery. The Oracle references describing the dynamic generation of a web page using the database connector and dispatch of requests to database by web server as described on pages 16-20 and 42-50 of the request was not before the office during any previous examination of the application which became the 5,894,554 patent to Lowery.

Accordingly, the Oracle references raises a substantial new question of patentability as to claims 1-3 and 5-11, which question has not been decided in a previous examination of the 5,894,554 patent to Lowery.

**The Requestor alleges that an SNQ is raised by Exhibit F (Illustra).**

It is agreed that the consideration of Exhibit F (Illustra) raises a substantial new question of patentability as to claims 1-5 and 7-11 of the 5,894,554 patent to Lowery.

Request pages 20-22 section C are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Illustra that was not present in the prosecution of the application which became the 5,894,554 patent to Lowery.

In summary, Illustra provides a discussion of features of the Illustra web server architecture for generating a dynamic web page as shown on page 110 figure 2 of Illustra.

Application/Control Number: 90/008,574                                    Page 6
Art Unit: 3992

There is a substantial likelihood that a reasonable examiner would have considered the Illustra reference describing these features important in making a decision as to the patentability of claims 1-5 and 7-11 during the examination of the application which became the 5,894,554 patent to Lowery. The Illustra reference describing the dynamic generation of a web page using the described components as described on pages 20-22 and 50-55 of the request was not before the office during any previous examination of the application which became the 5,894,554 patent to Lowery.

Accordingly, Illustra raises a substantial new question of patentability as to claims 1-5 and 7-11, which question has not been decided in a previous examination of the 5,894,554 patent to Lowery.

**The Requestor alleges that an SNQ is raised by Exhibit G (Lagoze (Dienst)).**

It is agreed that the consideration of Exhibit G (Lagoze (Dienst)) raises a substantial new question of patentability as to claims 1-4 and 7-11 of the 5,894,554 patent to Lowery.

Request pages 22-24 section D are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Lagoze (Dienst)) that was not present in the prosecution of the application which became the 5,894,554 patent to Lowery.

In summary, the request provides a discussion of Lagoze (Dienst)) which includes a system and method for managing requests for documents ("Web Pages") stored on page server (Dienst server) or other server from WWW clients. The requester indicates that Dienst discloses the requests from the client being intercepted at the server by a CGI (Common Gateway Interface) stub as shown via figure 2 on page 10 of Dienst. The CGI stub dispatches the requests to a page server (Dienst server) which retrieve the requested dynamic content for delivery to the requesting client and which allows the WWW server to handle other incoming requests.

There is a substantial likelihood that a reasonable examiner would have considered the Lagoze reference (Dienst) describing the dynamic generation of a web page using the Dienst Server, WWW server and CGI stub important in making a decision as to the patentability of claims 1-4 and 7-11 during the examination of the application which became the 5,894,554 patent to Lowery. The Lagoze (Dienst) reference describing the dynamic generation of a web page using the described components as described on pages 22-24 and 55-61 of the request was not before the office during any previous examination of the application which became the 5,894,554 patent to Lowery.

Accordingly, Lagoze (Dienst)) raises a substantial new question of patentability as to claims 1-4 and 7-11, which question has not been decided in a previous examination of the 5,894,554 patent to Lowery.

**The Requestor alleges that an SNQ is raised by Exhibit H (Clausnitzer).**

It is agreed that the consideration of Exhibit H (Clausnitzer) raises a substantial new question of patentability as to claims 1-5 and 7-11 of the 5,894,554 patent to Lowery.

Request pages 24-26 section E are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Clausnitzer that was not present in the prosecution of the application which became the 5,894,554 patent to Lowery.

In summary, Clausnitzer provides a discussion of a WWW interface to a search and retrieval system as shown in figure 5 as shown on page 25 of the request. The figure and explanation accompanying show a CGI gateway program, OMNIS servers and document servers which manages requests for documents stored on a server from WWW clients. The request indicates the requests from the client being intercepted at the server by a CGI (Common Gateway Interface) stub as shown via figure 5 of Clausnitzer.

There is a substantial likelihood that a reasonable examiner would have considered the Clausnitzer reference describing these features important in making a decision as to the patentability of claims 1-5 and 7-11 during the examination of the application which became the 5,894,554 patent to Lowery. The Clausnitzer reference describing the dynamic generation of a web page using the described components as described on pages 24-26 and 61-66 of the request was not before the office during any previous examination of the application which became the 5,894,554 patent to Lowery.

Accordingly, Clausnitzer raises a substantial new question of patentability as to claims 1-5 and 7-11, which question has not been decided in a previous examination of the 5,894,554 patent to Lowery.

**The Requestor alleges that an SNQ is raised by Exhibit I (Derler).**

It is agreed that the consideration of Exhibit I (Derler) raises a substantial new question of patentability as to claims 1-6 and 9-11 of the 5,894,554 patent to Lowery.

Request pages 26-29 section F are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Derler that was not present in the prosecution of the application which became the 5,894,554 patent to Lowery.

In summary, Derler provides a discussion of a WWW (world wide web) Gateway which includes software features including Master, Slave, and Child processes which intercept and dispatch requests to the page server (a Hyper-G server) while the WWW Gateway processes other requests. Derler describes the generation of dynamic web pages using architecture as shown in figure 4.17 on page 95.

There is a substantial likelihood that a reasonable examiner would have considered the Derler
reference describing the dynamic generation of a web page using the Master, Slave, Child
processes of the gateway and Hyper-G server important in making a decision as to the
patentability of claims 1-6 and 9-11 during the examination of the application which became the
5,894,554 patent to Lowery. The Derler reference describing the dynamic generation of a web
page using the described components as described on pages 26-29 and 66-73 of the request was
not before the office during any previous examination of the application which became the
5,894,554 patent to Lowery.

Accordingly, Derler raises a substantial new question of patentability as to claims 1-6 and 9-11
which question has not been decided in a previous examination of the 5,894,554 patent to
Lowery.

**The Requestor alleges that an SNQ is raised by Exhibit J (Popp).**

It is agreed that the consideration of Exhibit J (Popp) raises a substantial new question of
patentability as to claims 1-3, 5, and 7-11 of the 5,894,554 patent to Lowery.

Request pages 29-31 section G are hereby incorporated by reference from the request for
reexamination for their explanation of the teaching provided in Popp that was not present in the
prosecution of the application which became the 5,894,554 patent to Lowery.

In summary, Popp provides a discussion of using a web server, CGI Messenger and page servers
to generate dynamic web pages. The CGI messenger takes over the request for dynamic content
and acts as a dispatcher releasing the web server to process other incoming requests.

There is a substantial likelihood that a reasonable examiner would have considered the Popp
reference describing the dynamic generation of a web page using these features important in
making a decision as to the patentability of claims 1-3, 5, and 7-11 during the examination of the
application which became the 5,894,554 patent to Lowery. The Popp reference describing the
dynamic generation of a web page using the described components as described on pages 29-31
and 73-78 of the request was not before the office during any previous examination of the
application which became the 5,894,554 patent to Lowery.

Accordingly, Popp raises a substantial new question of patentability as to claims 1-3, 5, and 7-11
which question has not been decided in a previous examination of the 5,894,554 patent to
Lowery

Application/Control Number: 90/008,574                          Page 9
Art Unit: 3992

Requestor further alleges that claims 4-8 may be unpatentable in consideration of various
combinations of exhibits A-J and secondary references K-O as indicated on pages 78-81
of the request. Since each of the exhibits A-J as indicated in the request is considered to raise a
substantial new question of patentability as noted above, the combinations of exhibits in
combination therewith as suggested on pages 78-81 of the request also raises substantial new
question of patentability for similar reasons.

All claims 1-11 of the 5,894,554 patent to Lowery will be reexamined as requested in the
request filed on 4/3/2007.

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the
provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination
proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will
be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in *ex parte*
reexamination proceedings are provided for in 37 CFR 1.550(c).

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise
the Office of any litigation activity, or other prior or concurrent proceeding, involving U.S.
Patent Number 5,894,554 throughout the course of this reexamination proceeding. The third
party requester is also reminded of the ability to similarly apprise the Office of any such activity
or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282
and 2286.

Please mail any communications to:
Attn: Mail Stop "Ex Parte Reexam"
Central Reexamination Unit
Commissioner for Patents
P. O. Box 1450
Alexandria VA  22313-1450

Application/Control Number: 90/008,574                                    Page 10
Art Unit: 3992

Please FAX any communications to:
(571) 273-9900
Central Reexamination Unit

Please hand-deliver any communications to:
Customer Service Window
Attn: Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany Street
Alexandria, VA 22314

Any inquiry concerning this communication or earlier communications from the Reexamination
Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the
Central Reexamination Unit at telephone number (571) 272-7705.

Scott L Weaver                                    Conferees:
Primary Examiner
Central Reexam Unit 3992
(571) 272-7548

SCOTT L. WEAVER
CRU EXAMINER-AU 3992

ROLAND G. FOSTER
CRU EXAMINER-AU 3992

MARK J. REINHART
SPRE-AU 3992
CENTRAL REEXAMINATION UNIT

### NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte* reexamination or an *inter partes* reexamination is designated as the correspondence address of the patent.

> *Revisions and Technical Corrections Affecting Requirements for Ex Parte and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

The correspondence address for any pending reexamination proceeding not having the same correspondence address as that of the patent is, by way of this revision to 37 CFR 1.33(c), <u>automatically changed to that of the patent file</u> as of the effective date.

This change is effective for any reexamination proceeding which is pending before the Office as of May 16, 2007, <u>including the present reexamination proceeding</u>, and to any reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for the present proceeding is different from the correspondence address of the patent, it is strongly encouraged that the patent owner affirmatively file a Notification of Change of Correspondence Address in the reexamination proceeding and/or the patent (depending on which address patent owner desires), to conform the address of the proceeding with that of the patent and to clarify the record as to which address should be used for correspondence.

Telephone Numbers for reexamination inquiries:

Reexamination and Amendment Practice          (571) 272-7703
Central Reexam Unit (CRU)                      (571) 272-7705
Reexamination Facsimile Transmission No.       (571) 273-9900


C:\kiva\kenreex\ RRR-new-PO-address_by-rule.doc
May 1, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2007, I caused to be served by hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Richard L. Horwitz Esquire
David E. Moore, Esquire
Potter Anderson & Corroon LLP
1313 N. Market Street, Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19899

I hereby certify that on May 18, 2007, I sent by Federal Express the foregoing document to the following non-registered participants:

Larry D. Carlson, Esquire
Kevin J. Meek, Esquire
Jeff Moles, Esquire
Baker Botts LLP
2001 Ross Avenue
Dallas, TX 75201-2980

Anne Shea Gaza (#4093)
Gaza@rlf.com