**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| QUINSTREET, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 06-495-SLR |
| v. | ) | |
| | ) | |
| PARALLEL NETWORKS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD-PARTY COMPLAINT AGAINST MICROSOFT CORPORATION

Defendant Parallel Networks, LLC ("Parallel Networks") hereby responds to Plaintiff QuinStreet, Inc.'s Motion for Leave to File Third-Party Complaint Against Microsoft Corporation, ("QuinStreet's motion"). QuinStreet's motion should be denied because there is no adjudicable issue between QuinStreet, Inc. ("QuinStreet") and Microsoft Corporation ("Microsoft") and for the further reason that the addition of Microsoft would needlessly complicate and delay the resolution of this action. In addition, the denial of QuinStreet's motion will not prejudice QuinStreet in any way.

As Parallel Networks has previously informed the Court, QuinStreet operates five platforms for creating dynamic web pages, three using Apache software platforms and two using Microsoft software platforms.[1] Parallel Networks has accused the Apache platforms of infringement, but **not** the Microsoft platforms. Due to QuinStreet's failure to properly produce documents in a timely manner, Parallel Networks has not been able to determine if QuinStreet's use of the Microsoft platforms infringes the patents in suit. Given the present scheduling order in this action (requiring for example the completion of fact discovery by

---

[1] The five platforms identified by QuinStreet are: Apache Standalone, Apache Tomcat, Apache Weblogic, Microsoft IIS, or Microsoft IIS with JRun.

February 29, 2008), Parallel Networks expects that it will be unable to determine if the
Microsoft platforms infringe, and therefore will not accuse those platforms of infringement
as part of its counterclaim in this action. For the same reason, any contention by QuinStreet
that the Microsoft platforms are a noninfringing substitute for the patented invention
similarly cannot be in the case. And so, the only issue for the Court will be whether
QuinStreet's Apache platforms infringe the patents in suit. It is undisputed that Microsoft
has not indemnified QuinStreet for its use of the accused Apache platforms. As a
consequence, there will not be any controversy between QuinStreet and Parallel Networks
with respect to whether QuinStreet's Microsoft platforms infringe, and therefore there is no
adjudicable issue that involves Microsoft. *Pfizer, Inc. v. Ranbaxy Labs., Ltd.*, C.A. No. 07-
138-JJF 2007, WL 4226417, at *3 (D. Del. Nov. 29, 2007) (citing *MedImmune Inc. v.
Genentech, Inc.*, 127 S. Ct. 764, 771 (2007)).

Secondly, because QuinStreet's declaratory judgment action seeks a declaration of
noninfringement as to only those QuinStreet products accused of infringement by Parallel
Networks and excludes products not accused of infringement by Parallel Networks,
QuinStreet's use of the Microsoft platforms is not an issue in this action. Whatever the result
in this action, the Microsoft platforms will not be an issue, and it is undisputed that
Microsoft has no obligation to indemnify QuinStreet for its use of the Apache platforms.
The result is that QuinStreet's motion must be denied. *Id.* at *4-5.

A final reason for denying QuinStreet's motion is that adding Microsoft as a third
party in this action, and thus injecting hypothetical issues with respect to the nature and
scope of Microsoft's indemnification into this case, would needlessly complicate the action,
greatly expand the scope of discovery, and likely delay resolution of the action on the merits.

2

Furthermore, QuinStreet fails to provide a reason why its indemnification claims against

Microsoft need to be added as part of this litigation, as opposed to a separate litigation. It is

well-settled that these reasons counsel for the denial of QuinStreet's motion. *Remington*

*Arms Co. v. Liberty Mutual Ins. Co.*, 748 F.Supp. 1057, 1068 (D. Del. 1990) (citing *O'Mara*

*Enter., Inc. v. Mellon Bank*, 101 F.R.D. 668, 670 (W.D.Pa. 1983)).

In sum, for all three reasons, QuinStreet's motion should be denied. These reasons

are discussed in more detail below.

**I.      There is no Justiciable Controversy**
**        Between QuinStreet and Microsoft.**

Parallel Networks has not obtained sufficient discovery from QuinStreet to determine

whether QuinStreet's Microsoft platforms infringe the patents in suit. Given the present

scheduling order in this action, Parallel Networks will be unable to determine whether the

Microsoft platforms infringe. Consequently, the Microsoft platforms -- based on the present

scheduling order -- will *not* be accused and will not be an issue for resolution by this Court.

The reason that Parallel Networks cannot evaluate whether the Microsoft platforms

infringe is entirely QuinStreet's fault, all caused by QuinStreet's failure to timely provide

Parallel Networks with discovery on its use of the Microsoft platforms. This lack of discovery

made it impossible for Parallel Networks to evaluate the infringement issues raised by

QuinStreet's use of the Microsoft platforms prior to the January 4, 2008 deadline to amend the

pleadings or prior to the scheduled February 29, 2008 completion of fact discovery.

Consequently, Parallel Networks has not accused QuinStreet's use of the Microsoft platforms

with infringement and will be unable to do so in this action. This undisputed fact defeats QuinStreet's motion because there is no adjudicable issue with respect to Microsoft.[2]

QuinStreet filed the present action in August 2006. (D.I. 1.) The scheduling order entered by this Court (and agreed to by QuinStreet) provides that document production "shall be completed on or before September 14, 2007." (D.I. 28 at 2). In violation of the schedule, QuinStreet did not complete its document production by September 14, 2007. Even worse, as of the date of the filing of this motion, QuinStreet still has not yet completed its document production.

The parties held a discovery conference before the Court on November 14, 2007. At that hearing, QuinStreet stated that it "anticipate[d] being in a position to produce all discovery before the Court's deadline of November 30th." (D.I. 54 at 4:1-3).[3] On November 30, the date on which QuinStreet told the Court it would complete document production, QuinStreet only first began producing the results of its document searches. (Ex. 3, Nov. 30 letter from Doyle to Bosy). However, of particular note with respect to the instant motion, documents relating to "Microsoft" were not produced due to what QuinStreet called a "technical problem." (*Id*.). These Microsoft documents were not produced until January 4, 2008, the day QuinStreet filed

---

[2] This Court need not on this motion decide the issue of QuinStreet's delay in providing discovery -- indeed, its wholesale disavowal of the Court's scheduling order. In any event, the facts prove QuinStreet's dilatory conduct. The facts show that it is QuinStreet's untimely production of documents that is the root cause as to why Parallel Networks could not perform a proper infringement analysis of the Microsoft platforms.

[3] At that hearing, the Court ordered QuinStreet to run searches on its electronic documents for keywords, "run the results of that search, identify them with Bates stamps numbers and put together a privilege log." (D.I. 54 at 18:16-19). On November 15, 2007, QuinStreet confirmed that it was "willing to run the 50 search terms suggested by the Court and produce the results, " and requested "search terms as soon as possible and hopefully no later than Monday morning." (Ex. 1, Nov. 15 letter from Doyle to Bosy). Per QuinStreet's request, Defendant provided a list of 50 search terms to QuinStreet on Monday morning, November 19, 2007. (Ex. 2, Nov. 19 letter from Bosy to Doyle).

the present motion. (Ex. 4, Jan. 4 letter from Beiser to Bosy). These untimely produced "Microsoft" documents were provided to Parallel Networks in native format on a hard drive bearing a single production number, QS 73,030. (*Id.*). The hard drive contains over 37 gigabytes of data and over 50,000 native files that apparently recite the word "Microsoft." These electronically produced documents were not provided in text searchable image format as required by the Court's standing default order. As a consequence, they are difficult -- if not impossible -- to search.

Moreover, it is Parallel Networks's present understanding that QuinStreet has not produced all relevant documents related to its use and implementation of the Microsoft platforms. Indeed, QuinStreet will not provide the most basic information with respect to its use of the Microsoft platforms. QuinStreet produced a hard drive containing downloads from four of its "couple hundred servers" on November 13, 2007. (Ex. 5, November 13 letter from Doyle to Bosy). However, the description QuinStreet provided with respect to this production does not identify the platform (i.e. Apache Standalone, Apache Tomcat, Apache Weblogic, Microsoft IIS, or Microsoft IIS with JRun) associated with the four servers. (*Id.*). Defendant promptly notified QuinStreet of this deficiency, and has now requested this information in three separate letters without ever receiving a response from QuinStreet. (Ex. 6, November 19 letter from Bradford to Doyle; Ex. 7, December 7 letter from Margolis to Doyle; Ex. 8, January 3 letter from Margolis to Doyle).

Thus far, due to the timing and format of QuinStreet's document production, and its failure to provide even the most basic and rudimentary information about that document production, Parallel Networks cannot make an informed decision in this action as to whether to accuse the Microsoft platforms of infringement. As a consequence, if the parties are to adhere to

the present scheduling order, there is not—and there never will be—a justiciable controversy in this action between QuinStreet and Microsoft.

Contrary to QuinStreet's assertion, Parallel Networks has not accused the Microsoft platforms of infringement in the Texas Actions. In the Texas Actions, Parallel Networks has requested and is presently awaiting production of source code and configuration files from several of the Texas defendants in order to determine whether these defendants have configured their respective Microsoft platforms in a manner which infringes the patents in suit. The dispositive fact is that QuinStreet gains nothing from the fact that Parallel Networks has asserted that it is possible that the defendants in the Texas Actions have configured their Microsoft platforms in an infringing configuration because QuinStreet may have configured its Microsoft platforms in a manner which does—or does not—infringe the patents in suit. As noted above, it is QuinStreet's unwillingness or inability to provide detailed configuration information which precludes Parallel Networks from making a determination on this issue. And so, absent an accusation of infringement that would present the issue for resolution by this Court, there is simply no justiciable controversy between QuinStreet and Microsoft.

## II.    QuinStreet's Amended Complaint Calls for the Denial of Its Motion.

In August 2006, QuinStreet filed its complaint for declaratory judgment requesting entry of judgment, declaring that "QuinStreet and its software products that are used in conjunction with the delivery of dynamic web pages do not infringe, literally or under the doctrine of equivalents, either directly, indirectly or willfully, any valid and enforceable claim of the epicRealm patents." (D.I. 1 at 7). Later, in December 2007, QuinStreet amended its complaint for declaratory judgment to specifically and clearly limit its prayer for relief with respect to only

those QuinStreet "software products *accused in the [Parallel Networks'] Counterclaim*...."
(D.I. 58 at 8) (emphasis added).

Thus, QuinStreet's amended complaint limited QuinStreet's request for relief to only
those software products that are accused of infringement by Parallel Networks. (D.I. 58 at 8;
D.I. 48 at 1). In other words, products that are not accused are not at issue in this action. To
date, Parallel Networks has accused only QuinStreet's use of Apache Standalone,
Apache/Tomcat and Apache/Weblogic of infringement. (*See, e.g.,* Ex. 9, November 20 letter
from Bosy to Gaza). Parallel Networks has not accused QuinStreet of infringement with respect
to the Microsoft platforms and under the present scheduling order Parallel Networks will be
unable to do so. Consequently, it is indisputable that QuinStreet's amended declaratory
judgment complaint limits this action to only those products Parallel Networks accuses of
infringement in this case. (D.I. 58 at 8). Based on this undisputed fact, there is no justiciable
controversy between QuinStreet and Microsoft with respect to the Microsoft platforms for this
additional reason.

### III.    The Addition of Microsoft as a Third Party Would Needlessly Complicate and Delay Resolution of This Action.

Adding Microsoft as a third party to this dispute would needlessly complicate this action
and would likely result in a delay of resolution of the case on the merits. If Microsoft was
brought into this action as a third party, complex issues regarding the nature and scope of
indemnification would need to be resolved. Microsoft would most likely seek additional
discovery, and given the fact that fact discovery will close on February 29, 2008, would likely
seek an extension to complete fact discovery, and a corresponding extension to resolve claim
construction issues, summary judgment issues, most likely resulting in a rescheduling of the trial
date. Because Parallel Networks intends to adhere to the present scheduling order, adding

Microsoft as a third party would likely result in the presentation of numerous disputed timing and discovery issues to the Court. Finally, QuinStreet's motion shows that Microsoft expressly refuses to "undertake [QuinStreet's] defense and provide indemnification..." (D.I. 60 at ¶6). This means that Microsoft will almost certainly take the position that it has not indemnified QuinStreet and will likely move to dismiss on this ground. All of these needless complications can be avoided by denying QuinStreet's motion.

Finally, QuinStreet will not be prejudiced if its motion to add Microsoft as a third party is denied. That is so because it is undisputed that QuinStreet cannot seek indemnification from Microsoft if QuinStreet is found to infringe the patents-in-suit through its use of the Apache platforms. Moreover, even if QuinStreet had any claim against Microsoft (and it does not), the issue could be addressed more efficiently in a separate action.

OF COUNSEL:

Harry J. Roper
George S. Bosy
Aaron A. Barlow
Patrick L. Patras
David R. Bennett
Paul D. Margolis
Benjamin J. Bradford
JENNER & BLOCK
330 N. Wabash Avenue
Chicago, IL  60611-7603
Tel:  (312) 923-8305

Dated:  January 18, 2008
843454 / 31393 (Quinstreet)

POTTER ANDERSON & CORROON LLP

By: */s/ David E. M oore*
　　 Richard L. Horwitz (#2246)
　　 David E. Moore (#3983)
　　 Hercules Plaza, 6th Floor
　　 1313 N. Market Street
　　 Wilmington, DE  19899
　　 Tel:  (302) 984-6000
　　 rhorwitz@potteranderson.com
　　 dmoore@potteranderson.com

*Attorneys for Defendant*
*Parallel Networks, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on January 18, 2008, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I further certify that on January 18, 2008, I have Electronically Mailed the document to

the following person(s):

Jeffrey L. Moyer
Anne Shea Gaza
Richards, Layton & Finger
One Rodney Square
920 N. King Street
Wilmington, DE 19899
rbeiser@vedderprice.com
rzachar@vedderprice.com
lkolman@vedderprice.com

Robert S. Beiser
David Doyle
Ludwig E. Kolman
Robert S. Rigg
Vedder, Price, Kaufman & Kammholz, P.C.
222 North LaSalle Street, Suite 2500
Chicago, IL 60601
rbeiser@vedderprice.com
ddoyle@vedderprice.com
lkolman@vedderprice.com
rrigg@vedderprice.com

Gordon C. Atkinson
Cooley Godward LLP
101 California Street, 5th Flr.
San Francisco, CA 94111
atkinsongc@cooley.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

788478 / 31393 / QuinStreet

# Exhibit 1

# VEDDER PRICE

VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.
222 NORTH LASALLE STREET
CHICAGO, ILLINOIS 60601
312-609-7500
FAX: 312-609-5005

CHICAGO • NEW YORK CITY • WASHINGTON, DC • ROSELAND, NJ

DAVID L. DOYLE
312-609-7782
ddoyle@vedderprice.com

November 15, 2007

**VIA E-MAIL AND U.S. MAIL**

George S. Bosy, Esq.
Jenner & Block
330 N. Wabash Avenue
Chicago, IL 60611-7603

  **Re: Re: Discovery**

Dear George:

  Following on the Court's direction yesterday, we are willing to run the 50 search terms suggested by the Court and produce the results. We can use the search terms for all databases, *i.e.*, the e-mail and the public drive including the Department drive. In order to have any chance of completing discovery by November 30, given the Thanksgiving holiday, we need to receive your search terms as soon as possible and hopefully no later than Monday morning. We will need the "words, terms and phrases" to be searched. We also want your proposal as to the "timing and conditions for any additional searches which may become necessary in the normal course of discovery." Please specify "time frames, fields and document types." In short, if we agree to a protocol and timing, we want to get approval from the Court so we don't have any open issues between us.

  If you persist in your position that our recent production is not searchable, is not useable and that a search of the data bases using search terms is preferred, we ask that you return the data bases previously sent to you which you have rejected to us as soon as possible. The other alternative is for you to explore the two technical solutions we spoke about with the Court yesterday and withdraw your objection. If the database is too large, you can easily delete or remove from the database any files you wish using the index. It is simpler to use the top level index for this purpose. We provided the entire index to guide your selections. You can also reduce the size of the database by narrowing the 1999 to the present timeframe. Perhaps most importantly, my technical folks indicate you can select any number of indexing software (some of which is available for free) and index the public drive on your server. Apparently, the index and indexing takes place on your machine so it does not alter or index the cloned hard drive itself. This may take a couple of days, but I am told the results greatly expedite retrieval.

CHICAGO/#1715720.1

VEDDERPRICE

George S. Bosy, Esq.
November 15, 2007
Page 2

We will not continue preparing our Department files for production in their native state like the previously produced portions of the public drive unless or until we hear further from you. If we do a search by search terms, the search will cover the Department files. If you withdraw your objections, we will produce the Department files as we did with the balance of the public file.

If you choose to use a search term protocol, we need not reach agreement on how to produce all or part of our e-mail files. We will simply apply the search terms to the e-mail database. If you do want a broader production of e-mail than a search by search term, I need you to respond to our prior correspondence immediately. My folks now tell me that there is a technical solution to searching the separate PST files that we are willing to produce on e-mail.

The e-mail search program we are using is called "Discovery Assistant."

Please review the website/product details at http://www.sherpasoftware.com/microsoft-exchange-products/discovery-attender.shtml or http://www.discovervassistant.com.

There is an Overview Section and the Search Features sections on the website. As you could probably tell from the name of the software and from the Overview Section, this software product was designed with e-Discovery in mind. As I understand the product description, the features include searching through multiple PST files (including attachments of common file formats). There are probably numerous other similar software solutions available.

I am told this product might also be useful for searching through the "public drive" previously sent to you. I am not sure whether the public drive would need to be indexed first with the indexing software I mentioned above. The first sentence of the product description states in full: "discovery Attender is an e-Discovery tool designed to automate investigative tasks in PST files, Exchange mailboxes, **public folders and common storage areas**." The "public drive" is nothing more than a hard drive containing public/common folders.

We are willing to set up a conference call which would include our technical folks and yours. I do not know why your folks are saying the data we sent you is not searchable. This is not what I understand. It is searchable. It may make sense to discuss this with the folks who work with the data. Let me know immediately if you want to schedule a call and please propose by e-mail the questions or subjects you want to discuss in the call so I can get the right folks on the phone.

VEDDERPRICE

George S. Bosy, Esq.
November 15, 2007
Page 3

I look forward to hearing from you promptly.

Very truly yours,

David L. Doyle

DLD/bc
Enclosure
cc:    Ludwig E. Kolman
       Robert S. Beiser
       Anne Gaza (via e-mail.)
       Patrick Patras (via e-mail)

# Exhibit 2

**JENNER&BLOCK**

November 19, 2007

Jenner & Block LLP          Chicago
330 N. Wabash Avenue      Dallas
Chicago, IL 60611            New York
Tel 312-222-9350            Washington, DC
www.jenner.com

**VIA EMAIL**

David L. Doyle, Esq.
Vedder, Price, Kaufman & Kammholz, P.C.
222 North LaSalle Street
Chicago, Illinois 60601

George S. Bosy
Tel 312 923-8305
Fax 312 923-8405
ppatras@jenner.com

Re:    *QuinStreet, Inc. v. epicRealm Licensing, LP* **(C.A. No. 06-cv-495 (SLR))**

Dear Dave:

This is in response to your letter of November 15, 2007, and as a follow-up to the last status conference with the Court. Listed below are our proposed search terms and "time frames, fields, and document types." We would like you to use these terms to search all of QuinStreet's electronic documents and electronic databases including email and the public drive including the Department drive.

We propose the following search parameters:

> Time frame: 1999-present
>
> Document types:  all types
>
> Fields: all fields
>
> Type of Searching:  "*" represents a wildcard for searching.

And we propose the following search terms:

> architectur*
> apache
> "http request"*
> mod*
> java*
> iis
> server*
> scalab*
> "load balanc"*
> dispatch*
> epicrealm
> "parallel network"*
> tomcat

David L. Doyle, Esq.
November 19, 2007
Page 2

dynamic*
html
config*
host*
infring*
patent*
*554
*335
lowery
oracle
reexam*
herbalife
revenue*
licens*
indemn*
 "management suite"*
microsoft
spottiswood
ian
"user* guide*"
"source code"*
"white paper"*
technical*
"network topology"
autoflex
opin*
weblogic
bea
jboss
jrun
jsp
j2ee
Shaklee
profit*
margin*
market*
protocol*

If you have any questions, we can discuss them during our call tomorrow afternoon.

Very truly yours,

George S. Bosy

David L. Doyle, Esq.
November 19, 2007
Page 3


cc:    Patrick L. Patras, Esq.
        Benjamin J. Bradford, Esq.

# Exhibit 3

# VEDDER PRICE

VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.
222 NORTH LASALLE STREET
CHICAGO, ILLINOIS 60601
312-609-7500
FAX: 312-609-5005

CHICAGO • NEW YORK CITY • WASHINGTON, DC • ROSELAND, NJ

DAVID L. DOYLE
312-609-7762
ddoyle@vedderprice.com

November 30, 2007

<u>VIA MESSENGER</u>

George S. Bosy, Esq.
Jenner & Block
330 N. Wabash Avenue
Chicago, IL 60611-7603

     Re:    **Document Production**

Dear George:

Enclosed is a hard drive which contains QuinStreet's files of its individual employees emails . We have marked this hard drive with the bates number QS 52,169 which is designated as Confidential, except for any e-mails or portions thereof which contain customer information which we designate as Highly Confidential: Outside Counsel's Eyes Only.

We initially had indicated that we would be producing 2gb PST files, however, so as to not risk corrupting the data, our client elected to produce the data in 1.5gb PST files. By restricting the emails to the search terms you requested, you now have about 30% of the total universe of individual company emails.

QuinStreet's Agreements with their clients required them to notify their clients before producing any information. QuinStreet's former client, Shaklee, has requested that nothing relating to them be produced until they have an opportunity to review their materials, should they decide to seek additional court protection. Due to this, we have excluded any emails which reference Shaklee. We will produce them once we receive approval from Shaklee to do so.

As for those documents which contain customer specific information, I will restate our position on this matter. Given our production of customer information on a "Counsel's Eyes Only" basis, we expect that you will not attempt to use the identification of customers to contact them, subpoena them or attempt to name or join them in any litigation without seeking further relief from the Court to remove the "Counsel's Eyes Only" designations or until conferring or agreeing in writing with us about such customer information.

We are completing a search of the public email file (a much smaller database than employee specific files) and will produce it when available. Our client is simultaneously

CHICAGO/#1720140.1

VEDDERPRICE

George S. Bosy, Esq.
November 30, 2007
Page 2

searching their Public Drives for your search terms and will get these materials as soon as possible. We will then search our department drive. We are experiencing some problems with the breadth of your search terms. For example, the term "microsoft" picks up all Microsoft documents not just those with the word Microsoft in the text. We are attempting to correct this and will discuss this with you further if we do not achieve a technical solution.

Very truly yours,

David L. Doyle

DLD/bc
Enclosure
cc:    Ludwig E. Kolman
       Robert S. Beiser
       Anne Gaza (via e-mail)

# Exhibit 4

# VEDDERPRICE

VEDDER PRICE P.C.
222 NORTH LASALLE STREET
CHICAGO, ILLINOIS 60601
312-609-7500
FAX: 312-609-5005

CHICAGO • NEW YORK CITY • WASHINGTON, D.C. • ROSELAND, NJ

ROBERT S. BEISER
312-609-7648
rbeiser@vedderprice.com

January 4, 2008

**BY HAND DELIVERY AND E-MAIL**

George S. Bosy
Jenner & Block, LLP
330 N. Wabash Avenue
Chicago, IL 60611-7603

     Re:   Quinstreet, Inc. v. Epicrealm Licensing, L.P.
           Case No. 06-CV-495 (SLR)

Dear George:

     Enclosed please find a hard drive of emails from Quinstreet, bates numbered QS 73,030

     This hard drive contains the results of the keyword search of the term "Microsoft" from QuinStreet's public "Phantom" NAS drive.

     In accordance with our Stipulated Protective Order, please treat these documents as Confidential, or in th case of Source Code, these materials are to be treated as Highly Confidential: Restricted Source Code Media, Outside Counsel's Eyes Only.

          Very truly yours,

          Robert S. Beiser

RSB/ls
cc:   Anne Gaza (via e-mail)
      David L. Doyle
      Ludwig E. Kolman

# Exhibit 5

# VEDDER PRICE

VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.

222 NORTH LASALLE STREET

CHICAGO, ILLINOIS 60601

312-609-7500

FAX: 312-609-5005

DAVID L. DOYLE
312-609-7782
ddoyle@vedderprice.com

CHICAGO • NEW YORK CITY • WASHINGTON, DC • ROSELAND, NJ

November 13, 2007

**VIA MESSENGER**
George S. Bosy, Esq.
JENNER & BLOCK
330 N. Wabash Avenue
Chicago, IL 60611-7603

> **Re:**    ***Discovery***

Dear George:

As I told you, Quinstreet has a couple hundred servers that run the five platforms previously produced to you. Enclosed is a hard drive with a download of four servers. We are producing these downloads by way of example. The files can be described as follows:

\* angelia.tar.gz — a compressed UNIX archive of the contents of a DSS Application Server. This is the ENTIRE system in a live production state. There have been a handful of files that have been removed or scrubbed because they contain encryption keys, passwords or other sensitive data. These files are listed within the archive in a file called "README." This server runs Jboss version 3.2.7. The Operating System version is Red Hat Enterprise AS 4.3.

\* eos.tar.gz – a compressed UNIX archive of the contents of a DSS Web Server. Similar to angelia, this is the entire system, minus a few files that are listed in the README embedded in the archive. There are two versions of Apache in use here, version 1.3.34 and 2.0.52. The Operating System version is CentOS 3.6.

\* hermes.tar.gz – a compressed UNIX archive of the contents of a DMS Web Server. Similar to the other two files, this is the entire system, minus a few files listed in the README embedded in the archive. This server runs Apache version 1.3.34. The Operating System is CentOS release 3.5.

\* jana.tar.gz – a compressed UNIX archive of the contents of a DMS Application Server. Like the other files, it's a snapshot of the entire system, and any deleted files are listed in the README embedded in that archive. This server runs Jboss version 3.2.8. The Operating System is CentOS release 3.6.

VEDDERPRICE

George S. Bosy, Esq.
November 13, 2007
Page 2

    * pinchot – the contents of this directory are a direct sync of the Perforce repository for DSS.  These files are not compressed.

    These four downloads comprise approximately 70 gigabytes of information.  Please feel free to give me a call if you have any questions on the enclosed.

        Very truly yours,

        David L. Doyle

DLD/bc
cc:   Ludwig E. Kolman, Esq. (w/o encl.)
      Robert S. Beiser, Esq. (w/o encl.)

File: /media/FreeAgent Drive/README                                    Page 1 of 1

README FIRST:
-------------

The contents of this disk are what has been requested as part of this legal
discovery effort.

To open the *.tar.gz files on this disk, you can use Winzip on a Windows
system, or tar on a Linux or UNIX system.  Note: if you do open the .tar.gz
archives on a Windows system, you will not see the file permissions
(read/write/execute), but the content and data will be there.  Opening the
archives on a Linux or UNIX system will preserve the file permissions.

Description of files:
---------------------

angelia.tar.gz - a compressed UNIX archive of the contents of a DSS Application
Server.  This is the ENTIRE system, in a live production state.  There have been
a handful of files that have been removed or scrubbed that contain encryption
keys or passwords or other sensitive data.   These files are listed within the
archive in a file called "README".  This is a Jboss server, version 3.2.7.  Operating
System
version Red Hat Enterprise AS 4.3.

eos.tar.gz - a compressed UNIX archive of the contents of a DSS Web Server.
Similar to angelia, this the entire system, minus a few files that are listed
in the README embedded in the archive.  There are two versions of Apache in use here,
1.3.34 and
2.0.52.  Operating System version is CentOS 3.6.

hermes.tar.gz - a compressed UNIX archive of the contents of a DMS Web Server.
Similar to the other two files, this is the entire system, minus a few files
listed in the README embedded in the archive.  Apache is 1.3.34,
Operating System is CentOS release 3.5.

jana.tar.gz - a compressed UNIX archive of the contents of a DMS Application
Server.  Like the other files, it's a snapshot of the entire system, and
any deleted files are listed in the README embedded in that archive.  This is a Jboss
server,
version 3.2.8.  Operating System is CentOS release 3.6.

pinchot - the contents of this directory are a direct sync of the Perforce
repository for DSS.  These files are not compressed.

# Exhibit 6

# JENNER&BLOCK

November 19, 2007

Jenner & Block LLP    Chicago
330 N. Wabash Avenue    Dallas
Chicago, IL 60611    New York
Tel 312-222-9350    Washington, DC
www.jenner.com

**VIA EMAIL**

David L. Doyle, Esq.
Vedder, Price, Kaufman & Kammholz, P.C.
222 North LaSalle Street
Chicago, Illinois 60601

Benjamin J. Bradford
Tel 312 840-7224
Fax 312 840-7324
bbradford@jenner.com

Re:    *QuinStreet, Inc. v. epicRealm Licensing, LP* (C.A. No. 06-cv-495 (SLR))

Dear Dave:

This is in response to your production of November 13, 2007 in which QuinStreet supposedly produced the downloads of four servers. In your letter accompanying that production, you provided a description of the four servers. Your descriptions, however, are insufficient to determine which platform each of the four servers are operating. Thus, we request for each of the four servers that you explicitly identify which of the five platforms it operates, *i.e.* Apache Standalone, Apache Tomcat, Apache Weblogic, Microsoft IIS, and Microsoft IIS with JRun. In addition, for each platform that QuinStreet has not produced a downloaded server, we request that QuinStreet supplement its production to include such a downloaded server for that platform.

Very truly yours,

Benjamin J. Bradford

cc:    George S. Bosy
       Patrick L. Patras, Esq.

1599752.1

# Exhibit 7

**JENNER&BLOCK**

December 7, 2007

Jenner & Block LLP          Chicago
330 N. Wabash Avenue        Dallas
Chicago, IL 60611           New York
Tel 312-222-9350            Washington, DC
www.jenner.com

**VIA EMAIL**

David L. Doyle, Esq.
Vedder, Price, Kaufman & Kammholz, P.C.
222 North LaSalle Street
Chicago, Illinois 60601

Paul D. Margolis
Tel 312 923-8323
Fax 312 923-8423
pmargolis@jenner.com

Re:     *QuinStreet, Inc. v. Parallel Networks, LLC (C.A. No. 06-cv-495 (SLR))*

Dear Dave:

We are in receipt of several letters from you over the past few days accompanying your most
recent productions of documents. We have numerous concerns with respect to the completeness
and form of QuinStreet's document production. These concerns are discussed below.

To date, QuinStreet has produced about 3,000 pages of paper documents; in electronic format,
about 50,000 pages of image files, about 118 GB of email in PST folders, downloads of servers,
some source codes and software, and a hard drive of 78GB of documents from QuinStreet
engineers. We are now more than 3 months past the deadline for document production and a
week past the November 30 date that QuinStreet agreed was the final completion date for
document production. In spite of this, we understand that QuinStreet has not yet completed its
production. Please provide us with a date certain upon which QuinStreet expects to complete its
document production. In addition, as stated in my November 30 letter to Mr. Kolman, please let
us know when QuinStreet will be ready to exchange privilege logs.

I address our concerns below with respect to each category of document production by
QuinStreet.

**1. QuinStreet's Production of Electronic Image Files**

Over the past two weeks, QuinStreet has produced nearly 40,000 pages of image files in TIFF
format, that we understand consists of audited financial statements, notebooks and web traffic
information. However, none of these image files are text-searchable; consequently, QuinStreet's
document production does not comply with paragraph 6 of the Court's current standing order on
electronic discovery. As the extracted-text captured in the imaging process would make these
40,000 image files text searchable, we request that QuinStreet promptly produce a load file
containing extracted text for those image files.

**2. QuinStreet's Production of Electronic Mail**

On November 30, QuinStreet produced approximately 118 GB of electronic mail in PST folders.
These documents do not contain production numbers and have not been properly designated as
confidential or highly confidential under the protective order. While your November 30 letter

1604460.4

David L. Doyle, Esq.
December 7, 2007
Page 2

states that QuinStreet considers customer information to be "Highly Confidential" under the protective order, your letter does not identify e-mails or PST folders that contain this alleged highly confidential customer information. The protective order requires the producing party to review its documents and designate its documents as confidential or highly confidential. Thus, Parallel Networks is under no obligation under the protective order to review QuinStreet's documents to determine whether any given document is confidential or highly confidential or to make a determination as to whether QuinStreet or its customers considers a given document confidential or highly confidential. Furthermore, the lack of production numbers makes it virtually impossible to identify any such documents.

Moreover, we believe that the hard drive produced to Parallel Networks does not comply with paragraph 6 of the Court's standing order on electronic discovery because the outlook files are clearly not image files and the hard drive is very difficult to search as each individual folder must be searched separately. Moreover, a word search on a PST folder of emails will not capture any search terms that appear in an attachment to the email. Please let us know if it is QuinStreet's position that its production of electronic mail in PST folders complies with the Court's standing order on electronic discovery.

We are also concerned that the electronic mail files produced by QuinStreet appear to have been improperly altered. For example, although QuinStreet claims to have produced these emails as native files, the file folder path information has been deleted. This raises broad concerns about how the documents were processed and specifically, whether the production documents are being provided as they would be maintained in the ordinary course of business and whether the emails were processed in accordance with Fed.R.Civ.P. 34.

### 3. QuinStreet's Production of Network and Department Files

It is our understanding that QuinStreet will search for and produce files from its network and department drives. Please let us know when QuinStreet expects to produce these files. On Wednesday evening, we received a hard drive from QuinStreet which we understand to contain files from QuinStreet engineers. We have not yet looked at the hard drive produced by QuinStreet on Wednesday, but we will let you know if that hard drive raises any additional issues.

### 4. QuinStreet's Production of Servers

In your November 13, 2007 production letter, you stated that QuinStreet produced the downloads of four servers. However, the description QuinStreet provided with respect to this production does not identify the platform associated with each of the four servers. We request an identification for each of the four platforms the type of operating platform associated with the production, *i.e.*, whether Apache Standalone, Apache Tomcat, Apache Weblogic, Microsoft IIS, or Microsoft IIS with JRun. In addition, for each platform that QuinStreet operates that has not been produced, we request that QuinStreet supplement its production to include a downloaded server for each platform not already produced. We have not yet reviewed the hard drive of DMS software that was produced the other day, but we will let you know if that hard drive raises any additional issues.

1604460.4

David L. Doyle, Esq.
December 7, 2007
Page 3


## 5. QuinStreet's Production of Files in Paper Format

It is my understanding that QuinStreet will produce all requested documents in paper format or make them available for inspection. Please let me know when we can expect that production.

Very truly yours,

Paul D. Margolis

cc:     George S. Bosy, Esq.
        Patrick L. Patras, Esq.
        Anne Shea Gaza, Esq.

1604460.4

# Exhibit 8

**JENNER&BLOCK**

January 3, 2008

Jenner & Block LLP        Chicago
330 N. Wabash Avenue       Dallas
Chicago, IL 60611          New York
Tel 312-222-9350           Washington, DC
www.jenner.com

**VIA EMAIL**

David L. Doyle, Esq.
Vedder, Price, Kaufman & Kammholz, P.C.
222 North LaSalle Street
Chicago, Illinois 60601

Paul D. Margolis
Tel 312 923-8323
Fax 312 923-8423
pmargolis@jenner.com

Re:    *QuinStreet, Inc. v. Parallel Networks, LLC* (C.A. No. 06-cv-495 (SLR))

Dear Dave:

This is a follow-up to our December 7, 2007 letter about QuinStreet's document production. We continue to have numerous concerns with respect to the completeness and form of QuinStreet's document production.

As a preliminary matter, please let us know whether QuinStreet has completed its document production. If not, please provide us with a date certain by which QuinStreet will complete its document production. In addition, please let us know when QuinStreet will be ready to exchange privilege logs. We propose exchanging logs on January 7, 2008. Please let us know if that is acceptable.

We address our concerns below with respect to each category of document production by QuinStreet.

**1. QuinStreet's Production of Electronic Mail**

On November 30, QuinStreet produced approximately 118 GB of electronic mail in PST folders on a hard drive. We raised concerns with this production in our December 7, 2007 letter to which QuinStreet has never responded. These documents do not contain production numbers and have not been properly designated as confidential or highly confidential under the protective order. Although QuinStreet has stated that it considers "customer information" to be "Highly Confidential" under the protective order, QuinStreet has never identified the documents that contain this alleged highly confidential customer information. The protective order requires the producing party to review its documents and designate its documents as confidential or highly confidential, if appropriate under the protective order. The protective order further requires QuinStreet to designate its documents "on each page," which QuinStreet has not done. Thus, Parallel Networks is under no obligation under the protective order to review QuinStreet's documents to determine whether any given document is confidential or highly confidential or to make a determination as to whether QuinStreet or its customers considers a given document confidential or highly confidential. As such, if QuinStreet does not agree to properly designate its documents, we will treat all these documents as undesignated under the protective order as they have not been properly designated.

1611762.2

David L. Doyle, Esq.
January 3, 2008
Page 2

Moreover, we believe that the hard drive produced to Parallel Networks does not comply with paragraph 6 of the Court's standing order on electronic discovery because the outlook files are not image files and the hard drive is not searchable. While each folder could be searched separately in some limited capacity, a word search on a PST folder of emails will not capture any search terms that appear in an attachment to the email. Please let us know if QuinStreet disagrees with our position that QuinStreet's production of electronic mail in PST folders does not comply with the Court's standing order on electronic discovery.

Furthermore, we have unsuccessfully attempted to process these files for review for over two weeks to overcome the problems inherent with QuinStreet's production of PST files. Therefore, we remain concerned about the manner in which QuinStreet collected these documents. Our technical staff reports that it will take at least another month to process all of the email files. The biggest problem is that the electronic mail files contained numerous computer viruses that have significantly slowed down the process and will undoubtedly lead to additional work for the parties. We will begin identifying damaged files for you as soon as possible, and insist that QuinStreet reproduce those files immediately. We also reserve the right to seek reimbursement for any injury caused by QuinStreet's production of infected files.

### 2. QuinStreet's Production of Network and Department Files

It is our understanding based on numerous conversations before and after the last discovery conference before Judge Robinson that QuinStreet will search for and produce files from its network and department drives. We are in receipt of a few hard drives, but understand that QuinStreet is still processing additional files. Please confirm that the additional hard drives QuinStreet has produced do not contain computer viruses. Furthermore, like the electronic mail files, these documents have not been properly designated under the protective order, and it is not Parallel Networks' responsibility to review QuinStreet's documents to determine whether any given document is confidential or highly confidential. Please redesignate these documents in accordance with the protective order. If QuinStreet does not agree to designate its documents, we will treat them as undesignated under the protective order. We also do not believe that QuinStreet's production of its network and department drives complies with the Court's standing order on electronic discovery. Please let us know if QuinStreet disagrees with our position.

### 3. QuinStreet's Production of Servers

In your November 13, 2007 production letter, you stated that QuinStreet produced the downloads of four servers. As we have previously informed you, the description QuinStreet provided with respect to this production does not identify the platform associated with each of the four servers. We continue to request, for each of the four servers, that QuinStreet identify the type of associated platform, *i.e.*, Apache Standalone, Apache Tomcat, Apache Weblogic, Microsoft IIS, or Microsoft IIS with JRun. In addition, for each platform that QuinStreet operates that has not been produced, we request that QuinStreet supplement its production to include a downloaded server for each such platform. Please let us know if QuinStreet will comply with this request.

1611762.2

David L. Doyle, Esq.
January 3, 2008
Page 3

### 4. QuinStreet's Designation of Documents

QuinStreet has recently produced several disks with only one production number and designated those single disks as both "Highly Confidential-Outside Counsel's Eyes Only" and "Highly Confidential-Source Code Media."  Please immediately redesignate these documents so that they can be reviewed by Parallel Networks.  Similarly, QuinStreet has produced disks containing numerous DMS documents as "Source Code" that do not appear to contain any source code.  Please redesignate these documents in accordance with the protective order.

Very truly yours,

Paul D. Margolis

PDM:ekw

cc:    George S. Bosy, Esq.
       Patrick L. Patras, Esq.
       Anne Shea Gaza, Esq.

1611762.2

# Exhibit 9

**JENNER&BLOCK**

November 20, 2007

Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL 60611
Tel 312-222-9350
www.jenner.com

Chicago
Dallas
New York
Washington, DC

**VIA EMAIL**

Anne Shea Gaza, Esq.
Richards, Layton & Finger
One Rodney Square
920 North King Street
Wilmington, Delaware 19801

George S. Bosy
Tel  312 923-8305
Fax  312 923-8405
gbosy@jenner.com

Re:     *QuinStreet, Inc. v. epicRealm Licensing, LP* **(C.A. No. 06-cv-495 (SLR))**

Dear Anne:

This is in response to your letter of November 16, 2007 that attempts to comply with
Paragraph 2(d) of the scheduling order.  That section provides:

> If willfulness has been asserted and absent agreement among the
> parties or court order, QuinStreet must inform epicRealm whether
> it intends to rely on advice of counsel by November 16, 2007.  If
> the decision is to rely on such advice, the scope of discovery shall
> include such information as is required to be produced by then
> governing case law.

Parallel Networks expects QuinStreet to produce by the November 30, 2007 court ordered
deadline *all* opinions of counsel and all documents related to those opinions.  As you are aware:

> Once a party announces that it will rely on advice of counsel, for
> example, in response to an assertion of willful infringement, the
> attorney-client privilege is waived.  The widely applied standard
> for determining the scope of a waiver of attorney-client privilege is
> that the waiver applies to all other communications relating to the
> same subject matter.  [Citation omitted]

*In re EchoStar Communications Corp.*, 448 F.3d 1294, 1299 (Fed. Cir. 2006).  In addition, the
scope of the waiver includes all opinions and documents related to the patents in suit, even if
they are directed to products that were never implemented or products that are not accused of
infringement.  *In re MediaTek, Inc.*, 2007 WL 1046900, *1-2 (Fed. Cir. March 27, 2007).

In the absence of full and complete document production, Parallel Networks will likely contend
that QuinStreet has waived its right to rely on an advice of counsel defense.

Separately, your letter is mistaken in asserting that Parallel Networks has not accused
QuinStreet's operating platforms of infringement.  Parallel Networks previously wrote to

Anne Shea Gaza, Esq.
November 20, 2007
Page 2


QuinStreet accusing QuinStreet's three Apache platforms (Apache (stand alone), Apache/Tomcat (JBoss) and Apache/Weblogic) of infringement.  In any event, your attempt to use this excuse for full and complete production of all documents related to QuinStreet's advice of counsel defense is frivolous.

Very truly yours,


George S. Bosy

cc:    Harry J. Roper
       Patrick L. Patras


1599553.1